**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Sanchez Energy Corporation, et. al., | § | Case No. 19-34508 |
| | § | |
| Reorganized Debtors.[1] | § | (Jointly Administered) |
| | § | |
| | § | |
| Carnero G&P, LLC | § | Adversary No. 22-03035 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SN EF UnSub LP, Eagle Ford TX LP, | § | |
| Venado EF L.P., Mitsui E&P Texas LP, | § | |
| SN EF Maverick, LLC, and Mesquite | § | |
| Energy, Inc., | § | |
| Defendants. | § | |
| | § | |

# Notice of Appeal

[Relates Dkt. Nos. 29, 90, 137, and 138]

Carnero G&P LLC ("Carnero") hereby files this Notice of Appeal to the District Court of (i) the Judgment entered at Docket Nos. 137 and 138, (ii) the bench ruling denying Carnero's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material (Docket No. 90), and (iii) the bench ruling denying Carnero's Motion to Remand to State Court or for Abstention (Docket No. 29), and states as follows:

[1] The "Reorganized Debtors," along with the last four digits of each Reorganized Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102) (now known as Mesquite Energy, Inc.); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Reorganized Debtors' service address is 700 Milam Street, Suite 600, Houston, Texas 77002.

**Part 1: Identify the appellant(s)**

1. Name of appellant(s):

   Carnero G&P, LLC

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   Plaintiff

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from:

   Judgment (Doc. No. 137, 138) denying all relief to the Plaintiff;

   Bench ruling (Doc. No. 90) denying Carnero's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material; and

   Bench ruling (Doc. No. 29) denying Carnero's Motion to Remand to State Court or for Abstention

2. State the date on which the judgment, order, or decree was entered:

   Judgment entered February 2, 2023;

   Denial of Motion to Remand to State Court or for Abstention was made on the record on May 24, 2022; and

   Denial of Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material was made on the record on September 19, 2022.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

SN EF Maverick LLC,
Mesquite Energy, Inc., and
Mesquite Comanche Holdings, LLC

Represented by:

James G. Munisteri
Texas Bar No. 14667380

Sharon M. Beausoleil
Texas Bar No. 24025245
Foley & Lardner LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
jmunisteri@foley.com
sbeausoleil@foley.com

Dennis Jenkins
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8276
Facsimile: (212) 728-8111
djenkins@willkie.com

Mark T. Stancil
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Telephone: (202) 303-1133
Facsimile: (202) 303-2133
mstancil@willkie.com

Crown Eagle Energy LP (f/k/a SN EF UnSub, LP)

Represented by:

Thomas A. Woolley, III
McCloskey Roberson, PLLC
945 Heights Blvd.
Houston, Texas 77008
Telephone: (713) 337-3910
Facsimile: (713) 868-1275
woolley@mrwpllc.com

Paul M. Basta
Alice Belisle Eaton
Andrew J. Ehrlich
Sean A. Mitchell
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Telephone: (212) 373-3000
Facsimile: (212) 757-3900
pbasta@paulweiss.com
aeaton@paulweiss.com
aehrlich@paulweiss.com
smitchell@paulweiss.com

Eagle Ford TX, LP

Represented by:

Michelle Pector
Jared Wilkerson
Morgan, Lewis & Bockius LLP
1000 Louisiana St., Suite 4000
Houston, Texas 7002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001
michelle.pector@morganlewis.com
jared.wilkerson@morganlewis.com

Julia Frost-Davies
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, Massachusetts 02215
Telephone: (617) 341-7700
Facsimile: (617) 341-7701
julia.frost-davies@morganlewis.com

Mitsui E&P Texas LP

Represented by:

Duston K. McFaul
Maegan Quejada
Sidley Austin LLP
1000 Louisiana St., Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
dmcfaul@sidley.com
mquejada@sidly.com

Javelin EF L.P. (f/k/a Venado EF L.P.)

Represented by:

Sydney Corry
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
sydney.corry@kirkland.com

Conor P. McNamara
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
conor.mcnamara@kirkland.com

**Part 4: <u>Optional election to have appeal heard by District Court (applicable only in certain districts)</u>:**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: <u>Sign Below</u>**

*/s/ Joshua W. Wolfshohl* Date: *02/15/2023*
Signature of attorney for appellant(s)
(or appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

Joshua W. Wolfshohl SBN 24038592
Aaron J. Power SBN 24058058
Eugene M. Nettles SBN 14927300
Amy C. Falcon SBN 24053576
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

Telephone: (713) 226-6000
Facsimile: (713) 226-6295
jwolfshohl@porterhedges.com
apower@porterhedges.com
enettles@porterhedges.com
afalcon@porterhedges.com

**Attorneys for Appellant Carnero G&P, LLC**

**U.S. Bankruptcy Court**
**Southern District of Texas (Houston)**
**Adversary Proceeding #: 22-03035**

*Assigned to:* Bankruptcy Judge Marvin Isgur
*Lead BK Case:* 19-34508
*Lead BK Title:* Sanchez Energy Corporation, et al
*Lead BK Chapter:* 11
*Demand:*

*Date Filed:* 02/28/22
*Date Removed From State:* 02/28/22

*Nature[s] of Suit:* 01 Determination of removed claim or cause

***Plaintiff***
**-----------------------**
**Carnero G&P, LLC**

represented by **Amy Coates Falcon**
Porter Hedges LLP
1000 Main St
Ste 3600
Houston, TX 77002
713-226-6681
Email: afalcon@porterhedges.com
*LEAD ATTORNEY*

**Eugene Montgomery Nettles**
Porter & Hedges
1000 Main St
36th Floor
Houston, TX 77002-2764
713-226-6609
Fax : 713-226-6209
Email: enettles@porterhedges.com
*LEAD ATTORNEY*

**Joshua W. Wolfshohl**
Porter Hedges LLP
1000 Main, 36th Floor
Houston, TX 77002
713-226-6000
Fax : 713-228-1331
Email: jwolfshohl@porterhedges.com
*LEAD ATTORNEY*

V.

***Defendant***
**-----------------------**
**SN EF UnSub, LP**
1111 Bagby Street
Suite 2050
Houston, TX 77002

represented by **Paul M Basta**
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
212-373-3000
Email: pbasta@paulweiss.com

*LEAD ATTORNEY*

**Alice Belisle Eaton**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Fax : 212-492-0125
Email: aeaton@paulweiss.com
*LEAD ATTORNEY*

**Andrew Ehrlich**
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
212-373-3166
Email: aehrlich@paulweiss.com
*LEAD ATTORNEY*

**Sean Anthony Mitchell**
Paul Weiss et al
1285 Ave of the Americas
New York, NY 10019
212-373-3740
Email: mtattnall@paulweiss.com
*LEAD ATTORNEY*

**Thomas Andrew Woolley, III**
McCloskey Roberson Woolley, PLLC
190 T.C. Jester, Suite 400
Houston, TX 77007
713-337-3900
Fax : 713-337-3915
Email: rwoolley@mrwpllc.com
*LEAD ATTORNEY*

***Defendant***
**-----------------------**
**Eagle Ford TX LP**
5599 San Felipe Road
Suite 725
Houston, TX 77056

represented by **Julia Frost-Davies**
Morgan Lewis & Bockius LLP
One Federal St
Boston, MA 02115
617-341-7700
Email: julia.frost-davies@morganlewis.com
*LEAD ATTORNEY*

**Amy L Kyle**
Morgan Lewis & Bockius LLP
One Federal St
Boston, MA 02115
617-951-8288
Email: amy.kyle@morganlewis.com
*LEAD ATTORNEY*

**Michelle Dawn Pector**
Morgan Lewis Bockius LLP
1000 Louisiana St
Ste 4000
Houston, TX 77002
713-890-5455
Email: michelle.pector@morganlewis.com
*LEAD ATTORNEY*

**Jared Wilkerson**
Morgan Lewis & Bockius LLP
100 Louisiana Street
Houston, TX 770002
713-890-5460
Email: jared.wilkerson@morganlewis.com
*LEAD ATTORNEY*

***Defendant***
**-----------------------**
**Venado EF L.P.**
13215 Bee Cave Pkwy.
Suite B-350
Austin, TX 78738
***aka* Javelin EF L.P.**

represented by **Sydney Corry**
Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002
253-455-6202
Email: sydney.corry@kirkland.com
*LEAD ATTORNEY*

**Conor P. McNamara**
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 N. LaSalle
Chicago, IL 60654
312-86202000
Email: conor.mcnamara@kirkland.com
*LEAD ATTORNEY*

***Defendant***
**-----------------------**
**Mitsui E&P Texas LP**
1300 Post Oak Blvd.
Suite 1800
Houston, TX 77056

represented by **Duston K McFaul**
SIdley Austin LLP
1000 Louisiana St.
Suite 5900
Houston, TX 77002
713-495-4500
Fax : 713-495-7799
Email: dmcfaul@sidley.com
*LEAD ATTORNEY*

**Maegan Quejada**
Sidley Austin LLP
1000 Louisiana St
Ste 5900
Houston, TX 77002

713-495-4618
Email: mquejada@sidley.com
*LEAD ATTORNEY*

***Defendant***
**-----------------------**

**SN EF Maverick, LLC**
700 Milam Street
Suite 600
Houston, TX 77002

represented by **Sharon Marie Beausoleil**
Foley & Lardner LLP
1000 Louisiana Street
Suite 2000
Houston, Tx 77002
713-276-5086
Email: sbeausoleil@foley.com

**Joseph Bretschneider**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
212-728-8276
Email: jbretschneider@willkie.com
*LEAD ATTORNEY*

**Sara Ann Brown**
Thompson Coburn LLP
2100 Ross Avenue
Ste 3200
Dallas, TX 75201
972-629-7100
Fax : 972-629-7171
Email: sbrown@thompsoncoburn.com

**Dennis Jenkins**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
212-728-8276
Fax : 212-728-8111
Email: djenkins@willkie.com
*LEAD ATTORNEY*

**James G Munisteri**
Foley Gardere
1000 Louisiana Street
Ste 2000
Houston, TX 77002
713-276-5500
Fax : 713-276-5555
Email: jmunisteri@foley.com

**Mark T. Stancil**
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
202-303-1133

Email: mstancil@willkie.com
*LEAD ATTORNEY*

***Defendant***
**-----------------------**

| | | |
|---|---|---|
| **Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation**<br>700 Milam Street<br>Suite 600<br>Houston, TX 77002 | represented by | **Sharon Marie Beausoleil**<br>(See above for address)<br><br>**Joseph Bretschneider**<br>(See above for address)<br>*LEAD ATTORNEY*<br><br>**Sara Ann Brown**<br>(See above for address)<br><br>**Dennis Jenkins**<br>(See above for address)<br>*LEAD ATTORNEY*<br><br>**James G Munisteri**<br>(See above for address)<br><br>**Mark T. Stancil**<br>(See above for address)<br>*LEAD ATTORNEY* |

***Defendant***
**-----------------------**

| | | |
|---|---|---|
| **Mesquite Comanche Holdings, LLC**<br>c/o Registered Agent -<br>C T Corporation System<br>1999 Bryan St., Suite 900<br>Dallas, TX 75201 | represented by | **Sharon Marie Beausoleil**<br>(See above for address)<br><br>**James G Munisteri**<br>(See above for address) |

***Intervenor***
**-----------------------**

| | | |
|---|---|---|
| **ETC Texas Pipeline Ltd.**<br>1300 Main Street<br>Suite 2000<br>Houston, TX 77002 | represented by | **Yelena Archiyan**<br>Katten Muchin Rosenman LLP<br>2121 North Pearl Street<br>Suite 1100<br>Dallas, TX 75201<br>214.765.3657<br>Email: yelena.archiyan@katten.com<br><br>**John E. Mitchell**<br>Katten Muchin Rosenman<br>2121 North Pearl Street<br>Suite 1100<br>Dallas, TX 75201<br>469-627-7017<br>Email: john.mitchell@katten.com |

| Filing Date | # | Docket Text |
|---|---|---|
| 02/28/2022 | 1 (91 pgs; 5 docs) | Adversary case 22-03035. Nature of Suit: (01 (Determination of removed claim or cause)) Notice of Removal Carnero G&P, LLC. Fee Amount $350 (Attachments: # 1 Index of Attachments # 2 List of Counsel # 3 State Court Document List # 4 Index of State Court Filings) (Munisteri, James) (Entered: 02/28/2022) |
| 03/01/2022 | | Receipt of Notice of Removal( 22-03035) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt number A23566758. Fee amount $ 350.00. (U.S. Treasury) (Entered: 03/01/2022) |
| 03/01/2022 | 2 (2 pgs) | Order for Conference Pre-Trial Conference set for 4/6/2022 at 10:00 AM at Houston, Courtroom 404 (MI). (LinhthuDo) (Entered: 03/01/2022) |
| 03/03/2022 | 3 (4 pgs) | BNC Certificate of Mailing. (Related document(s):2 Order for Conference) No. of Notices: 14. Notice Date 03/03/2022. (Admin.) (Entered: 03/03/2022) |
| 03/07/2022 | 4 (12 pgs) | Answer to Complaint (Related document(s):1 Notice of Removal) Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Entered: 03/07/2022) |
| 03/08/2022 | 5 (12 pgs) | Corrected Answer to Complaint (Related document(s):1 Notice of Removal) Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Entered: 03/08/2022) |
| 03/30/2022 | 6 (173 pgs; 11 docs) | Motion for Remand. Objections/Request for Hearing Due in 21 days. Filed by Carnero G&P, LLC (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Proposed Order) (Wolfshohl, Joshua) (Entered: 03/30/2022) |
| 04/04/2022 | 7 (4 pgs) | Notice *of Adversary Plaintiff's Supplement to Its Motion to Remand to State Court or for Abstention*. (Related document(s):6 Motion for Remand) Filed by Carnero G&P, LLC (Wolfshohl, Joshua) (Entered: 04/04/2022) |
| 04/06/2022 | 8 (11 pgs) | Joint Discovery Plan/Case Management Plan (Filed By Carnero G&P, LLC ). (Wolfshohl, Joshua) (Entered: 04/06/2022) |
| 04/06/2022 | 9 | Courtroom Minutes. Time Hearing Held: 10:03 am - 10:08 am. Appearances: Josh Wolfshohl and Amy Falcon for the Plaintiff. Maegan Quejada for Defendant Mitsui E&P Texas |

| | | |
|---|---|---|
| | | LP. James Munisteri and Dennis Jenkins for Defendant SN EF Maverick, LLC. Conor McNamaa for Defendant Venado EF L.P. aka Javelin EF L.P. Sean Mitchell and Andrew Ehrlich for Defendant SN EF UnSub, LP. Julia Frost-Davies for Eagle Ford TX LP. Briefing to be filed not later than the evening of 5/16/22, hearing scheduled for 5/23/22 at 9:00 am. Agreed order to be filed by the parties to set the briefing deadlines as stated on the record. (Related document(s):2 Order for Conference, 6 Motion for Remand) **Hearing scheduled for 5/23/2022 at 09:00 AM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 04/06/2022) |
| 04/06/2022 | 10 (1 pg) | PDF with attached Audio File. Court Date & Time [ 4/6/2022 10:03:31 AM ]. File Size [ 2481 KB ]. Run Time [ 00:05:10 ]. (admin). (Entered: 04/06/2022) |
| 04/13/2022 | 11 (5 pgs) | Stipulation By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation and SN EF UnSub, LP, Mitsui E&P Texas LP, Eagle Ford TX, LP, Carnero G&P, LLC and Javelin EF L.P. (f/k/a Venado EF L.P.. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation ).(Related document(s):6 Motion for Remand) (Munisteri, James) (Entered: 04/13/2022) |
| 04/14/2022 | 12 (4 pgs) | Stipulation and Scheduling Order Governing Briefing on Plaintiff's Motion to Remand to State Court or for Abstention, Signed on 4/14/2022 (Related document(s):6 Motion for Remand) (TylerLaws) (Entered: 04/14/2022) |
| 04/16/2022 | 13 (6 pgs) | BNC Certificate of Mailing. (Related document(s):12 Generic Order) No. of Notices: 14. Notice Date 04/16/2022. (Admin.) (Entered: 04/16/2022) |
| 04/27/2022 | 14 (44 pgs) | Objection *to Plaintiff's Motion to Remand to State Court or For Abstention* (related document(s):6 Motion for Remand). Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Entered: 04/27/2022) |
| 04/29/2022 | 15 (21 pgs) | Stipulation By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC and SN EF UnSub, LP, Eagle Ford TX, LP, Mitsui E&P Texas LP, Javelin EF L.P. (f/k/a Venado EF L.P.) and Carnero G&P LLC. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC ). (Munisteri, James) (Entered: 04/29/2022) |
| 04/29/2022 | 16 (21 pgs) | Stipulated Protective Order, Signed on 4/29/2022 (Related document(s):15 Stipulation) (TylerLaws) (Entered: |

| | | |
|---|---|---|
| | | 04/29/2022) |
| 05/01/2022 | 17<br>(23 pgs) | BNC Certificate of Mailing. (Related document(s):16 Generic Order) No. of Notices: 14. Notice Date 05/01/2022. (Admin.) (Entered: 05/01/2022) |
| 05/09/2022 | 18<br>(18 pgs) | Reply - *Adversary Plaintiff's Reply in Support of Its Motion to Remand to State Court or for Abstention* (related document(s):6 Motion for Remand). Filed by Carnero G&P, LLC (Wolfshohl, Joshua) (Entered: 05/09/2022) |
| 05/11/2022 | 19 | Motion *Defendants' Motion for Judgment on the Pleadings* Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Attachments: # 1 Proposed Order # 2 Exhibit 1 # 3 Exhibit 2 # 4 Exhibit 3 # 5 Exhibit 4 # 6 Exhibit 5 # 7 Exhibit 6 # 8 Exhibit 7 # 9 Exhibit 8 # 10 Exhibit 9 # 11 Exhibit 10 # 12 Exhibit 11 # 13 Exhibit 12 # 14 Exhibit 13 # 15 Exhibit 14 # 16 Exhibit 15 # 17 Exhibit 16 # 18 Exhibit 17 # 19 Exhibit 18 # 20 Exhibit 19 # 21 Exhibit 20 # 22 Exhibit 21 # 23 Exhibit 22 # 24 Exhibit 23 # 25 Exhibit 24 # 26 Exhibit 25 # 27 Exhibit 26 # 28 Exhibit 27 # 29 Exhibit 28 # 30 Exhibit 29 # 31 Exhibit 30 # 32 Exhibit 31 # 33 Exhibit 32 # 34 Exhibit 33 # 35 Exhibit 34 # 36 Exhibit 35 # 37 Exhibit 36 # 38 Exhibit 37 # 39 Exhibit 38 # 40 Exhibit 39 # 41 Exhibit 40 # 42 Exhibit 41 # 43 Exhibit 42 # 44 Exhibit 43 # 45 Exhibit 44 # 46 Exhibit 45) (Munisteri, James) (Entered: 05/11/2022) |
| 05/11/2022 | 20 | Sealed Document *Exhibit Nos. 7-22 and 45 to Defendants' Motion for Judgment on the Pleadings [Docket No. 19]* (Filed By Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Attachments: # 1 Exhibit 7 (Part 1 of 2) # 2 Exhibit 7 (Part 2 of 2) # 3 Exhibit 8 # 4 Exhibit 9 # 5 Exhibit 10 # 6 Exhibit 11 # 7 Exhibit 12 # 8 Exhibit 13 # 9 Exhibit 14 # 10 Exhibit 15 # 11 Exhibit 16 # 12 Exhibit 17 # 13 Exhibit 18 # 14 Exhibit 19 # 15 Exhibit 20 # 16 Exhibit 21 # 17 Exhibit 22 # 18 Exhibit 45) (Munisteri, James) (Entered: 05/11/2022) |
| 05/16/2022 | 21<br>(23 pgs) | Reply */Sur-Reply in Opposition to Plaintiff's Motion to Remand to State Court or for Abstention* (related document(s):6 Motion for Remand). Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Entered: 05/16/2022) |
| 05/17/2022 | 22<br>(12 pgs; 2 docs) | Emergency Motion *to Schedule a Status Conference and a Common Hearing Date for the Motion to Remand, the Motion to Dismiss, and the Motion for Summary Judgment on the Pleadings*, Motion to Set Hearing. Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, |

| | | |
|---|---|---|
| | | LP, Venado EF L.P. (Attachments: # 1 Proposed Order) (Munisteri, James) (Entered: 05/17/2022) |
| 05/18/2022 | 23 (7 pgs; 2 docs) | Objection - *Carnero G&P's Objection to Defendants' Emergency Motion to Schedule a Status Conference and a Common Hearing Date for the Motion to Remand, the Motion to Dismiss, and the Motion for Summary Judgment on the Pleadings* (related document(s):22 Emergency Motion (Adversary), Motion to Set Hearing). Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 05/18/2022) |
| 05/18/2022 | 24 (2 pgs) | Order on Emergency Motion to Schedule a Status Conference and a Common Hearing Date for the Motion to Remand, the Motion to Dismiss, and the Motion for Summary Judgment on the Pleadings, Signed on 5/18/2022 (Related document(s):22 Emergency Motion (Adversary), Motion to Set Hearing) (TylerLaws) (Entered: 05/18/2022) |
| 05/19/2022 | 25 (177 pgs; 12 docs) | Witness List, Exhibit List (Filed By Carnero G&P, LLC ). (Related document(s):6 Motion for Remand) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11) (Wolfshohl, Joshua) (Entered: 05/19/2022) |
| 05/19/2022 | 26 (1999 pgs; 54 docs) | Exhibit List, Witness List (Filed By Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ).(Related document(s):6 Motion for Remand, 9 Courtroom Minutes) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34 # 35 Exhibit 35 # 36 Exhibit 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42 # 43 Exhibit 43 # 44 Exhibit 44 # 45 Exhibit 45 # 46 Exhibit 46 # 47 Exhibit 47 # 48 Exhibit 48 # 49 Exhibit 49 # 50 Exhibit 50 # 51 Exhibit 51 # 52 Exhibit 52 # 53 Exhibit 53) (Munisteri, James) (Entered: 05/19/2022) |
| 05/20/2022 | 27 (4 pgs) | BNC Certificate of Mailing. (Related document(s):24 Generic Order) No. of Notices: 14. Notice Date 05/20/2022. (Admin.) (Entered: 05/20/2022) |
| 05/22/2022 | 28 (16 pgs; 2 docs) | Exhibit List (Filed By Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). |

| | | |
|---|---|---|
| | | (Related document(s):6 Motion for Remand, 9 Courtroom Minutes, 26 Exhibit List, Witness List) (Attachments: # 1 [Supplement] Exhibit 54 - Certificate of Authenticity of Business Records) (Munisteri, James) (Entered: 05/22/2022) |
| 05/23/2022 | 29 | Courtroom Minutes. Time Hearing Held: 9:00 am - 10:47 am. Appearances: Joshua Wolfshohl, Aaron Powers and Amy Falcon for the Plaintiff. Mark Stancil and James Munisteri for the Debtors. Duston McFaul for Defendant Mitsui E&P Texas LP. Paul Basta and Andrew Ehrlich for Defendant SN EF UnSub, LP. Julia Frost-Davies for Eagle Ford TX LP. Conor McNamara for Defendant Venado EF L.P. aka Javelin EF L.P. Exhibits admitted: ECF No. 25 1-11. ECF No. 26 1-6, 16-21, 23-44, 46-53. The Court issued findings, the motion for remand 6 is denied on the record. Scheduling conference 2 continued to 6/13/22 at 1:30 pm. Deadline set for 6/6/22 for the parties to file pre-conference papers. (Related document(s):2 Order for Conference, 6 Motion for Remand, 19 Generic Motion) **Hearing scheduled for 6/13/2022 at 01:30 PM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 05/23/2022) |
| 05/23/2022 | 30 (1 pg) | PDF with attached Audio File. Court Date & Time [ 5/23/2022 8:58:46 AM ]. File Size [ 51991 KB ]. Run Time [ 01:48:19 ]. (admin). (Entered: 05/23/2022) |
| 05/23/2022 | 31 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Defendants SN EF Maverick LLC & Mesquite Energy, Inc.. This is to order a transcript of Adversary Hearing: 5/23/2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC ). (Brown, Sara) Electronically forwarded to Veritext Legal Solutions on 5/25/2022. Estimated completion date: 05/26/2022. Modified on 5/25/2022 (ShannonHolden). (Entered: 05/23/2022) |
| 05/27/2022 | 32 (2 pgs) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Joshua W. Wolfshohl. This is to order a transcript of May 23, 2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Carnero G&P, LLC ). (Wolfshohl, Joshua) Copy request electronically forwarded Veritext Legal Solutions on 5/27/2022. Estimated due date is 06/03/2022. Modified on 5/27/2022 (ShannonHolden). (Entered: 05/27/2022) |
| 06/01/2022 | 33 (80 pgs) | Transcript RE: motion hearing held on 5/23/22 before Judge Marvin Isgur. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 08/30/2022. (VeritextLegalSolutions) (Entered: 06/01/2022) |

| | | |
|---|---|---|
| 06/02/2022 | 34 (1 pg) | Notice of Filing of Official Transcript as to 33 Transcript. Parties notified (Related document(s):33 Transcript) (GabrielleClair) (Entered: 06/02/2022) |
| 06/04/2022 | 35 (3 pgs) | BNC Certificate of Mailing. (Related document(s):34 Notice of Filing of Official Transcript (Form)) No. of Notices: 14. Notice Date 06/04/2022. (Admin.) (Entered: 06/04/2022) |
| 06/06/2022 | | Hearing Set (Related document(s):19 Generic Motion) **Status conference to be held on 6/13/2022 at 01:30 PM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 06/06/2022) |
| 06/13/2022 | 36 | Courtroom Minutes. Time Hearing Held: 1:30 pm - 2:16 pm. Appearances: Joshua Wolfshohl and Amy Falcon for the Plaintiff. Duston McFaul for Defendant Mitsui E&P Texas LP. Mark Stancil and Denis Jenkins for the Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation. Conor McNamara for Defendant Javelin EF L.P. Lydia Webb for Western Midstream Partners, LP. Julia Frost-Davies for Eagle Ford TX LP. Sean Mitchell and Andrew Ehrlich for UnSub. As stated on the record, not later than 6/17/22 at 4:00 pm, limited redaction documents need to be turned over to Counsel Joshua Wolfshohl such that only numbers are redacted when possible. In a separate group, redacted documents should be turned over where more than numbers are redacted. As to the ones where more than numbers are redacted, as long as there are 10 or fewer of those than not later than 6/24/22 at 12:00 pm, Counsel Joshua Woflshohl may file a motion to compel productions with fewer redactions or none. A hearing to be held on the motion on 6/27/22 at 4:00 pm. Counsel Joshua Wolfshohl authorized to share whatever he is provided by 6/17/22 with in-house counsel who will be restricted to professional eyes only to in-house counsel. Parties to file an agreed order on the balance of the scheduling in the case, if an agreement can't be reached parties may request a further hearing or submit competing orders. (Related document(s):2 Order for Conference, 19 Generic Motion) **Hearing scheduled for 6/27/2022 at 04:00 PM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 06/13/2022) |
| 06/13/2022 | 37 (1 pg) | PDF with attached Audio File. Court Date & Time [ 6/13/2022 1:27:40 PM ]. File Size [ 23255 KB ]. Run Time [ 00:48:27 ]. (admin). (Entered: 06/13/2022) |
| 06/14/2022 | 38 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by SN EF Maverick LLC & Mesquite Energy, Inc/Sara Brown. This is to order a transcript of Status Conference - June 13, 2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC ). (Brown, Sara) Electronically forwarded to Judicial Transcribers of Texas 6/17/2022. |

| | | |
|---|---|---|
| | | Estimated Transcript Completion Date: 6/24/2022. Modified on 6/17/2022 (JacquelineMata). (Entered: 06/14/2022) |
| 06/16/2022 | 39 (7 pgs) | Notice *of Proposed Scheduling and Disclosure Order*. Filed by Carnero G&P, LLC (Wolfshohl, Joshua) (Entered: 06/16/2022) |
| 06/16/2022 | 40 (21 pgs) | Notice *of Proposed Order and Briefing Schedule for Defendants' Motion for Judgment of the Pleadings*. Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Entered: 06/16/2022) |
| 06/17/2022 | 41 (4 pgs) | Scheduling and Disclosure Order, Signed on 6/17/2022 (Related document(s):16 Generic Order, 19 Generic Motion, 36 Courtroom Minutes, 39 Notice, 40 Notice) **Hearing scheduled for 7/27/2022 at 09:30 AM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 06/17/2022) |
| 06/19/2022 | 42 (6 pgs) | BNC Certificate of Mailing. (Related document(s):41 Order Setting Hearing) No. of Notices: 14. Notice Date 06/19/2022. (Admin.) (Entered: 06/19/2022) |
| 06/23/2022 | 43 (2 pgs) | Certificate *of Service* (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC ). (Related document(s):41 Order Setting Hearing) (Munisteri, James) (Entered: 06/23/2022) |
| 06/24/2022 | 44 (10 pgs; 2 docs) | Sealed Motion - *Carnero's Motion to Compel Removal of Redactions* Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 06/24/2022) |
| 06/24/2022 | 45 (9 pgs; 2 docs) | Motion to Seal - *Carnero G&P, LLCs Emergency Motion for Entry of an Order (I) Authorizing the Filing of Motion to Compel Removal of Redactions Under Seal and (II) Granting Related Relief* Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 06/24/2022) |
| 06/24/2022 | | Hearing Set On (Related document(s):44 Sealed Motion, 45 Motion to Seal) Movant to notice all interested parties and file a certificate of service with the court. **Hearing scheduled for 6/27/2022 at 04:00 PM at Houston, Courtroom 404 (MI).** (LinhthuDo) (Entered: 06/24/2022) |
| 06/27/2022 | 46 (3 pgs) | Notice *of Withdrawal of Carnero's Motion to Compel Removal of Redactions without Prejudice*. (Related document(s):44 Sealed Motion) Filed by Carnero G&P, LLC (Wolfshohl, Joshua) (Entered: 06/27/2022) |
| 06/27/2022 | 47 | *Notice of Cancellation of Hearing.* (Related document(s): 36 Courtroom Minutes, 44 Sealed Motion, 45 Motion to Seal) Contacted Joshua Wolfshohl. The hearings previously |

| | | |
|---|---|---|
| | | scheduled for 6/27/2022 are *canceled.* (LinhthuDo) (Entered: 06/27/2022) |
| 07/05/2022 | 48 (39 pgs) | Transcript RE: Motion Hearing (Via Zoom) held on June 13, 2022 before Judge Marvin Isgur. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 10/3/2022. (mhen) (Entered: 07/05/2022) |
| 07/06/2022 | 49 (1 pg) | Notice of Filing of Official Transcript as to 48 Transcript. Parties notified (Related document(s):48 Transcript) (hcar) (Entered: 07/06/2022) |
| 07/08/2022 | 50 (3 pgs) | BNC Certificate of Mailing. (Related document(s):49 Notice of Filing of Official Transcript (Form)) No. of Notices: 14. Notice Date 07/08/2022. (Admin.) (Entered: 07/08/2022) |
| 07/12/2022 | 51 (1594 pgs; 47 docs) | Motion *(Redacted) Defendants' Motion for Judgment on the Pleadings* Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 - filed under seal # 8 Exhibit 8 - filed under seal # 9 Exhibit 9 - filed under seal # 10 Exhibit 10 - filed under seal # 11 Exhibit 11 - filed under seal # 12 Exhibit 12 - filed under seal # 13 Exhibit 13 - filed under seal # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 - filed under seal # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34 # 35 Exhibit 35 # 36 Exhibit 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42 # 43 Exhibit 43 # 44 Exhibit 44 # 45 Exhibit 45 - filed under seal # 46 Proposed Order) (Munisteri, James) (Entered: 07/12/2022) |
| 07/12/2022 | 52 | Sealed Document */Exhibit Nos. 7-13, 22 and 45 to Defendants' Motion for Judgment on the Pleadings [Docket No. 51]* (Filed By Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Attachments: # 1 Exhibit 7 (Part 1 of 2) # 2 Exhibit 7 (Part 2 of 2) # 3 Exhibit 8 # 4 Exhibit 9 # 5 Exhibit 10 # 6 Exhibit 11 # 7 Exhibit 12 # 8 Exhibit 13 # 9 Exhibit 22 # 10 Exhibit 45) (Munisteri, James) (Entered: 07/12/2022) |
| 07/12/2022 | 53 (55 pgs; 3 docs) | Sealed Motion - *Carnero G&P, LLC's Emergency Motion for Leave to File Second Amended Complaint* Filed by Carnero G&P, LLC (Attachments: # 1 Exhibit A # 2 Proposed Order) (Wolfshohl, Joshua) (Entered: 07/12/2022) |

| | | |
|---|---|---|
| 07/12/2022 | 54<br>(9 pgs; 2 docs) | Motion to Seal - *Carnero G&P, LLC's Emergency Motion for Entry of an Order (I) Authorizing the Filing of Emergency Motion for Leave to File Second Amended Complaint and Its Exh. A Second Amended Complaint Under Seal and (II) Granting Related Relief* Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 07/12/2022) |
| 07/13/2022 | 55<br>(15 pgs; 2 docs) | Response */Defendants' Response to Carnero G&P, LLC's Emergency Motion for Leave to File Second Amended Complaint* (related document(s):53 Sealed Motion). Filed by Eagle Ford TX LP, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Attachments: # 1 Proposed Order) (Munisteri, James) (Entered: 07/13/2022) |
| 07/14/2022 | 56<br>(5 pgs) | Reply - *Carnero's Reply in Support of Its Emergency Motion for Leave to File Second Amended Complaint* (related document(s):53 Sealed Motion). Filed by Carnero G&P, LLC (Wolfshohl, Joshua) (Entered: 07/14/2022) |
| 07/14/2022 | 57<br>(5 pgs) | Order on Motion for Leave to File Second Amended Complaint, Signed on 7/14/2022 (Related document(s):53 Sealed Motion) (LinhthuDo) (Entered: 07/15/2022) |
| 07/17/2022 | 58<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):57 Generic Order) No. of Notices: 14. Notice Date 07/17/2022. (Admin.) (Entered: 07/17/2022) |
| 07/21/2022 | | Hearing Set On (Related document(s):51 Motion for Judgment on the Pleadings) Movant to notice all interested parties and file a certificate of service with the court. **Hearing scheduled for 8/17/2022 at 01:30 PM at Houston, Courtroom 404 (MI).** (LinhthuDo) (Entered: 07/21/2022) |
| 07/21/2022 | | Hearing Reset (Related document(s):51 Motion for Judgment on the Pleadings) Contacted by the parties. **Hearing rescheduled for 10/5/2022 at 01:30 PM at Houston, Courtroom 404 (MI).** (LinhthuDo) (Entered: 07/21/2022) |
| 07/22/2022 | 59<br>(2 pgs) | Request for Issuance of Summons on Mesquite Comanche Holdings, LLC. (Wolfshohl, Joshua) (Entered: 07/22/2022) |
| 07/25/2022 | 60<br>(2 pgs) | Summons Issued on Mesquite Comanche Holdings, LLC. Date Issued 7/25/2022. (AkeitaMichael) Modified on 7/25/2022 (AkeitaMichael). (Entered: 07/25/2022) |
| 08/01/2022 | 61<br>(2 pgs) | Summons Service Executed on Mesquite Comanche Holdings, LLC 7/25/2022. (Wolfshohl, Joshua) (Entered: 08/01/2022) |

| | | |
|---|---|---|
| 08/03/2022 | 62 (2 pgs) | Order (I) Authorizing the Filing of Carnero's Emergency Motion for Leave to File Second Amended Complaint and its Ex. A Second Amended Complaint Under Seal and (II) Granting Related Relief (Related Doc # 54) Signed on 8/3/2022. (TylerLaws) (Entered: 08/03/2022) |
| 08/22/2022 | 63 (11 pgs; 2 docs) | Motion - *Carnero G&P, LLC's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material* Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 08/22/2022) |
| 08/24/2022 | 64 (3 pgs) | Notice *of Appearance of Dennis Jenkins on behalf of Mesquite Comanche Holdings, LLC*. Filed by Mesquite Comanche Holdings, LLC (Munisteri, James) (Entered: 08/24/2022) |
| 08/24/2022 | 65 (3 pgs) | Notice *of Appearance of Mark T. Stancil on behalf of Mesquite Comanche Holdings, LLC*. Filed by Mesquite Comanche Holdings, LLC (Munisteri, James) (Entered: 08/24/2022) |
| 08/24/2022 | 66 (25 pgs) | Answer to Complaint (Related document(s):61 Summons Service Executed) Filed by Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Related document(s):53-1 *Sealed* Second Amended Complaint) Modified on 8/25/2022 (LinhthuDo). (Entered: 08/24/2022) |
| 08/24/2022 | 67 | Sealed Document */Defendants' Motion for Judgment on the Pleadings* (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Attachments: # 1 Proposed Order # 2 Ex. 6 (Part 1 of 4) # 3 Ex. 6 (Part 2 of 4) # 4 Ex. 6 (Part 3 of 4) # 5 Ex. 6 (Part 4 of 4) # 6 Ex. 7 # 7 Ex. 8 # 8 Ex. 9 # 9 Ex. 10 # 10 Ex. 11 # 11 Ex. 12 # 12 Ex. 20 # 13 Ex. 26) (Munisteri, James) (Entered: 08/24/2022) |
| 08/24/2022 | 68 (3567 pgs; 36 docs) | Additional Attachments Re: *Exhibit Nos. 1-35 to Defendants' Motion for Judgment on the Pleadings* (related document(s):67 Sealed Document) (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Related document(s):67 Sealed Document) (Attachments: # 1 Ex. 1 # 2 Ex. 2 # 3 Ex. 3 # 4 Ex. 4 # 5 Ex. 5 # 6 Ex. 6 - Filed Under Seal # 7 Ex. 7 - Filed Under Seal # 8 Ex. 8 - Filed Under Seal # 9 Ex. 9 - Filed Under Seal # 10 Ex. 10 - Filed Under Seal # 11 Ex. 11 - Filed Under Seal # 12 Ex. 12 - Filed Under Seal # 13 Ex. 13 # 14 Ex.14 # 15 Ex. 15 # 16 Ex. 16 # 17 Ex. 17 # 18 Ex. 18 # 19 Ex. 19 # 20 Ex. 20 - Filed |

| | | |
|---|---|---|
| | | Under Seal # 21 Ex. 21 # 22 Ex. 22 # 23 Ex. 23 # 24 Ex. 24 # 25 Ex. 25 # 26 Ex. 26 - Filed Under Seal # 27 Ex. 27 # 28 Ex. 28 # 29 Ex. 29 # 30 Ex. 30 # 31 Ex. 31 # 32 Ex. 32 # 33 Ex. 33 # 34 Ex. 34 # 35 Ex. 35) (Munisteri, James) (Entered: 08/25/2022) |
| 09/12/2022 | 69 (2 pgs) | Notice *of Appearance*. Filed by Enterprise Products Operating, LLC (Mitchell, Paul) (Entered: 09/12/2022) |
| 09/12/2022 | 70 (18 pgs; 3 docs) | Response (Filed By Enterprise Products Operating, LLC ). (Related document(s):63 Generic Motion) (Attachments: # 1 Exhibit 1 Affidavit of Zach Strait # 2 Proposed Order) (Mitchell, Paul) (Entered: 09/12/2022) |
| 09/12/2022 | 71 (14 pgs; 2 docs) | Motion to Intervene. Objections/Request for Hearing Due in 21 days. Filed by Interested Parties Springfield Pipeline LLC, WGR Operating, LP, Western Midstream Partners, LP (Attachments: # 1 Proposed Order) (Webb, Lydia). Related document(s) 63 Motion - *Carnero G&P, LLC's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material* filed by Plaintiff Carnero G&P, LLC. (Entered: 09/12/2022) |
| 09/12/2022 | 72 (18 pgs) | Objection *to Carnero G&P's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material* (related document(s):63 Generic Motion). Filed by Springfield Pipeline LLC, WGR Operating, LP, Western Midstream Partners, LP (Webb, Lydia) (Entered: 09/12/2022) |
| 09/12/2022 | 73 (8 pgs) | Declaration re: *Declaration of Craig W. Collins in Support of the WES Parties' Objection to Carnero G&P's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material* (Filed By Springfield Pipeline LLC, WGR Operating, LP, Western Midstream Partners, LP ). (Related document(s):72 Objection) (Webb, Lydia) (Entered: 09/12/2022) |
| 09/12/2022 | 74 (12 pgs; 2 docs) | Motion to Intervene. Objections/Request for Hearing Due in 21 days. Filed by ETC Texas Pipeline Ltd. (Attachments: # 1 Proposed Order) (Archiyan, Yelena) (Entered: 09/12/2022) |
| 09/12/2022 | 75 (13 pgs) | Objection *Non-Party ETC Texas Pipeline Ltd.'s Objection to Carnero G&P, LLC's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material and Motion for Protective Order* (related document(s):63 Generic Motion). Filed by ETC Texas Pipeline Ltd. (Mitchell, John) (Entered: 09/12/2022) |
| 09/13/2022 | 76 (3 pgs) | Certificate *Supplemental Certificate of Conference Regarding the WES Parties' Motion for Leave to Intervene for Limited Purpose of Objecting to Carnero G&P, LLC's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material* (Filed By Springfield Pipeline |

| | | |
|---|---|---|
| | | LLC, WGR Operating, LP, Western Midstream Partners, LP ). (Related document(s):71 Motion to Intervene) (Webb, Lydia) (Entered: 09/13/2022) |
| 09/13/2022 | 77 (8 pgs; 2 docs) | Motion to Intervene. Objections/Request for Hearing Due in 21 days. Filed by Enterprise Products Operating, LLC (Attachments: # 1 Proposed Order) (Mitchell, Paul) (Entered: 09/13/2022) |
| 09/14/2022 | 78 (136 pgs; 3 docs) | Sealed Document - *Carnero G&P LLC's Objection to Defendants' Motion for Judgment on the Pleadings* (Filed By Carnero G&P, LLC ). (Attachments: # 1 Exhibit 1 # 2 Proposed Order) (Wolfshohl, Joshua) (Entered: 09/14/2022) |
| 09/14/2022 | 79 (9 pgs; 2 docs) | Motion to Seal - *Carnero G&P, LLC's Emergency Motion for Entry of an Order (I) Authorizing the Filing of its Objection to Defendants' Motion for Judgment on the Pleadings Under Seal and (II) Granting Related Relief* Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 09/14/2022) |
| 09/14/2022 | | Hearing Set On (Related document(s):63 Carnero G&P, LLC's Motion to Authorize Carnero Business Representatives to Review Highly Confidential Material) Movant to notice all interested parties and file a certificate of service with the court. **Hearing scheduled for 9/19/2022 at 10:00 AM at Houston, Courtroom 404 (MI).** (LinhthuDo) (Entered: 09/14/2022) |
| 09/15/2022 | | Hearing Set On (Related document(s):71 Motion to Intervene, 74 Motion to Intervene, 77 Motion to Intervene) Movant(s) to notice all interested parties and file a certificate of service with the court. **Hearing scheduled for 9/19/2022 at 10:00 AM at Houston, Courtroom 404 (MI).** (LinhthuDo) (Entered: 09/15/2022) |
| 09/15/2022 | 80 (19 pgs; 4 docs) | Sealed Document - *Carnero's Witness and Exhibit List for the Haring on September 19, 2022* (Filed By Carnero G&P, LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Wolfshohl, Joshua) (Entered: 09/15/2022) |
| 09/15/2022 | 81 (11 pgs; 2 docs) | Witness List, Exhibit List (Filed By Springfield Pipeline LLC, WGR Operating, LP, Western Midstream Partners, LP ). (Related document(s):63 Generic Motion, 72 Objection) (Attachments: # 1 Exhibit 1) (Webb, Lydia) (Entered: 09/15/2022) |
| 09/15/2022 | 82 (2 pgs) | Notice *of Hearing*. (Related document(s):71 Motion to Intervene) Filed by Springfield Pipeline LLC, WGR Operating, LP, Western Midstream Partners, LP (Webb, Lydia) (Entered: 09/15/2022) |

| | | |
|---|---|---|
| 09/15/2022 | 83<br>(3 pgs) | Witness List (Filed By ETC Texas Pipeline Ltd. ).(Related document(s):63 Generic Motion, 75 Objection) (Archiyan, Yelena) (Entered: 09/15/2022) |
| 09/15/2022 | 84<br>(2 pgs) | Notice *Notice of Hearing*. (Related document(s):74 Motion to Intervene) Filed by ETC Texas Pipeline Ltd. (Archiyan, Yelena) (Entered: 09/15/2022) |
| 09/15/2022 | 85<br>(6 pgs; 3 docs) | Exhibit List, Witness List (Filed By Enterprise Products Operating, LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2) (Mitchell, Paul) (Entered: 09/15/2022) |
| 09/15/2022 | 86<br>(3 pgs) | Notice *of Hybrid Hearing Scheduled for Monday, September 19, 2022*. (Related document(s):63 Generic Motion) Filed by Carnero G&P, LLC (Wolfshohl, Joshua) (Entered: 09/15/2022) |
| 09/16/2022 | 87<br>(3 pgs) | Notice *of Hearing*. (Related document(s):77 Motion to Intervene) Filed by Enterprise Products Operating, LLC (Mitchell, Paul) (Entered: 09/16/2022) |
| 09/16/2022 | 88<br>(11 pgs; 4 docs) | Exhibit List, Witness List (Filed By Enterprise Products Operating, LLC ).(Related document(s):85 Exhibit List, Witness List) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Mitchell, Paul) (Entered: 09/16/2022) |
| 09/17/2022 | 89<br>(5 pgs) | Declaration re: *Declaration of Todd McEuen* (Filed By ETC Texas Pipeline Ltd. ).(Related document(s):75 Objection) (Archiyan, Yelena) (Entered: 09/17/2022) |
| 09/19/2022 | 90 | Courtroom Minutes. Time Hearing Held: 10:00 am - 10:40 am. Appearances: Joshua Wolfshohl and Amy Falcon for the Plaintiff. Conor McNamara for Javelin EF L.P. Jason Brookner and Lydia Webb for Western Midstream Partners, LP. Paul Mitchell and Justin Braga for Enterprise Products Operating, LLC. John Mitchell for ETC Texas Pipeline, Ltd. Mark Stancil for Mesquite Energy, Inc. Duston McFaul and Megan Quejada for Defendant Mitsui E&P Texas LP. Sean Mitchell for SN EF UnSub, LP. David Whittlesey for Eagle Ford Midstream. The Court orders that the hearing on 51 will not include any matter on damages. The Court will presume for the purposes of that hearing that changes that invade Carnero's rights could produce damages. If there are changes that invade Carnero's rights that could produce damages, the Court will revisit at that time whether, how, and who would receive that information on the business side of Carnero and work on providing adequate protection from the entities whose business information is potentially subject to compromise. (Related document(s):63 Generic Motion, 71 Motion to Intervene, 74 Motion to Intervene, 77 Motion to Intervene) (TylerLaws) (Entered: 09/19/2022) |

| | | |
|---|---|---|
| 09/19/2022 | 91<br>(1 pg) | PDF with attached Audio File. Court Date & Time [ 9/19/2022 9:57:34 AM ]. File Size [ 20655 KB ]. Run Time [ 00:43:02 ]. (admin). (Entered: 09/19/2022) |
| 09/20/2022 | 92<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Joshua W. Wolfshohl. This is to order a transcript of Hearing held on Sept. 19, 2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Carnero G&P, LLC ). (Wolfshohl, Joshua) Electronic Transcript Request Received and Forwarded to Judicial Transcribers of Texas on 09/20/2022. Estimated Date of Completion: 09/21/2022. Modified on 9/20/2022 (AntonioBanda). (Entered: 09/20/2022) |
| 09/21/2022 | 93<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (3-Day) by Defendants. This is to order a transcript of Hearing held on September 19, 2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation ). (Brown, Sara) Copy request electronically forwarded to Judicial Transcribers of Texas on 9/21/22. Estimated completion date: 9/24/22. Modified on 9/21/2022 (RachelWillborg). (Entered: 09/21/2022) |
| 09/21/2022 | 94<br>(34 pgs) | Transcript RE: Motion Hearing held on September 19, 2022 before Judge Marvin Isgur. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 12/20/2022. (mhen) (Entered: 09/21/2022) |
| 09/22/2022 | 95<br>(1 pg) | Notice of Filing of Official Transcript as to 94 Transcript. Parties notified (Related document(s):94 Transcript) (ShannonHolden) (Entered: 09/22/2022) |
| 09/22/2022 | 96<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (3-Day) by Paul Mitchell. This is to order a transcript of 09/19/2002 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Enterprise Products Operating, LLC ). (Mitchell, Paul) Copy request electronically forwarded to original transcription company Judicial Transcribers of Texas on 9/23/22. Estimated completion date: 9/26/22. Modified on 9/23/2022 (RachelWillborg). (Entered: 09/22/2022) |
| 09/22/2022 | 97<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Lydia R. Webb. This is to order a transcript of the Hearing held on September 19, 2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Springfield Pipeline LLC, WGR Operating, LP, Western Midstream Partners, LP ). (Webb, Lydia) Copy request electronically forwarded to Judicial Transcribers of Texas on 9/23/22. Estimated completion date: 9/24/22. |

| | | |
|---|---|---|
| | | Modified on 9/23/2022 (RachelWillborg). (Entered: 09/22/2022) |
| 09/24/2022 | 98 (4 pgs) | BNC Certificate of Mailing. (Related document(s):95 Notice of Filing of Official Transcript (Form)) No. of Notices: 17. Notice Date 09/24/2022. (Admin.) (Entered: 09/24/2022) |
| 09/28/2022 | 99 | Brief, Sealed Document */Defendants' Reply in Support of Their Motion for Judgment on the Pleadings* (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, Venado EF L.P. ).(Related document(s):67 Sealed Document, 78 Sealed Document) (Munisteri, James) (Entered: 09/28/2022) |
| 09/28/2022 | 100 (40 pgs; 3 docs) | Additional Attachments Re: *Exhibit Nos. 36-37 to Defendants' Reply in Support of Their Motion for Judgment on the Pleadings* (related document(s):99 Brief, Sealed Document) (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Related document(s):99 Brief, Sealed Document) (Attachments: # 1 Exhibit 36 # 2 Exhibit 37) (Munisteri, James) (Entered: 09/28/2022) |
| 09/30/2022 | 101 (3 pgs) | Notice *of Withdrawal as Counsel of Sara Ann Brown*. Filed by Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation (Brown, Sara) (Entered: 09/30/2022) |
| 10/03/2022 | 102 (3 pgs) | Exhibit List (Filed By Carnero G&P, LLC ).(Related document(s):67 Sealed Document, 78 Sealed Document) (Wolfshohl, Joshua) (Entered: 10/03/2022) |
| 10/03/2022 | 103 (3702 pgs; 40 docs) | Exhibit List, Witness List (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Related document(s):67 Sealed Document, 78 Sealed Document, 99 Brief, Sealed Document) (Attachments: # 1 Ex. 1 # 2 Ex. 2 # 3 Ex. 3 # 4 Ex. 4 # 5 Ex. 5 # 6 Ex. 6 - Filed Under Seal # 7 Ex. 7 - Filed Under Seal # 8 Ex. 8 - Filed Under Seal # 9 Ex. 9 - Filed Under Seal # 10 Ex. 10 - Filed Under Seal # 11 Ex. 11 - Filed Under Seal # 12 Ex. 12 - Filed Under Seal # 13 Ex. 13 # 14 Ex. 14 # 15 Ex. 15 # 16 Ex. 16 # 17 Ex. 17 # 18 Ex. 18 # 19 Ex. 19 # 20 Ex. 20 - Filed Under Seal # 21 Ex. 21 # 22 Ex. 22 # 23 Ex. 23 # 24 Ex. 24 # 25 Ex. 25 # 26 Ex. 26 - Filed Under Seal # 27 Ex. 27 # 28 Ex. 28 # 29 Ex. 29 # 30 Ex. 30 # 31 Ex. 31 # 32 Ex. 32 # 33 Ex. 33 # 34 Ex. 34 # 35 Ex. 35 # 36 Ex. 36 # 37 Ex. 37 # 38 Ex. 38 # 39 Ex. 39) (Munisteri, James) (Entered: 10/03/2022) |

| | | |
|---|---|---|
| 10/05/2022 | 104 | Courtroom Minutes. Time Hearing Held: 1:30 pm - 3:46 pm, 4:00 pm - 7:25 pm. Cases 21-04419, 22-03035 heard concurrently. Appearances: Joshua Wolfshohl and Amy Falcon for Carnero G&P, LLC. Duston McFaul and Megan Quejada for Mitsui E&P Texas LP. Andrew Ehrlich, Rusty Woolley and Sean Mitchell for SN EF UnSub, LP. Mark Stancil and Dennis Jenkins for SN EF Maverick, LLC/Mesquite Entities. Julia Frost-Davies for Eagle Ford TX, LP. Conor McNamara for Venado EF L.P. aka Javelin EF L.P. Jason Brookner and Lydia Webb for Western Midstream Partners, LP. Paul Mitchell for Enterprise Products Operating, LLC. Additional appearances: Harry Quarls, Cameron George and Greg Kopel with Mesquite Energy. Jerry Schroeder, Dustin Perry, Matt Hawthorn and Kaylan Dunn with Carnero. Brett Miller present. Exhibits admitted: ECF No. 103 1-39. Additional simultaneous briefing limited to 10 pgs. per topic to be filed not later than 10/26/22. The Court will take the matters under advisement on 10/27/22. (Related document(s):51 Generic Motion) (TylerLaws) Modified on 10/5/2022 (TylerLaws). (Entered: 10/05/2022) |
| 10/05/2022 | 105<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Joshua Wolfshohl. This is to order a transcript of Hearing held on 10/05/22 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Carnero G&P, LLC ). (Wolfshohl, Joshua) Hearing is sealed. Per case manager attorneys need to file a motion and proposed order to have transcribed. Modified on 10/11/2022 (ShannonHolden). (Entered: 10/05/2022) |
| 10/06/2022 | 106<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Defendants/Sharon Beausoleil. This is to order a transcript of Hearing on October 5, 2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Judicial Transcribers of Texas (Filed By Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation ). (Beausoleil, Sharon) Hearing is sealed. Per the case manager a motion and proposed order must be filed. Modified on 10/11/2022 (ShannonHolden). Per Docket number 110. Electroncially forward to Judicial Transcribers of Texas on 10/17/2022. Expedited. Modified on 10/17/2022 (ShannonHolden). (Entered: 10/06/2022) |
| 10/06/2022 | 107<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Daily (24 hours)) by Paul Mitchell. This is to order a transcript of 10/05/2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By Enterprise Products Operating, LLC ). (Mitchell, Paul) Hearing is sealed. Per case manager a motion and proposed order must be filed to process transcripts. Modified on 10/11/2022 (ShannonHolden). (Entered: 10/06/2022) |
| 10/06/2022 | 108<br>(3 pgs) | Order Authorizing the Filing of Carnero G&P, LLC's Emergency Motion for Entry of an Order (I) Authorizing the Filing of its Objection to Defendants' Motion for Judgment |

| | | |
|---|---|---|
| | | on the Pleadings Under Seal and (II) Granting Related Relief (Related Doc # 79) Signed on 10/6/2022. (TylerLaws) (Entered: 10/06/2022) |
| 10/11/2022 | 109 (7 pgs; 2 docs) | Emergency Motion *to Transcribe October 5, 2022 Hearing and File Transcript Under Seal* Filed by Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation (Attachments: # 1 Proposed Order) (Beausoleil, Sharon) (Entered: 10/11/2022) |
| 10/11/2022 | 110 (2 pgs) | Order Granting Emergency Motion to Transcribe October 5, 2022 Hearing and File Transcript Under Seal (Related Doc # 109) Signed on 10/11/2022. (LinhthuDo) (Entered: 10/12/2022) |
| 10/14/2022 | 111 (5 pgs) | BNC Certificate of Mailing. (Related document(s):110 Order on Emergency Motion (Adversary)) No. of Notices: 17. Notice Date 10/14/2022. (Admin.) (Entered: 10/14/2022) |
| 10/18/2022 | 112 | Sealed Transcript RE: Sealed Motion Hearing held on October 5, 2022 before Judge Marvin Isgur. Filed by (mhen) (Entered: 10/18/2022) |
| 10/25/2022 | 113 (5 pgs) | Stipulation By Carnero G&P, LLC and. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By Carnero G&P, LLC ). (Related document(s): 104 Courtroom Minutes) (Wolfshohl, Joshua) (Entered: 10/25/2022) |
| 10/25/2022 | 114 (4 pgs) | Agreed Stipulation nd Order Regarding Additional Briefing Requested by the Court at the October 5, 2022 Hearing, Signed on 10/25/2022 (Related document(s):53 Sealed Motion, 67 Sealed Document, 104 Courtroom Minutes) (TylerLaws) (Entered: 10/25/2022) |
| 10/27/2022 | 115 (7 pgs) | BNC Certificate of Mailing. (Related document(s):114 Generic Order) No. of Notices: 17. Notice Date 10/27/2022. (Admin.) (Entered: 10/27/2022) |
| 11/04/2022 | 116 | Brief, Sealed Document */Defendants' Supplemental Briefing in Response to Issues Raised During the October 5 Hearin* (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ).(Related document(s):67 Sealed Document, 78 Sealed Document, 99 Brief, Sealed Document, 104 Courtroom Minutes) (Munisteri, James) (Entered: 11/04/2022) |
| 11/04/2022 | 117 (30 pgs) | Sealed Document *Carnero G&P LLC's Post-Hearing Brief* (Filed By Carnero G&P, LLC ). (Wolfshohl, Joshua) (Entered: 11/04/2022) |

| | | |
|---|---|---|
| 11/04/2022 | 118 (9 pgs; 2 docs) | Motion to Seal - *Carnero G&P, LLC's Emergency Motion for Entry of an Order (I) Authorizing the Filing of its Post-Hearing Brief Under Seal and (II) Granting Related Relief* Filed by Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 11/04/2022) |
| 11/18/2022 | 119 (9 pgs; 2 docs) | Emergency Motion *for Leave to File Responses to Supplemental Briefs* Filed by Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Attachments: # 1 Proposed Order) (Beausoleil, Sharon) (Entered: 11/18/2022) |
| 11/21/2022 | 120 (2 pgs) | Order Granting Defendant's Emergency Motion for Leave to File Responses to Supplemental Briefs (Related Doc # 119) Signed on 11/21/2022. (TylerLaws) (Entered: 11/21/2022) |
| 11/23/2022 | 121 (5 pgs) | BNC Certificate of Mailing. (Related document(s):120 Order on Emergency Motion (Adversary)) No. of Notices: 17. Notice Date 11/23/2022. (Admin.) (Entered: 11/23/2022) |
| 11/28/2022 | 122 (3 pgs) | Order Authorizing the Filing of Carnero G&P, LLC's Emergency Motion for Entry of an Order (I) Authorizing the Filing of its Post-Hearing Brief Under Seal and (II) Granting Related Relief (Related Doc # 118) Signed on 11/28/2022. (TylerLaws) (Entered: 11/28/2022) |
| 11/30/2022 | 123 (10 pgs) | Sealed Document - *Carnero G&P LLC's Response to Defendants' Supplemental Briefing in Response to Issues Raised during the October 5 Hearing* (Filed By Carnero G&P, LLC ). (Wolfshohl, Joshua) (Entered: 11/30/2022) |
| 11/30/2022 | 124 (9 pgs; 2 docs) | Motion to Seal - *Carnero G&P, LLC's Emergency Motion for Entry of an Order (I) Authorizing the Filing of its - Carnero G&P LLC's Response to Defendants' Supplemental Briefing in Response to Issues Raised during the October 5 Hearing Under Seal and (II) Granting Related Relief* Filed by Plaintiff Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 11/30/2022) |
| 11/30/2022 | 125 | Supplemental Brief, Sealed Document */Defendants' Supplemental Reply Brief in Response to Issues Raised During the October 5 Hearing* (Filed By Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. ). (Related document(s):67 Sealed Document, 78 Sealed Document, 99 Brief, Sealed Document, 104 Courtroom Minutes, 116 Brief, Sealed Document, 117 Sealed Document, 120 Order on Emergency Motion (Adversary)) (Munisteri, James) (Entered: 11/30/2022) |

| | | |
|---|---|---|
| 12/22/2022 | 126<br>(3 pgs) | Order Authorizing the Filing of Carnero G&P, LLC's Response to Defendants' Supplemental Briefing in Response to Issues Raised During the October 5 Hearing Under Seal and (II) Granting Related Relief (Related Doc # 124) Signed on 12/22/2022. (TylerLaws) (Entered: 12/22/2022) |
| 01/12/2023 | 127 | Emergency Motion *for Status Conference*, Sealed Motion , Motion to Set Hearing. Filed by Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC (Attachments: # 1 Proposed Order) (Munisteri, James) (Entered: 01/12/2023) |
| 01/13/2023 | 128<br>(1 pg) | Case Management Order, Signed on 1/13/2023 (Related document(s):127 Emergency Motion (Adversary), Sealed Motion, Motion to Set Hearing) (TylerLaws) (Entered: 01/13/2023) |
| 01/15/2023 | 129<br>(4 pgs) | BNC Certificate of Mailing. (Related document(s):128 Generic Order) No. of Notices: 16. Notice Date 01/15/2023. (Admin.) (Entered: 01/15/2023) |
| 01/19/2023 | 130 | Amended Emergency Motion *for Status Conference*, Sealed Motion , Motion to Set Hearing. Filed by Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, SN EF Maverick, LLC Hearing scheduled for 1/26/2023 at 10:00 AM at Houston, Courtroom 404 (MI). (Attachments: # 1 Proposed Order) (Munisteri, James) (Entered: 01/19/2023) |
| 01/25/2023 | 131<br>(8 pgs; 2 docs) | Sealed Document - *Carnero's Response to the Emergency Motion of Mesquite Defendants for Status Conference* (Filed By Carnero G&P, LLC ). (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 01/25/2023) |
| 01/25/2023 | 132<br>(9 pgs; 2 docs) | Motion to Seal *Carnero G&P, LLCs Emergency Motion for Entry of an Order (I) Authorizing the Filing of its Objection to the Amended Emergency Motion of Mesquite Defendants for Status Conference Under Seal and (II) Granting Related Relief* Filed by Plaintiff Carnero G&P, LLC (Attachments: # 1 Proposed Order) (Wolfshohl, Joshua) (Entered: 01/25/2023) |
| 01/26/2023 | 133 | Courtroom Minutes. Time Hearing Held: 10:00 am - 10:06 am. Appearances: Mark Stancil for the Mesquite Defendants. Maegan Quejada for Mitsui E&P Texas LP. Joshua Wolfshohl and Amy Falcon for Carnero G&P, LLC. Andrew Ehrlich and Sean Mitchell for Crown Eagle Energy LP. Conor McNamara for Javelin EF L.P. Hearing continued to 2/17/23 at 10:30 am as a status/scheduling conference. (Related document(s):130 Emergency Motion (Adversary), Sealed Motion, Motion to Set Hearing) **Hearing scheduled for 2/17/2023 at 10:30 AM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 01/26/2023) |

| | | |
|---|---|---|
| 01/26/2023 | 134 (1 pg) | PDF with attached Audio File. Court Date & Time [ 1/26/2023 9:57:22 AM ]. File Size [ 4328 KB ]. Run Time [ 00:09:01 ]. (admin). (Entered: 01/26/2023) |
| 02/01/2023 | 135 (68 pgs) | Motion */[REDACTED] Defendants' Motion for Judgment on the Pleadings* Filed by Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Munisteri, James) (Entered: 02/01/2023) |
| 02/01/2023 | 136 (10 pgs; 2 docs) | Motion to Seal - *Defendants' Motion for Judgment on the Pleadings* Filed by Eagle Ford TX LP, Mesquite Comanche Holdings, LLC, Mesquite Energy, Inc. f/k/a Sanchez Energy Corporation, Mitsui E&P Texas LP, SN EF Maverick, LLC, SN EF UnSub, LP, Venado EF L.P. (Attachments: # 1 Proposed Order) (Munisteri, James) (Entered: 02/01/2023) |
| 02/02/2023 | 137 (33 pgs) | **Memorandum Opinion,** Signed on 2/2/2023 (Related document(s):51 Generic Motion, 53 Sealed Motion) (TylerLaws) (Entered: 02/02/2023) |
| 02/02/2023 | 138 (1 pg) | **Judgment** in 4:22-ap-3035, Signed on 2/2/2023 (TylerLaws) (Entered: 02/02/2023) |
| 02/04/2023 | 139 (36 pgs) | BNC Certificate of Mailing. (Related document(s):137 Opinion) No. of Notices: 16. Notice Date 02/04/2023. (Admin.) (Entered: 02/04/2023) |
| 02/04/2023 | 140 (4 pgs) | BNC Certificate of Mailing. (Related document(s):138 Judgment) No. of Notices: 16. Notice Date 02/04/2023. (Admin.) (Entered: 02/04/2023) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/15/2023 16:41:22 | | | |
| **PACER Login:** | jwwolfshohl | **Client Code:** | 000100/0202-egg |
| **Description:** | Docket Report | **Search Criteria:** | 22-03035 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 21 | **Cost:** | 2.10 |

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 02, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 19-34508** |
| **SANCHEZ ENERGY CORPORATION, *et al.*,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **CARNERO G&P, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 22-3035** |
| | § | |
| **SN EF UNSUB, LP, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

Carnero is a Counterparty to the Carnero Gas Gathering Processing and Purchasing Agreement with the defendants. The defendants are parties to both the Carnero Agreement and to other agreements which affect the timing and manner of Carnero's right to receive residue gas and natural gas liquids under the Carnero Agreement. Carnero alleges that the debtors assumed amended versions of agreements which effectively allow the defendants to breach their obligations under the Carnero Agreement. The defendants filed a Rule 12(c) motion for judgment on the pleadings. Judgment is granted for the defendants.

## BACKGROUND

This adversary proceeding involves a series of interlocking contractual agreements that affect rights in assets that the parties refer to as the Comanche Assets. The effect of amendments to certain of those agreements, the effect of sales of working interests in the Comanche Assets on Carnero's rights, and the effect of certain Plan provisions on Carnero's right to bring this suit are

the core issues underlying this dispute. All the parties involved in this proceeding operate in the area of the Comanche Assets and are subject to or have rights under the disputed agreements. (ECF No. 78 at 6). Carnero, the plaintiff, is a midstream provider. Maverick and Mesquite Energy, Inc. (formerly Sanchez Energy Corporation) are debtor-defendants in this proceeding. (ECF No. 78 at 6). Defendants Eagle Ford, Javelin (formerly Venado), and Mitsui are "Working Interest Parties. Defendant Mesquite Comanche Holdings, LLC (MCom) inherited its position from Gavilan, which was originally one of the parties operating in the area. (ECF No. 78 at 6). Defendant SN EF UnSub LP (UnSub) is affiliated with the debtors but was not itself a debtor in this chapter 11 reorganization. (ECF No. 78 at 6).

## I. The Anadarko Regime

Prior to the debtors' chapter 11 filing, gas from wellheads located in the area of the Comanche Assets would flow through gathering pipelines from the wellheads to a processing facility. (ECF No. 67 at 16). At the processing facility, the mixture would be processed into residue gas and natural gas liquids. (ECF No. 67 at 16). From the processing facility, the residue gas and natural gas liquids would again be transported via pipeline to market. (ECF No. 67 at 16). The agreements which form the background for this proceeding can be sorted into four categories: gathering, processing, transportation, and marketing agreements. Anadarko originally established and operated the working interests which produced substantially all hydrocarbons from the Comanche Assets. Maverick inherited the Anadarko regime.

Under the Anadarko regime, the Springfield Gathering Agreements committed most of the gas produced from the Comanche Assets to the gathering system owned and operated by Springfield Pipeline. (ECF No. 67 at 18). The Springfield Gathering Agreements set specific

delivery points for gas from the Comanche Assets at the Brasada processing plant. (ECF No. 67 at 19).

The gas from the Comanche Assets was subject to two processing agreements involving two separate processing plants once the gas had been gathered. (ECF No. 67 at 19). Under the Brasada Processing Agreement, Anadarko committed a specific volume of gas/day to be processed at the Brasada Plant. (ECF No. 67 at 19). Under the ETC Processing Agreement, Anadarko committed a specific volume of gas/day to be processed at the ETC plant. (ECF No. 67 at 19).

Once the gas had been processed into residue gas and natural gas liquids, it became subject to transportation agreements, under which the processed products would be transported to market. (ECF No. 67 at 19). Residue gas was transported from the Brasada Plant under the Eagle Ford Transportation agreement. (ECF No. 67 at 19). Natural gas liquids were transported from the Brasada Plant under the Enterprise Transportation Agreement. (ECF No. 67 at 20).

Once the residue gas and natural gas liquids were transported, they became subject to marketing agreements between Anadarko and its counterparties. (ECF No. 67 at 20). Enterprise had the right to purchase natural gas liquids processed at the Brasada Plant under the Anadarko/Enterprise Purchase Agreement. (ECF No. 67 at 20). The residue gas processed at the Brasada Plant and transported by Eagle Ford would be sold further downstream. (ECF No. 67 at 20).

The Working Interest Parties were parties to certain Purchase and Marketing Agreements (the WIP Agreements) with Anadarko, subjecting them to the Anadarko regime laid out above. (ECF No. 67 at 20-21). Through the WIP Agreements, Anadarko became the owner of all the hydrocarbons in the Comanche assets once they had been gathered. (ECF No. 67 at 21).

Hydrocarbons pulled from wellheads operated by the Working Interest Parties were gathered, processed, transported, and marketed under the same agreements as Anadarko.

## II. MAVERICK TAKES CONTROL AND CARNERO STEPS IN AS BACK-UP PROVIDER

Under the Comanche Purchase Agreement, Maverick, Gavilan, and UnSub stepped into Anadarko's role as operator of the Comanche Assets, effective January 2017. (ECF No. 78 at 9). As part of this transaction, Maverick assumed the WIP Agreements and entered into additional marketing agreements with UnSub and Gavilan. (ECF No. 67 at 23).

Some counterparties to gathering and processing agreements under the Anadarko regime did not consent to the assignment of those contracts to Maverick, Gavilan, and UnSub (these are referred to as the "Retained Agreements" under the Comanche Purchase Agreement and throughout). (ECF No. 78 at. 10). As a result, through Agency Agreements, Maverick agreed to act as Anadarko's agent in fulfilling Anadarko's obligations under the Retained Agreements, effectively keeping in place the Anadarko regime with Maverick simply stepping in as operator. (ECF No. 78 at 10). The Comanche Purchase Agreement and Agency Agreements contain language providing that the defendants will "take all actions necessary to ensure that all co-working interest owner production is transported and/or sold pursuant to the" Retained Agreements. (ECF No. 68-13 at 7, ECF No. 68-14 at 7, ECF No. 67-11 at 369).

Carnero and the defendants, through various agreements laid out below, are parties to the Carnero Agreement, effective April 1, 2018. (ECF No. 78 at 11). The Carnero Agreement dedicates gas from the Comanche Assets to Carnero, but only as a back-up provider of gathering and processing services. (ECF No. 51-16 at 2). The agreements which formed the Anadarko regime and survived the switch from Anadarko to Maverick as operator are referred to in the

Case 4:22-cv-00587 Document 137 Filed on 02/07/23 Page 5 of 33

Carnero Agreement as "Existing Commitments."[1] (ECF No. 78 at 12). Under the Carnero Agreement, hydrocarbons are dedicated to Carnero, but the dedication is subject to the Existing Commitments. Carnero cannot receive any hydrocarbons already accounted for by the Anadarko regime until the expiration or termination of those agreements. (ECF No. 78 at 12). Critical to resolution of the present dispute is the fact that substantially all the hydrocarbons produced from the Comanche Assets are accounted for by Existing Commitments. The Existing Commitments include the Retained Agreements (e.g., the Anadarko/Enterprise Purchase Agreement as well as the Brasada and ETC Agreements). (ECF No. 78 at 14-16).

Effective as of the same date as the Carnero Agreement (April 1, 2018), Maverick, Gavilan (and later MCom), UnSub, Eagle Ford, and Javelin agreed to be bound by the terms of the Carnero Agreement. (ECF No. 78 at 11). Through a Letter Agreement, Mitsui did not ratify the Carnero Agreement but rather agreed to authorize Mitsui's gas from the Comanche Assets under the Carnero Agreement "as if" Mitsui had ratified the Carnero Agreement. (ECF No. 78 at 12).

Section 2.1 of the Carnero Agreement provides that "[Maverick] will have sole discretion as to the location of each Additional CGP or additional well." (ECF No. 51-16 at 11). A CGP is a central gathering point. (ECF No. 51-16 at 4).

Section 3.1 of the Carnero Agreement governs the delivery obligations of Carnero's counterparties (and de facto counterparties) to the Carnero Agreement. (ECF No. 51-16 at 13). Section 3.1(b), reads

> "Notwithstanding Section 3.1(a, *to the extent any Gas* that would otherwise be Dedicated Gas or any natural gas liquids attributable to such Gas that would be Plant Products if such Gas had been processed by Carnero (i *is subject to binding contractual commitments set forth on Exhibit F* that exist as of the Effective Date and prevent the delivery of such Gas

[1] The Existing Commitments reference those agreements specifically listed in an exhibit to the Carnero Agreement (the agreements at issue in this case) and any agreements already committing gas from assets that Maverick and the defendants might acquire and to which Maverick would be bound. (ECF No. 51-16 at 13, 58-59).

hereunder or the sale of such natural gas liquids to Carnero, or (ii with respect to which Producer or any of its Affiliates hereafter acquires the right to control, market or deliver, and is subject to binding contractual commitments preventing the delivery of such Gas or sale of such natural gas liquids to Carnero hereunder that were established prior to (and not in anticipation of Producer's acquisition (*collectively, the "Existing Commitments", such Gas and/or natural gas liquids shall be excluded from the dedication hereunder until the earlier of (A the end of the then-current term of such Existing Commitment* (excluding any subsequent "evergreen" or "renewal" terms, it being understood that Producer shall give timely notice to terminate any such Existing Commitment prior to commencement of any "evergreen" or "renewal" term) *and (B) the earliest time at which any right or option to terminate such Existing Commitment, exercisable by Producer, without out-of-pocket cost* (other than any such cost to deliver Producer's Gas to the Gathering System (including the costs for construction if any Additional CGP) or such costs for which Carnero agrees to reimburse Producer*), it being understood that Producer shall exercise any such option or right at the earliest possible time, at which time Producer's Gas and/or natural gas liquids previously subject to such Existing Commitments shall be dedicated pursuant to this Section 3.1* (and with respect to any natural gas liquids that become dedicated pursuant to this Section 3.1 without dedication of the underlying Gas (the "Additional Plant Products"), *Carnero will have the option*, exercisable by written notice to Producer within 30 days of the expiration of the applicable Existing Commitment, *to purchase those Additional Plant Products at the points at which they were being sold under the Existing Commitment* (the "Additional Plant Product Receipt Points"), with any costs associated with purchasing such Additional Plant Products or connecting to the Additional Plant Product Receipt Points borne by Carnero)."

(ECF No. 51-16 at 13, 14) (emphasis added).

## III. THE PLAN OF REORGANIZATION

The Plan of Reorganization contained a unique provision which allowed the debtors to assume and amend executory contracts *after* confirmation, but subject to objections and Court approval. (Case No. 19-34508, ECF No. 1212). Though the decision would be made post-confirmation, any amendments and assumptions would be effective as of the Effective Date of the Plan. (Case No. 19-34508, ECF No. 1212 at 12). The Confirmation Order provided that

"assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date, notwithstanding the fact that the deadline to object to assumption or rejection of an Executory Contract or Unexpired Lease is May 20, 2020 . . . Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim by the Contract Objection Deadline shall be deemed to have assented to such assumption or Cure Claim."

(Case No. 19-34508, ECF No. 1212 at 11). The Contract Objection Deadline was later extended out to June 22, 2020. (ECF No. 51-5 at 2). Further,

> "Assumption (or assumption and assignment) of any Executory Contract . . . shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment."

(Case No. 19-34508, ECF No. 1212 at 12).

With respect to raising objections and arguments regarding the assumption of executory contracts, the Confirmation order mandated that

> "nothing in this Confirmation Order or the Plan (and neither the confirmation nor consummation of the Plan) shall eliminate, alter or impair (or otherwise prevent any Counterparty (as defined below) from asserting), any or all of the Counterparties' respective defenses, arguments or appellate rights to the extent relating to (a) any proposed assumption or rejection of any Executory Contract or Unexpired Lease with such Counterparty or real property interests of such Counterparty . . . *provided* that each Counterparty shall be required to assert such rights, defenses, or arguments in a written objection filed with this Court on or prior to the Contract Objection Deadline."

(Case No. 19-34508, ECF No. 1212 at 14). The Confirmation Order and Plan define Carnero as a "Counterparty." (Case No. 19-34508, ECF No. 1212 at 14).

The Confirmation Order and Plan provided that all property of the estate (including the contracts at issue here) would vest in the reorganized debtors "free and clear of all Liens, Claims, charges, or other encumbrances" on the Effective Date. (Case No. 19-34508, ECF No. 1212 at 51).

Finally, the Plan stated that

> "Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract . . .Modifications, amendments, supplements, and restatements to prepetition Executory Contracts . . . shall not be deemed to alter the prepetition nature of the Executory Contract."

(Case No. 19-34508, ECF No. 1212 at 57).

## IV. The Midstream Restructuring

Post-Confirmation, various settlements and associated amendments affected the structure of the above series of agreements.

The defendants entered into the Midstream Settlement with Carnero's support on June 6, 2020, but it ultimately fell apart and terminated in June 2021. (ECF No. 67 at 30). Through the Midstream Settlement, Carnero would have been promoted from its back-up position and become first in line. (ECF No. 78 at 17). It failed after the debtors' unsuccessful attempt to reject the agreements now at the center of this dispute. (ECF No. 78 at 17).

In October of 2020, Gavilan sold its interest in the Comanche Assets to MCom but did not assign the Comanche Purchase Agreement to MCom. (ECF No. 67 at 29).

By an order of this Court, Maverick assumed the WIP Agreements as an essential component of the reorganized debtors' decision to assume the Existing Commitments on December 6, 2021. (Case No. 19-34508, ECF No. 2201 at 3).

On December 21, 2021, the defendants effectuated the Midstream Restructuring,[2] commemorated by a Master Settlement Agreement. (ECF No. 67 at 9). Through the Midstream Restructuring, the debtors assumed the Existing Commitments with clarifying amendments designed to ensure the stability of the reorganized debtors. (Case No. 19-34508, ECF No. 2253 at 10). For example, the Master Settlement Agreement includes provisions requiring a Comanche Asset purchaser to assume the MCom and Maverick obligations under the Agency Agreements.

The Maverick/Enterprise Purchase Agreement is a purchase and sales agreement between Maverick and Enterprise set to commence in April of 2023, immediately after the primary term of

---

[2] For the sake of clarity, the Midstream Restructuring is an agreement separate and apart from the Midstream Settlement. The Midstream Restructuring was designed after the failure of the Midstream Settlement. Although Carnero was involved in the Midstream Settlement, it was not involved in the Midstream Restructuring.

the Anadarko/Enterprise Purchase Agreement ends. (ECF No. 67-2). The Maverick/Enterprise Purchase Agreement provides that "Subject to . . . Seller's obligations under the Carnero Purchase Agreement . . . Seller . . . dedicates and commits to sell" the product that had originally been subject to the Anadarko/Enterprise Purchase Agreement. (ECF No. 67-2 at 41). It further clarifies that "other than with respect to Seller's obligations pursuant to the Carnero Purchase Agreement, any agreements now or hereinafter entered into . . . do not and will not conflict with or infringe upon the dedication under this agreement." (ECF No. 67-2 at 43). The Maverick/Enterprise Purchase Agreement states that Maverick will not take any action to alter delivery points that would modify Carnero's rights under the Carnero Agreement. (ECF No. 67-2 at 42).

Amendments to the Springfield Gathering Agreement set up two "interruptible connection points" which were intended to allow excess residue gas and natural gas liquids to flow to Carnero under the Carnero Agreement. (ECF No. 67 at 41-42). Specifically, the Springfield Amendments added language to the Springfield Gathering Agreements clarifying how and when anything could be delivered to an interruptible connection point (i.e., Carnero):

> "Gatherer shall have no obligation to deliver Gas to Shipper's Transporter(s) at a location other than the Delivery Points and subject to the following, the Interruptible Connection Point(s); provided, however, if the Brasada Processing Plant and, until July 1, 2023, the ETC Processing Plant, are unable to process any portion or portions of Shipper's entire Delivery Nomination, at any time, then Shipper may submit nominations to Gatherer indicating the quantity of Gas to be delivered to Shipper's Transporter or downstream customer at an Interruptible Connection Point(s) in MMBtu per Day; provided, further, that the volume of Gas nominated to an Interruptible Connection Point(s) shall not exceed the volume of Gas in MMBtu per Day that the Brasada Processing Plant and, until July 1, 2023, the ETC Processing Plant are unable in the aggregate to process; and provided, further, Shipper's right to nominate Gas to an Interruptible Connection Point(s) shall be temporarily suspended at such time as the Brasada Processing Plant or, if applicable, the ETC Processing Plant, are physically capable in the aggregate of processing Shipper's entire Delivery Nomination. For the sake of clarity, Shipper may nominate Gas volumes in excess of Shipper's obligations in the Brasada Processing Agreement and the ETC Processing Agreement to an Interruptible Connection Point."

(ECF No. 67-2 at 422-423). "Delivery Nomination" means "the quantity of Gas to be delivered to Shipper's Transporter or downstream customer at each Delivery Point." (ECF No. 67-2 at 270).

Through the MCom Assumption Agreement (which was entered in connection with the Master Settlement Agreement) MCom committed its residue gas according to the Agency Agreements until those agreements terminated. (ECF No. 67-2 at 95). Through this agreement, MCom agreed to require any purchaser of the Comanche Assets to take assignment of the MCom Assumption Agreement. (ECF No. 67-2 at 96). The Springfield Amendments contain a provision clarifying that "for the avoidance of doubt," the sale to MCom was subject to the Gavilan Dedication and MCom and Mesquite were not released from that dedication on account of the sale. (ECF No. 67-2 at 422).

Finally, in conjunction with the Master Settlement Agreement, the Working Side Interest letter required the Working Interest Parties (and UnSub, as a party to the Master Settlement Agreement) to require a purchaser of their working interest in the Comanche Assets to take assignment of the relevant agreements to which they were party. (ECF No. 67-2 at 531).

## V. PROCEDURAL HISTORY

Carnero supported the Plan and did not object to its confirmation. At no time (until this proceeding) did Carnero raise an objection or attempt to preserve its right to object to the assumption of the Carnero Agreement or any other contract affecting its property rights.[3] The Effective Date of the Plan was June 30, 2020. (Case No. 19-34508, ECF No. 1417 at 1). Carnero attended the December 21, 2021 hearing at which the Court approved the Midstream Restructuring

[3] Carnero points out in its complaint that the Carnero Agreement's dedication created a property interest. (ECF No. 53-1 at 10). Therefore, under the terms of the Plan, Carnero would have had the right to object to the assumption of contracts affecting its property rights even if it was not a party to that particular contract. (Case No. 19-34508, ECF No. 1212 at 14). (preserving a Counterparty's rights "relating to (a) any proposed assumption or rejection of any Executory Contract or Unexpired Lease with such Counterparty *or real property interests of such Counterparty*") (emphasis added).

but, again, did not say anything. (Case No. 19-34508, ECF No. 2254). Carnero filed this claim in state court on January 21, 2022. (ECF No. 1 at 8). The defendants removed the action to this Court on February 28, 2022. (ECF No. 1). The defendants filed a motion for judgment on the pleadings. (ECF No. 67). The Court held a hearing on the defendants' motion on October 5, 2022 at 1:30 P.M. (ECF No. 112).

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. A proceeding is "related to" a case under title 11 if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). A bankruptcy court's "related to" jurisdiction narrows post-confirmation. *Natixis Funding Corp. v. GenOn Mid-Atl., L.L.C. (In re GenOn Mid-Atl. Dev., L.L.C.)*, 42 F.4th 523, 534 (5th Cir. 2022). The relevant question for "related to" jurisdiction post-confirmation is whether "the dispute 'pertain[s] to the implementation or execution' of the debtor's reorganization plan[.]" *Id*. (citing *U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002)).

In *GenOn*, the Fifth Circuit concluded that it is not enough that litigation may deplete estate resources to find that a matter is "related to" the execution of a plan of reorganization—such a rule would be far too broad and encompass too many claims. *Id*. at 538. However, the Fifth Circuit clarified that this does not mean a dispute must threaten to "torpedo" a reorganization to find that it relates to the bankruptcy. *Id*. at 537. Instead, the dispute merely "must implicate a specific plan's provision or the parties' bankruptcy-law rights or responsibilities." *Id*. at 538.

In *Craig's Stores*, the Fifth Circuit held that a state-law dispute fell outside the bankruptcy court's jurisdiction where the suit was brought more than a year after confirmation, well after the

Case 22-90035 Document 1371 Filed in TXSB on 08/16/23 Page 12 of 33

debtor had reorganized. *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 391 (5th Cir. 2001)). Here, while brought after confirmation, the dispute implicates a complicated and essential settlement among parties that was effectuated in accordance with Plan provisions under this Court's supervision. As in *GenOn*, the plaintiff's claims "threaten to destabilize the fragile consensus around a settlement crucial to the success of" the debtors' reorganization. *In re GenOn*, 42 F.4th at 536.

There are two primary issues in this adversary proceeding: (i) whether Carnero's claims are barred by the Plan and (ii) if not, whether defendants breached the Carnero Agreement by entering into the Midstream Restructuring. This Court clearly has jurisdiction to resolve the first issue. It is a core matter because it implicates the Plan and this Court's ability to enforce its own confirmation order. 28 U.S.C § 157(b)(2). The plan explicitly granted the debtors the authority to assume contracts post-confirmation and set deadlines for parties in interest, such as Carnero, to object to contract assumption. The Plan is premised upon the understanding that the debtors' ability to assume contracts post-confirmation would be essential to their ability to successfully reorganize. Adjudicating this dispute necessarily requires the interpretation and application of specific Plan provisions and orders from this Court issued in conjunction with the Midstream Restructuring which Carnero alleges violated its contractual rights under the Carnero Agreement.

This Court also has jurisdiction over the contract interpretation issue as a matter "related to" the bankruptcy proceeding, despite Carnero's assertion that all the facts giving rise to its claim occurred post-confirmation. The dispute involves contract claims that arose as a result of the debtors' attempts to assume and amend executory contracts under the terms of the Plan. This dispute essentially amounts to an argument over whether the debtors properly exercised their rights to assume amended executory contracts under § 365 of the Bankruptcy Code or whether that

exercise amounted to the debtors' violation of the contractual and due process rights of Carnero. By threatening to unravel a key component of the debtors' reorganization, the contract claims against the defendants implicate the feasibility of the Plan and the vitality of this Court's pre- and post-confirmation orders. The Court has "related to" jurisdiction.

**LEGAL STANDARD**

Before the Court is the defendants' Rule 12(c) motion for a judgment on the pleadings. Federal Rule of Bankruptcy Procedure 7012(b) applies Rule 12(c) to adversary proceedings. FED. R. BANKR. P. 7012(b). Federal Rule of Civil procedure 12(c) states that "a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

In the Fifth Circuit, "the standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To defeat a 12(b)(6) motion, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A complaint plausibly states a claim for relief when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Plausibility," at the Rule 12(b)(6) stage, does not mean "possibility." *Id*. at 679. A complaint that offers bare legal conclusions, unsupported by well-pleaded factual allegations tending to establish a plausible basis for relief, must be dismissed. *See id*. at 679–80 (citing *Twombly*, 550 U.S. at 551, 555, 565–67, 570) (explaining that legal conclusions cannot be taken as true without factual support). The Court reviews motions under Rule 12(b)(6) "accepting all

well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).

**DISCUSSION**

Carnero is barred from bringing this claim by the terms of the Plan. Even if Carnero's claims were not barred by the Plan, they fail as a matter of law. Carnero's complaint fails to allege sufficient, well-plead factual allegations that support its claim for relief.

## I. CARNERO'S CLAIMS ARE BARRED

Because Carnero failed to timely exercise its rights under the Plan and under the relevant Rules, its actions in this case are barred. Even accepting Carnero's contractual interpretation as true (which it is not), relief under Rule 60 is not appropriate where Carnero's own inaction stripped it of its rights under the Carnero Agreement.[4] The issue here centers around two decisions made by Carnero: (i) the failure to object to the assumption of the Carnero Agreement or otherwise preserve its right to object by the Contract Objection Deadline (knowing that there were still some contracts which had been neither assumed nor assigned and for which negotiations were ongoing); and (ii) the failure to raise an objection to or demand to see the terms of the Midstream Restructuring at the December 21 hearing.

### A. The Plan Bars Carnero's Action

This is not the first time the Court has had to consider the application of the provision of this Plan which allowed the debtors to assume and reject contracts after confirmation. In an earlier adversary proceeding, which forms part of the backdrop for the one at hand, this Court held that Occidental had "waived its argument that Mesquite cannot exercise its rejection rights under § 365

[4] As laid out in detail in the second section of the discussion, Carnero's interpretation of its rights under the Carnero Agreement conflict with its unambiguous terms.

after the effective Date of the Plan because Occidental expressly assented to the rejection procedure in this case." *In re Sanchez Energy Corp.*, 631 B.R. 847, 856 (Bankr. S.D. Tex. 2021).

This case presents a unique timing issue in light of the Plan's language: whether the Plan's language precludes a claim for breach of a contract that was assumed *simultaneously* with the amended agreements Carnero alleges form the basis of the breach (i.e., both were assumed as of the Effective Date, per the language of the Plan). Carnero argues that it would have to have a crystal ball to know that it should have objected to the assumption of the at-issue contracts by the Contract Objection Deadline since the Court did not approve the assumption of those contracts until December 2021. The defendants counter that Carnero was not required to predict the nature of the contracts and amendments, but rather failed to object and now brings this breach of contract claim in an attempt to circumvent the deadlines set by the Plan.[5]

Carnero, like every other party in interest in this bankruptcy, had the ability to object to Plan confirmation or otherwise seek to preserve its rights concerning the unique provision setting a deadline for contract objections but allowing post-confirmation assumptions and amendments to be effective as of the Effective Date. Carnero did nothing to preserve those rights.[6] Carnero's argument that the Plan somehow stripped Carnero of its rights falls flat. The Plan did not deprive Carnero of rights. The Plan and bankruptcy procedures gave Carnero avenues to exercise its rights in a manner that would not upend the debtors' reorganization efforts, and Carnero failed to avail itself of those avenues. If Carnero believed that those avenues were inadequate, it needed to timely

[5] The defendants do not allege that Carnero's claim for breach is a belated Cure Claim, so the Court's discussion is limited to its characterization as a deadline-barred objection to assumption.

[6] Other parties, for example, did file such reservations of rights specifically addressing the uncertainty regarding which Comanche-asset-related contracts the defendants would assume and reject. (Case No. 19-34508, ECF No. 1184).

voice that objection. It cannot remain silent, allow the Court to issue an order establishing the procedures, not follow the procedures, and then complain.

Carnero argues that these provisions of the Plan merely mean that Carnero would be deemed to have no objection to a post-confirmation assumption of a contract absent Carnero's assertion of an objection prior to the Contract Objection deadline. According to Carnero, that does not mean the Plan should be read as allowing the debtors to breach some contracts by assuming amended versions of others. But Carnero's interpretation of the circumstances here presume a timeline where the Carnero Agreement was effectively assumed *before* the Master Settlement Agreement and associated amendments. The Plan specifically provides that these assumptions were made *simultaneously* on the Effective Date.

In an earlier proceeding in this bankruptcy, this Court found that Occidental could not bring a belated rejection claim and collaterally attack the Plan's rejection procedure where it had consented to the rejection procedure laid out in the Plan. *In re Sanchez Energy Corp.*, 631 B.R. at 857. There, the Court noted that "even if the Court made a legal error, that error did not deprive Occidental of due process or exceed the Court's subject matter jurisdiction." *Id*. at 857 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (holding that a confirmed plan will not be overturned for legal error when a party has notice of the error and does not object or timely appeal)). The Court further held that

> "Res judicata bars Occidental from attacking the Plan's rejection procedure post-confirmation. The preservation provision of the Confirmation Order preserved Occidental's defenses to rejection of its contracts with Sanchez. The Plan and Confirmation Order established the rejection procedure. Occidental may challenge whether rejection of its contracts with Sanchez is appropriate, but it is estopped from attacking the rejection procedure."

*Id*. at 859.

Taking that logic a step further, Carnero had the opportunity to challenge the assumption of its own contract (just as Occidental had the right to challenge rejection). It did not do so. It had the right to object to the approval of the Midstream Restructuring. It did not do so. With respect to Carnero's contention that the timing in this case did not allow such intervention, Carnero could have objected to the relevant Plan procedures that lead to such timing. It did not do so. Because it did none of those things, Carnero is now barred from arguing that the debtors' Plan or exercise of its § 365 rights violated the Carnero Agreement.

The balance debtors strike in bankruptcy in exercising their business judgment to decide which contracts to reject and which to assume in order to effectively (and feasibly) reorganize are subject to court supervision. This ensures that all parties are treated fairly and that their rights will be protected, should they choose to timely exercise them. Carnero cannot sit on its bankruptcy rights then argue that they hold a run-of-the-mill state law breach of contract claim based purely on actions that occurred in conjunction with the debtors' reorganization process. Put another way, Carnero cannot strategically choose to not exercise its bankruptcy rights during the bankruptcy case and later reframe an objection to the assumption of a contract as a post-petition claim for breach. To allow them to do so would be to allow contract counterparties to escape the bankruptcy Court's oversight and jurisdiction and threaten the stability of the reorganization process by leaving the assumption of executory contracts—and, by extension, the feasibility of the Plan—open to later collateral attack.

**B. The Plan does not Violate Due Process Notice Requirements**

Carnero next argues that if its claim is barred, the Fourteenth Amendment's due process notice requirement demands relief under Rule 60. Federal Rule of Civil Procedure Rule 60(b)(4) grants a court leave to "relieve a party or its legal representative from a final judgment, order, or

Case 22-90035 Document 1371 Filed in TXSB on 12/16/22 Page 18 of 33

proceeding" if "the judgment is void." FED. R. CIV. P. 60(b)(4). A judgment is void, for example, where it violates a party's due process rights, but the Rule is not read to "provide a license for litigants to sleep on their rights." *Espinosa*, 559 U.S. at 275. "Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute." *Id*. Where a "party has been afforded a full and fair opportunity to litigate, the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief." *Id*.

The case at hand, involving a debtors' Plan of Reorganization, serves as a prime example of an instance where the "need for finality of judgments" is paramount. The terms of the Plan in this case did not strip Carnero of its rights to object or otherwise be heard on matters relating to its contractual and property rights. Instead, the Plan stated that whatever rights Carnero *did* have to object to the assumption of contracts would be waived if Carnero failed to exercise them by a certain date. Those clear terms of the Plan put Carnero on notice as to the need for Carnero to exercise its rights by the Contract Objection Deadline, even though the process of assumption and rejection was ongoing. The Plan did not need to give specific details as to which contracts would be assumed and with what amendments in order to satisfy the due process notice requirements. That Carnero either (a) chose not to exercise its rights or (b) mistakenly believed it did not have standing to do so does not amount to a deprivation of due process meriting relief under Rule 60.

A Supreme Court case cited by Carnero comments broadly, but informatively, on the due process notice requirement. *Mullane* dealt with whether constructive notice by publication of the settling of a trust satisfied due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). There, the court noted that "'[t]he fundamental requisite of due process of law is the opportunity to be heard.' This right to be heard has little reality or worth unless one is informed

that the matter is pending and can choose for himself whether to appear or default, acquiesce, or contest." *Id*. at 656. (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Due process requires an "opportunity for hearing appropriate to the nature of the case," meaning that there is no one-size-fits-all standard by which courts may glean whether parties have been properly noticed. *Id*.

Carnero's comparison of the issue here to that in *Mullane* falls short in a few ways. First, that case dealt with the tenuous nature of relying on constructive notice. *Id*. Here, Carnero had *actual* notice of the Plan provisions with which it did not comply and therefore waived its right to prosecute the issues it now brings. Moreover, *Mullane* holds that it is not appropriate to require "published notice insofar as they are urged on behalf of any beneficiaries whose interest or addresses are unknown." *Id*. at 318. In other words, notions of due process do not somehow impose a duty on a party to provide notice beyond the realm of what is known (or can reasonably become known) at the time. Carnero could not be noticed of facts that no one knew when Plan was confirmed. The Plan included the mechanism Carnero now takes issue with *precisely because* of those unknowns. As the court in *Mullane* noted, all that can be reasonably required of due process is "under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. at 314. (citing *Milliken v. Meyer*, 311 U.S. 457 (1940)). Carnero was apprised of its rights, apprised of the fact that there were ongoing processes and conversations as the debtors weighed which contracts should be assumed or rejected (even if there were hopes, predictions, and tentative plans at the time of confirmation),[7]

[7] Even though there were schedules in which the debtors indicated some contracts which they, at the time, intended to either assume or reject, the Plan gave the debtors the right to stray from that schedule. (ECF No. 1212 at 11). If there had been certainty as to assumption, amendment, and rejection at Confirmation, it would not have been necessary to allow the debtors to do so after Confirmation. Therefore, it was not reasonable for Carnero to rely on those schedules as they now claim they did in failing to raise any objections by the Objection Deadline.

and given an opportunity to present or preserve its objections which it chose not to take. That is not a denial of due process.

In December of 2021, Carnero knew that certain midstream agreements and amendments to those agreements would be assumed, pending this Court's approval, and had the right and opportunity to demand to see and object to the terms of the Midstream Restructuring as potentially in conflict with the Carnero Agreement.[8] Like in *Espinosa*, the debtors had the right to rely on the lack of objection to the terms of the Plan and the lack of objection to the Midstream Restructuring. *Espinosa*, 559 U.S. 260. It is for that reason—the defendants' and other parties' reliance on the finality of the Plan and this Court's judgments—that the Court declines to exercise its discretionary power to grant equitable relief from the terms of the Plan under Rule 60(d)(1). FED. R. CIV. P. 60(d)(1).

## II. THE MIDSTREAM RESTRUCTURING DID NOT BREACH THE CARNERO AGREEMENT

Carnero's breach of contract claims fail even if they are not barred by the Plan. The mechanics of the Plan and the Bankruptcy Code mandate that the Carnero Agreement was assumed without any default. In any case, basic principles of contract interpretation provide that the Midstream Restructuring did not breach the Carnero Agreement.

The Plan provisions and bankruptcy process lead the Court to conclude that the Midstream Restructuring did not breach the Carnero Agreement. The terms of the Carnero Agreement were unchanged by the Midstream Restructuring. Instead, the parties made amendments to the Existing Commitments which may or may not affect the timing of when or how gas will be delivered to

[8] 11 U.S.C. § 1109(b) provides that "a party in interest . . . may raise and my appear and be heard on *any issue* in a case under this chapter." (emphasis added). In a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure, the general discovery rules under Rule 7026 apply, which Carnero could have used to request to see the details of the Midstream Restructuring. Fed. R. Bankr. P. 7026, 9014(c).

Carnero. Carnero alleges that, in the various ways detailed below, those amendments either themselves amount to breach or will eventually require the defendants to breach the Carnero Agreement. This interpretation is unfounded—particularly where an interpretation that would read the various contracts in harmony with one another is not only available but is also supported by the plain, unambiguous language of the agreements.

**A. The Debtors Assumed a Default-Free Carnero Agreement**

Because of the Plan provision which states that assumed contracts, even if amended, retain their prepetition nature, Carnero's claim that amendments to the Existing Commitments breached the Carnero Agreement fail. (Case No. 19-34508, ECF No. 1212 at 57). The Carnero Agreement was always subject to the carve-out of the Existing Commitments. Even though the Existing Commitments were amended in the bankruptcy process, they retained their prepetition nature by the express terms of the Plan.[9] Therefore, Carnero's timeline where the Carnero Agreement exists and then the defendants breached the Carnero Agreement by entering into the Midstream Restructuring belies this Court's order confirming the Plan.[10]

Further, the Court may only approve the assumption of a contract if any default existing *"at the time of assumption"* is cured. 11 U.S.C. § 365(b)(1) (emphasis added). Court approval of assumption inherently includes a finding of no current default. Based on the timing mechanism laid out in the Plan, if there was a default of the Carnero Agreement, it occurred *at the time of assumption*—the Effective Date—because that is also the time at which the Midstream Restructuring was effectively assumed. But the Court approved the assumption of the Carnero

[9] Again, if Carnero took issue with this provision of the Plan, it had the opportunity to object to Confirmation but failed to do so. It does not get a second chance to object to a Plan provision by framing the objection as one for breach of contract.

[10] Carnero's misperception of the timeline of this case further undercuts its characterization of the issues here as post-petition matters that defeat this Court's jurisdiction.

Agreement not subject to any cure claim and without any finding of default. Therefore, the simultaneous assumption of the Carnero Agreement and Midstream Restructuring under the Plan incorporates a finding that the Midstream Restructuring did not cause a default of the Carnero Agreement.[11] Carnero argues that this leads to an absurd scenario where, ten years down the road, Maverick could have amended the assumed agreements and used the Plan provision to argue that it does not amount to a breach of the Carnero Agreement. That is not what occurred here. The debtors did not assume contracts and then later try to amend them. They assumed contracts *as amended*, which the Plan allowed the debtors to do.

Even absent the effect of these unique Plan provisions, Carnero's claims fail as a matter of contract law. The parties disagree as to the proper interpretation of the contractual terms of the Carnero Agreement, among other relevant agreements. Interpretation of unambiguous contractual terms is a determination of law and therefore an appropriate determination for the Court to make on the pleadings. *See In re Tri-Union Dev. Corp.*, 479 B.R. 425, 441 (Bankr. S.D. Tex. 2012) (citing *Travis Cnty., Tex. v. Flint Hills Res., L.P.*, 456 Fed. Appx. 410, 413 (5th Cir. 2011)). "A contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id*. (citing *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699 (2nd Cir. 2010)). "If the contract terms are susceptible to only one reasonable construction, the contract is unambiguous and will be enforced as written." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003) (citing *In re El Paso Refinery, LP*, 302 F.3d at 353 (5th Cir. 2002)). "Ambiguity does not arise because of a 'simple lack of clarity' or because the parties proffer

[11] At the very least it means, contrary to Carnero's argument at hearing, that the default is not a prepetition default that "rides through" the bankruptcy. (ECF No. 112 at 105, 106).

different interpretations of the contract." *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375 (5th Cir. 2013) (quoting *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)). It is only where a contract is ambiguous that the Court considers parole evidence or considers canons of construction beyond looking to the plain meaning of the language to inform its interpretation of the contract. *Id.*

The defendants' assumption of the Existing Commitments, even as amended, does not amount to a breach of the unambiguous terms of the Carnero Agreement. This is predominantly because Carnero's baseline assumptions concerning what its rights are under the Carnero Agreement are flawed.

**B. The "Extension Schemes"**

Several of Carnero's claims center around the idea that the Midstream Restructuring "ties the hands" of the defendants, causing the defendants to fail to fulfill their requirement under the Carnero Agreement to terminate the Existing Commitments as early as possible. These claims allege that before the Midstream Restructuring, the defendants could have sold the Comanche Assets (or, rather, their working interest in those assets) free and clear of the parties' obligations under various agreements. As a result, gas would have flowed to Carnero because the sale of the Comanche Assets would have effectively terminated the Existing Commitments. However, this argument is based on a flawed interpretation of the plain language of the Carnero Agreement in the context of the debtors' reorganization efforts.[12]

[12] Notably, some of Carnero's "extension scheme" allegations involve amendments to Existing Commitments entered into as part of the Midstream Restructuring which are Retained Agreements. (ECF No. 67 at 43). Anadarko (not named as a defendant and not party to the Carnero Agreement) entered into both those agreements and the amendments; Maverick is bound to them as Anadarko's agent under the Agency Agreements. (ECF No. 68-13 at 2, 5).

The relevant language of the Carnero Agreement requires the defendants to terminate the Existing Commitments at the "earlier of (A) the end of the then-current term of such Existing Commitment . . . and (B) the earliest time at which any right or option to terminate such Existing Commitment, exercisable by Producer, without out-of-pocket cost" which Carnero does not agree to cover. (ECF No. 51-16 at 13.)

The Carnero Agreement is unambiguous in its requirement that its counterparties terminate the Existing Commitments at the earliest time possible without incurring out-of-pocket costs. For example, Maverick would likely have to incur "out of pocket costs" if it were to terminate an Existing Commitment by simply repudiating it, therefore breaching the commitment. On the Court's interpretation of the provision and these facts, it is irrelevant whether the various amendments might have caused the Existing Commitments to remain in force. The Master Settlement Agreement and related amendments were necessary to effectuate the debtor's reorganization effort. This is partially demonstrated by the Occidental adversary proceeding, in which this Court held that covenants running with the land would survive rejection under § 365. Such a ruling changed the economics of the debtors' position, making it more costly to reject the contracts they initially sought to shed in the bankruptcy. As this Court pointed out in that case, the Plan provision which allowed the debtors to assume contracts on an unconventional timeline was necessary "to forestall liquidation." *In re Sanchez Energy Corp.*, 631 B.R. at 851.

Under the plain language of the Carnero Agreement, the debtors could not have terminated those agreements at the earliest time possible (i.e., in the bankruptcy proceeding or by leaving the Agency Agreements unamended) without incurring "out-of-pocket costs," which the Carnero Agreement explicitly does not require the debtors to incur. Negotiating deals with the counterparties to the Existing Commitments (and other agreements Carnero takes issue with) were

necessary to the debtor's reorganization. Allowing them to terminate by leaving the pre-bankruptcy regime in place or by rejecting them outright would have imposed a cost on the debtors, the estate, and the creditors that the language of the Carnero Agreement did not demand under any reasonable interpretation. In any case, the amendments did not "extend" the Existing Commitments because language in several commitments predating the Carnero Agreement already prevented the Comanche Assets from being sold free and clear of those commitments.[13]

In a slightly different vein, Carnero alleges that the Maverick/Enterprise Purchase Agreement (part of the Midstream Restructuring) impermissibly extended the Anadarko/Enterprise Purchase Agreement (an Existing Commitment). The Anadarko/Enterprise Purchase Agreement expires in April 2023. Through the Maverick/Enterprise Purchase Agreement, Maverick will essentially step into Anadarko's role in an agreement set to begin in April 2023. (ECF No. 67-2 at 41). The mechanics of this allegation differ from the other "extension" allegations because it involves a new agreement, not an amendment to an existing one. However, a provision of the Maverick/Enterprise Purchase Agreement only commits Enterprise to continue purchasing natural gas liquids at the end term of the Anadarko/Enterprise Purchase Agreement *if* Carnero chooses not to exercise its right to purchase those liquids. (ECF No. 67-2 at 43). The Maverick/Enterprise Purchase Agreement does not impermissibly extend the Anadarko/Enterprise Purchase Agreement in a manner that blocks Carnero from exercising its rights under the Carnero Agreement.

---

[13] For example, take the Comanche Purchase Agreement language cited in the Background of this Opinion: Maverick must "take all actions necessary to ensure that all co-working interest owner production is transported and/or sold pursuant to the Retained Marketing Contracts." (ECF No. 68-13 at 7).

**C. The "Blocking Schemes"**

Another set of the claims alleges that defendants breached the Carnero Agreement by "blocking" Carnero's right to receive gas at certain receipt points or otherwise frustrate Carnero's right to choose or create new receipt points. Again, the plain language of the Carnero Agreement does not support Carnero's theory of its rights as a threshold matter. The components of the Midstream Restructuring with which Carnero takes issue in this regard cannot be said to "block" any of Carnero's rights.

Each of Carnero's "blocking scheme" allegations presume that it had the right to choose receipt points under the Carnero Agreement. Section 2.1(a) of the Carnero Agreement states that "Producer will have sole discretion as to the location of each Additional CGP or additional well." (ECF No. 51-16 at 11). "Producer" is defined to mean Maverick (and, through the various ratifications, other defendants in this case). (ECF No. 51-16 at 2). An "Additional CGP" means an additional delivery or receipt point. (ECF No. 51-16 at 4, 5, 8). This unambiguously establishes that the defendants—not Carnero—had the right to create new connection points. Therefore, it does not affect Carnero's rights at all, even under its interpretation of the Springfield Amendments as requiring the defendants to get Springfield's consent to make a new receipt point or of the Maverick/Enterprise Purchase Agreement as requiring the consent of Enterprise. Nothing in the Carnero Agreement precludes such an arrangement. In any event, the defendants do not read the Springfield Amendments as granting Springfield a veto right, so Carnero's concern on this front is not supported by any evidence that the agreement will cause the defendants to breach the Carnero Agreement.

Carnero attempts to read ambiguity into the Carnero Agreement by arguing that its option to purchase Additional Plant Products in section 3.1 of the Carnero Agreement endows it with a

right to choose a receipt point for those products. But the provision Carnero points to explicitly states that "Carnero will have the option . . . to purchase those Additional Plant Products *at the points at which they were being sold under the Existing Commitment*." (ECF No. 51-16 at 14) (emphasis added). Again, the plain language is unambiguous. Carnero's only option under the Carnero Agreement is to purchase the Additional Plant Products, not to choose new receipt points for those products. Carnero reads this provision as allowing Carnero the right to purchase Additional Plant Products at any receipt point of its choice and it merely has the option to receiving them at the point at which they were being sold under the prior commitments.[14] This construction of the emphasized language above as granting it two options (whether *and* where to purchase products) is strained and not reasonable given the context of the provision and other language in the agreement which explicitly grants only the Producer the right to choose receipt points. Because Carnero does not have the right to create new receipt points or otherwise choose receipt points under the Carnero Agreement, Carnero's claims fail to the extent they argue that certain amendments made as part of the Midstream Restructuring interfered with that right.

Other nuances of Carnero's allegations with respect to what it deems "blocking schemes" fail as a matter of contract interpretation.

Carnero alleges that, as part of the Maverick/Enterprise Purchase Agreement, Enterprise was granted a "veto right" over changes to receipt points in the Carnero Agreement and delivery points under the Anadarko/Enterprise Purchase Agreement. This would, allegedly, negatively impact Carnero, which interprets the Carnero Agreement as granting it a right to receipt at *any*

[14] Carnero seems to triangulate this dual structure through its understanding of what duties the dedication in the Carnero Agreement imposed on Maverick. (ECF No. 112 at 153-155). While the dedication did impose a duty on Carnero's counterparties to deliver a product, there is nothing that says the Carnero Agreement could not designate specific sites or methods to determine how and where the product would be delivered, which it did. Even taking Carnero's understanding of the law on this front as true, finding an implied duty to deliver does not necessarily imply that Carnero has the right to choose receipt and delivery points.

point as soon as the primary term of the Anadarko/Enterprise Purchase Agreement ended. Aside from the flaws laid out above, Carnero's argument here ignores explicit provisions of the Maverick/Enterprise Purchase Agreement which prevent Maverick from altering Carnero's right to receipt under the Carnero Agreement. The Maverick/Enterprise Purchase Agreement includes language that prevents Maverick from modifying delivery points in "any way which would change or alter the option right set forth in Section 3.1(b) of the Carnero Purchase Agreement." (ECF No. 67-2 at 42, 43). Perhaps more detrimental to Carnero's argument on this front is that, by way of the language in the Maverick/Enterprise Purchase Agreement which provides it is subject to Carnero's exercise of its option to purchase at the end of the primary term of the Anadarko/Enterprise Purchase Agreement, if the Maverick/Enterprise Purchase Agreement dedication takes effect, it will be because *Carnero chose not to exercise its purchase option under the Carnero Agreement*. In that case, it should not matter to Carnero whether Enterprise has control over the location of receipt points because it will have waived its right to those products. At that stage, whether a receipt point conducive to Carnero's rights under the Carnero Agreement exists would be moot.

Carnero alleges that the Springfield Amendments expanded the defendants' delivery obligations by converting volume commitments to each of the ETC and Brasada plants into aggregate volume commitments. In simpler terms, Carnero's reading of the Springfield Amendments would prevent gas from flowing to Carnero until a specified volume encompassing the sum of the commitments to each of the Brasada and ETC plants had been delivered in aggregate. This is because Carnero alleges the Springfield Amendments relegated Carnero's only delivery point to an interruptible connection point to which the defendants agreed to not deliver anything until the volume exceeded the aggregate of both the Brasada and ETC agreements.

Carnero contends that, before the Springfield Amendments, Carnero could receive gas in excess of either agreement from two separate sites. Further, the defendants allegedly agreed that Springfield must consent to any additional delivery points, blocking Carnero's right to receipt.

While read in isolation, the language of the Springfield Amendments might be interpreted as turning the Brasada and ETC commitments into aggregate volume commitments, the definition of "Delivery Nomination" clarifies that the nomination applies individually to each customer at each delivery point. (ECF no. 67-2 at 270). Therefore, where the amendment reads "if the Brasada Processing Plant and . . . the ETC Processing Plant, are unable to process any portion or portions of Shipper's entire Delivery Nomination, at any time, then Shipper may submit nominations to . . . an Interruptible Connection Point(s)," it preserves the volume (not aggregate) nature of the ETC and Brasada Commitments as subject to two separate "Delivery Nominations." (ECF No. 67-2 at 422-423). This reading is supported by clarifying language in the amendment which specifies that "[f]or the sake of clarity, Shipper may nominate Gas volumes in excess of Shipper's obligations in the Brasada Processing Agreement and the ETC Processing Agreement to an Interruptible Connection Point."[15] (ECF No. 67-2 at 422-423).

**D. The Implied Duty to Cooperate**

Carnero alleges that the Midstream Restructuring constitutes the defendants' breach of an alleged implied duty to cooperate inherent in the Carnero Agreement absent breach of any express term of the agreement.

Texas law generally disfavors implied covenants, instead tending to construe contracts as they are written. *See In re Baerg Real Prop. Tr.*, 585 B.R. 373 (Bankr. N.D. Tex. 2018). Whether

[15] The defendants' motion for judgment on the pleadings relies on this interpretation of the Springfield Amendments and states that the defendants never intended to convert the Brasada and ETC commitments into aggregate volume commitments. (ECF No. 67 at 34, fn. 86).

an implied duty to cooperate is read into a contract is dependent upon the terms of the contract and the nature of the parties' performance as demanded by the contract. *See Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452 (5th Cir. 2003). "'Whenever cooperation is necessary for performance of a contract, there is an implied condition of contract that cooperation will be given.'" *Id.* (citing *Citizens Nat'l Bank of Orlando v. Vitt*, 367 F.2d 541, 544–45 (5th Cir.1966)). "A duty to cooperate implies that one party will not prevent the other party from performing the contract." *In re Baerg Real Prop. Tr.*, 585 B.R. at 590. (citing *Tex. Nat. Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 699 (5th Cir. 1989)).

The typical scenario where an implied duty to cooperate applies involves a party who is owed performance under a contract interfering with the other party's ability to render that performance (e.g., if a contractor owes work to a counterparty, the counterparty cannot interfere with the contractor's ability to render that performance). *See, e.g., Int'l Ship Repair & Marine Services, Inc. v. Great Lakes Drudge & Dock Co., LLC*, 2022 WL 398418 (S.D. Tex. Jan. 13, 2022), *report and recommendation adopted sub nom. Int'l Ship Repair & Marine Services, Inc. v. Great Lakes Dredge & Dock Co., LLC*, 2022 WL 393574 (S.D. Tex. Feb. 9, 2022). In *Int'l Ship Repair*, for example, the court found an implied duty to cooperate because the contract "reflect[ed] both sides' interest in the complete and timely performance of the work. Such complete and timely performance of the work was, necessarily, contingent upon both sides cooperating and efficiently agreeing upon change order items." *Id.*

The parties' performance under the Carnero Agreement cannot be comfortably analogized to these standard structures where courts tend to find an implied duty to cooperate. Carnero does not "owe" a *current* duty to the defendants such that the defendants' other agreements can be said to interfere with Carnero's performance of that duty in the manner contemplated by the implied

covenant. Instead, this is a situation where Carnero's rights to receive performance are predicated on matters outside Carnero's control, so no implied covenant to cooperate should be read into the plain, express terms of the agreement.

## III. The Midstream Restructuring is not Anticipatory Breach of the Carnero Agreement

Carnero argues in the alternative that, even if the assumption of the Master Settlement Agreement and associated amendments does not constitute breach of the Carnero Agreement, it constitutes *anticipatory* breach of the Carnero Agreement. This argument fails because, for the reasons stated above, the Master Settlement Agreement and associated amendments do not impermissibly extend the Existing Commitments or otherwise block any of Carnero's rights under the Carnero Agreement.

Anticipatory breach involves a party to a contract, whose performance is not yet due, indicating an intent to not perform under the terms of an agreement. *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). To successfully argue anticipatory breach, the moving party must show "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Id.* (citing *Taylor Pub. Co. v. Sys. Mktg. Co.*, 686 S.W.2d 213, 217 (Tex.App.-Dallas 1984, writ ref'd n.r.e.).

The Court agrees with the defendants' interpretation of the parties' obligations under the various agreements at issue. The defendants cannot be said to have anticipatorily breached the Carnero Agreement because they have not indicated an intent to do so by entering into the amendments associated with the Midstream Restructuring. To the contrary, the defendants have indicated only an intent to adhere to the letter of the Carnero Agreement and even argue that some of the amendments they adopted in conjunction with the Midstream Restructuring served to protect Carnero's rights under the Carnero Agreement. (ECF No. 67 at 11). Similarly, because the Court

holds that Carnero's rights are not impaired, Carnero cannot prove the third element of anticipatory repudiation: damages.

## IV. DECLARATORY JUDGMENT

Based on its interpretation of the Carnero Agreement and Midstream Restructuring agreements, Carnero next asks the Court to declare provisions of the Midstream Restructuring agreements which conflict with the Carnero Agreement null and void. A court has discretion to issue declaratory judgment in a "case of 'actual controversy' within its jurisdiction." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C § 2201(a)). A Court's decision to issue a declaratory judgment is a three-step inquiry: "(1) whether an 'actual controversy' exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The "actual case or controversy" requirement refers to an Article III case or controversy. *MedImmune, Inc.*, 549 U.S. at 127. Therefore, if there is no actual case or controversy, the Court lacks subject matter jurisdiction. The Court has broad discretion as to whether an exercise of its power to grant declaratory relief is necessary and appropriate.

Compare the situation here, for example to the case in *Hosp. Internists*, where the court found declaratory judgment necessary to prevent injury in the future based on a conflict between how a party was performing and the terms of an agreement. *Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*, 2019 WL 1922051 (W.D. Tex. Jan. 23, 2019). Here, no actual controversy exists between the parties regarding the proper interpretation of the at-issue agreements because the contractual terms are unambiguous and do not conflict with any provision of the Midstream Restructuring and Master Settlement Agreement. *See, e.g., Kelly Inv., Inc. v. Cont'l Common*

*Corp.*, 2001 WL 630467 (E.D. La. June 5, 2001) (finding, by contrast, that because the context of the contract rendered its meaning unclear, an actual controversy existed, and declaratory judgment was appropriate). There is no future, legal injury for the Court to prevent. Even if there is subject matter jurisdiction, the Court declines to issue the declaratory judgment proposed by Carnero where no conflict between or among the agreements exists which would render it necessary to declare any part of the Midstream Restructuring null as Carnero requests—particularly when that process was central to the debtors' ability to successfully reorganize.

## V. ATTORNEY'S FEES

Carnero's claims are barred by the Plan and Confirmation Order. Regardless, the underlying claims for breach and anticipatory breach of contract fail as a matter of law. Based on these findings, an award of attorney's fees is not appropriate.

## CONCLUSION

A separate judgment for the defendants will be issued.

SIGNED 02/02/2023



Marvin Isgur
United States Bankruptcy Judge

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 02, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 19-34508** |
| **SANCHEZ ENERGY CORPORATION, *et al.*,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **CARNERO G&P, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 22-3035** |
| | § | |
| **SN EF UNSUB, LP, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## JUDGMENT

All relief in Plaintiff's complaint (ECF No. 53-1) is denied. Costs are awarded against the Plaintiff.

SIGNED 02/02/2023

Marvin Isgur
United States Bankruptcy Judge