# REORGANIZED DEBTORS FINANCIAL PROJECTIONS

| | Fiscal Year | | | |
|---|---|---|---|---|
| | 2020 [2] | 2021 | 2022 | 2023 |
| **Total Production** | | | | |
| Oil (MBbl) | 2,366 | 3,017 | 2,820 | 2,725 |
| Gas (MMcf) | 2,674 | 3,378 | 3,056 | 2,826 |
| NGL (MBbl) | 2,939 | 3,730 | 3,417 | 3,191 |
| **Total (Mboe)** | **7,979** | **10,125** | **9,293** | **8,742** |
| *($ in thousands)* | | | | |
| **Revenue** | **$ 113,848** | **$ 177,831** | **$ 174,258** | **$ 172,029** |
| **Operating Expenses** | **(96,735)** | **(128,708)** | **(122,686)** | **(111,330)** |
| **Production & Property Taxes** | **(6,814)** | **(10,685)** | **(10,559)** | **(10,541)** |
| **Cash G&A** | **(14,814)** | **(3,913)** | **(3,204)** | **(2,400)** |
| **EBITDAX** | **$ (4,515)** | **$ 34,524** | **$ 37,808** | **$ 47,758** |
| Capital Expenditures | (11,945) | (40,442) | (49,059) | (46,289) |
| Net Change in Working Capital | 11,118 | 738 | (1,809) | 5,141 |
| **Unlevered Operating Cash Flow** | **$ (5,343)** | **$ (5,179)** | **$ (13,059)** | **$ 6,610** |
| Cash Interest & Fees | - | - | - | - |
| **Levered Cash Flow** | **$ (5,343)** | **$ (5,179)** | **$ (13,059)** | **$ 6,610** |
| **Beginning Cash** | **$ 43,690** | **$ 38,347** | **$ 33,168** | **$ 20,109** |
| **Ending Cash** | **$ 38,347** | **$ 33,168** | **$ 20,109** | **$ 26,719** |

[2] For avoidance of doubt, FY2020 estimates based on NewCo stub period from April 30, 2020 (Effective Date) through year-end.

**Exhibit E**

**Valuation Analysis**

## VALUATION ANALYSIS

The Debtors have been advised by Moelis with respect to the enterprise value of the Reorganized Debtors (the "Enterprise Value") on a going concern basis.

The valuation analysis herein is based on information as of the date of this Disclosure Statement and is based on the Business Plan provided by management (the "Business Plan"). For purposes of this valuation, Moelis has assumed that no material changes that would affect value occur between the date of this Disclosure Statement and May 1, 2020 (the "Assumed Effective Date").

As a result of the analysis described herein, Moelis estimates the Enterprise Value of the Reorganized Debtors to be approximately $65 million to $95 million, with a mid-point of $80 million, as of the Assumed Effective Date. Further, this analysis assumes that the Reorganized Debtors will emerge with no debt on the balance sheet and will have no excess cash after accounting for net working capital obligations as of the Assumed Effective Date. Moelis' mid-point estimate of Enterprise Value of $80 million therefore implies an equity value for the Reorganized Debtors, of approximately $80 million (the "Equity Value"). Other restructuring costs and professional fees were also taken into account when estimating the pro-forma cash balance of the Reorganized Debtors.

Moelis' estimate of a range of Enterprise Values does not constitute an opinion as to fairness from a financial point of view of the consideration to be received under the Plan or of the terms and provisions of the Plan.

THE ASSUMED RANGE OF THE ENTERPRISE VALUE, AS OF AN ASSUMED EFFECTIVE DATE OF MAY 1, 2020, REFLECTS WORK PERFORMED BY MOELIS ON THE BASIS OF INFORMATION IN RESPECT OF THE BUSINESS AND ASSETS OF THE DEBTORS AVAILABLE TO MOELIS AS OF MARCH 30, 2020. IT SHOULD BE UNDERSTOOD THAT, ALTHOUGH SUBSEQUENT DEVELOPMENTS MAY AFFECT MOELIS' CONCLUSIONS, MOELIS DOES NOT HAVE ANY OBLIGATION TO UPDATE, REVISE OR REAFFIRM ITS ESTIMATE.

MOELIS DID NOT INDEPENDENTLY VERIFY THE PROJECTIONS IN CONNECTION WITH MOELIS' ESTIMATES OF THE ENTERPRISE VALUE AND EQUITY VALUE, AND NO INDEPENDENT VALUATIONS OR APPRAISALS OF THE DEBTORS WERE SOUGHT OR OBTAINED IN CONNECTION HEREWITH. ESTIMATES OF THE ENTERPRISE VALUE AND EQUITY VALUE DO NOT PURPORT TO BE APPRAISALS OR NECESSARILY REFLECT THE VALUES THAT MAY BE REALIZED IF ASSETS ARE SOLD AS A GOING CONCERN, IN LIQUIDATION, OR OTHERWISE. IN THE CASE OF THE REORGANIZED DEBTORS, THE ESTIMATES OF THE ENTERPRISE VALUE PREPARED BY MOELIS REPRESENT THE HYPOTHETICAL ENTERPRISE VALUE OF THE REORGANIZED DEBTORS. SUCH ESTIMATES WERE DEVELOPED SOLELY FOR PURPOSES OF THE FORMULATION OF THE PLAN AND THE ANALYSIS OF IMPLIED RELATIVE RECOVERIES TO CREDITORS THEREUNDER. SUCH ESTIMATES REFLECT COMPUTATIONS OF THE RANGE OF THE ESTIMATED ENTERPRISE VALUE OF THE REORGANIZED DEBTORS THROUGH THE APPLICATION OF VARIOUS VALUATION

TECHNIQUES AND DO NOT PURPORT TO REFLECT OR CONSTITUTE APPRAISALS, LIQUIDATION VALUES, OR ESTIMATES OF THE ACTUAL MARKET VALUE THAT MAY BE REALIZED THROUGH THE SALE OF ANY SECURITIES TO BE ISSUED PURSUANT TO THE PLAN, WHICH MAY BE SIGNIFICANTLY DIFFERENT THAN THE AMOUNTS SET FORTH HEREIN.

THE VALUE OF AN OPERATING BUSINESS IS SUBJECT TO NUMEROUS UNCERTAINTIES AND CONTINGENCIES WHICH ARE DIFFICULT TO PREDICT AND WILL FLUCTUATE WITH CHANGES IN FACTORS AFFECTING THE FINANCIAL CONDITION AND PROSPECTS OF SUCH A BUSINESS. AS A RESULT, THE ESTIMATE OF THE RANGE OF THE ENTERPRISE VALUE OF THE REORGANIZED DEBTORS SET FORTH HEREIN IS NOT NECESSARILY INDICATIVE OF ACTUAL OUTCOMES, WHICH MAY BE SIGNIFICANTLY MORE OR LESS FAVORABLE THAN THOSE SET FORTH HEREIN. BECAUSE SUCH ESTIMATES ARE INHERENTLY SUBJECT TO UNCERTAINTIES, NEITHER THE DEBTORS, MOELIS, NOR ANY OTHER PERSON ASSUMES RESPONSIBILITY FOR THEIR ACCURACY. IN ADDITION, THE VALUATION OF NEWLY-ISSUED SECURITIES IS SUBJECT TO ADDITIONAL UNCERTAINTIES AND CONTINGENCIES, ALL OF WHICH ARE DIFFICULT TO PREDICT. ACTUAL MARKET PRICES OF SUCH SECURITIES AT ISSUANCE WILL DEPEND UPON, AMONG OTHER THINGS, PREVAILING INTEREST RATES, CONDITIONS IN THE FINANCIAL MARKETS, THE ANTICIPATED INITIAL SECURITIES HOLDINGS OF PREPETITION CREDITORS, SOME OF WHICH MAY PREFER TO LIQUIDATE THEIR INVESTMENT RATHER THAN HOLD IT ON A LONG-TERM BASIS, AND OTHER FACTORS WHICH GENERALLY INFLUENCE THE PRICES OF SECURITIES.

Moelis assumed the Business Plan was reasonably prepared in good faith and on a basis reflecting the Debtors' most accurate, currently-available estimates and judgments as to the future operating and financial performance of the Reorganized Debtors. The estimated Enterprise Value and Equity Value ranges assume the Reorganized Debtors will achieve their projections in all material respects, including revenue, EBITDA margins, and cash flows. If the business performs at levels below or above those set forth in the Business Plan, such performance may have a materially negative or positive impact, respectively, on Enterprise Value and Equity Value. In estimating the Enterprise Value, Moelis (a) reviewed certain historical financial information of the Debtors for recent years and interim periods; (b) reviewed certain internal financial, reserves and operating data of the Debtors; (c) discussed the Debtors' operations and future prospects with the senior management team; (d) reviewed certain publicly-available financial data for, and considered the market value of, public companies that Moelis deemed generally relevant in analyzing the value of the Reorganized Debtors; (e) considered certain economic and industry information relevant to the operating businesses; and (f) conducted such other analyses, inquiries and investigations as it deemed appropriate. Moelis assumed and relied on the accuracy and completeness of all financial and other information furnished to it by the Debtors' management as well as publicly-available information. Moelis does not offer an opinion as to the attainability of the Business Plan, as future results are dependent on various factors, many of which are beyond the control or knowledge of the Reorganized Debtors and Moelis, and thus are difficult to project.

The following is a brief summary of analyses performed by Moelis to arrive at its recommended range of estimated Enterprise Value for the Reorganized Debtors and does not purport to be a complete description of all of the analyses and factors undertaken. The preparation of a valuation is a complex process involving various determinations as to the most appropriate analyses and factors to consider, and the application of those analyses and factors under the particular circumstances.

In performing its analysis, Moelis applied the following valuation methodologies as applicable to the operations of the Debtors: (a) a net asset valuation analysis; and (b) a selected publicly-traded companies analysis. In addition, Moelis considered a precedent transactions analysis but because the precedent transactions occurred in different commodity pricing environments and other market conditions, Moelis believed the inclusion of this approach was of limited applicability.

**Net Asset Valuation Analysis**

The value of the Debtors' oil and gas reserves was estimated using a net asset value ("NAV") approach. The Debtors' reserve report associated with its Business Plan calculates the estimated sum of net cash flows directly attributable to the Debtors' oil and gas properties. Future production volumes attributable to the properties are estimated and multiplied by the projected realized price, which incorporates the projected market price less an expected differential between the market price and the price at which the Debtors can sell their production. Projected severance taxes, ad valorem taxes, lease operating expenses, gathering, processing, transportation and marketing expenses, and capital expenditures are then subtracted from revenue to calculate net cash flows. Moelis then risk adjusted the reserve values by reserve category using both reserve adjustment factors and risk adjusted discount rates as detailed by the Society of Petroleum Evaluation Engineers in its 38th annual survey dated June 2019. These values were then adjusted for other non-reserve assets and liabilities, including general and administrative expenses, maintenance capital expenditures, and marketing deficiencies of the Debtors not reflected in the reserve report to determine the net asset value of the Debtors.

**Selected Publicly-Traded Companies Analysis**

A selected publicly-traded companies analysis estimates the value of a company based on a comparison with certain other publicly-traded companies in lines of business and operating characteristics similar in certain respects to the company being valued. Under this methodology, certain financial multiples and ratios that measure financial performance and value are calculated for each selected company and then applied to certain of the Debtors' financial metrics to imply an enterprise value for the Debtors. Moelis used enterprise value as a multiple of each selected company's publicly-available consensus projected 2021 EBITDA adjusted for estimates deemed to be stale based on the recent commodity price downturn. This implies a range of EV/EBITDA multiples that Moelis then applied to the Debtors' Business Plan projections to determine a range of the Debtors' Enterprise Value. Although the selected companies were compared to the Debtors for purposes of this analysis, no entity used in this analysis is identical to the Reorganized Debtors. The selection of public entities for this purpose was based upon characteristics that were deemed relevant based on Moelis' professional judgment. The selection of appropriate companies is a matter of judgment and subject to limitations due to sample size and the availability of meaningful

market-based information. Accordingly, Moelis' comparison of the selected companies to the business of the Reorganized Debtors and analysis of the results of such comparisons was not purely mathematical, but instead necessarily involved complex considerations and judgments concerning differences in financial and operating characteristics, diversity of business operations, diversity of geographic locations, size and other factors that could affect the relative values of the selected companies and the Debtors.

Moelis did not consider any one analysis or factor to the exclusion of any other analyses or factors. Accordingly, Moelis believes that its analysis and views must be considered as a whole and that selecting portions of its analysis and factors could create a misleading or incomplete view of the processes underlying the preparation of the valuation. Reliance on only one of the methodologies used or portions of the analysis performed could create a misleading or incomplete conclusion.

The estimated Enterprise Value and Equity Value do not constitute a recommendation to any Holder of Allowed Claims as to how such person should vote or otherwise act with respect to the Plan. Moelis has not been asked to and does not express any view as to what the trading value of the Reorganized Debtors' securities would be on issuance at any time. The estimated Enterprise Value and Equity Value of the Reorganized Debtors set forth herein does not constitute an opinion as to fairness from a financial point of view to any person of the consideration to be received by such person under the Plan or of the terms and provisions of the Plan.

Moelis did not account for the impact of any income tax attributes. The impact of any income tax attributes or the impact of cancellation of indebtedness income on the Reorganized Debtors' projections could materially impact Moelis' valuation analysis.

THE ESTIMATES OF THE ENTERPRISE VALUE AND EQUITY VALUE DETERMINED BY MOELIS REPRESENT ESTIMATED ENTERPRISE VALUES AND DO NOT REFLECT VALUES THAT COULD BE ATTAINABLE IN PUBLIC OR PRIVATE MARKETS. THE IMPUTED ESTIMATE OF THE RANGE OF THE EQUITY VALUE OF REORGANIZED DEBTORS ASCRIBED IN THE ANALYSIS DOES NOT PURPORT TO BE AN ESTIMATE OF THE POST-REORGANIZATION MARKET TRADING VALUE. ANY SUCH TRADING VALUE MAY BE MATERIALLY DIFFERENT FROM THE IMPUTED ESTIMATE OF THE EQUITY VALUE RANGE FOR THE REORGANIZED DEBTORS ASSOCIATED WITH MOELIS' VALUATION ANALYSIS.

MOELIS IS ACTING AS INVESTMENT BANKER TO THE DEBTORS, AND WILL NOT BE RESPONSIBLE FOR AND WILL NOT PROVIDE ANY TAX, ACCOUNTING, ACTUARIAL, OR LEGAL ADVICE.

<u>**Schedule 2**</u>

**Solicitation and Voting Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SOLICITATION AND VOTING PROCEDURES**

**PLEASE TAKE NOTICE THAT** on April [9], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order (the "Disclosure Statement Order"): (a) authorizing Sanchez Energy Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit votes on the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**A. The Voting Record Date**

The Court has established April 8, 2020 as the record date for purposes of determining which Holders of Claims in Class 3 (DIP Claims), Class 4 (Secured Notes Claims), and Class 5 (General Unsecured Claims) are entitled to vote on the Plan (the "Voting Record Date").

**B. The Voting Deadline**

The Court has established the date of April 27, 2020 at 5:00 p.m., prevailing Central Time as the voting deadline (the "Voting Deadline") for the Plan. The Debtors may extend the Voting Deadline, in their discretion, without further notice or order of the Court. To be counted as votes to accept or reject the Plan, all ballots ("Ballots") must be properly executed, completed, and returned in accordance with the instructions provided on the applicable Ballot, so that they are *actually received*, in any case, no later than the Voting Deadline by Prime Clerk LLC (the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

"Balloting Agent"). Delivery of a Ballot to the Balloting Agent by e-mail or facsimile shall not be valid with the exception of Class 3 DIP Claim Ballots and Master Ballots transmitted by Nominees via e-mail. To have their votes to accept or reject the Plan counted, Beneficial Holders must properly submit their vote to the appropriate broker, bank, other nominee, or their agent (each of the foregoing, a "Nominee"), in sufficient time so that such Nominee can verify, tabulate, and include such Ballots in a master ballot and timely return such master ballot, so that it is actually received no later than the Voting Deadline by the Balloting Agent. In the case of Beneficial Holders[2] of the Secured Notes Claims and the General Unsecured Claims who hold their position through a Nominee, such Beneficial Holders will be instructed to comply with the return instructions provided by such Nominee.

## C. Form, Content and Manner of Notices

### 1. The Solicitation Package

The Solicitation Packages shall contain the following materials:

a. the Disclosure Statement Order (excluding the exhibits thereto, except as set forth below);

b. the approved Disclosure Statement (annexed as **Schedule 1** to the Disclosure Statement Order) and the exhibits thereto, including the Plan;

c. these Solicitation and Voting Procedures (annexed as **Schedule 2** to the Disclosure Statement Order);

d. the applicable form of Ballot, in substantially the form of Ballots annexed as **Schedule 3A, 3B, 3C, and 3D** to the Disclosure Statement Order;

e. the *Notice of Hearing to Consider (A) the Adequacy of the Debtors' Disclosure Statement, and (B) Confirmation of the Chapter 11 Plan Filed By the Debtors*, in substantially the form annexed as **Schedule 4** to the Disclosure Statement Order (the "Combined Hearing Notice");

f. a pre-addressed, postage pre-paid reply envelope; and

g. any additional documents that the Court has ordered to be made available.

---

[2] A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominees.

2. **Distribution of Solicitation Package**

The Plan, the Disclosure Statement, the Disclosure Statement Order (including exhibits) will be available by visiting the Debtors' restructuring website at: https://cases.primeclerk.com/sanchezenergy. All other contents of the Solicitation Package, including Ballots, shall be provided in paper format. Any party that receives the materials in electronic format but would prefer paper format may contact Balloting Agent by: (a) visiting the Debtors' restructuring website at: https://cases.primeclerk.com/sanchezenergy; (b) writing to Sanchez Energy Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, New York 10022; (c) emailing sanchezballots@primeclerk.com and requesting paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense); and (d) calling the Debtors' restructuring hotline at the following number:

**US/Canada Toll Free: (855) 631-5345**

**International: (347) 338-6451**

The Debtors shall serve, or cause to be served, electronically and by first-class U.S. mail (a) all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee, and (b) the Disclosure Statement Order (in electronic format) and the Combined Hearing Notice to all parties who have requested service of papers in these cases pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.

The Debtors shall serve, or cause to served, the Solicitation Package (minus the Disclosure Statement, Plan, and Disclosure Statement Order, which will be posted online) to all Holders of Claims in the Voting Class who are entitled to vote, as described in section D below on or before April 13, 2020 (the "Solicitation Deadline").

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claims and with respect to that Class as against that Debtor.

3. **Non-Voting Status Notices**

Certain Holders of Claims or Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code, or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept or reject the Plan under sections 1126(f) and 1126(g) of the Bankruptcy Code, will receive the applicable Notice of Non-Voting Status, substantially in the forms annexed as **Schedule 5A and 5B** to the Disclosure Statement Order. Such notice will instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

**4. <u>Resolution of Disputed Claims for Voting Purposes; Resolution Events</u>**

a. Absent a further order of the Court, the Holder of a Claim or Interest in a Voting Class that is the subject of a pending objection on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

b. If a Claim in a Voting Class is subject to an objection (other than a "reduce and allow" objection) that is filed with the Court on or prior to 7 days before the Voting Deadline, the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such claim unless a Resolution Event (as defined herein) occurs as provided herein.

c. If a Claim in a Voting Class is subject to an objection by the Debtors (other than a "reduce and allow" objection) that is filed with the Court less than 7 days prior to the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Court, unless the Court orders otherwise.

d. A "<u>Resolution Event</u>" means the occurrence of one or more of the following events no later than two business days prior to the Voting Deadline:

i. an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii. an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii. a stipulation or other agreement is executed between the Holder and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

iv. the pending objection is voluntarily withdrawn by the objecting party.

e. No later than one business day following the occurrence of a Resolution Event, the Debtors shall cause the Balloting Agent to distribute via electronic mail, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder to the extent such holder has not already received a Solicitation Package.

### 5. Notices in Respect of Executory Contracts and Unexpired Leases

Counterparties to Executory Contracts and Unexpired Leases that receive an *Assumption Notice* or a *Rejection Notice*, substantially in the forms attached as **Schedule 6** and **Schedule 7** to the Disclosure Statement Order, respectively, may file an objection to the Debtors' proposed assumption, rejection, and/or cure amount, as applicable. Such objections must be filed with the Court (contemporaneously with a proof of service) and served upon the applicable notice parties (as set forth in the *Assumption Notice* or *Rejection Notice*) by May 20, 2020.

## D. Voting and Tabulation Procedures

### 1. Holders of Claims Entitled to Vote

Only the following Holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

a. Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date; and (ii) is not the subject of a pending objection (other than a "reduce and allow" objection) filed with the Court at least 7 days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided,* that a Holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package (minus the Disclosure Statement, Plan, and Disclosure Statement Order, which will be posted online) and be entitled to vote such Claim in the reduced amount contained in such objection pending the occurrence of a Resolution Event as provided herein or further order of the Court;

b. Holders of Claims that are subject to an objection that is filed less than 7 days prior to the Voting Deadline;

c. Holders of Claims and Interests that are listed in the Schedules for which a timely Proof of Claim was not filed; *provided* that if the applicable Bar Date has expired prior to the Voting Record Deadline, a Claim listed on the Schedules as contingent, disputed, or unliquidated shall be disallowed for voting purposes; *provided further* that if the applicable Bar Date has not expired prior to the Voting Record Deadline, a Claim listed on the Schedules as contingent, disputed, or unliquidated shall be allowed to vote only in the amount of $1.00;

d. Holders of Claims and Interests that arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors pursuant to authority granted by the Court (other than the Schedules), in each case regardless of whether a Proof of Claim has been filed;

e. Holders of Disputed Claims that have been temporarily allowed to vote on the

Plan pursuant to Bankruptcy Rule 3018; and

f. the assignee of any Claim that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (d) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

**2. <u>Establishing Claim Amounts for Voting Purposes</u>**

**<u>Class 3 DIP Claims</u>**. The amount of DIP Claims for voting purposes only will be established by reference to the list of record holders maintained by the DIP Agent, dated as of the Voting Record Date, which shall be provided by counsel for the DIP Agent to the Debtors or the Balloting Agent no later than one (1) Business Day following the Voting Record Date.

**<u>Class 4 Secured Notes Claims and Unsecured Notes Claims in Class 5</u>**. The Claims amount of Secured Notes Claims and Unsecured Notes Claims for voting purposes only will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the applicable agent, indenture trustee, or Nominee as reflected in the securities position report(s) from DTC or other applicable depository firm, dated as of the Voting Record Date, which shall be provided by the applicable agent, indenture trustee, or Nominee to the Debtors or the Balloting Agent no later than one (1) Business Day following the Voting Record Date.

**<u>Class 5 General Unsecured Claims (Other than Unsecured Notes Claims)</u>**. Each Holder (other than the Holders of Unsecured Notes Claims) of a Claim in Class 5 as of the Voting Record Date shall be entitled to vote the amount of its claim in accordance with the procedures set forth below for Filed and Scheduled Claims.

**<u>Filed and Scheduled Claims</u>**. The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim. Moreover, any amounts filled in on Ballots by the Debtors through the Balloting Agent, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a. the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (ii) set forth in an order of the Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court (other than the Schedules);

b. the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under section C.3(d) of these Solicitation Procedures;

c. the Claim amount contained in a Proof of Claim that has been timely filed by the applicable Bar Date (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the

Petition Date; *provided* that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of (i) a contingent Claim or a Claim in a wholly-unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Balloting Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes; provided, further, that any Claim filed in an amount denominated by a currency other than USD will vote at $1.00;

d. the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim); provided that such Claim is not scheduled as contingent, disputed, or unliquidated and/or has not been paid; *provided* that if the applicable Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall vote at $1.00;

e. in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes.

**3. Voting and Ballot Tabulation Procedures**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

a. except as otherwise provided in the Solicitation Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors, in their sole discretion, shall be entitled to reject such Ballot as invalid and, therefore, not count it in connection with Confirmation of the Plan;

b. the Debtors will file with the Court by no later than April 29, 2020 at 12:00 p.m. (prevailing Central Time) a voting report (the "Voting Report"). The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures, or lacking necessary information, received via facsimile, or damaged (collectively, in each case, the "Irregular Ballots"). The Voting Report

shall indicate the Debtors' intentions with regard to each Irregular Ballot;

c. the method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each Holder. Except as otherwise provided, a Ballot will be deemed delivered only when the Balloting Agent actually receives the properly executed Ballot;

d. an executed Ballot is required to be submitted by the Entity submitting such Ballot. Subject to the other procedures and requirements herein, completed, executed Ballots (except Beneficial Holders' Ballots) may be submitted via the online "E-Balloting" portal maintained by the Balloting Agent;

e. Ballots should not be submitted by facsimile—any Ballots submitted by facsimile will not be valid;

f. Class 3 DIP Claims Ballots and Master Ballots ***may*** be submitted by Nominees via e-mail to sanchezballots@primeclerk.com;

g. no Ballot should be sent to the Debtors, the Debtors' agents (other than the Balloting Agent), or the Debtors' financial or legal advisors, and if so sent will not be counted;

h. if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot received will be counted and all prior received Ballots will be disregarded;

i. Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot (other than a Master Ballot) that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims held by the same Holder within the same Class, the applicable Debtor may, in its discretion, seek to aggregate the Claims of any particular Holder within a Class for the purpose of counting votes. The Debtors shall identify any such aggregation of multiple Claims in the Voting Report, and any party in interest may contest such aggregation at the Confirmation Hearing including, without limitation, on the basis that the Debtors have not satisfied Bankruptcy Code section 1129(a)(8)(A) for failure to meet the numerosity requirement of Bankruptcy Code section 1126(c).

j. A Holder of a Claim that may be asserted against multiple Debtors must vote all such Claims in the same way (*i.e.*, either all to accept the Plan at each Debtor against whom they have Claims or all to reject the Plan at each Debtor against whom they have Claims and may not vote any such Claim to accept at one Debtor and reject at another Debtor). Accordingly, a Ballot (other than a Master Ballot) that rejects the Plan for a Claim at one Debtor and accepts the Plan for the same Claim at another Debtor will not be counted;

k. a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

l. the Debtors, unless subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

m. neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

n. unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

o. in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

p. subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

q. if a Claim has been estimated or a Claim has otherwise been Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

r. if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

s. the following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim; (ii) any Ballot cast by an Entity that does not hold a Claim in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the

amount of $1.00); (iv) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, Ballots submitted through the online "E-Balloting" portal or a Master Ballot sent by a Nominee via electronic mail shall be deemed to include an original signature); (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (vi) any Ballot submitted by an Entity not entitled to vote pursuant to the procedures described herein;

t. after the Voting Deadline, and subject to the requirements of Bankruptcy Rule 3018(a), no Ballot may be withdrawn or modified without the prior written consent of the Debtors and order of the Court;

u. the Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes;

v. where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein), and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan. In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted; and

w. for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities, including any funds or accounts that are advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity or managed fund or account will be counted separately as a vote to accept or reject the Plan.

**Master Ballot Voting Procedures**

These rules will apply with respect to the tabulation of master ballots cast by Nominees for Beneficial Holders of certain Claims (the "Master Ballots"):

a. votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees of certain Claims, as applicable, as of the Voting Record Date, as evidenced by the applicable records. Votes submitted by a Nominee will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

b. if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominee;

c. if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date, of certain Claims;

d. for the purposes of tabulating votes, each Beneficial Holder shall be deemed (regardless of whether such Holder includes interest in the amount counted on its Ballot) to have voted only the principal amount of its position in the applicable Secured Notes Claims or Unsecured Notes Claims; and

e. a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

## E. Amendments to the Plan and Solicitation and Voting Procedures

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan (including, for the avoidance of doubt, the Plan Supplement), Ballots, Confirmation Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

*     *     *

Case 4:23-cv-00035 Document 3-18 Filed on 01/04/23 in TXSD Page 19 of 200

# Schedule 3A

## DIP Claims Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**BALLOT FOR ACCEPTING OR REJECTING**
**<u>THE DEBTORS' CHAPTER 11 PLAN</u>**

**CLASS 3 – DIP CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE BALLOTING AGENT BY APRIL 27, 2020, AT 5:00 P.M., PREVAILING CENTRAL TIME (THE "<u>VOTING DEADLINE</u>").**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code section 1125, by entry of an order on **<u>April [9], 2020</u>** (the "<u>Disclosure Statement Order</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

You are receiving this Class 3 DIP Claims ballot (this "Ballot") because you are a Holder of a DIP Claim as of **April 8, 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Prime Clerk LLC (the "Balloting Agent"), at no charge by: (i) accessing the Debtors' restructuring website at http://cases.primeclerk.com/sanchezenergy; (ii) writing to Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) calling (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (international); or (iv) emailing sanchezballots@primeclerk.com; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Balloting Agent ***immediately*** at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 3 DIP Claims under the Plan.

**ITEM 1. CLAIM AMOUNT FOR VOTING PURPOSES.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Class 3 DIP Claim in the following aggregate unpaid amount:[2]

| |
|---|
| $ ____________________________ |

**ITEM 2. VOTE ON PLAN.**

The Holder of the Class 3 DIP Claim set forth in Item 1 votes to (please check one):

| **ACCEPT THE PLAN** | **REJECT THE PLAN** |
|---|---|
| ☐ | ☐ |

2 For voting purposes only, subject to tabulation rules.

Any Ballot that is executed by the Holder of a Claim but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**ITEM 3. CERTIFICATION.**

By signing this Ballot, the undersigned Holder certifies to the Bankruptcy Court and the Debtors:

a. that, as of the Voting Record Date, either: (i) the Entity is the Holder of the Class 3 DIP Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Class 3 DIP Claim being voted;

b. that the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the Entity has cast the same vote with respect to all Class 3 DIP Claims; and

d. that no other Ballots with respect to the amount of the Class 3 DIP Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 3 DIP Claim, then any such earlier Ballots are hereby revoked.

| | |
|---|---|
| Name of Claim Holder (Print or Type): | ______________________________ |
| Social Security or Federal Tax I.D. No. (Optional): | ______________________________ |
| Signature: | ______________________________ |
| Name of Signatory: | ______________________________ |
| If Authorized Agent of Claimant, Title of Agent: | ______________________________ |
| Street Address: | ______________________________ |
| City, State, and Zip Code: | ______________________________ |
| Telephone Number: | ______________________________ |
| Email Address: | ______________________________ |
| Date Completed: | ______________________________ |

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Moreover, this Ballot shall not constitute or be deemed to be proof of claim or an assertion of a claim.

[*Remainder of Page Intentionally Left Blank, Continued on Next Page*]

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY BY *ONLY ONE* OF THE FOLLOWING RETURN METHODS:**

Case 4:23-cv-00358 Document 6-18 Filed on 04/19/23 in TXSD Page 25 of 200

**<u>If by electronic, online submission</u>:**

**The Balloting Agent will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit http://cases.primeclerk.com/sanchezenergy, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:______________________________________________**

**The Balloting Agent's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Balloting Portal should NOT also submit a paper Ballot.**

**If your Ballot is not received by the Balloting Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.**

**If by e-mail:**

The Balloting Agent will accept a scan of the completed signed Ballot at <u>sanchezballots@primeclerk.com</u>.

**<u>If by U.S. Postal Service mail, overnight delivery or personal delivery by hand</u>:**

Sanchez Ballot Processing,
c/o Prime Clerk LLC,
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1. The Debtors are soliciting the votes of holders of Claims with respect to the Plan attached to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable, copies of which also accompany the Ballot.

2. The Court may confirm the Plan and thereby bind you by the terms of the Plan. Please review the Disclosure Statement for more information.

3. In order for your vote to count, you ***must either***: (a) complete and submit this hard copy Ballot, or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://cases.primeclerk.com/sanchezenergy. **Ballots will not be accepted by facsimile.**

4. **Use of Hard Copy Ballot**. To ensure that your Ballot is counted, you must:

   i. Complete and certify the amount of your Claim in Item 1;

   ii. Cast ONE vote to accept or reject the Plan by checking the proper box in Item 2;

   iii. Review and sign the certifications in Item 4;

   iv. Return your original Ballot in order for your vote to count.

      i. If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing, and provide proof of your authorization to so sign. In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

      ii. Please either return the original, completed Ballot to Prime Clerk **by U.S. Postal Service mail, overnight delivery or personal delivery by hand** in the pre-addressed, stamped envelope enclosed with this Ballot, or

      iii. Scan and e-mail the signed Ballot to sanchezballots@primeclerk.com.

**Ballots Should Be Returned to Prime Clerk to the Below Address Prior to the Voting Deadline:**

**Sanchez Ballot Processing,**
**c/o Prime Clerk LLC,**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

**OR VIA E-MAIL TO:** sanchezballots@primeclerk.com

5. **Use of Online Ballot Portal**. To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at http://cases.primeclerk.com/sanchezenergy. You will need to enter your unique E-Ballot identification number indicated above. **Ballots will not be accepted by facsimile**.

6. Your Ballot ***must*** be returned to Prime Clerk so as to be ***actually received*** by the Balloting Agent on or before the Voting Deadline. **The Voting Deadline is April 27, 2020, at 5:00 p.m.**, prevailing Central Time.

7. You must vote all of your Claims within a particular class either to accept or reject the Plan and may **not** split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, if a holder has multiple Claims, within the same Class the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

8. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise. The method of delivery of Ballots to the Balloting Agent is at the election and risk of each Holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the originally executed Ballot. In all cases, Holders should allow sufficient time to assure timely delivery. **No Ballot should be sent to any of the Debtors, the Debtors' agents (other than Prime Clerk), or the Debtors' financial or legal advisors, and if so sent will not be counted**.

9. If multiple Ballots are received from the same person with respect to the same Claims prior to the Voting Deadline, the last valid Ballot timely received will supersede and revoke any earlier received Ballot.

10. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor Prime Clerk will accept delivery of any such certificates or instruments surrendered together with a Ballot.

11. This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission of a Claim.

12. If you hold Claims in more than one Class under the Plan or in multiple accounts, you may receive more than one Ballot coded for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you received.

13. The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the

identification of the Holder of the Claim; (b) any Ballot that was transmitted by means other than as specifically set forth in the ballots; (c) any Ballot cast by an entity that is not entitled to vote on the Plan; (d) any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Balloting Agent), or the Debtors' financial or legal advisors instead of the Balloting Agent; (e) any unsigned Ballot; and (f) any Ballot not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan.

14. If you believe you have received the wrong Ballot, you should contact Prime Clerk immediately at (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (international).

**PLEASE RETURN YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT PRIME CLERK AT (844) 232-0067 (U.S. AND CANADA) OR (917) 942-6393 (INTERNATIONAL).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.**

PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.

**Schedule 3B**

**Form Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**BENEFICIAL HOLDER BALLOT FOR ACCEPTING OR REJECTING**
**THE DEBTORS' CHAPTER 11 PLAN**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**THE DEADLINE FOR THE RECEIPT OF BALLOTS AND MASTER BALLOTS IS APRIL 27, 2020, AT 5:00 P.M. PREVAILING CENTRAL TIME (THE "VOTING DEADLINE")**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE (AS DEFINED HEREIN)*, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE RECEIVED BY YOUR NOMINEE AND INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE.**

***IF YOUR BENEFICIAL HOLDER BALLOT WAS "PRE-VALIDATED" BY YOUR NOMINEE AND YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO THE BALLOTING AGENT (PRIME CLERK LLC)*, PLEASE COMPLETE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT BY THE VOTING DEADLINE.**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code section 1125, by entry of an order on **April 9, 2020** (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot for Beneficial Holders[2] (this "Beneficial Holder Ballot") because you are a Beneficial Holder of a Claim in the Class indicated on **Exhibit A** hereto as of **April 8, 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan. You can cast your vote through this Beneficial Holder Ballot and, in accordance with the instructions provided by your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), either: (i) return your completed Beneficial Holder Ballot to your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Holders of the Class of Claims indicated on **Exhibit A** hereto, or (ii) return your completed pre-validated Beneficial Holder Ballot directly to Prime Clerk LLC (the "Balloting Agent").

Your rights are described in the Disclosure Statement, which is available along with the Plan, Disclosure Statement Order, and certain other materials (collectively, the "Solicitation Materials") (a) at no charge by: (i) accessing the Debtors' restructuring website maintained by Prime Clerk LLC (the "Balloting Agent") at http://cases.primeclerk.com/sanchezenergy; (ii) writing to Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) calling (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (international); or (iv) emailing sanchezballots@primeclerk.com; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee ***immediately***.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class of Claims indicated on **Exhibit A** hereto, under the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

[2] A "Beneficial Holder" means a beneficial owner of publicly traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the respective indenture trustee.

**<u>ITEM 1.</u>** **<u>CLAIM AMOUNT FOR VOTING PURPOSES.</u>**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder of a Claim in the Class and CUSIP indicated on **<u>Exhibit A</u>** hereto in the following principal amount (insert amount in box below, unless otherwise completed by your Nominee):

| |
|---|
| $ ____________________________ |

**<u>ITEM 2.</u>** **<u>VOTE ON PLAN.</u>**

The Beneficial Holder of the Claim against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

| **<u>ACCEPT THE PLAN</u>** | **<u>REJECT THE PLAN</u>** |
|---|---|
| ☐ | ☐ |

Any Beneficial Holder Ballot that is executed by the Beneficial Holder of a Claim but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**<u>ITEM 3.</u>** **<u>OTHER BENEFICIAL HOLDER BALLOTS SUBMITTED</u>.**

By returning this Beneficial Holder Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that (i) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for the Claims identified in Item 1 owned by such Beneficial Holder, except as identified in the following table, and (ii) *all* Beneficial Holder Ballots submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

| **Account Number with Nominee of Other Claims Voted** | **Name of Nominee through which You Held Other Claims Voted** | **CUSIP Number or Description of Other Claims Voted** | **Principal Amount of Other Claims Voted** |
|---|---|---|---|
| 1. | | | $ |
| 2. | | | $ |
| 3. | | | $ |

[Plan Class and CUSIP Indicated on **<u>Exhibit A</u>** hereto]

**ITEM 4.** **CERTIFICATION.**

By signing this Beneficial Holder Ballot, the undersigned Beneficial Holder certifies to the Bankruptcy Court and the Debtors:

a. that, as of the Voting Record Date, either: (i) the Entity is the Beneficial Holder of the Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Beneficial Holder of the Claims being voted;

b. that the Entity (or in the case of an authorized signatory, the Beneficial Holder) has accessed the Solicitation Materials and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the Entity has cast the same vote with respect to all Claims in a single Class; and

d. that no other Beneficial Holder Ballots with respect to the amount of the Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier Beneficial Holder Ballots are hereby revoked.

| | |
|---|---|
| Name of Beneficial Holder (Print or Type): | _______________ |
| Social Security or Federal Tax I.D. No. (Optional): | _______________ |
| Signature: | _______________ |
| Name of Signatory: | _______________ |
| If Authorized Agent of Claimant, Title of Agent: | _______________ |
| Street Address: | _______________ |
| City, State, and Zip Code: | _______________ |
| Telephone Number: | _______________ |
| Email Address: | _______________ |
| Date Completed: | _______________ |

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Moreover, this Beneficial Holder Ballot shall not constitute or be deemed to be a Proof of Claim or an assertion of a Claim.

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT

1. The Debtors are soliciting the votes of holders of Claims with respect to the Plan attached to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable, copies of which are available at http://cases.primeclerk.com/sanchezenergy.

2. The Court may confirm the Plan and thereby bind you by the terms of the Plan. Please review the Disclosure Statement for more information.

3. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot to your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so that the Master Ballot is actually received by the Balloting Agent by the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) sign and return the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee. **The Voting Deadline for the receipt of Master Ballots by the Balloting Agent is April 27, 2020, at 5:00 p.m., prevailing Central Time.** Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Balloting Agent on or before the Voting Deadline. If it is your Nominee's customary practice to collect your vote through the use of a "voting instruction form", online voting, phone, facsimile, e-mail, or other methods in lieu of (or in addition to) a Beneficial Holder Ballot, you are authorized to follow your Nominee's customary practice as instructed by your Nominee.

4. If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents, the Debtors' financial or legal advisors, and if so sent will not be counted.

5. The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Ballot that was transmitted by means other than as specifically set forth in the ballots; (c) any Ballot cast by an entity that is not entitled to vote on the Plan; (d) any Ballot cast for a Claim or Interest listed in the Debtors' schedules as contingent, unliquidated, or disputed for which the applicable Bar Date has passed and no proof of claim was timely filed; (e) any Ballot cast for a Claim or Interest that is subject to an objection other than a "reduce and allow" objection pending as of the Voting Deadline (unless temporarily allowed in accordance with the Disclosure Statement Order); (f) any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Balloting Agent), or the Debtors' financial or legal advisors instead of the Balloting

Agent; (g) any unsigned Ballot; and (h) any Ballot not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan.

6. You must vote all of your Claims within a particular Class either to accept or reject the Plan and may **not** split your vote. Accordingly, a Beneficial Holder Ballot that partially rejects and partially accepts the Plan will not be counted. Further, if a Holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes.

7. If multiple Beneficial Holder Ballots are received from the same person with respect to the same Claims prior to the Voting Deadline, the last valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballot.

8. This Beneficial Holder Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission of a Claim.

9. **Please be sure to sign and date your Beneficial Holder Ballot**. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.

10. If you hold Claims in more than one Class under the Plan or in multiple accounts, you may receive more than one Ballot coded for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you received.

11. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor Prime Clerk will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Ballot.

12. If you believe you have received the wrong Beneficial Holder Ballot, you should contact your Nominee immediately.

**PLEASE RETURN YOUR BENEFICIAL HOLDER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE. IF YOU HAVE ANY QUESTIONS ABOUT THE DEBTORS' CHAPTER 11 CASES OR UPCOMING HEARINGS, PLEASE CONTACT PRIME CLERK AT (844) 232-0067 (U.S. AND CANADA) OR (917) 942-6393 (INTERNATIONAL).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.**

PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

**Exhibit A**

**Please check one (1) box below to indicate the Plan Class and CUSIP/ISIN to which this Beneficial Holder Ballot pertains (or clearly indicate such information directly on the Beneficial Holder Ballot or on a schedule thereto). If you check more than one (1) box, you risk your vote being invalidated.**

| | | |
|---|---|---|
| **Class 4 (Secured Notes Claims)** | | |
| | 7.25% senior secured notes due February 2023 (144A) | CUSIP 79970YAE5<br>ISIN US79970YAE59 |
| | 7.25% senior secured notes due February 2023 (REG-S) | CUSIP U7967PAE7<br>ISIN USU7967PAE70 |
| **Class 5 (General Unsecured Claims)** | | |
| | 7.75% senior unsecured notes due June 2021 | CUSIP 79970YAB1<br>ISIN US79970YAB11 |
| | 7.75% senior unsecured notes due June 2021 (144A) | CUSIP 79970YAA3<br>ISIN US79970YAA38 |
| | 7.75% senior unsecured notes due June 2021 (REG-S) | CUSIP U7967PAA5<br>ISIN USU7967PAA58 |
| | 7.75% senior unsecured notes due June 2021 (REG-S) | CUSIP U7967PAB3<br>ISIN USU7967PAB32 |
| | 6.125% senior unsecured notes due January 2023 | CUSIP 79970YAD7<br>ISIN US79970YAD76 |
| | 6.125% senior unsecured notes due January 2023 (144A) | CUSIP 79970YAC9<br>ISIN US79970YAC93 |
| | 6.125% senior unsecured notes due January 2023 (REG-S) | CUSIP U7967PAD9<br>ISIN USU7967PAD97 |
| | 6.125% senior unsecured notes due January 2023 (REG-S) | CUSIP U7967PAC1<br>ISIN USU7967PAC15 |

## Schedule 3C

## Form Master Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**MASTER BALLOT FOR ACCEPTING OR REJECTING**
**<u>THE DEBTORS' CHAPTER 11 PLAN</u>**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.**

**THE MASTER BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE BALLOTING AGENT BY APRIL 27, 2020, AT 5:00 P.M., PREVAILING CENTRAL TIME (THE "<u>VOTING DEADLINE</u>").**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code section 1125, by entry of an order on April [9], 2020 (the "<u>Disclosure Statement Order</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

Case 20-33233 Document 631-1 Filed in TXSB on 04/07/20 Page 40 of 200

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) for one or more Beneficial Holders[2] of Claims indicated on **Exhibit A** hereto as of **April 8, 2020** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy Holder of a Nominee for certain Beneficial Holders of the Claims indicated on Exhibit A hereto, to transmit to the Balloting Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan.** This Master Ballot may not be used for any purpose other than for submitting votes with respect to the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which is available along with the Plan, Disclosure Statement Order, and certain other materials (collectively, the "Solicitation Materials") (a) at no charge by: (i) accessing the Debtors' restructuring website maintained by Prime Clerk LLC (the "Balloting Agent") at http://cases.primeclerk.com/sanchezenergy; (ii) writing to Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) calling (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (international); or (iv) emailing sanchezballots@primeclerk.com; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Master Ballot in error, please contact the Balloting Agent ***immediately*** at the address, telephone number, or email address set forth above.

**THE VOTES TRANSMITTED ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF CLAIMS SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLAIM.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form", online voting, phone, facsimile, e-mail, or other methods in lieu of (or in addition to) a Beneficial Holder Ballot.

The Court may confirm the Plan and thereby bind all Holders of Claims and Interests. **To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Balloting Agent *actually receives* it on or before the Voting Deadline.**

**THE VOTING DEADLINE IS ON APRIL 27, 2020, AT 5:00 P.M., PREVAILING CENTRAL TIME.**

2 A "Beneficial Holder" means a beneficial owner of publicly traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the respective indenture trustee.

**ITEM 1. CERTIFICATION OF AUTHORITY TO VOTE.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

- ☐ is a Nominee for the Beneficial Holders of the aggregate amount of the Claims listed in Item 2 below and is the record Holder of such bonds; or
- ☐ is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the aggregate amount of the Claims listed in Item 2 below; or
- ☐ has been granted a proxy (an original of which is annexed hereto) from (a) a Nominee or (b) a Beneficial Holder, that is the registered holder of the aggregate amount of the Class Claims listed in Item 2 below;

and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Claims described in Item 2 below.

**ITEM 2. CLAIMS VOTE ON PLAN.**

The undersigned transmits the following votes and releases of Beneficial Holders of Claims in the Class and CUSIP indicated on **Exhibit A** hereto and certifies that the following Beneficial Holders of Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, ballots (the "Ballots") casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table. Please note that each Beneficial Holder must vote all such Beneficial Holder's Claims to accept or reject the Plan and may not split such vote. Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

| Your Customer Account Number for Each Beneficial Owner of Claims | Principal Amount Held as of Voting Record Date | Indicated the vote cast on the Beneficial Holder Ballot in Item 2 by checking the appropriate box below | |
|---|---|---|---|
| | | Accept the Plan | Reject the Plan |
| 1. | $ | | |
| 2. | $ | | |
| 3. | $ | | |
| 4. | $ | | |
| 5. | $ | | |
| 6. | $ | | |
| TOTALS: | $ | | |

**ITEM 3.** **OTHER BALLOTS SUBMITTED BY BENEFICIAL HOLDERS.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 3 of the Beneficial Holder Ballot:

| Your Customer Account Number for Each Beneficial Owner Who Completed Item 3 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Your Customer's Account Number with Other Nominee | Name of Other Nominee | CUSIP Number or Description of Other Claims Voted | Principal Amount of Other Class Claims Voted |
| 1. | | | | $ |
| 2. | | | | $ |

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

| | | | | |
|---|---|---|---|---|
| 3. | | | | $ |
| 4. | | | | $ |
| 5. | | | | $ |
| 6. | | | | $ |
| 7. | | | | $ |
| 8. | | | | $ |
| 9. | | | | $ |
| 10. | | | | $ |

**ITEM 5.** **CERTIFICATION.**

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

a. it has reviewed the Solicitation Materials, the Master Ballots, and the Beneficial Holder Ballots and has delivered the same (or otherwise conveyed the pertinent information) to the Beneficial Holders of Claims listed in Item 2 above;

b. it has received a completed and signed Beneficial Holder Ballot (or other appropriate communication conveying a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

c. it is the registered Holder of all Claims listed in Item 2 above being voted, or it has been authorized by each Beneficial Holder of Claims listed in Item 2 above to vote on the Plan;

d. no other Master Ballots with respect to the same Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier Master Ballots are hereby revoked;

e. it has properly disclosed: (a) the number of Beneficial Holder of Claims who completed the Beneficial Holder Ballots; (b) the respective amounts of the Claims owned, as the case may be, by each Beneficial Holder of Claims who completed a Beneficial Holder Ballot; (c) each such Beneficial Holder of Claims' respective vote concerning the Plan; (e) each such Beneficial Holder of Claims' certification as to other Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder of Claims; and

f. it will maintain ballots and evidence of separate transactions returned by Beneficial Holder of Claims (whether properly completed or defective) for at

least one (1) year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

[*Remainder of Page Intentionally Left Blank, Continued Below*]

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

Case 19-34508 Document 1318 Filed in TXSB on 03/04/20 Page 214 of 252

| | |
|---|---|
| Name of Holder (Print or Type): | ______________________ |
| Participant Number: | ______________________ |
| Name of Proxy Holder or Agent for Nominee (if applicable): | ______________________ |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ |
| Street Address: | ______________________ |
| City, State, and Zip Code: | ______________________ |
| Telephone Number: | ______________________ |
| Email Address: | ______________________ |
| Date Completed: | ______________________ |

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY BY *ONLY ONE* OF THE FOLLOWING RETURN METHODS:**

**By mail, courier, or personal delivery, to:**

Sanchez Ballot Processing,
c/o Prime Clerk LLC,
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

**Via electronic mail service to:** sanchezballots@primeclerk.com

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

Case 4:22-cv-00358 Document 13-1 Filed on 03/28/22 in TXSD Page 217 of 252

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1. The Debtors are soliciting the votes of holders of Claims with respect to the Plan attached to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable, accessible at http://cases.primeclerk.com/sanchezenergy.

2. The Court may confirm the Plan and thereby bind the Holders by the terms of the Plan. Please review the Disclosure Statement for more information.

3. You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and to collect votes from Beneficial Holders through online voting or by phone, facsimile, or other electronic means. Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Balloting Agent, a Master Ballot that reflects the vote of such Beneficial Holders by April 27, 2020, at 5:00 p.m., prevailing Central Time.

4. If a Nominee is transmitting the votes of any Beneficial Holder of Claims other than itself, the Nominee may either:

   i. "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting within three (3) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Balloting Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Balloting Agent. A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date.

   ii. Within three (3) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective

owners on a Master Ballot that will be provided to the Nominee separately by the Balloting Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Balloting Agent. The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Balloting Agent so that the Master Ballot is actually received by the Balloting Agent on or before the Voting Deadline. For the avoidance of doubt, a Nominee is authorized to circulate the information contained in the Solicitation Package and Beneficial Holder Ballot to its Beneficial Holder client(s) in accordance with its customary practices, including the use of a "voting instruction form," phone, facsimile, or other electronic means in lieu of (or in addition to) a Beneficial Holder Ballot, and the Nominee is similarly authorized to collect votes from Beneficial Holders through such "voting information form," online voting or by phone, facsimile, or other electronic means.

5. With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Balloting Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan. You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

   The Master Ballot must be returned to the Balloting Agent so as to be actually received by the Balloting Agent on or before the Voting Deadline. The Voting Deadline is **April 27, 2020, at 5:00 p.m., prevailing Central Time**.

6. If a Master Ballot is received ***after*** the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors. Additionally, the following Master Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Master Ballot that was transmitted by means other than as specifically set forth in the ballots; (c) any Master Ballot cast by an entity that is not entitled to vote on the Plan; (d) any Master Ballot cast for a Claim or Interest listed in the Debtors' schedules as contingent, unliquidated, or disputed for which the applicable Bar Date has passed and no proof of claim was timely filed; (e) any Master Ballot cast for a Claim or Interest that is subject to an objection other than a "reduce and allow" objection pending as of the Voting Deadline (unless temporarily allowed in accordance with the Disclosure Statement Order); (f) any Master Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Balloting Agent), or the Debtors' financial or legal advisors instead of the Balloting Agent; (g) any unsigned Ballot; and (h) any Master Ballot not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan.

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

7. The method of delivery of Master Ballots to the Balloting Agent is at the election and risk of each Nominee. Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the originally executed Ballot. In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery. **No Master Ballot should be sent to any of the Debtors, the Debtors' agents (other than Prime Clerk), or the Debtors' financial or legal advisors, and if so sent will not be counted**.

8. If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Claim prior to the Voting Deadline, the last valid Master Ballot timely received will supersede and revoke any earlier received Master Ballot.

9. This Master Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission of a Claim.

10. **Please be sure to sign and date the Master Ballot.** You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Balloting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

11. If you are both the Nominee and the Beneficial Holder of any of the Claims indicated on **Exhibit A** of the Master Ballot or Beneficial Holder Ballot, as applicable, and you wish to vote such Claims, you may return a Beneficial Holder Ballot or Master Ballot for such Claims and you must vote your entire Claims in the same Class to either to accept or reject the Plan and may not split your vote. Accordingly, a Beneficial Holder Ballot, other than a Master Ballot with the votes of multiple Beneficial Holders, that partially rejects and partially accepts the Plan will not be counted.

12. The following additional rules shall apply to Master Ballots:

    i. Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims as of the Record Voting Date, as evidenced by the record and depository listings.

    ii. Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Holder Ballots, will not be counted in excess of the record amount of the Claims held by such Nominee;

    iii. To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Balloting Agent will attempt to reconcile discrepancies with the Nominee;

Case 4:23-cv-03058 Document 1-10 Filed on 09/28/23 in TXSD Page 49 of 200

iv. To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Balloting Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in Claims; and

v. For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating its holding in that particular account, although the Balloting Agent may be asked to adjust such principal amount to reflect the claim amount.

**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT PRIME CLERK AT (844) 232-0067 (U.S. AND CANADA) OR (917) 942-6393 (INTERNATIONAL).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.**

PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.

[Plan Class and CUSIP Indicated on **Exhibit A** hereto]

**Exhibit A**

**Please check one (1) box below to indicate the Plan Class and CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If more than one (1) box is checked, you risk the votes cast through this Master Ballot being invalidated.**

| | | |
|---|---|---|
| **Class 4 (Secured Notes Claims)** | | |
| | 7.25% senior secured notes due February 2023 (144A) | CUSIP 79970YAE5<br>ISIN US79970YAE59 |
| | 7.25% senior secured notes due February 2023 (REG-S) | CUSIP U7967PAE7<br>ISIN USU7967PAE70 |
| **Class 5 (General Unsecured Claims)** | | |
| | 7.75% senior unsecured notes due June 2021 | CUSIP 79970YAB1<br>ISIN US79970YAB11 |
| | 7.75% senior unsecured notes due June 2021 (144A) | CUSIP 79970YAA3<br>ISIN US79970YAA38 |
| | 7.75% senior unsecured notes due June 2021 (REG-S) | CUSIP U7967PAA5<br>ISIN USU7967PAA58 |
| | 7.75% senior unsecured notes due June 2021 (REG-S) | CUSIP U7967PAB3<br>ISIN USU7967PAB32 |
| | 6.125% senior unsecured notes due January 2023 | CUSIP 79970YAD7<br>ISIN US79970YAD76 |
| | 6.125% senior unsecured notes due January 2023 (144A) | CUSIP 79970YAC9<br>ISIN US79970YAC93 |
| | 6.125% senior unsecured notes due January 2023 (REG-S) | CUSIP U7967PAD9<br>ISIN USU7967PAD97 |
| | 6.125% senior unsecured notes due January 2023 (REG-S) | CUSIP U7967PAC1<br>ISIN USU7967PAC15 |

# Schedule 3D

## Form General Unsecured Creditor Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**BALLOT FOR ACCEPTING OR REJECTING**
**THE DEBTORS' CHAPTER 11 PLAN**

**CLASS 5 – GENERAL UNSECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE BALLOTING AGENT BY APRIL 27, 2020, AT 5:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "Plan") as set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as may be amended from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code section 1125, by entry of an order on April **[9]**, 2020 (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

Case 20-34035 Document 68-8 Filed in TXSB on 04/28/20 Page 53 of 200

You are receiving this Class 5—General Unsecured Claims ballot (this "Class 5 GUC Ballot") because you are a Holder of a General Unsecured Claim in Class 5 as of **April 8, 2020** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement, which is available along with the Plan, Disclosure Statement Order, and certain other materials (collectively, the "Solicitation Materials") (a) at no charge by: (i) accessing the Debtors' restructuring website maintained by Prime Clerk LLC (the "Balloting Agent") at http://cases.primeclerk.com/sanchezenergy; (ii) writing to Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) calling (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (international); or (iv) emailing sanchezballots@primeclerk.com; or (b) for a fee via PACER at http://www.txs.uscourts.gov/bankruptcy.

This Class 5 GUC Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class 5 GUC Ballot in error, or if you believe that you have received the wrong ballot, please contact the Balloting Agent ***immediately*** at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5 General Unsecured Claims under the Plan. If you hold Claims in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**ITEM 1. CLAIM AMOUNT FOR VOTING PURPOSES.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Class 5 General Unsecured Claim in the following aggregate unpaid amount:[2]

$ ______________________________

**ITEM 2. VOTE ON PLAN.**

The Holder of the Class 5 General Unsecured Claim set forth in Item 1 votes to (please check one):

| **ACCEPT THE PLAN** | **REJECT THE PLAN** |
|---|---|
| ☐ | ☐ |

2 For voting purposes only, subject to tabulation rules.

Case 4:23-cv-00358 Document 1-10 Filed on 01/31/23 in TXSD Page 54 of 200

Any Class 5 GUC Ballot that is executed by the Holder of a Claim but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**ITEM 3.** **CERTIFICATION.**

By signing this Class 5 GUC Ballot, the undersigned Holder certifies to the Bankruptcy Court and the Debtors:

a. that, as of the Voting Record Date, either: (i) the Entity is the Holder of the Class 5 General Unsecured Claim being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Class 5 General Unsecured Claim being voted;

b. that the Entity (or in the case of an authorized signatory, the Holder) has accessed the Solicitation Materials and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the Entity has cast the same vote with respect to all Class 5 General Unsecured Claims in a single Class; and

d. that no other Class 5 GUC Ballots with respect to the amount of the Class 5 General Unsecured Claims identified in Item 1 have been cast or, if any other Class 5 GUC Ballots have been cast with respect to such Class 5 General Unsecured Claims, then any such earlier Class 5 GUC Ballots are hereby revoked.

Case 4:23-cv-00358 Document 8-1 Filed on 10/19/23 in TXSD Page 55 of 200

| | |
|---|---|
| Name of Claim Holder (Print or Type): | ______________________ |
| Social Security or Federal Tax I.D. No. (Optional): | ______________________ |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ |
| If Authorized Agent of Claimant, Title of Agent: | ______________________ |
| Street Address: | ______________________ |
| City, State, and Zip Code: | ______________________ |
| Telephone Number: | ______________________ |
| Email Address: | ______________________ |
| Date Completed: | ______________________ |

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Moreover, this Ballot shall not constitute or be deemed to be proof of claim or an assertion of a claim.

[*Remainder of Page Intentionally Left Blank, Continued on Next Page*]

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY BY *ONLY ONE* OF THE FOLLOWING RETURN METHODS:**

**If by electronic, online submission:**

**The Balloting Agent will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit http://cases.primeclerk.com/sanchezenergy, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:________________________________________________**

**The Balloting Agent's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Balloting Portal should NOT also submit a paper Ballot.**

**If your Ballot is not received by the Balloting Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.**

**If by U.S. Postal Service mail:**

Sanchez Ballot Processing,
c/o Prime Clerk LLC,
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

**If by overnight delivery or personal delivery by hand:**

Sanchez Ballot Processing,
c/o Prime Clerk LLC,
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

Case 19-34508 Document 681-8 Filed in TXSB on 12/04/19 Page 57 of 200

## INSTRUCTIONS FOR COMPLETING THIS CLASS 5 GUC BALLOT

1. The Debtors are soliciting the votes of holders of Claims with respect to the Plan attached to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable, copies of which are accessible at http://cases.primeclerk.com/sanchezenergy.

2. The Court may confirm the Plan and thereby bind you by the terms of the Plan. Please review the Disclosure Statement for more information.

3. In order for your vote to count, you ***must either***: (a) complete and submit this hard copy Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://cases.primeclerk.com/sanchezenergy. **Ballots will not be accepted by e-mail or facsimile.**

4. **Use of Hard Copy Ballot**. To ensure that your hard copy Ballot is counted, you must:

   i. Complete and certify the amount of your Claim in Item 1;

   ii. Cast ONE vote to accept or reject the Plan by checking the proper box in Item 2;

   iii. Review and sign the certifications in Item 4;

   iv. Return your original Ballot in order for your vote to count;

   v. If you are completing the Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing, and provide proof of your authorization to so sign. In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot; and

   vi. Return the original, completed Ballot to Prime Clerk in the pre-addressed, stamped envelope enclosed with this Ballot.

**Ballots Should Be Returned to Prime Clerk to the Below Address Prior to the Voting Deadline:**

**Sanchez Ballot Processing,**
**c/o Prime Clerk LLC,**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

5. **<u>Use of Online Ballot Portal</u>**. To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case administration website at http://cases.primeclerk.com/sanchezenergy. You will need to enter your unique E-Ballot identification number indicated above. The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile or electronic means (other than the online portal)**.

6. Your Ballot ***must*** be returned to Prime Clerk so as to be ***actually received*** by the Balloting Agent on or before the Voting Deadline. **The Voting Deadline is April 27, 2020, at 5:00 p.m.**, prevailing Central Time.

7. You must vote all of your Claims within a particular Class either to accept or reject the Plan and may **not** split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, if a holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

8. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise. The method of delivery of Ballots to the Balloting Agent is at the election and risk of each Holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the originally executed Ballot. In all cases, Holders should allow sufficient time to assure timely delivery. **<u>No Ballot should be sent to any of the Debtors, the Debtors' agents (other than Prime Clerk), or the Debtors' financial or legal advisors, and if so sent will not be counted</u>**.

9. If multiple Ballots are received from the same person with respect to the same Claims prior to the Voting Deadline, the last valid Ballot timely received will supersede and revoke any earlier received Ballot.

10. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor Prime Clerk will accept delivery of any such certificates or instruments surrendered together with a Ballot.

11. This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission of a Claim.

12. If you hold Claims in more than one Class under the Plan or in multiple accounts, you may receive more than one Ballot coded for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you received.

13. The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Ballot that was transmitted by means other than as specifically set forth in the ballots; (c) any Ballot cast by an entity that is not

Case 22-90035 Document 683-1 Filed in TXSB on 11/23/22 Page 228 of 252

entitled to vote on the Plan; (d) any Ballot cast for a Claim or Interest listed in the Debtors' schedules as contingent, unliquidated, or disputed for which the applicable Bar Date has passed and no proof of claim was timely filed; (e) any Ballot cast for a Claim or Interest that is subject to an objection other than a "reduce and allow" objection pending as of the Voting Deadline (unless temporarily allowed in accordance with the Disclosure Statement Order); (f) any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Balloting Agent), or the Debtors' financial or legal advisors instead of the Balloting Agent; (g) any unsigned Ballot; and (h) any Ballot not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan.

14. If you believe you have received the wrong Ballot, you should contact Prime Clerk immediately at (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (international).

**PLEASE RETURN YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT PRIME CLERK AT (844) 232-0067 (U.S. AND CANADA) OR (917) 942-6393 (INTERNATIONAL).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE COURT.**

PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.

# <u>Schedule 4</u>

## Combined Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF HEARING TO CONSIDER (A) THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION

**PLEASE TAKE NOTICE THAT** on April [9], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (a) authorizing Sanchez Energy Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* (the "Disclosure Statement") as, together with the Disclosure Statement Supplement, containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the supplemental solicitation materials and documents to be included in the solicitation package; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing") will commence on **April 30, 2020 at 9:00 a.m.** prevailing Central Time, before the Honorable Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas 77002.

**Please be advised: The Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court, by agenda filed with the Court, or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**IMPORTANT INFORMATION REGARDING VOTING ON THE PLAN**

**Voting Record Date**. The voting record date is **April 8, 2020** (the "Voting Record Date"), which is the date for determining which Holders of Claims in Class 3 are entitled to vote on the Plan.

**Voting Deadline**. The deadline for voting on the Plan is on **April 27, 2020, at 5:00 p.m.**, prevailing Central Time (the "Voting Deadline"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' balloting agent, Prime Clerk LLC (the "Balloting Agent") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote**.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

| |
|---|
| **ARTICLE VIII** OF THE PLAN CONTAINS EXCULPATION AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. |

**Plan Objection Deadline.** The deadline for filing objections to the Plan is **April 27, 2020, at 5:00 p.m.**, prevailing Central Time (the "Plan Objection Deadline"). All objections to the relief sought at the Combined Hearing must: (a) be in writing; (b) conform to the Bankruptcy Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Claims held or asserted by the objector against the Debtors' Estates or property; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (e) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before the Plan Objection Deadline:

(i) counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), Jason Rubin (jrubin@akingump.com), and James Savin (jsavin@akingump.com);

(ii) counsel to the Debtors, Jackson Walker LLP, Attn: Matthew D. Cavenaugh (mcavenaugh@jw.com) and Elizabeth C. Freeman (efreeman@jw.com);

(iii) the Office of the U.S. Trustee for the Southern District of Texas, Attn: Hector Duran (hector.duran.jr@usdoj.gov) and Stephen Statham (stephen.statham@usdoj.gov);

(iv) counsel to the Official Committee of Unsecured Creditors, Milbank LLP, Attn: Evan Fleck (efleck@milbank.com);

(v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP, Attn: Jonathan I. Levine (jonathan.levine@arnoldporter.com);

(vi) counsel to the Ad Hoc Group of Secured Noteholders, Morrison Foerster LLP, Attn: Dennis Jenkins (djenkins@mofo.com); and

(vii) counsel to the Ad Hoc Group of Unsecured Noteholders, Quinn Emanuel Urquhart & Sullivan LLP, Attn: Benjamin Finestone (benjaminfinestone@quinnemanuel.com).

**ADDITIONAL INFORMATION**

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials), please feel free to contact the Debtors' Balloting Agent, by: (a) visiting the Debtors' restructuring website at: https://cases.primeclerk.com/sanchezenergy; (b) writing Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 E. 42nd Street, Suite 1440, New York, NY 10165; (c) emailing sanchezballots@primeclerk.com; and/or (d) calling the Debtors' restructuring hotline at: (844) 232-0067 (toll free) or (917) 942-6393 (international). You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov. Please be advised that the Balloting Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan.

**The Plan Supplement**. The Debtors will file the Plan Supplement on or before April [22], 2020, and will serve notice on all Holders of Claims entitled to vote on the Plan, which will: (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement. Notwithstanding the foregoing, the Debtors have the right to amend and supplement the documents contained in, and exhibits to, the Plan Supplement through the Effective Date, in accordance with the terms of the Plan.

**BINDING NATURE OF THE PLAN**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS OR INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

Houston, Texas
Dated: April __, 2020

/s/
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth Freeman (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4284
Facsimile: (713) 308-4184
mcavenaugh@jw.com
efreeman@jw.com

*Counsel for the Debtors and*
*Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
mbrimmage@akingump.com
llawrence@akingump.com

- and -

Ira S. Dizengoff (*pro hac vice*)
Lisa Beckerman (*pro hac vice*)
Jason P. Rubin (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jrubin@akingump.com

- and -

James Savin (*pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jsavin@akingump.com

*Counsel for the Debtors and*
*Debtors in Possession*

# Schedule 5A

## Presumed to Accept Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**NON-VOTING STATUS NOTICE WITH RESPECT TO UNIMPAIRED CLASSES PRESUMED TO ACCEPT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SANCHEZ ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**PLEASE TAKE NOTICE THAT** on April [9], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. ___] (the "Disclosure Statement Order") that, among other things: (a) conditionally approved the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, Disclosure Statement Order, the Plan, and other documents and materials included in the Solicitation Package may be obtained by (a) accessing the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy, (b) writing to the Balloting Agent at Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) calling the Balloting Agent's toll-free information line with respect to the Debtors at (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (International), or (d) emailing sanchezballots@primeclerk.com. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because, pursuant to the terms of Article III of the Plan, and the applicable provisions of the Bankruptcy Code, your Claim(s) against the Debtors are Unimpaired and, therefore, pursuant to Bankruptcy Code § 1126(f), you are conclusively presumed to have accepted the Plan and are, therefore, not entitled to vote on the Plan. Accordingly, this notice and the Combined Hearing Notice are being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** the **Combined Hearing will commence on April 30, 2020, at 9:00 a.m., prevailing Central Time**, before Judge Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas, 77002.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **April 27, 2020, at 5:00 p.m., prevailing Central Time (the "Plan Objection Deadline")**. Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Claims held or asserted by the objector against the Debtors' Estates or property; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (e) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before the Plan Objection Deadline:

(i) counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), Jason Rubin (jrubin@akingump.com), and James Savin (jsavin@akingump.com);

(ii) counsel to the Debtors, Jackson Walker LLP, Attn: Matthew D. Cavenaugh (mcavenaugh@jw.com) and Elizabeth C. Freeman (efreeman@jw.com);

(iii) the Office of the U.S. Trustee for the Southern District of Texas, Attn: Hector Duran (hector.duran.jr@usdoj.gov) and Stephen Statham (stephen.statham@usdoj.gov);

(iv) counsel to the Official Committee of Unsecured Creditors, Milbank LLP, Attn: Evan Fleck (efleck@milbank.com);

(v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP, Attn: Jonathan I. Levine (jonathan.levine@arnoldporter.com);

(vi) counsel to the Ad Hoc Group of Secured Noteholders, Morrison Foerster LLP, Attn: Dennis Jenkins (djenkins@mofo.com); and

(vii) counsel to the Ad Hoc Group of Unsecured Noteholders, Quinn Emanuel Urquhart & Sullivan LLP, Attn: Benjamin Finestone (benjaminfinestone@quinnemanuel.com).

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claim(s), you should contact the Balloting Agent in accordance with the instructions provided above.

**Schedule 5B**

## Deemed to Reject Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**NON-VOTING STATUS NOTICE WITH RESPECT TO IMPAIRED CLASSES DEEMED TO REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SANCHEZ ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**PLEASE TAKE NOTICE THAT** on April [9], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. ___] (the "Disclosure Statement Order") that, among other things: (a) conditionally approved the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, Disclosure Statement Order, the Plan, and other documents and materials included in the Solicitation Package may be obtained by (a) accessing the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy, (b) writing to the Balloting Agent at Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) calling the Balloting Agent's toll-free information line with respect to the Debtors at (844) 232-0067 (U.S. and Canada) or (917) 942-6393 (International), or (d) emailing sanchezballots@primeclerk.com. You may also obtain copies of any pleadings filed in this chapter 11 case for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because, under the terms of Article III of the Plan, and the applicable provisions of the Bankruptcy Code, your Claim(s) against the Debtors are Impaired and pursuant to Bankruptcy Code § 1126(g), you are deemed to have rejected the Plan and are, therefore, not entitled to vote on the Plan. Accordingly, this notice and the Combined Hearing Notice are being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** the **Combined Hearing will commence on April 30, 2020 at 9:00 a.m., prevailing Central Time**, before Judge Marvin Isgur, in the United States Bankruptcy Court for the Southern District of Texas, located at 515 Rusk Street, Courtroom 404, Houston, Texas, 77002.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan **is April 27, 2020 at 5:00 p.m., prevailing Central Time (the "Plan Objection Deadline")**. Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Claims held or asserted by the objector against the Debtors' Estates or property; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (e) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before the Plan Objection Deadline:

(i) counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, Attn: Ira S. Dizengoff (idizengoff@akingump.com), Jason Rubin (jrubin@akingump.com), and James Savin (jsavin@akingump.com);

(ii) counsel to the Debtors, Jackson Walker LLP, Attn: Matthew D. Cavenaugh (mcavenaugh@jw.com) and Elizabeth C. Freeman (efreeman@jw.com);

(iii) the Office of the U.S. Trustee for the Southern District of Texas, Attn: Hector Duran (hector.duran.jr@usdoj.gov) and Stephen Statham (stephen.statham@usdoj.gov);

(iv) counsel to the Official Committee of Unsecured Creditors, Milbank LLP, Attn: Evan Fleck (efleck@milbank.com);

(v) counsel to the DIP Agent and Notes Trustee, Arnold & Porter Kaye Scholer LLP, Attn: Jonathan I. Levine (jonathan.levine@arnoldporter.com);

(vi) counsel to the Ad Hoc Group of Secured Noteholders, Morrison Foerster LLP, Attn: Dennis Jenkins (djenkins@mofo.com); and

(vii) counsel to the Ad Hoc Group of Unsecured Noteholders, Quinn Emanuel Urquhart & Sullivan LLP, Attn: Benjamin Finestone (benjaminfinestone@quinnemanuel.com).

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claim(s), you should contact the Balloting Agent in accordance with the instructions provided above.

# <u>Schedule 6</u>

## Assumption Notice

Case 4:22-cv-00335 Document 6-18 Filed on 04/04/23 in TXSD Page 247 of 252

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34506 (MI) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE TO CONTRACT COUNTERPARTIES OF ASSUMPTION, OR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE THAT** on April [9], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization; (III) Approving the Forms of Ballot and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. [●] (the "Disclosure Statement Order") that, among other things: (i) conditionally approved the adequacy of the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"); (ii) approved the Solicitation and Voting Procedures; (iii) approved the Voting Record Date; (iv) approved the manner and form of the Solicitation Packages and the materials contained therein; (v) approved the Plan Supplement Notice; (vi) approved the Non-Voting Status Notices; (vii) approved the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed pursuant to the Plan; (viii) approved the Voting and Tabulation Procedures; (ix) approved the Combined Hearing Notice; and (x) granted related relief; all as more fully set forth in the Motion.[2]

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "Combined Hearing") to approve the adequacy of the Disclosure Statement and confirm the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (the "Plan") will commence on April 30, 2020, at 9:00 a.m. (prevailing Central Time).

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the Schedule of Assumed Executory Contract and Unexpired Leases [Docket No. [●]] (the "Assumption Schedule") with the Court as part of the Plan Supplement on [●], 2020, as contemplated under the Plan. **The Debtors or Reorganized Debtors, as applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases and move it to the Schedule of Rejected Executory Contracts and Unexpired Leases until the later of (a) the date by which objections to the proposed assumption must be Filed or (b) if such objection is Filed, prior to the date of a decision by the Bankruptcy Court with respect to such objection.**

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to an Executory Contract or Unexpired Lease that is listed on the Assumption Schedule. Therefore, you are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors are proposing to assume the Executory Contract(s) and Unexpired Lease(s) listed in **Exhibit A** attached hereto to which you are a party.[3]

**PLEASE TAKE FURTHER NOTICE THAT** Bankruptcy Code section 365(b)(1) requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the assumed Executory Contact(s) and Unexpired Lease(s), which amounts are listed in **Exhibit A**. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you object to the proposed assumption or assumption and assignment or disagree with the proposed Cure Claim, you must file an objection with the Bankruptcy Court and serve it **no later than 11:59 p.m. (prevailing Central Time) on May 20, 2020** (the "Cure Objection Deadline"). Any objection must (a) be in writing; (b) conform to the Bankruptcy rules, the Bankruptcy local Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Cure Claims held or asserted by the objector against the Debtors' Estates or property; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification that would resolve such objection; and (e) be filed with the Court and served upon the following parties so as to be actually received on or before the Cure Objection Deadline: (i) Jackson Walker LLP, 1401

[3] Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan, the Plan Supplement, or each Debtors' schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Debtor(s) or Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtors or Reorganized Debtors, as applicable, expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, at any time through the Effective Date and (b) dispute Cure Claim asserted in connection with assumption of any Executory Contract or Unexpired Lease.

McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Matthew D. Cavenaugh, Elizabeth C. Freeman; (ii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Lisa Beckerman, Jason Rubin; Akin Gump Strauss Hauer & Feld LLP, 2001 K Street NW, Washington, District of Columbia 20006, Attn: James Savin; and (iii) Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019. Attn: Dennis Jenkins, Brett Miller; and (iv) each of the entities listed on the Master Service List (available on the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy/).

**PLEASE TAKE FURTHER NOTICE THAT** if no objection to (a) the Cure Claim(s) or (b) the proposed assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which you are a counterparty is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Claim as determined by the Debtor is correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Claim under the proposed assigned Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to any assumption or assumption and assignment of the Executory Contract or Unexpired Lease to which you are a counterparty.

**PLEASE TAKE FURTHER NOTICE THAT** assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtor assumes such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** on the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed assumed, in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases attached to the Plan Supplement; (2) those that have previously been rejected by a Final Order; (3) those that are the subject of a motion to reject an Executory Contract or Unexpired Lease that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

**PLEASE TAKE FURTHER NOTICE THAT** if you are a Holder of a Claim in a Voting Class as of the Voting Record Date, you shall receive a Solicitation Package in accordance with the Solicitation Procedures. The Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Plan, and any documents and materials included in the Solicitation Package may be obtained by contacting Prime Clerk LLC ("Prime Clerk"), the balloting agent retained by the Debtors in these chapter 11 cases, by: (a) accessing the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy/, (b) writing to the Balloting Agent at Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) calling the Balloting Agent's toll-free information line with respect to the

Debtors at (844) 232-0067. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

**PLEASE TAKE FURTHER NOTICE THAT** if you are not a Holder of a Claim in a Voting Class as of the Voting Record Date, you shall receive notice of non-voting status. The Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Plan, and any documents and materials included in the Solicitation Package may be obtained by contacting Prime Clerk, by: (a) accessing the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy/, (b) writing to the Balloting Agent at Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) calling the Balloting Agent's toll-free information line with respect to the Debtors at (844) 232-0067. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

**PLEASE REVIEW THE PLAN, THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT FOR DETAILS REGARDING THE POSSIBLE ASSUMPTION, ASSUMPTION AND ASSIGNMENT, AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

**YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE PLAN'S TREATMENT OF YOUR EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

| |
|---|
| **IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE DEBTORS' BALLOTING AGENT AT THE ABOVE INSTRUCTIONS.** |



25265791v.6

010225

# Exhibit A

Schedule of Contracts and Leases and Proposed Cure Cost

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure Cost |
|---|---|---|---|
| | | | |

## Schedule 7

## Rejection Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34506 (MI) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE TO CONTRACT COUNTERPARTIES OF**
**REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE THAT** on April [9], 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order Approving Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization; (III) Approving the Forms of Ballot, and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. [●]] (the "Disclosure Statement Order") that, among other things: (i) conditionally approved the adequacy of the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"); (ii) approved the Solicitation and Voting Procedures; (iii) approved the Voting Record Date; (iv) approved the manner and form of the Solicitation Packages and the materials contained therein; (v) approved the Plan Supplement Notice; (vi) approved the Non-Voting Status Notices; (vii) approved the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan; (viii) approved the Voting and Tabulation Procedures; (ix) approved the Combined Hearing Notice; and (x) granted related relief; all as more fully set forth in the Motion.[2]

**PLEASE TAKE FURTHER NOTICE THAT** the hearing (the "Combined Hearing") to approve the adequacy of the Disclosure Statement and confirm the *Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* [Docket No. [●]] (the "Plan") will commence on April 30, 2020, at 9:00 a.m. (prevailing Central Time).

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable.

Case 4:23-cv-00358 Document 8-1 Filed on 01/... in TXSD Page 81 of 200

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the [Schedule of Rejected Executory Contracts and Unexpired Leases] [Docket No. [●]] (the "Rejection Schedule") with the Court as part of the Plan Supplement on [April __, 2020], as contemplated under the Plan. **The Debtors or Reorganized Debtors, as applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases and move it to the Schedule of Assumed Executory Contracts and Unexpired Leases until the later of (a) the date by which objections to the proposed rejection must be Filed or (b) if such objection is Filed, prior to the date of a decision by the Bankruptcy Court with respect to such objection.**

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to an Executory Contract or Unexpired Lease that is listed on the Rejection Schedule. Therefore, you are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Rejection Schedule.

**PLEASE TAKE FURTHER NOTICE THAT** any objection to the Debtors' decision to reject the Executory Contract or Unexpired Lease must (a) be in writing; (b) conform to the Bankruptcy rules, the Bankruptcy local Rules, and any orders of the Court; (c) set forth the name and address of the objector and the nature and amount of Claims held or asserted by the objector against the Debtors' Estates or property; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification that would resolve such objection; and (e) be filed with the Court and served upon the following parties so as to be actually received **no later than 11:59 p.m. (prevailing Central Time) on May 20, 2020** (the "Objection Deadline"): (i) Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Matthew D. Cavenaugh, Elizabeth C. Freeman; (ii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn: Lisa Beckerman, Jason Rubin; Akin Gump Strauss Hauer & Feld LLP, 2001 K Street NW, Washington, District of Columbia 20006, Attn: James Savin; (iii) Morrison & Foerster LLP, 250 West 55th Street, New York, New York 10019, and (iv) each of the entities listed on the Master Service List (available on the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy/).

**PLEASE TAKE FURTHER NOTICE THAT** if you do not object to the proposed rejection of any Executory Contract or Unexpired Lease to which you are a counterparty by the Objection Deadline, then you will be forever barred, estopped, and enjoined from asserting a future objection with regard to any Executory Contract or Unexpired Lease to which you are a counterparty.

**PLEASE TAKE FURTHER NOTICE THAT** on the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed assumed, in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases attached to the Plan Supplement; (2) those that have previously been rejected by a Final Order; (3) those that are the subject of a motion to reject an Executory Contract or Unexpired Lease that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

**PLEASE TAKE FURTHER NOTICE THAT** if the Debtors reject an Executory Contract(s) or Unexpired Lease(s) to which you are a counterparty, you may be entitled to an unsecured claim for which a Proof of Claim must be filed. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) calendar days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the applicable Debtor, its Estate, or property of the foregoing parties without the need for any objection by the Debtor, or further notice to, or action, order, or approval of the Bankruptcy Court. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article II of the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE** that if you are a Holder of a Claim in a Voting Class as of the Voting Record Date, you shall receive a Solicitation Package in accordance with the Solicitation Procedures. The Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Plan, and any documents and materials included in the Solicitation Package may be obtained by contacting Prime Clerk LLC ("Prime Clerk"), the balloting agent retained by the Debtors in these chapter 11 cases, by: (a) accessing the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy/, (b) writing to the Balloting Agent at Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) calling the Balloting Agent's toll-free information line with respect to the Debtors at (844) 232-0067. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

**PLEASE TAKE FURTHER NOTICE THAT** if you are not a Holder of a Claim in a Voting Class as of the Voting Record Date, you shall receive notice of non-voting status. The Plan Supplement, the Disclosure Statement, the Disclosure Statement Order, the Plan, and any documents and materials included in the Solicitation Package may be obtained by contacting Prime Clerk, the Balloting Agent retained by the Debtors in these chapter 11 cases, by: (a) accessing the Balloting Agent's website at https://cases.primeclerk.com/sanchezenergy/, (b) writing to the Balloting Agent at Sanchez Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) calling the Balloting Agent's toll-free information line with respect to the Debtors at (844) 232-0067. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

**PLEASE REVIEW THE PLAN, THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT FOR DETAILS REGARDING THE POSSIBLE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

**YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE PLAN'S TREATMENT OF YOUR EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE DEBTORS' BALLOTING AGENT AT THE ABOVE INSTRUCTIONS.**

# EXHIBIT 4

ENTERED
04/30/2020

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34506 (MI) |
| Debtors. | ) | (Jointly Administered) |

**ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SANCHEZ ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

Upon the filing by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") of the *Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* [Docket No. 1205] on April 30, 2020 (the "Plan"),[2] a copy of which is attached as **Exhibit 1**, which Plan amends and replaces the previously filed plans of reorganization at Docket Nos. 1119 and 1149; and this Court previously having conditionally approved the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* [Docket No. 1124] (the "Disclosure Statement") and the solicitation procedures related to the Disclosure Statement and the solicitation of acceptances and rejections of the Plan, in each case pursuant to the *Order Approving Debtors' Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

*Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization; (III) Approving the Form of Ballot, and Notices in Connection Therewith; (VI) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. 1118], entered on April 9, 2020 (the "Solicitation Procedures Order"); and the Debtors having served the Disclosure Statement, ballots for holders of Claims entitled to vote on the Plan, and all required notices in compliance with the requirements and procedures set forth in the Solicitation Procedures Order, *see Affidavit Re: Mailings for the Period from April 10, 2020 through April 16, 2020* [Docket No. 1142]; and the Debtors having filed the documents comprising the Plan Supplement on April 25, 2020 and April 29, 2020 [Docket Nos. 1148, 1194, 1196, 1197]; and this Court having considered the record in these chapter 11 cases, the creditor support for the Plan evidenced in the *Declaration of Craig Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (the "Solicitation and Voting Declaration") [Docket No. 1181], filed on April 29, 2020, the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding Confirmation of the Plan, and the evidence regarding Confirmation of the Plan; and this Court having found that notice and opportunity for any party in interest to object to Confirmation has been adequate and appropriate as to all parties affected by the Plan and the transactions contemplated thereby; and a hearing on Confirmation of the Plan and the adequacy of the Disclosure Statement having commenced on April 30, 2020 (the "Combined Hearing"); and this Court having considered the sworn testimony of the witnesses proffered or called at the Combined Hearing, the exhibits admitted into evidence at the Combined Hearing, the arguments of counsel and other parties-in-interest presented at the Combined Hearing, and the objections filed or asserted with respect to final approval of the Disclosure Statement and/or Confirmation of the

Case 22-32457 Document 634 Filed in TXSB on 03/13/20 Page 4 of 71

Plan (the "Objections"); and after due deliberation, it is HEREBY FOUND AND ORDERED THAT:

1. The Disclosure Statement contains "adequate information" within the meaning of, and is approved on a final basis pursuant to, section 1125 of the Bankruptcy Code.

2. As described in and evidenced by the Solicitation and Voting Declaration, transmittal and service of the Solicitation Packages (as defined in the Solicitation Procedures Order) (collectively, the "Solicitation") was timely, adequate, appropriate, and sufficient under the circumstances. The Solicitation (a) was conducted in good faith, and (b) complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation.

3. Each of the Debtors has met the burden of proving each element of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Plan, including (a) all of the modifications to the Plan filed with this Court prior to or during the Combined Hearing and (b) all documents incorporated into the Plan through the Plan Supplement (including the final forms thereof to be filed on or before the Effective Date), satisfies all of the requirements of and is confirmed pursuant to section 1129 of the Bankruptcy Code.

4. Pursuant to a settlement between the Debtors, the DIP Lenders, the Creditors' Committee and the Unsecured Noteholder Ad Hoc Group (the "Settling Parties") stated on the record at the Combined Hearing, the Settling Parties stipulate for settlement purposes only that the enterprise value of the Reorganized Debtors on a going concern basis shall be deemed to be $85 million (the "Enterprise Value") for all purposes of confirmation, including section 1129 of the Bankruptcy Code. The Enterprise Value does not include the value of Debtors' Causes of Action,

and the Enterprise Value (excluding the value of such Causes of Action) shall be binding for purposes of the Lien-Related Litigation.

5. Any and all Objections to the final approval of the Disclosure Statement and/or Confirmation of the Plan that have not been withdrawn or resolved prior to or during the Combined Hearing are hereby overruled.

6. The documents contained in the Plan Supplement are an integral part of the Plan. The Debtors and the Reorganized Debtors (in each case, as applicable) are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan, including, but not limited to, (a) the implementation of the Restructuring Transactions; (b) the selection of the directors and officers for the Reorganized Debtors; (c) the adoption of the Management Incentive Plan, if any, by the Reorganized SN Board pursuant to Article IV.L of the Plan; (d) the issuance and distribution of the New Common Stock pursuant to Article IV.C of the Plan; (e) the entry into the New Organizational Documents pursuant to Article IV.I of the Plan; (f) the entry into the New Executive Employment Agreements; (g) the retention and employment by the Reorganized Debtors of certain members of the Debtors' current workforce and the payment of severance consistent with Article IV.K of the Plan; (h) the assumption of the D&O Liability Insurance Policies; and (i) the assumption of the Indemnification Obligations to indemnify any Indemnified Parties with respect to the Exculpated Claims.

7. The terms of the Plan, the Plan Supplement, and any exhibits thereto are incorporated herein by reference, and are an integral part of this order (the "Confirmation Order"). The terms of the Plan, the Plan Supplement, any exhibits thereto, and all other relevant and necessary documents to effectuate the Plan shall be effective and binding as of the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan,

the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision, it being the intent of this Court that the Plan, the Plan Supplement, and the exhibits thereto be confirmed in their entirety. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the applicable Plan Supplement document shall control. In the event of an inconsistency between this Confirmation Order and any of the Plan, the Disclosure Statement, or the Plan Supplement, this Confirmation Order shall control.

8. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan, including (a) any dispute regarding the treatment of any Intercompany Claims and (b) the Professional Fee Settlement. The compromise and settlement of all such Claims, Interests, Causes of Action, and controversies is hereby approved and found to be in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and fair, equitable and reasonable.

9. Except to the extent expressly provided otherwise in this Confirmation Order, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and shall be immediately effective on the Effective Date without further order or action by this

Case 19-34508 Document 682-10 Filed in TXSB on 08/24/20 Page 90 of 200

Court, any of the parties to such provisions, or any other Entity: (a) Exculpation (Article VIII.B); (b) Injunction (Article VIII.C); and (c) Release of Liens (Article VIII.E).

10. **Exculpation.** Notwithstanding anything in the Plan or this Confirmation Order to the contrary, and without limiting in any way the Exculpation in Article VIII.B of the Plan for the benefit of the Exculpated Parties, this paragraph 10 applies. If in a proceeding against one or more of the Sanchez Parties, but for the exculpation provisions in the Plan or this Confirmation Order, applicable non-bankruptcy law would have entitled one or more of Sanchez Parties to a claim against or a credit on account of the liability of any Exculpated Party, the obligation of any Sanchez Party to satisfy a judgment shall be reduced by the amount of any such credit or claim in the amount that would have existed under applicable non-bankruptcy law.

11. **Injunction.** Except to the extent expressly provided otherwise in this Confirmation Order, to the extent permitted by applicable law, and for the avoidance of doubt, pursuant to the Injunction set forth in Article VIII.C of the Plan, and without limiting any other provision of the Plan, all Entities that have held, hold, or may hold Claims or Interests that (1) have been released pursuant to the Plan, (2) shall be discharged pursuant to the Plan, or (3) are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in

connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

12. **Lien-Related Litigation.** The Lien-Related Litigation shall be adjudicated following the Effective Date by this Court pursuant to and in accordance with the terms of Article IV.D of the Plan.

13. There shall be no issuance and distribution of New Common Stock pursuant to the Post-Effective Date Equity Distribution except pursuant to an order entered by this Court with respect to or following the resolution of the Lien-Related Litigation. Any and all issues regarding the proper allocation of the Post-Effective Date Equity Distribution shall be determined by this Court in connection with the Lien-Related Litigation and consistent with the Final DIP Order and the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code, which determination regarding such allocation may include, among other things, the consideration of the value, if any, of any Causes of Action preserved by the Reorganized Debtors pursuant to the Plan and whether such value should be allocated to or offset by Secured Claims or Administrative Claims. The New Common Stock shall be issued pursuant to the Post-Effective Date Equity Distribution upon an order of this Court, which order shall designate the allocation of New Common Stock as between

the Holders of Allowed DIP Claims, if any, Holders of Allowed Secured Notes Claims, if any, and Holders of Allowed General Unsecured Claims, if any.

14. **Professional Fee Settlement**. The Professional Fee Settlement, as set forth in Article II.B of the Plan, is approved. Upon the Effective Date, the DIP Agent shall release the Carve-Out Trigger Notice Reserves to the Reorganized Debtors, and, with such funds and other funds as necessary, the Reorganized Debtors shall immediately fund the Professional Fee Settlement Reserve with the Professional Fee Settlement Reserve Amount, solely for the unpaid Professional Fee Claims of the Participating Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, and such funds shall be maintained in trust solely for the Participating Professionals and used to pay the amount of Professional Fee Claims owing to the Participating Professionals, as limited by the Professional Fee Settlement, within two (2) business days after such Professional Fee Claims are Allowed by an order of this Court. When all such Allowed amounts owing to Participating Professionals have been paid in full consistent with the Professional Fee Settlement, any remaining amount in the Professional Fee Settlement Reserve shall promptly be paid to the Reorganized Debtors without any further action or order of this Court.

15. If the Effective Date does not occur within 45 days of the Confirmation Date, except to the extent a Participating Professional agrees to a later date, (a) the Professional Fee Settlement shall be withdrawn, (b) the Participating Professionals shall reserve any and all rights under the Final DIP Order, the Bankruptcy Code and otherwise, and (c) all agreements not to seek reductions or to object to any Final Fee Applications of the Participating Professionals shall be withdrawn, and all rights of all parties are reserved.

16. Notwithstanding anything to the contrary in the Plan, including in Article II.B. thereof, the following settlement among the Committee, the Participating Committee's Professionals (as defined below), the Debtors, and the Secured Ad Hoc Group is hereby approved (the "Committee Professional Fee Settlement"):

(a) The "Participating Committee Professionals" are: Milbank LLP; Locke Lord LLP; Jefferies LLC; and FTI Consulting, Inc.

(b) The Participating Committee Professionals agree to limit the aggregate payments on account of their Professional Fee Claims (including amounts paid on an interim basis to date) to $24,000,000.00 (exclusive of Committee member expenses that are submitted with Participating Committee Professionals' fee statements for convenience). Participating Committee Professionals otherwise waive all rights to seek payment of any additional Professional Fee Claims from the Debtors or Reorganized Debtors, either as Administrative Claims or otherwise.

(c) The Participating Committee Professionals consent to the DIP Agent releasing the Carve-out Trigger Notice Reserves to the Reorganized Debtors on the Effective Date, provided that the Reorganized Debtors shall immediately fund the a reserve account (the "Committee Professional Fee Settlement Reserve") in an amount equal to $24,000,000.00 minus any amounts previously paid to the Participating Committee Professionals, solely for the unpaid Professional Fee Claims of the Participating Committee Professionals.

(d) The Committee Professional Fee Settlement Reserve shall be an interest-bearing escrow account (or a segregated account with similar protections as an escrow account, maintained in trust solely for the Participating Committee Professionals with the consent of the Participating Committee Professionals). Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. All fees and expenses of the escrow agent shall be paid from the interest accruing on funds in the Committee Professional Fee Settlement Reserve; provided that any fees and expenses due up from or in excess of the interest accruing on the funds in the Committee Professional Fee Settlement Reserve shall be paid by the Reorganized Debtors.

(e) The amount of Professional Fee Claims owing to the Participating Committee Professionals, as limited by the Committee Professional Fee Settlement, shall be paid in Cash to such Participating Committee Professionals by the Reorganized Debtors from the Committee Professional Fee Settlement Reserve within two (2) business days after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court. When all

such Allowed amounts owing to Participating Professionals have been paid in full consistent with the Committee Professional Fee Settlement, any remaining amount in the Committee Professional Fee Settlement Reserve shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

(f) No Fee Examiner shall be appointed or shall review the Final Fee Applications of the Participating Committee Professionals. The Professional Fee Claims of any Participating Committee Professional shall be Allowed in the event that no objection to such Final Fee Application is Filed within 21 days of the filing of such Final Fee Application in accordance with the Committee Professional Fee Settlement.

(g) The Debtors, Reorganized Debtor, and the Secured Ad Hoc Group, including each of its individual members, shall not (a) seek, directly or indirectly, any further reductions, discounts or concessions of any kind from the Participating Committee Professionals or (b) object, directly or indirectly, to any Final Fee Applications of any Participating Professional.

(h) If the Effective Date does not occur within 45 days of the Confirmation Date, (a) the Committee Professional Fee Settlement shall be withdrawn, (b) the Participating Committee Professionals shall reserve any and all rights under the Final DIP Order, the Bankruptcy Code and otherwise and (c) all agreements not to seek reductions or to object to any Final Fee Applications of the Participating Committee Professionals shall be withdrawn, and all rights of all parties are reserved.

17. **Executory Contracts and Unexpired Leases.** Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties and except as expressly otherwise provided in paragraphs 23-25 of this Confirmation Order, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date, notwithstanding the fact that the deadline to object to assumption or rejection of an Executory Contract or Unexpired Lease is May 20, 2020 (the "Contract Objection Deadline"), which may be after the Effective Date. Any Executory Contract or Unexpired Lease that is subject to an unresolved objection to the proposed assumption or rejection of such Executory Contract or Unexpired Lease that is filed prior to the Contract Objection Deadline shall not be deemed to be assumed or rejected, as applicable, until entry of an order resolving the dispute and

Case 22-90058 Document 68-32 Filed in TXSB on 09/26/22 Page 12 of 74

approving the assumption or rejection, as applicable, of such Executory Contract or Unexpired Lease or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty; *provided that* after the Effective Date, the Reorganized Debtors may settle any dispute regarding any Cure Claim without any further notice to any party or any action, order, or approval of this Court.

18. The Debtors or the Reorganized Debtors, as applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the *Schedule of Assumed Executory Contracts and Unexpired Leases* and move it to the *Schedule of Rejected Executory Contracts and Unexpired Leases* or remove an Executory Contract or Unexpired Lease from the *Schedule of Rejected Executory Contracts and Unexpired Leases* and move it to the *Schedule of Assumed Executory Contracts and Unexpired Leases*, as applicable, until the later of (a) the Contract Objection Deadline or (b) if an objection is Filed by the Contract Objection Deadline, prior to the date of a decision by this Court with respect to such objection. Any such objection shall be heard at a date determined by this Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim by the Contract Objection Deadline shall be deemed to have assented to such assumption or Cure Claim.

19. A Cure Claim, if any, under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan that is undisputed or, if disputed, either resolved consensually by the Reorganized Debtors and the counterparty to such Executory Contract or Unexpired Lease or by a Final Order shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, (a) by payment in Cash as soon as reasonably practicable following the later of the Effective Date and the order authorizing assumption, or (b) as otherwise agreed by the Reorganized Debtors and the counterparty to such Executory Contract or Unexpired Lease. For the avoidance of doubt, a Cure

Claim shall not include amounts that have been incurred as of the Effective Date but are not yet due and payable. Such amounts shall be paid by the Reorganized Debtors in the ordinary course of business subsequent to the Effective Date.

20. Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Any liabilities reflected in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of this Court or any other Entity.

21. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be Filed with this Court by no later than forty-five (45) calendar days after the date of entry of an order of this Court (including this Confirmation Order) approving such rejection or any other order of this Court establishing the date by which such Proofs of Claim must be Filed. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed as required by the preceding sentence shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of this Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully

satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

22. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, it is the intent of the Debtors to reject any Executory Contract or Unexpired Lease with SOG, SNMP, SN EF UnSub, LP, SN EF UnSub GP, LLC and SN EF UnSub Holdings, LLC that is not expressly assumed. For the avoidance of doubt, that certain Master Service Agreement between Sanchez Energy Corporation and SOG shall be deemed rejected as of the Effective Date. SOG is barred from issuing any new work orders, or taking any other action, on behalf of the Debtors or the Reorganized Debtors, as applicable.

23. **Executory Contract Counterparties**. Notwithstanding any other provision in this Confirmation Order or the Plan to the contrary, nothing in this Confirmation Order or the Plan (and neither the confirmation nor consummation of the Plan) shall eliminate, alter or impair (or otherwise prevent any Counterparty (as defined below) from asserting), any or all of the Counterparties' respective defenses, arguments or appellate rights to the extent relating to (a) any proposed assumption or rejection of any Executory Contract or Unexpired Lease with such Counterparty or real property interests of such Counterparty (including rights, defenses, or arguments that such agreements or interests, as applicable, constitute covenants running with the land not subject to assumption or rejection, do not constitute Executory Contracts or Unexpired Leases under the Bankruptcy Code and the terms of the Plan, or are not otherwise subject to assumption or rejection) and (b) the vesting of any property in the Reorganized Debtors free and clear of any real property interests of such Counterparty, including any covenants that run with the

land (notwithstanding anything herein to the contrary, whether the Bankruptcy Code and the United States Constitution would permit the Plan to discharge any such property interests and transfer such property free and clear of any such property interests is not being determined at this time and shall be adjudicated by the Court at a later date together with any related rejection or assumption disputes, and the rights, defenses and arguments of each party to such disputes are hereby fully preserved); *provided* that each Counterparty shall be required to assert such rights, defenses, or arguments in a written objection filed with this Court on or prior to the Contract Objection Deadline. For purposes of this Confirmation Order, "Counterparty" shall mean each of the following: (i) Occidental Petroleum Corporation, and each of its affiliates that have a contractual relationship with the Debtors, including Anadarko Petroleum Corporation, Anadarko E&P Onshore LLC, and Kerr-McGee Oil and Gas Onshore LP, (ii) Western Midstream Partners, LP, and each of its affiliates that have a contractual relationship with the Debtors, including Springfield Pipeline, LLC, (iii) GSO ST Holdings LP, and each of its affiliates that have a contractual relationship with the Debtors, (iv) GSO ST Holdings Associates LLC, and each of its affiliates that have a contractual relationship with the Debtors, (v) SNEF UnSub GP, LLC, (vi) SN EF UnSub LP, (vii) SN EF UnSub Holdings, LLC, (viii) Catarina Midstream, LLC, (ix) Carnero G&P LLC and its affiliates, (x) Eagle Ford TX LP, (xi) Venado Oil & Gas, LLC and each of its direct and indirect subsidiaries (including, without limitation, Venado EF L.P. and its subsidiaries, (xii) Gavilan Resources, LLC and its affiliates and predecessors in interest, (xiii) Seco Pipeline, LLC, (xiv) Sanchez Midstream Partners LP, and (xv) Sanchez Midstream Partners GP LLC, (xvi) Marathon Oil EF LLC and its affiliates or subsidiaries ("Marathon"), including but not limited to, Marathon's rights as successors-in-interest/assignees of Hilcorp Energy I, L.P. ("Hilcorp") under the Joint Operating Agreement dated December 28, 2009 by and between SEP Holdings II, LLC

and Hilcorp, (xvii) Archrock Partners Operating LLC and Archrock Services LP, (xviii) Plains South Texas Gathering, LLC and Plains Gas Solutions, LLC, (xix) Eagle Ford TX LP, (xx) TPL SouthTex Processing Company LP and TPL SouthTex Transmission Company LP, (xxi) Mitsui E&P Texas LP and Mitsui & Co. Energy Marketing & Services (USA), Inc., and (xxii) B.L. Stanley, Ltd., Worthey Properties, Ltd., Robert Edward Worthey Trust, Teressa Kountz Trust and Tonya Hedleston Trust in Webb County, Texas.

24. Except as agreed upon by the applicable Counterparty and the Reorganized Debtors, notwithstanding any other provision of this Order or the Plan, from the period commencing on the Effective Date through the date of the entry of an order of this Court resolving any and all disputes raised in a timely filed objection by one or more applicable Counterparties with this Court relating to the proposed assumption or rejection of any agreement, (i) such agreement shall continue as in effect immediately prior to the Effective Date, (ii) the terms of such agreement shall continue to apply to the applicable Reorganized Debtor and Counterparty in accordance with otherwise applicable law, without alteration or modification, including without limitation the obligation to pay all amounts due thereunder as and when due, and (iii) the relative obligations of the applicable Reorganized Debtor and Counterparty arising under such agreements during such time shall not be excused, relieved or otherwise impaired by the rejection of such agreements. Upon the Effective Date, the automatic stay shall not apply to limit the respective rights or remedies of the Counterparties or the Reorganized Debtors under such agreements, and nothing in this Order or the Plan shall prevent, alter, or impair any rights of the Reorganized Debtors or the Counterparties from exercising any and all rights afforded under such agreement (including cessation of services under the agreements) in the event of non-performance or breach by the other party or parties during such period, and any disputes arising out of or relating to the

same shall be heard by the Bankruptcy Court or any other court of competent jurisdiction. Notwithstanding anything to the contrary herein or in the Plan, including language in Article V.B. of the Plan, all Claims arising from the rejection of Executory Contracts and Unexpired Leases with the Counterparties shall be Allowed in accordance with applicable law and shall be classified in accordance therewith.

25. For any Executory Contract or Unexpired Lease removed from or added to the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases after the date of this Confirmation Order, the Contract Objection Deadline shall be extended to the date that is twenty-one (21) days after the date of such removal or addition.

26. **Retention of Defenses.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall prevent Sanchez Midstream Partners LP, Catarina Midstream, LLC, Sanchez Midstream Partners GP LLC, and Carnero G&P LLC (and its affiliates) from asserting any rights, defenses, and/or counterclaims against the Debtors and/or the Reorganized Debtors in defense of any Causes of Action retained by the Debtors and the Reorganized Debtors under the Plan and pursued by or on behalf of the Debtors and the Reorganized Debtors, including, but not limited to, any retained Causes of Action relating to the *Motion of the Official Committee of Unsecured Creditors for Leave, Standing, and Authority to Prosecute Claims on Behalf of the Debtors' Estates and for Related Relief* [Docket No. 1032]; *provided*, however, for purposes of clarification, this paragraph reserves such rights, defenses, and/or counterclaims solely to the extent asserted defensively, and nothing in this paragraph permits affirmative recovery from the Debtors or the Reorganized Debtors on account of any such rights, defenses, and/or counterclaims.

27. **Release of Liens.** Notwithstanding the language in Article VIII.E of the Plan, nothing in the Plan or this Confirmation Order shall discharge or release any valid, enforceable, and perfected Liens that constitute Permitted Liens under the DIP Order or similar Liens that arose after the Petition Date in connection with the Debtors' ordinary course operations, which Liens shall be fully preserved to the extent they continue to exist pursuant to applicable non-bankruptcy law until they are fully paid or otherwise satisfied.

28. Notwithstanding anything to the contrary herein or in the Plan, nothing in this Confirmation Order shall alter or impair the rights of any party to seek, in accordance with applicable law, the turnover from the Debtors or Reorganized Debtors of any property that is, as of the date such turnover is sought, (i) property of such party pursuant to applicable law, (ii) in the possession and control of the Debtors or the Reorganized Debtors, and (iii) is not in any respect property of the Estates or of the Reorganized Debtors, as applicable.

29. **RBC.** Notwithstanding anything in the Plan or this Confirmation Order to the contrary (i) on the Effective Date, or as soon as reasonably practicable thereafter the Reorganized Debtors shall pay all reasonable accrued and unpaid expenses of Thompson & Knight LLP, as counsel to Royal Bank of Canada ("RBC"), in RBC's various capacities, in accordance with the Final DIP Order, (ii) any rights or defenses of RBC arising from or relating to the Lien-Related Litigation are preserved and not prejudiced by Confirmation of the Plan, (iii) all rights, claims and obligations in favor of RBC in respect of any First-Out Obligations (as defined in the Collateral Trust Agreement and Final DIP Order), which may include claims for indemnification by RBC pursuant to the Final DIP Order or the First Out Documents (as defined in the Collateral Trust Agreement) to the extent such indemnification claims constitute First Out Obligations, shall not be discharged by the Plan and any liens or security interests for the benefit of RBC, including liens,

security interests, super-priority claims, or other elevated payment priorities granted for the benefit of RBC under the Final DIP Order, if any, in respect of the First Out Obligations shall not be released, shall be deemed enforceable by RBC, and shall be held with the same priority and extent against the Reorganized Debtors as such liens or claims had under the Collateral Trust Agreement or the Final DIP Order, as applicable, (iv) the satisfaction and discharge of the DIP Claims or treatment of any DIP Obligations (as defined in the Final DIP Order) pursuant to the Plan shall not impair or prejudice any rights of RBC pursuant to the Final DIP Order, the Collateral Trust Agreement or this Confirmation Order in respect of any First-Out Obligations, and (v) the Collateral Trust Agreement, the Prepetition Credit Agreement (as defined in the Final DIP Order), and the Final DIP Order each shall survive for purposes of enforcing the terms of this paragraph. For the avoidance of doubt, but without limiting the foregoing, (x) nothing herein shall prejudice the right of the Reorganized Debtors to contest whether any right, claim or obligation in favor of RBC is a valid First Out Obligation entitled to the treatment provided in clause (iii) above.

30. **Ongoing Royalty Audits.** Notwithstanding anything in the Plan (including Article VII.G) and this Confirmation Order to the contrary, claim numbers 357, 366, 390, 402, 403, 406, 409, 412, 417, 428, 432, 442, 506, 525, 526, 528, 529, 534, 535, 536, 538, 539, 540, 542, 544, 549, 550, 551, 556, 558, 564, 565, 566, 567, 568, 582 and 583 in the estate of SN EF Maverick, LLC (19-34516), which are the subject of ongoing data exchange between the Debtor SN EF Maverick, LLC and the claimants, may be amended within forty-five (45) days from the conclusion of the ongoing royalty review and audit, solely to reflect any results or conclusions related to that review and audit.

31. Notwithstanding anything in the Plan (including Article VII.G) and this Confirmation Order to the contrary, claim number 231 in the estate of Sanchez Energy Corporation

(19-34508), which is the subject of ongoing data exchange between the Debtors and the claimants, may be amended within forty-five (45) days from the conclusion of the ongoing review and audit, solely to reflect any results or conclusions related to that review and audit.

32. **Dimension Litigation.** For the avoidance of doubt and notwithstanding anything to the contrary in the Plan or this Confirmation Order, in the remanded state court action in the 165th Judicial District, Harris County, Texas, assigned cause number 2017-85247, styled Dimension Energy Services, LLC v. Sanchez Oil & Gas Corporation, Sanchez Energy Corporation and Sanchez Midstream Partners, LP (the "Dimension State Court Action"), none of the parties to said Dimension State Court Action are required to seek approval of any settlement or compromise of any causes of action asserted by Dimension Energy Services, LLC. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, this Court shall not retain jurisdiction over the causes of action asserted by and between the parties in the remanded Dimension State Court Action, and jurisdiction for the claims at issue in the Dimension State Court Action shall rest with the Harris County, Texas 165th Judicial District Court, or other court of competent jurisdiction.

33. **Texas Attorney General; Federal Leases.** Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after Confirmation; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or the Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

Notwithstanding any provision of the Plan or this Confirmation Order, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan. Nor shall anything in the Plan (1) affect the rights of the United States (including any agencies or subagencies thereof) to assert setoff and recoupment and such rights are expressly preserved; (2) be construed as a compromise or settlement of any claim, interest or cause of action of the United States; or (3) affect the entitlement of the United States to the payment of interest on its Allowed Claims.

34. **Federal Leases.** Moreover, nothing in the Plan shall affect the treatment of any interest in contracts, leases, covenants, operating rights agreements, rights-of-use and easement, and rights-of-way or other interests or agreements with the federal government or involving federal land or minerals (collectively, the "Federal Lease(s)"). For the avoidance of doubt and without limiting the foregoing, any assumption, assignment, and/or transfer of any interests in the Federal Leases will be ineffective absent the consent of the United States. Nothing in the Plan shall be interpreted to set cure amounts or require the United States to novate, approve or consent to the assumption, sale, assignment and/or transfer of any interests in the Federal Leases except pursuant to existing regulatory requirements and applicable law.

35. Moreover, nothing in the Plan shall be interpreted to release the Debtors from any reclamation, plugging and abandonment, or other operational requirement under applicable Federal law; to address or otherwise affect any decommissioning obligations and financial assurance requirements under the Federal Leases, as determined by the United States, that must be

met by the Debtors or their successors and assigns on the Federal Leases going forward; or to impair audit rights. In addition, nothing in the Plan nullifies the United States' right to assert, against the Debtors and their estates, any decommissioning liability and/or claim arising from the Debtors' interest in any Federal Lease not assumed by the Debtors. Notwithstanding any provision to the contrary in the Plan, the United States will retain and have the right to audit and/or perform any compliance review and, if appropriate, collect from the Debtors and/or their successor(s) and assign(s) in full any additional monies owed by the Debtors prior to the assumption and/or assignment of the Federal Leases without those rights being adversely affected by these bankruptcy cases; and such rights shall be preserved in full as if this bankruptcy had not occurred. The Debtors and their successors and assigns will retain all defenses and/or rights, other than defenses and/or rights arising from these bankruptcy cases, to challenge any such determination: *provided, however*, that any such challenge, including any challenge associated with these bankruptcy cases, must be raised in the United States' administrative review process leading to a final agency determination by the Department of the Interior. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996, 30 U.S.C. § 1702, et seq. Nothing in the Plan or this Confirmation Order shall cause or otherwise be deemed to require any Holders of Claims receiving New Common Stock to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operations or management of the Debtors within the meaning of 42 U.S.C. § 9601(20)(F).

36. **Texas Taxing Authorities.** Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all tax liens securing the property tax claims of Dimmit County, Maverick County, La Pryor Independent School District, Atascosa County, Bee

County, Cameron County LaSalle County, Cotulla ISD, Dewitt County, Dilley ISD, Duval County, Eagle Pass ISD, Freer ISD, Frio Hospital District, Goliad County, Goliad ISD Gonzales County, Harris County, Hidalgo County, Jackson County, Jim Wells CAD, Kenedy County, Lasara ISD, Matagorda County, Pearsall ISD, City of Pleasanton, Raymondville ISD, Roma ISD, Smith County, Jim Wells CAD, Starr County, Willacy County and Zavala County (the "Texas Taxing Authorities") for the 2020 tax year are retained. The Reorganized Debtors shall pay the 2020 tax claims of the Texas Taxing Authorities in the ordinary course of business and prior to delinquency under Texas law. In the event the 2020 taxes are not paid prior to delinquency as required under Texas law, penalties and interest shall accrue as provided under Texas law and the Texas Taxing Authorities are authorized to immediately commence any and all collection actions authorized under Texas law, in state court without further order of this Court. The Debtors or the Reorganized Debtors, as applicable, shall maintain any of their rights under Texas law to contest, protest, or appeal the 2020 tax claims of the Texas Taxing Authorities.

37. **Zavala CAD.** Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Reorganized Debtors shall pay the pre-petition tax claim of Zavala CAD in a manner consistent with 11 U.S.C. §1129(a)(9)(D) with applicable statutory interest pursuant to 11 U.S.C. §§506(b) and 511. The pre-petition tax lien shall be retained until said taxes are paid in full. In the event the Zavala CAD pre-petition claim is not paid consistent with this provision, penalties and interest shall accrue as provided under Texas law and Zavala CAD is authorized to immediately commence any and all collection actions authorized under Texas law in state court without further order of this Court. The Debtors or the Reorganized Debtors, as applicable, shall maintain any of their rights under Texas law to contest, protest, or appeal the tax claims of Zavala CAD.

38. **Harrison and Cathexis.** Nothing in the Plan or this Confirmation Order, including, without limitation, the provisions within Articles V and VIII of the Plan, shall reduce, expand, amend, or supplement the rights, obligations, claims, and defenses, of (i) DJH Minerals, LP, DJH Ranching, LP, Cathexis Royalties & Minerals, LP, and Cat HIL Piloncillo, LLC, or any of the foregoing's successors or assignees (collectively, the "Catarina Lessors") or (ii) the Debtors, the Reorganized Debtors, or their successors or assignees under the Catarina Agreements (as defined below); *provided further* that to the extent, as of the Petition Date, a Catarina Lessor held a validly perfected and unavoidable lien, encumbrance or interest arising under a Catarina Agreement—including reversionary interests—such lien, encumbrance or interest shall not be modified or otherwise altered by anything in the Plan or Confirmation Order. Any Cure Claims under the Catarina Agreements shall be resolved in accordance with the Plan; *provided, however*, that nothing in this Confirmation Order or the Plan shall be construed as making a determination that any Catarina Agreement is or is not an Executory Contract, and all parties expressly reserve their rights with respect to such determination. For purposes of this paragraph, the term "Catarina Agreements" means each of the following agreements, in each case, as amended, supplemented and in effect on the date hereof: (i) the Oil and Gas Lease, dated as of May 12, 2010 (as amended), by and between DJH Minerals, LP, DJH Ranching, LP, Cathexis Royalties & Minerals, LP, Cat HIL Piloncillo, LLC, and SN Catarina, LLC (the "Lease"); (ii) that certain First Amended and Restated Water Injection Agreement, dated as of December 1, 2015, by and between DJH Ranching, LP, Cat HIL Piloncillo, LLC, and SN Catarina, LLC; (iii) those certain Voluntary Pooling Agreements related to the Lease; (iv) that certain Guaranty, dated as of June 30, 2014, with Sanchez Energy Corporation; (v) that certain Guaranty, dated as of June 30, 2014, with SN Operating, LLC; (vi) that Mineral Deed, dated as of May 12, 2010, with P Ranch Working Interest,

LLC; and (vii) that certain Conveyance of Non-Participating Royalty Interest, dated as of May 12, 2010, with P Ranch Royalty Interest, LLC.

39. **Amendment of New Organizational Documents.** At the Effective Date, the Reorganized Debtors and the Reorganized SN Board are authorized and directed to amend, restate, and file with the applicable Secretaries of State and/or other applicable authorities in their respective states of incorporation or formation the Reorganized Debtors' respective New Organizational Documents and, as necessary, other constituent documents, including, without limitation, the organizational documents governing non-Debtor subsidiaries, as permitted by the laws of their respective states of incorporation, the New Organizational Documents, and the organizational documents of the non-Debtor subsidiaries, as applicable.

40. **Abandonment.** All of the rights of the Debtors or the Reorganized Debtors, as applicable, to abandon property prior to or after the Effective Date pursuant to section 554 of the Bankruptcy Code are preserved, and the Debtors or the Reorganized Debtors, as applicable, may seek to abandon any such property on or after the Effective Date.

41. Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

42. The Debtors and the Reorganized Debtors are authorized to take all actions necessary to effectuate the relief granted in this Confirmation Order in accordance with the Plan.

43. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Confirmation Order.

Signed: April 30, 2020

Marvin Isgur
United States Bankruptcy Judge

# <u>Exhibit 1</u>

## Plan

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| Debtors. | ) | (Jointly Administered) |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SANCHEZ ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth Freeman (TX Bar No. 24009222)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4284
Facsimile: (713) 308-4184
mcavenaugh@jw.com
efreeman@jw.com

*Counsel for the Debtors and Debtors in Possession*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr. (TX Bar No. 00793386)
Lacy M. Lawrence (TX Bar No. 24055913)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
mbrimmage@akingump.com
llawrence@akingump.com

- and -

Ira S. Dizengoff (*pro hac vice*)
Lisa Beckerman (*pro hac vice*)
Jason P. Rubin (*pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jrubin@akingump.com

- and -

James Savin (*pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jsavin@akingump.com

*Counsel for the Debtors and Debtors in Possession*

Dated: April 30, 2020

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); and SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** .......... **1**
A. Defined Terms .......... 1
B. Rules of Interpretation .......... 11
C. Computation of Time .......... 12
D. Governing Law .......... 12
E. Reference to Monetary Figures .......... 12
F. Reference to the Debtors or the Reorganized Debtors .......... 12
G. Controlling Document .......... 12
**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS** .......... **12**
A. Administrative Claims .......... 12
B. Professional Fee Claims .......... 13
C. Priority Tax Claims .......... 14
D. Statutory Fees .......... 14
**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** .......... **14**
A. Formation of Debtor Group for Convenience Purposes Only .......... 14
B. Classification of Claims and Interests .......... 15
C. Treatment of Classes of Claims and Interests .......... 15
D. Special Provision Governing Unimpaired Claims .......... 18
E. Elimination of Vacant Classes .......... 18
F. Voting Classes; Presumed Acceptance by Non-Voting Classes .......... 18
G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .......... 19
H. Intercompany Interests .......... 19
I. Subordinated Claims and Interests .......... 19
**ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN** .......... **19**
A. General Settlement of Claims, Interests, and Causes of Action .......... 19
B. Restructuring Transactions .......... 19
C. Sources of Consideration for Plan of Reorganization Distributions .......... 20
D. Lien-Related Litigation .......... 21
E. Continuation of Gavilan Proceeding .......... 22
F. Corporate Existence .......... 22
G. Vesting of Assets in the Reorganized Debtors .......... 22
H. Corporate Action .......... 23
I. New Organizational Documents .......... 23
J. Directors and Officers of Reorganized SN .......... 23
K. Retention of Current Workforce by Reorganized SN; Severance Payments .......... 23
L. Management Incentive Plan .......... 24
M. Effectuating Documents; Further Transactions .......... 24
N. Preservation of Causes of Action .......... 24
O. Exemption from Registration Requirements .......... 24
P. Cancellation of Instruments, Certificates, and Other Documents .......... 25
Q. Section 1146(a) Exemption .......... 25
R. DIP Agent Fees and Expenses .......... 26
**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......... **26**
A. Assumption or Rejection of Executory Contracts and Unexpired Leases .......... 26
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases .......... 26
C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .......... 27
D. Indemnification Obligations .......... 28
E. Insurance Policies .......... 28
F. Modifications, Amendments, Supplements, Restatements, or Other Agreements .......... 28
G. Contracts and Leases After the Petition Date .......... 28
H. Reservation of Rights .......... 28
**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .......... **29**
A. Distributions on Account of Claims Allowed as of the Effective Date .......... 29
B. Rights and Powers of the Disbursing Agent .......... 29
C. Special Rules for Distributions to Holders of Disputed Claims .......... 29

**TABLE OF CONTENTS (CONT'D)**

**Page**


D. Delivery of Distributions ....30
E. Claims Paid or Payable by Third Parties ....32
F. Setoffs ....33
G. Allocation Between Principal and Accrued Interest ....33
H. No Postpetition Interest on Claims ....33

**ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ....34**

A. Allowance of Claims ....34
B. Claims Administration Responsibilities ....34
C. Estimation of Claims ....34
D. Adjustment to Claims Without Objection ....35
E. Time to File Objections to Claims ....35
F. Disallowance of Claims ....35
G. Amendments to Claims ....35
H. No Distributions Pending Allowance ....35
I. Distributions After Allowance ....35

**ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ....36**

A. Discharge of Claims and Termination of Interests ....36
B. Exculpation ....36
C. Injunction ....36
D. Protection Against Discriminatory Treatment ....37
E. Release of Liens ....37
F. Reimbursement or Contribution ....38
G. Recoupment ....38
H. Subordination Rights ....38

**ARTICLE IX. DEADLINE FOR EFFECTIVE DATE; CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ....38**

A. Deadline for Occurrence of the Effective Date ....38
B. Conditions Precedent to the Effective Date of the Plan ....38
C. Waiver of Conditions ....39
D. Effect of Non-Occurrence of Conditions to Consummation ....39
E. Substantial Consummation ....39

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....39**

A. Modification of Plan ....39
B. Effect of Confirmation on Modifications ....39
C. Revocation or Withdrawal of Plan ....39

**ARTICLE XI. RETENTION OF JURISDICTION ....40**

**ARTICLE XII. MISCELLANEOUS PROVISIONS ....41**

A. Immediate Binding Effect ....41
B. Additional Documents ....41
C. Dissolution of the Creditors' Committee ....42
D. Payment of Statutory Fees ....42
E. Reservation of Rights ....42
F. Successors and Assigns ....42
G. Service of Documents ....43
H. Term of Injunctions or Stays ....43
I. Entire Agreement ....44
J. Plan Supplement ....44
K. Non-Severability ....44
L. Votes Solicited in Good Faith ....44
M. Closing of Chapter 11 Cases ....44
N. Waiver or Estoppel ....44

## INTRODUCTION

Sanchez Energy Corporation and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases propose this amended joint chapter 11 plan of reorganization pursuant to chapter 11 of title 11 of the United States Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Although proposed jointly for administrative purposes, the Plan constitutes a separate plan for each of the foregoing entities and each of the foregoing entities is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the accompanying *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and Its Debtor Affiliates* for a discussion of the Debtors' history, business, properties and operations, valuation, projections, risk factors, a summary and analysis of the Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A. Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.

1. "*2020 Non-Executive Bonus Program*" means the employee bonus program for 2020.

2. "*2021 Unsecured Notes Indenture*" means that certain Indenture, dated as of June 13, 2013, among SN, the guarantors party thereto and Delaware Trust Company, as successor trustee, for 7.75% senior notes due June 15, 2021.

3. "*2023 Unsecured Notes Indenture*" means that certain Indenture, dated as of June 27, 2014, among SN, the guarantors party thereto and Delaware Trust Company, as successor trustee, for 6.125% senior notes due January 15, 2023.

4. "*Administrative Claim*" means a Claim incurred by the Debtors on or after the Petition Date and before the Effective Date constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) and entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) any Allowed Claim of Royal Bank of Canada as predecessor collateral trustee under the Collateral Trust Agreement in the amount of any reasonable documented fees and expenses for services rendered in connection with outstanding First-Out Obligations (as defined in the Final DIP Order) and solely to the extent provided for in the Collateral Trust Agreement; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

5. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (i) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

6. "*Affiliate*" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

7. "*Allowed*" means with respect to any Claim or Interest: (a) a Claim or Interest as to which no objection has been filed within the applicable time period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court and that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Bar Date, or that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely filed; or (c) a Claim or Interest that is Allowed (i) pursuant to the Plan or Final Order, (ii) in any stipulation that is approved by the Bankruptcy Court, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith. Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

8. "*Authorized Plan Distribution Shares*" means the shares of New Common Stock available for distribution under the Plan on account of Claims, which shares shall be authorized on the Effective Date and issued in accordance with the Plan.

9. "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under chapter 5 of the Bankruptcy Code or related applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

10. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § § 101-1532, as amended from time to time as applicable to these Chapter 11 Cases.

11. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court as applicable to these Chapter 11 Cases.

13. "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be filed pursuant to the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9); (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date; (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests; and (IV) Approving Notice of Bar Dates* [Docket No. 617] (the "Bar Date Order"), which is January 10, 2020 at 5:00 p.m., prevailing Central Time for all Holders of Claims except for (i) governmental units, for which the Bar Date is February 7, 2020 at 5:00 p.m., prevailing Central Time and (ii) certain other exceptions as set forth in the Bar Date Order.

14. "*Carve-Out Trigger Notice Reserves*" means the Pre-Carve-Out Trigger Notice Reserve and the Post-Carve-Out Trigger Notice Reserve.

15. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

16. "*Causes of Action*" means any Claims, Interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims

pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

17. "*Certificate*" means any instrument evidencing a Claim or an Interest.

18. "*Chapter 11 Cases*" means when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to more than one Debtor, the procedurally consolidated and jointly administered chapter 11 cases pending for all such Debtors in the Bankruptcy Court.

19. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

20. "*Claims, Noticing and Solicitation Agent*" means Prime Clerk, LLC, the claims, noticing and solicitation agent retained by the Debtors in the Chapter 11 Cases.

21. "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to Claims.

22. "*Claims Register*" means the official register of Claims maintained by the Claims, Noticing and Solicitation Agent or the Bankruptcy Court.

23. "*Class*" means a category of Holders of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code.

24. "*Collateral Trust Agreement*" means the Collateral Trust Agreement, dated as of February 14, 2018, among SN, the grantors and guarantors from time to time party hereto, the First-Out Representative (as defined in the Collateral Trust Agreement), the First Lien Representative (as defined in the Collateral Trust Agreement), the other Priority Lien Representatives (as defined in the Collateral Trust Agreement) and the Collateral Trustee.

25. "*Collateral Trustee*" means Wilmington Trust, N.A., in its capacity as successor collateral trustee under the Collateral Trust Agreement.

26. "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in the Plan.

27. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

28. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

29. "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30. "*Consummation*" means the occurrence of the Effective Date, subject to the conditions set forth in the Plan.

31. "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

32. "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases.

33. "*CRO*" means the Debtors' chief restructuring officer, Mohsin Y. Meghji.

34. "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtors' default(s) prior to the Effective Date under an Executory Contract or an Unexpired Lease assumed, or assumed and assigned, by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365 of the Bankruptcy Code.

35. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors for liability of any current or former directors, managers, officers, and members.

36. "*Debtors*" means SN and its direct and indirect subsidiaries that filed petitions under chapter 11 on the Petition Date.

37. "*DIP Agent*" means Wilmington Savings Fund Society, FSB, or any successor thereto, as administrative agent and collateral agent under the DIP Credit Agreement, solely in its capacity as such.

38. "*DIP Agent Fees and Expenses*" means the reasonable and documented compensation, fees, expenses, disbursements, and indemnity claims incurred by the DIP Agent, including, without limitation, attorneys' and agents' fees, expenses, and disbursements incurred by the DIP Agent, to the extent payable or reimbursable under the DIP Credit Agreement. For the avoidance of doubt, the DIP Agent Fees and Expenses shall include, but are not limited to, the reasonable and documented fees, expenses, and disbursements of counsel.

39. "*DIP Claims*" means all Claims held by the DIP Lenders or the DIP Agent in the amount of $150,000,000 plus (a) all amounts previously paid pursuant to the Final DIP Order, and (b) all accrued and unpaid interest, fees, costs, expenses and other amounts due and owing under the Final DIP Order, the DIP Credit Agreement, or otherwise. The DIP Claims are hereby Allowed Secured Claims and/or Administrative Claims in an amount no less than the value of the DIP Equity Distribution.

40. "*DIP Credit Agreement*" means that certain Amended and Restated Senior Secured Debtor-in-Possession Term Loan Credit Agreement, dated as of January 28, 2020, by and among SN, as borrower, each of the other applicable Debtors, as guarantors, each of the lenders from time to time party thereto, and the DIP Agent, with any permitted amendments, modifications, or supplements thereto.

41. "*DIP Equity Distribution*" means 20% of the Authorized Plan Distribution Shares, which shall constitute 100% of the shares of New Common Stock issued by the Reorganized Debtors on the Effective Date.

42. "*DIP Fee Claims*" means (a) the DIP Agent Fees and Expenses, (b) the Secured Trustees Fees and Expenses and (c) the Secured Ad Hoc Group Fees.

43. "*DIP Lenders*" means lenders under the DIP Credit Agreement, solely in their capacity as such.

44. "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court or the Claims, Noticing and Solicitation Agent pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court or the Claims, Noticing and Solicitation Agent pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

45. "*Disbursing Agent*" means the Debtors or the Reorganized Debtors, as applicable, or the Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions contemplated under the Plan.

46. “*Disclosure Statement*” means the disclosure statement for the Plan, as supplemented from time to time, including all exhibits, supplements, modifications, amendments, annexes, attachments, and schedules thereto.

47. “*Disclosure Statement Order*” means the order entered by the Bankruptcy Court conditionally approving the Disclosure Statement, entered on April 9, 2020 [Docket No. 1118].

48. “*Disputed*” means, with respect to any Claim, any Claim that is neither Allowed nor Disallowed.

49. “*Distribution Date*” means, except as otherwise set forth herein and except with respect to distributions to holders of securities held through DTC, the date or dates determined by the Debtors or Reorganized Debtors, as applicable, on or after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

50. “*DTC*” means Depository Trust Company.

51. “*Effective Date*” means, with respect to the Plan, the date that is a Business Day selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX. hereof have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan is declared effective by the Debtors.

52. “*Entity*” means as defined in section 101(15) of the Bankruptcy Code.

53. “*Estate*” means as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

54. “*Exculpated Parties*” means collectively, and in each case in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Creditors’ Committee and its current and former members; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors, in each case, solely in their capacity as such. For the avoidance of doubt, the Exculpated Parties shall not include the Sanchez Parties, SOG, SNMP or direct or indirect non-Debtor subsidiaries of SN.

55. “*Exculpation Claims*” has the meaning set forth in Article VIII.B.

56. “*Executory Contract*” means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

57. “*Existing Interests*” means, collectively, (a) the Existing SN Preferred Interests and (b) the Existing SN Common Interests.

58. “*Existing SN Common Interests*” means Interests in SN arising from or related to the Existing SN Common Stock.

59. “*Existing SN Common Stock*” means the shares of common stock issued by SN.

60. “*Existing SN Preferred Interests* means Interests in SN arising from or related to the Existing SN Preferred Stock.

61. “*Existing SN Preferred Stock*” means the shares of (a) 4.875% Convertible Perpetual Preferred Stock, Series A and (b) 6.500% Convertible Perpetual Preferred Stock, Series B, each with a par value of $0.01 per share.

62. “*File*,” “*Filed*,” and “*Filing*” means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court, or, with respect to the filing of a Proof Claim or proof of Interest, the Claims, Noticing and Solicitation Agent.

63. "*Final DIP Order*" means the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 865].

64. "*Final Fee Application*" means an application for final request for payment of Professional Fee Claims.

65. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought; *provided* that the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court or applicable non-bankruptcy law may be filed relating to such order shall not prevent such order from being a Final Order.

66. "*Final Shared Services Order*" means the *Final Order Authorizing Debtors to Continue Performance of Obligations Under the Shared Services Arrangements* [Docket No. 733].

67. "*Gavilan*" means Gavilan Resources, LLC.

68. "*Gavilan Proceeding*" means the adversary proceeding commenced against SN EF Maverick, LLC, et al., by Gavilan (Adv. Pro. No. 20-03021).

69. "*General Unsecured Claim*" means any Claims other than: (a) an Administrative Claim; (b) an Other Secured Claim; (c) an Other Priority Claim; (d) a Priority Tax Claim; (e) a Secured Notes Claim; (f) an Intercompany Claim; (g) a Section 510(b) Claim; or (h) a DIP Claim.

70. "*Holder*" means an entity holding a Claim or Interest, as applicable.

71. "*Impaired*" means with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

72. "*Indentures*" means, collectively, the Secured Notes Indenture, the 2021 Unsecured Notes Indenture and the 2023 Unsecured Notes Indenture.

73. "*Indenture Trustees*" means the Secured Notes Indenture Trustee and the Unsecured Notes Indenture Trustee.

74. "*Indemnified Parties*" means the following Exculpated Parties in their capacities as such: (i) members of the Debtors' current workforce who are employed by the Reorganized Debtors after the Effective Date; (ii) Mohsin Y. Meghji; (iii) Eugene I. Davis; (iv) Adam C. Zylman; (v) Cameron W. George; and (vi) Gregory B. Kopel.

75. "*Indemnification Obligations*" means each of the Debtors' existing indemnification provisions in place and effect as of the Effective Date, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise, for the current and former directors, officers, managers, attorneys, accountants, investment bankers, and other professionals, advisors and agents of the Debtors, as applicable.

76. "*Intercompany Claim*" means a Claim held by a Debtor against another Debtor.

77. "*Intercompany Interest*" means an Interest in any Debtor other than SN.

78. "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor, including issued, unissued, authorized, or outstanding shares of stock, together with any warrants, options or rights to purchase or acquire such interests at any time.

79. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

80. "*Lien Challenge Complaint*" means the complaint filed by the Debtors on March 10, 2020 in the adversary proceeding titled Sanchez Energy Corporation, et al. v. Royal Bank of Canada, Wilmington Savings Fund Society, FSB and Wilmington Trust, National Association (Adv. Pro. No. 20-03057).

81. "*Lien-Related Litigation*" means all litigation related to challenges to the allowance, priority, scope or validity of the liens and/or Claims of the Prepetition Secured Parties (as defined in the Final DIP Order) or the priority or scope of the liens and/or Claims of the DIP Lenders, including any litigation regarding (i) the interpretation of the Final DIP Order and other matters regarding the scope of the collateral securing the DIP Claims, (ii) the amount and characterization of the DIP Claims (including the Final DIP Order's treatment of new-money DIP Claims and roll-up DIP Claims), (iii) the amount of any deficiency claim of the DIP Lenders, (iv) adequate protection claims pursuant to section 507(b) of the Bankruptcy Code (including issues regarding diminution in value, and any recharacterization or disgorgement of adequate protection payments made pursuant to the Final DIP Order, or any prior interim order), (v) the applicability of the equities of the case doctrine under section 552 of the Bankruptcy Code, (vi) all Causes of Action referenced and asserted in the Lien Challenge Complaint, (vii) the claim objections filed by the Creditors' Committee on March 10, 2020, at Docket No. 1027, (viii) the value of Causes of Action, and (ix) the relative value of encumbered and unencumbered assets. For purposes of clarification, nothing in the Plan or the Confirmation Order shall alter, amend, or otherwise limit any rights, claims, or defenses that may or could be asserted by the DIP Lenders, DIP Agent, Collateral Trustee, Secured Notes Indenture Trustee, or any Holders of DIP Claims or Senior Notes Claims in connection with or in defense of the Lien-Related Litigation, irrespective of whether such rights, claims, or defenses arose before or after the Petition Date and whether provided or arising under the Final DIP Order, applicable agreements, applicable law, or otherwise.

82. "*Lien-Related Litigation Creditor Representative*" means a representative, as selected by the Creditors' Committee, of general unsecured creditors in the Lien-Related Litigation.

83. "*Management Incentive Plan*" means a post-Effective Date management incentive plan for the directors and officers of the Reorganized Debtors, which shall be implemented in accordance with Article IV of the Plan.

84. "*New Common Stock*" means the common stock of Reorganized SN to be issued pursuant to the Plan.

85. "*New Executive Employment Agreements*" means the new employment agreements, dated as of the Effective Date, to employ (a) Cameron W. George and (b) Gregory B. Kopel.

86. "*New Organizational Documents*" means the form of the certificates or articles of incorporation, certificates of designation, bylaws, or such other applicable formation documents, of each of the Reorganized Debtors, including the New Stockholders' Agreement, if any.

87. "*New Stockholders' Agreement*" means the stockholder or similar agreement, if any, with respect to the New Common Stock.

88. "*Non-Participating Professional*" means any Professional that is not a Participating Professional on or before the Confirmation Date.

89. "*Notice of Assumption*" means a notice to be sent to each applicable counterparty identified in the Schedule of Assumed Executory Contracts and Unexpired Leases as set forth in Article VI.C.

90. "*Notice of Rejection*" means a notice to be sent to each applicable counterparty identified in the Schedule of Rejected Executory Contracts and Unexpired Leases as set forth in Article VI.B.

91. "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim.

92. "*Other Secured Claim*" means any Secured Claim other than the DIP Claims and the Secured Notes Claims.

93. "*Participating Professionals*" means all Professionals that have elected to participate in the Professional Fee Settlement on or before the Confirmation Date, specifically: Akin Gump Strauss Hauer & Feld LLP, Alvarez & Marsal North America, LLC, Gibbs & Bruns LLP, Jackson Walker LLP, KPMG LLP, M-III Advisory Partners LP, Moelis & Company LLC, Prime Clerk LLC, Ropes & Gray LLP, and Richards Layton & Finger, P.A. No Participating Professionals may be added to this list without the consent of the Requisite DIP Lenders.

94. "*Person*" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, governmental entity, or political subdivision thereof, or any other Entity.

95. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

96. "*Plan*" means this amended joint chapter 11 plan (as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments hereto).

97. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors as soon as reasonably practicable prior to the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement. The Plan Supplement shall include the following (a) the New Organizational Documents; (b) the Schedule of Rejected Executory Contracts and Unexpired Leases; (c) the Schedule of Assumed Executory Contracts and Unexpired Leases; (d) a schedule of retained Causes of Action; (e) a disclosure of the members of the Reorganized SN Board; and (f) the New Executive Employment Agreements and the identities of the officers of Reorganized SN.

98. "*Post-Carve-Out Trigger Notice Reserve*" has the meaning ascribed to it in the Final DIP Order.

99. "*Post-Effective Date Equity Distribution*" means 80% of the Authorized Plan Distribution Shares, which shall be issued and distributed to Holders of Allowed Claims in Classes 3, 4 and/or 5 as ordered by the Bankruptcy Court in connection with adjudication or other resolution of the Lien-Related Litigation.

100. "*Pre-Carve-Out Trigger Notice Reserve*" has the meaning ascribed to it in the Final DIP Order.

101. "*Priority Tax Claims*" means Claims of governmental units of the type described in section 507(a)(8) of the Bankruptcy Code.

102. "*Pro Rata*" means (a) when referring to Claims or Interests within a single Class, the proportion that an Allowed Claim or Interest in such Class bears to the aggregate amount of the Allowed Claims or Interests in that Class, or (b) when referring to Claims or Interests within more than one Class, the proportion that an Allowed Claim or Interest bears to the aggregate amount of the Allowed Claims or Interests within all applicable Classes.

103. "*Professional*" means an entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the confirmation date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

104. "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date.

105. "*Professional Fee Settlement*" means the settlement between and among the Participating Professionals, the Debtors and the Secured Ad Hoc Group set forth in Article II.B.

106. "*Professional Fee Settlement Reserve*" means an interest bearing escrow account to hold the amounts set forth in Article II.B pursuant to the Professional Fee Settlement, which escrow account shall be funded on the Effective Date and maintained at a financial institution selected by the Debtors, with the consent of the Participating Professionals, solely for the purpose of paying all Allowed and unpaid Professional Fee Claims of Participating Professionals consistent with the Professional Fee Settlement. All fees and expenses of the escrow agent shall be paid from the interest accruing on funds in the Professional Fee Settlement Reserve; *provided that* any fees and expenses due up front or in excess of the interest accruing on the funds in the Professional Fee Settlement Reserve shall be paid by the Reorganized Debtors. The Professional Fee Settlement Reserve may be a segregated account, with similar protections as an escrow account, maintained by the Reorganized Debtors in trust solely for the Participating Professionals with the consent of the Participating Professionals.

107. "*Professional Fee Settlement Reserve Amount*" means $22.9 million, which shall be adjusted solely to the extent additional Professionals become Participating Professionals.

108. "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases, if applicable, by the applicable Bar Date.

109. "*Reinstated*" or "*Reinstatement*" means with respect to any Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

110. "*Reorganized Boards*" means the initial board of directors of members, or managers, as applicable of each Reorganized Debtor.

111. "*Reorganized Debtors*" means the Debtors, as reorganized pursuant to and under the Restructuring Transactions or any successor thereto, including Reorganized SN.

112. "*Reorganized SN*" means SN, as reorganized pursuant to and under the Restructuring Transactions or any successor thereto.

113. "*Reorganized SN Board*" means the initial board of directors of Reorganized SN.

114. "*Requisite DIP Lenders*" means DIP Lenders holding at least 50.01% of the outstanding principal amount of loan issued under the DIP Credit Agreement.

115. "*Restructuring Fee*" has the meaning ascribed to it in the engagement letter between SN and Moelis & Company LLC, attached as Exhibit 1 to the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Moelis & Company LLC as Financial Advisor and Investment Banker for the Debtors, Nunc Pro Tunc to the Petition Date; (II) Waiving Certain Time-Keeping Requirements; and (III) Granting Related Relief* [Docket No. 271].

116. "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, sales, dispositions, liquidations, dissolutions, or other corporate transactions necessary or appropriate to implement the Plan.

117. "*Sanchez Parties*" means (i) A.R. Sanchez, Jr., Antonio R. Sanchez, III, and Patricio D. Sanchez, and any other individual related to Antonio R. Sanchez, III by consanguinity or marriage, (ii) any trusts or similar Entities of which Sanchez Parties are individually or in the aggregate the majority direct or indirect beneficiaries, and (iii) any other Entities (other than SOG) for which the Sanchez Parties own, control or hold 50.01% or more of the voting interests. For the avoidance of doubt, the Sanchez Parties shall not include SOG or SNMP.

118. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any modifications or amendments thereto) of certain Executory Contracts and Unexpired Leases, to be identified by

the Secured Ad Hoc Group, to be assumed by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended at the direction of the Secured Ad Hoc Group from time to time, prior to the Confirmation Date or otherwise, in accordance with the Plan.

119. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto) of the Executory Contracts and Unexpired Leases, to be identified by the Secured Ad Hoc Group, to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended at the direction of the Secured Ad Hoc Group from time to time, prior to the Confirmation Date or otherwise, in accordance with the Plan.

120. "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors.

121. "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

122. "*Secured*" means when referring to a Claim: (a) secured by a lien on property in which any of Debtors has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court (including the Final DIP Order), as a secured claim.

123. "*Secured Ad Hoc Group*" means the ad hoc group of unaffiliated funds, accounts, and advisors of funds or accounts, as Holders of Secured Notes Claims and DIP Claims.

124. "*Secured Ad Hoc Group Fees*" means all unpaid fees and expenses, including professional fees and expenses, due and payable to the Secured Ad Hoc Group's advisors and professionals, including fees and expenses payable under the Final DIP Order.

125. "*Secured Notes*" means the 7.25% Senior Secured First Lien Notes due 2023 issued pursuant to the Secured Notes Indenture.

126. "*Secured Notes Claim*" means any Secured Claim against the Debtors under, with respect to, on account of, arising from, based upon, or in connection with, the Secured Notes Indenture, the Secured Notes, or the Final DIP Order, including any Claim for principal amounts outstanding, unpaid interest, fees or expenses.

127. "*Secured Notes Indenture*" means that certain Indenture, dated February 14, 2018, among SN, the guarantors party thereto, Delaware Trust Company, as trustee, and Wilmington Trust, NA., in its capacity as successor collateral trustee, for the 7.25% senior secured first lien notes due February 15, 2023.

128. "*Secured Notes Indenture Trustee*" means WSFS, and any successor thereto, as trustee under the Secured Notes Indenture.

129. "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

130. "*Secured Trustees Fees and Expenses*" means the reasonable and documented compensation, fees, expenses, disbursements, and indemnity claims incurred by WSFS, solely in its capacity as the Secured Notes Indenture Trustee, and the Collateral Trustee, including, without limitation, attorneys' and agents' fees, expenses, and disbursements incurred by WSFS, solely in its capacity as the Secured Notes Indenture Trustee, and the Collateral Trustee, to the extent payable or reimbursable under the Secured Notes Indenture or Collateral Trust Agreement, as applicable. For the avoidance of doubt, the Secured Trustees Fees and Expenses shall include, but are not limited to, the reasonable and documented fees, expenses, and disbursements of counsel.

131. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

132. "*Servicer*" means an agent or other authorized representative of Holders of Claims or Interests.

133. "*SN*" means Sanchez Energy Corporation.

134. "*SNMP*" means Sanchez Midstream Partners LP and its subsidiaries and affiliates, including Catarina Midstream, LLC.

135. "*SOG*" means Sanchez Oil & Gas Corporation.

136. "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to requests of the Debtors or the Reorganized Debtors, as applicable, for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

137. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

138. "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

139. "*Unsecured Notes Claim*" means any Claim against the Debtors arising from or based upon the 2021 Unsecured Notes Indenture or the 2023 Unsecured Notes Indenture.

140. "*Unsecured Notes Indentures*" means, collectively, the 2021 Unsecured Notes Indenture and the 2023 Unsecured Notes Indenture.

141. "*Unsecured Notes Indenture Trustee*" means the Delaware Trust Company, and any successor thereto, as trustee under the 2021 Unsecured Notes Indenture and the 2023 Unsecured Notes Indenture, respectively.

142. "*U.S. Trustee*" Means the Office of the United States Trustee for the Southern District of Texas.

143. "*WSFS*" means Wilmington Savings Fund Society, FSB.

B. *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) all references to statutes, regulations, orders,

rules of courts, and the like shall mean as amended from time to time; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the words "include" and "including" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation," and (13) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C. *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a business day, then such transaction shall instead occur on the next succeeding business day.

D. *Governing Law*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to conflict of laws principles.

E. *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

F. *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G. *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the applicable Plan Supplement document shall control. In the event of an inconsistency between the Confirmation Order and any of the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> of the Plan.

A. *Administrative Claims*

Except as otherwise provided in this Article II.A and except with respect to claims pursuant to 28 U.S.C. § 1930 and Administrative Claims that are Professional Fee Claims, DIP Claims, or subject to 11 U.S.C. § 503(b)(1)(D), or otherwise allowed by a Final Order, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and

the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.

Except with respect to Administrative Claims that are Professional Fee Claims or DIP Claims (but excluding DIP Fee Claims), and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment in full in Cash on the Effective Date or as soon as reasonably practicable thereafter.

The DIP Claims that are not DIP Fee Claims shall receive the treatment set forth in Article III.C.3. DIP Agent Fees and Expenses shall receive payment in accordance with Article IV.R. The parties entitled to (a) Secured Trustees Fees and Expenses and (b) Secured Ad Hoc Group Fees have agreed that the Administrative Claims relating to such amounts may be paid following the outcome of the applicable Lien-Related Litigation.

B. *Professional Fee Claims*

1. <u>Professional Fee Settlement</u>

Pursuant to the Professional Fee Settlement, (a) Participating Professionals agree to (i) limit the payment on account of their unpaid Professional Fee Claims (except as provided in clauses (b) and (c)) to 90% of the amount of such Participating Professional's accrued and unpaid fees and 100% of the amount of such Participating Professional's unpaid expenses, in each case, through March 27, 2020, plus an additional $5 million to Moelis & Company LLC on account of its Restructuring Fee and (ii) reduce the amount of unpaid Allowed Professional Fee Claims payable upon approval of their respective Final Fee Application by an amount equal to 10% of fees paid to such Participating Professional since the Petition Date, excluding the Professional Fee Claims in (i) above which already account for the 10% reduction of fees; (b) $1 million (in addition to the amounts in (a) above) shall be available exclusively for Professional Fee Claims of Professionals of the Debtors in connection with filing, prosecuting, confirming and consummating the Plan incurred after March 27, 2020; (c) $100,000 (in addition to any amounts in (a) and (b) above), shall be made available exclusively for KPMG for fees incurred after March 27, 2020, and (d) Participating Professionals otherwise waive all rights to seek payment of any additional Professional Fee Claims, either as an Administrative Claim or otherwise. For purposes of clarification, the aggregate amount identified in this paragraph shall not exceed the Professional Fee Settlement Reserve Amount.

As part of the Professional Fee Settlement, upon the Effective Date, the DIP Agent shall release the Carve-Out Trigger Notice Reserves to the Reorganized Debtors, and the Reorganized Debtors shall immediately fund the Professional Fee Settlement Reserve with the Professional Fee Settlement Reserve Amount, solely for the unpaid Professional Fee Claims of the Participating Professionals. The Professional Fee Settlement Reserve shall be an escrow account or segregated account, with similar protections as an escrow account, maintained in trust solely for the Participating Professionals with the consent of the Participating Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors. The amount of Professional Fee Claims owing to the Participating Professionals, as limited by the Professional Fee Settlement, shall be paid in Cash to such Participating Professionals by the Reorganized Debtors from the Professional Fee Settlement Reserve within two (2) business days after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court. When all such Allowed amounts owing to Participating Professionals have been paid in full consistent with the Professional Fee Settlement, any remaining amount in the Professional Fee Settlement Reserve shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

Finally, as part of the Professional Fee Settlement, the Debtors, Reorganized Debtors and the Secured Ad Hoc Group, including each of its individual members, shall not (a) seek, directly or indirectly, any further reductions, discounts or concessions of any kind from the Participating Professionals or (b) object, directly or indirectly, to any Final Fee Applications of any Participating Professional.

If the Effective Date does not occur within 45 days of the Confirmation Date, (a) the Professional Fee Settlement shall be withdrawn, (b) the Participating Professionals shall reserve any and all rights under the Final DIP Order, the Bankruptcy Code and otherwise and (c) all agreements not to seek reductions or to object to any Final Fee Applications of the Participating Professionals shall be withdrawn, and all rights of all parties are reserved.

2. Final Fee Applications

All Professionals shall file Final Fee Applications no later than 60 days after the Effective Date. The Professional Fee Claims of any Participating Professional shall be Allowed in the event that no objection to such Final Fee Application is Filed within 21 days of the filing of such Final Fee Application in accordance with the Professional Fee Settlement.

C. *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor against which such Allowed Priority Tax Claim is asserted agree to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive, at the Debtors' election, (1) payment in full in Cash of its Allowed Priority Tax Claim or (2) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

D. *Statutory Fees*

All fees due and payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A. *Formation of Debtor Group for Convenience Purposes Only*

The Plan (including, but not limited to, Article II and Article III of the Plan) groups the Debtors together solely for the purpose of describing treatment under the Plan and distributions to be made in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities. The Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor within the meaning of section 1121 of the Bankruptcy Code, and the classifications set forth in Classes 1 through 10 shall be deemed to apply to each Debtor in accordance with section 1122 of the Bankruptcy Code, except where a Debtor does not have any Claim or Interest qualifying within a particular class. For voting purposes, each Class of Claims against or Interests in the Debtors shall be deemed to constitute separate sub-Classes of Claims against and Interests in each of the Debtors, as applicable. Each such sub-Class shall vote as a single separate Class for each of the Debtors, as applicable; *provided*

that any Class that does not contain any Allowed Claims or Existing Interests with respect to a particular Debtor will be treated in accordance with Article III.E below.

B. *Classification of Claims and Interests*

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | DIP Claims | Impaired | Entitled to Vote |
| 4 | Secured Notes Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote |
| 7 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 8 | Existing SN Preferred Interests | Impaired | Deemed to Reject |
| 9 | Existing SN Common Interests | Impaired | Deemed to Reject |
| 10 | Section 510(b) Claims | Impaired | Deemed to Reject |

C. *Treatment of Classes of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. The Debtors will not agree to different treatment of any Allowed Claim or Allowed Interest prior to the Effective Date without the consent of the Requisite DIP Lenders. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1. Class 1 — Other Secured Claims

a. *Classification*: Class 1 consists of all Other Secured Claims against the Debtors.

b. *Treatment*: In full and final satisfaction of each Allowed Other Secured Claim against the Debtors, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor:

i. payment in full in Cash;

ii. delivery of the collateral securing any such Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

iii. Reinstatement of such Other Secured Claim; or

iv. other treatment rendering such Claim Unimpaired.

c. *Voting*: Class 1 is Unimpaired. Holders of Allowed Other Secured Claims in Class 1 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy

Code. Holders of Allowed Other Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2. Class 2 — Other Priority Claims

a. *Classification*: Class 2 consists of all Other Priority Claims against the Debtors.

b. *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim and the Debtor against which such Allowed Other Priority Claim is asserted agree to less favorable treatment for such Holder, in full and final satisfaction of each Allowed Other Priority Claim against the Debtors, each Holder of an Allowed Other Priority Claim shall receive either:

i. Cash in an amount equal to such Allowed Other Priority Claim; or

ii. such other treatment rendering such Other Priority Claim Unimpaired.

c. *Voting*: Class 2 is Unimpaired. Holders of Allowed Other Priority Claims in Class 2 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3. Class 3 – DIP Claims

a. *Classification*: Class 3 consists of all DIP Claims (other than DIP Fee Claims) against the Debtors.

b. *Treatment*: In full and final satisfaction of each Allowed DIP Claim (other than DIP Fee Claims), each Holder of an Allowed DIP Claim (other than DIP Fee Claims) shall receive its Pro Rata share of:

i. the DIP Equity Distribution on the Effective Date; and

ii. 100% of the Post-Effective Date Equity Distribution less any amount of such Post-Effective Date Equity Distribution, if any, allocated to Holders of Allowed Claims in Classes 4 and/or 5 based upon the outcome of the Lien-Related Litigation, which allocation shall be consistent with, as applicable, the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code.

c. *Voting*: Class 3 is Impaired. Holders of DIP Claims in Class 3 are entitled to vote to accept or reject the Plan.

4. Class 4 — Secured Notes Claims

a. *Classification*: Class 4 consists of all Secured Notes Claims against the Debtors.

b. *Treatment*: In full and final satisfaction of each Allowed Secured Notes Claim (other than DIP Fee Claims), each Holder of an Allowed Secured Notes Claim (other than DIP Fee Claims) shall receive its Pro Rata share of the Post-Effective Date Equity Distribution, if any, allocated to the Secured Notes Claims based upon the outcome of the Lien-Related Litigation, which allocation shall be consistent with, as applicable, the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code.

c. *Voting*: Class 4 is Impaired. Holders of Secured Notes Claims in Class 4 are entitled to vote to accept or reject the Plan.

5. Class 5 — General Unsecured Claims

a. *Classification*: Class 5 consists of all General Unsecured Claims against the Debtors.

b. *Treatment*: In full and final satisfaction of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Post-Effective Date Equity Distribution, if any, allocated to the General Unsecured Claims based upon the outcome of the Lien-Related Litigation, which allocation shall be consistent with, as applicable, the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code.

c. *Voting*: Class 5 is Impaired. Holders of General Unsecured Claims in Class 5 are entitled to vote to accept or reject the Plan.

6. Class 6 — Intercompany Claims

a. *Classification*: Class 6 consists of any Intercompany Claims.

b. *Treatment*: On the Effective Date, Intercompany Claims shall be, at the election of the Debtors:

i. Reinstated;

ii. compromised;

iii. released; or

iv. offset, contributed, and/or distributed to the applicable Debtor.

c. *Voting*: Class 6 is either Unimpaired or Impaired. Holders of Allowed Intercompany Claims in Class 6 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Claims in Class 6 are not entitled to vote to accept or reject the Plan.

7. Class 7 — Intercompany Interests

a. *Classification*: Class 7 consists of all Intercompany Interests.

b. *Treatment*: On the Effective Date, Intercompany Interests shall receive no recovery or distributions and be Reinstated or contributed to the applicable Debtor solely to maintain the Debtors' corporate structure.

c. *Voting*: Class 7 is Unimpaired. Holders of Allowed Intercompany Interests in Class 7 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Intercompany Claims in Class 7 are not entitled to vote to accept or reject the Plan.

8. Class 8 — Existing SN Preferred Interests

a. *Classification*: Class 8 consists of all Existing SN Preferred Interests.

b. *Treatment*: On the Effective Date, each Existing SN Preferred Interest shall be cancelled, released and extinguished and shall be of no further force and effect. No Holder of any

Existing SN Preferred Interest shall be entitled to any recovery or distribution under the Plan on account of such Interest.

c. *Voting*: Class 8 is Impaired. Holders of Existing SN Preferred Interests in Class 8 are conclusively deemed to have rejected the Plan under section 1126(f) of the Bankruptcy Code. Holders of Existing SN Preferred Interests in Class 8 are not entitled to vote to accept or reject the Plan.

9. <u>Class 9 — Existing SN Common Interests</u>

a. *Classification*: Class 9 consists of all Existing SN Common Interests.

b. *Treatment*: On the Effective Date, each Existing SN Common Interest shall be cancelled, released and extinguished and shall be of no further force and effect. No Holder of any Existing SN Common Interest shall be entitled to any recovery or distribution under the Plan on account of such Interest.

c. *Voting*: Class 9 is Impaired. Holders of Existing Common Interests in Class 9 are conclusively deemed to have rejected the Plan under section 1126(f) of the Bankruptcy Code. Holders of Existing SN Common Interests in Class 9 are not entitled to vote to accept or reject the Plan.

10. <u>Class 10 – Section 510(b) Claims</u>

a. *Classification*: Class 10 consists of all Section 510(b) Claims.

b. *Treatment*: On the Effective Date, each Section 510(b) Claim will be cancelled, released and extinguished and shall be of no further force and effect. No Holder of any Section 510(b) Claim shall be entitled to any recovery or distribution under the Plan on account of such Claim.

c. *Voting*: Class 10 is Impaired. Holders of Section 510(b) Claims in Class 10 are conclusively deemed to have rejected the Plan under section 1126(f) of the Bankruptcy Code. Holders of Section 510(b) Claims in Class 10 are not entitled to vote to accept or reject the Plan.

D. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

E. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F. *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote on the Plan and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

G. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H. *Intercompany Interests*

To the extent Reinstated under the Plan, the Intercompany Interests shall be Reinstated for the ultimate benefit of the Holders of Claims that receive New Common Stock under the Plan, and shall receive no recovery or distribution. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests prior to the Effective Date (subject to the Restructuring Transactions).

I. *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A. *General Settlement of Claims, Interests, and Causes of Action*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan, including any dispute regarding the treatment of any Intercompany Claims. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, including the Professional Fee Settlement, pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement, including the Professional Fee Settlement, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable and reasonable.

B. *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall consummate the Restructuring Transactions and take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, but not limited to the documents comprising the Plan Supplement and the New Organizational Documents, as applicable; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset,

property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities may agree; (3) the execution, delivery and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law, including any applicable New Organizational Documents; (4) such other transactions that are required to effectuate the Restructuring Transactions; and (5) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

C. *Sources of Consideration for Plan of Reorganization Distributions*

The Reorganized Debtors will fund distributions under the Plan with Cash on hand on the Effective Date and the New Common Stock.

1. Issuance and Distribution of New Common Stock

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall issue the New Common Stock to fund distributions to Holders of Allowed Claims in accordance with Article III of the Plan; *provided that* New Common Stock issued on account of the Post-Effective Date Equity Distribution shall occur in accordance with Article IV.C.2. The issuance of New Common Stock, as well as options, or other equity awards of interests in the Reorganized Debtors, if any, reserved under the Management Incentive Plan, is duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors or the Holders of Claims. All shares of New Common Stock issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

The Secured Ad Hoc Group shall prepare a New Stockholders' Agreement as part of the Plan Supplement. Each Entity intended to become a Holder of New Common Stock, as a condition to receiving such New Common Stock, shall be required to deliver an executed signature page to the New Stockholders' Agreement. Each Holder of New Common Stock shall be deemed a party to the New Stockholders' Agreement, without regard to whether such signature page is actually delivered. On the Effective Date, the Reorganized Debtors shall enter into and deliver the New Stockholders' Agreement to each known Entity that is intended to be a party thereto at such time, and such New Stockholders' Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New Common Stock shall be bound thereby.

2. Distribution of Post-Effective Date Equity Distribution

The shares of New Common Stock comprising the Post-Effective Date Equity Distribution shall remain authorized but unissued pending the outcome of all or a portion of the Lien-Related Litigation, which shall occur following the Effective Date. Upon adjudication or other resolution of all or a portion of the Lien-Related Litigation, the Reorganized Debtors shall issue the Post-Effective Date Equity Distribution in the amount of New Common Stock allocated to Class 3, 4 and/or 5 Claims, to the extent such Claims are entitled to receive New Common Stock, pursuant to an order of the Bankruptcy Court. No shares of New Common Stock shall be issued on account of the Post-Effective Date Equity Distribution except as provided in an order of the Bankruptcy Court with respect to the Lien-Related Litigation, which order shall designate the allocation of New Common Stock as between the Holders of Allowed DIP Claims, if any, Holders of Allowed Secured Notes Claims, if any, and Holders of Allowed General Unsecured Claims, if any. Upon such order of allocation from the Bankruptcy Court, to the extent the New Stockholders' Agreement is not terminated in accordance with its terms, each proposed Holder of New Common Stock under such order shall, as a condition to receiving such New Common Stock, be required to deliver an executed signature page to the New

Stockholders' Agreement. Each Holder shall be deemed a party to the New Stockholders' Agreement, if any, without regard to whether an executed signature pages is actually delivered.

D. *Lien-Related Litigation*

The Lien-Related Litigation shall be adjudicated following the Confirmation Date by the Bankruptcy Court according to the following timeline:

- *Phase 1:* The parties to the Lien-Related Litigation shall seek a final hearing date that is not more than 30 days after the Effective Date to determine the interpretation of the Final DIP Order. This phase shall be initiated by a pleading filed by the DIP Lenders or DIP Agent.

- *Phase 2:* If the Bankruptcy Court determines that any additional Lien-Related Litigation is necessary in light of the determinations in Phase 1, other than as to the valuation of Causes of Action, the relevant parties shall seek a hearing for determination of such additional issues not more than 30 days after the Bankruptcy Court's determination of issues presented in Phase 1 and in no event 60 days after the Effective Date. This phase shall be initiated by a pleading filed by the Lien-Related Litigation Creditor Representative on or before the 35th day following the Effective Date.

- *Phase 3:* If the Bankruptcy Court determines that the valuation of any Causes of Action are necessary as part of any Lien-Related Litigation in light of Phases 1 and 2, the relevant parties may seek a hearing for determination of such additional issues after the Bankruptcy Court's determination of issues presented in Phases 1 and 2. This phase shall be initiated by a pleading filed by the Lien-Related Litigation Creditor Representative not more than 30 days after the Bankruptcy Court's determination of issues presented in Phase 2.

- *Post-Effective Date Equity Distribution Allocations:* The Bankruptcy Court may, in its discretion, issue a final ruling as to the allocation of all or a part of the Post-Effective Date Equity Distribution at the conclusion of any of the three phases.

Discovery shall not occur except to the extent permitted and deemed necessary by the Bankruptcy Court. Expert reports, if any, shall be exchanged 14 days prior to any hearing. Any and all claims, objections, or challenges within the definition Lien-Related Litigation shall be dismissed with prejudice, released, and forever barred if not asserted and determined in accordance with the foregoing schedule and otherwise in accordance with the provisions of the Plan. The liquidation and valuation findings and conclusions in the Confirmation Order and in connection with Confirmation shall have preclusive effect in the Lien-Related Litigation, provided, however, such preclusive effect shall not apply to the valuation of the Debtors' Causes of Action, which shall be subject to valuation, if at all, in accordance with Phase 3 of the Lien-Related Litigation described in this section. .

The parties to the Lien-Related Litigation shall use all reasonable efforts to minimize the costs of such litigation. All costs of prosecuting the Lien-Related Litigation shall be borne by the respective parties to the litigation, and no costs shall be borne by the Reorganized Debtors or payable by one group of parties to the other; *provided that* in the event that (i) the DIP Lenders retain at least 50.01% of the New Common Stock following the Post-Effective Date Equity Distribution, nothing herein shall restrict the ability of the Reorganized Debtors to pay the fees and expenses of the DIP Lenders or Secured Ad Hoc Group at any time following the Effective Date or (ii) the holders of General Unsecured Claims hold at least 50.01% of the New Common Stock following the Post-Effective Date Equity Distribution, nothing herein shall restrict the ability of the Reorganized Debtors to pay the fees and expenses of the Lien-Related Litigation Creditor Representative at any time following the Effective Date. Notwithstanding the foregoing, nothing in this paragraph shall alter the rights of the DIP Lenders or DIP Agent to repayment or reimbursement to the extent provided under the Final DIP Order or DIP Credit Agreement. Notwithstanding anything in this Plan to the contrary, in connection with determining the Lien-Related Litigation, for purposes of clarification, all rights, claims, and defenses of the Holders of the DIP Claims, including all rights under sections 1129(a)(9)(A) and 726 of the Bankruptcy Code shall be deemed preserved. Without limiting the foregoing, for purposes of clarification, nothing herein restricts the ability of the Lien-Related Litigation Creditor Representative to employ

professionals and seek or secure funding or financing to pay for the reasonable fees and expenses incurred in connection with the Lien-Related Litigation to the extent permitted by otherwise applicable law.

There shall be no issuance and distribution of New Common Stock pursuant to the Post-Effective Date Equity Distribution except pursuant to an order entered by the Bankruptcy Court with respect to or following the resolution of the Lien-Related Litigation. Any and all issues regarding the proper allocation of the Post-Effective Date Equity Distribution shall be determined by the Bankruptcy Court in connection with the Lien-Related Litigation and consistent with the Final DIP Order and the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code, which determination regarding such allocation may include, among other things, the consideration of the value, if any, of any Causes of Action preserved by the Reorganized Debtors pursuant to the Plan and whether such value should be allocated to or offset by Secured Claims or Administrative Claims. The New Common Stock shall be issued pursuant to the Post-Effective Date Equity Distribution upon an order of the Bankruptcy Court, which order shall designate the allocation of New Common Stock as between the Holders of Allowed DIP Claims, if any, Holders of Allowed Secured Notes Claims, if any, and Holders of Allowed General Unsecured Claims, if any.

Reorganized SN shall not declare, pay, or make any dividend or other similar distribution on account of the New Common Stock or make any similar transfer with respect to the New Common Stock until the Post-Effective Date Equity Distribution has occurred. Prior to the earlier of (i) the resolution of the Lien-Related Litigation and (ii) the distribution of all New Common Stock comprising the Post-Effective Date Equity Distribution, the Reorganized Debtors will seek approval of any settlement or compromise of any Causes of Action against the Sanchez Parties, SOG, SNMP, or their respective transferees (within the meaning of section 550 of the Bankruptcy Code) or Lien-Related Litigation, following consultation with the Lien-Related Litigation Creditor Representative, pursuant to Bankruptcy Rule 9019, after notice and opportunity for a hearing.

E. *Continuation of Gavilan Proceeding*

The Gavilan Proceeding shall be litigated or compromised after the Effective Date exclusively by the Reorganized Debtors.

F. *Corporate Existence*

Except as otherwise provided in the Plan, the New Organizational Documents, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

G. *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors, including interests held by the Debtors in their respective non-Debtor subsidiaries, shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H. *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the implementation of the Restructuring Transactions; (2) the selection of the directors and officers for the Reorganized Debtors; (3) the adoption of the Management Incentive Plan, if any, by the Reorganized SN Board; (4) the issuance and distribution of the New Common Stock; and (5) all other actions contemplated under or necessary to implement the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors, or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I. *New Organizational Documents*

Prior to the Effective Date, the Secured Ad Hoc Group shall prepare the form of New Organizational Documents, which shall be included in the Plan Supplement. On the Effective Date, to the extent legally required, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation. The New Organizational Documents shall be consistent with section 1123(a)(6) of the Bankruptcy Code. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Organizational Documents. Neither the preparation nor the filing of the New Organizational Documents shall be deemed to create a new corporate or other legal entity, and the New Organizational Documents shall be deemed amendments to or amendments and restatements of applicable organizational documents for purposes of any change of control determination.

J. *Directors and Officers of Reorganized SN*

The composition and membership of the Reorganized SN Board shall be determined prior to the Effective Date by the Secured Ad Hoc Group and included in the Plan Supplement. Thereafter, the members of the Reorganized SN Board shall be elected in accordance with the New Organizational Documents. Provisions regarding the removal, appointment, and replacement of members of the Reorganized SN Board in subsequent terms will be disclosed in the New Organizational Documents.

If the Secured Ad Hoc Group, the CRO and each applicable executive reach an agreement with respect to the terms and form of the New Executive Agreements, such agreement shall be included in the Plan Supplement and, on the Effective Date, the Reorganized Debtors shall enter into the New Executive Employment Agreements.

K. *Retention of Current Workforce by Reorganized SN; Severance Payments*

The CRO and the Secured Ad Hoc Group shall agree upon the members of the Debtors' current workforce that shall be retained and employed by the Reorganized Debtors as of the Effective Date. Such individuals shall be offered employment as soon as practicable. The continuation of SN's obligations by Reorganized SN under the 2020 Non-Executive Bonus Program for such retained employees will be set forth in the Plan Supplement.

Severance consisting of up to six (6) weeks' severance pay up to an aggregate amount of up to $1.4 million shall be provided to all members of the Debtors' current workforce who are SOG employees that provide services to the Debtors, other than the Sanchez Parties, that are not offered employment with the Reorganized Debtors, provided such member of the Debtors' workforce has not been paid severance by SOG. All such payments will be subject to any customary or required withholdings and other requirements of law.

L. *Management Incentive Plan*

The Reorganized SN Board shall be authorized to implement the Management Incentive Plan on terms to be determined by the Reorganized SN Board.

M. *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, their officers, and the members of the Reorganized Boards are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Common Stock, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents.

N. *Preservation of Causes of Action*

Unless expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.

The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action, as applicable. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

Notwithstanding the foregoing, the Lien-Related Litigation Creditor Representative shall have standing to pursue, prosecute and sole authority to settle all Causes of Action referenced and asserted in the Lien Challenge Complaint as of the date hereof, solely to the extent and in accordance with the process and timing set forth in the Plan. The Bankruptcy Court shall retain exclusive jurisdiction to resolve all Causes of Action.

O. *Exemption from Registration Requirements*

The authorization, issuance, and distribution of all New Common Stock pursuant to the Plan, including the shares of New Common Stock issued pursuant to the DIP Equity Distribution and the Post-Effective Date Equity

Case 4:22-cv-02587 Document 6-10 Filed on 08/24/22 in TXSD Page 138 of 200

Distribution, regardless of whether issued on or as soon as reasonably practicable after the Effective Date or following the outcome of the Lien-Related Litigation, will be exempt from the registration requirements of section 5 of the Securities Act and any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under section 1145 of the Bankruptcy Code is not available, any other available exemption from registration under the Securities Act and such similar federal, state and local laws.

All New Common Stock authorized, issued and distributed pursuant to the Plan in reliance upon the exemption from registration provided in section 1145 of the Bankruptcy Code may be resold without registration under the Securities Act by the recipients thereof that are not "underwriters" (as defined in section 2(a)(11) of the Securities Act and in the Bankruptcy Code) pursuant to the Plan, subject to: (1) compliance with any applicable state and foreign securities laws and obtaining any other applicable regulatory approval; and (2) the transfer restrictions set forth in the New Organizational Documents, if any. For the avoidance of doubt, if any shares of New Common Stock are issued pursuant to the exemption from registration in section 4(a)(2) of the Securities Act, such shares of New Common Stock will be considered "restricted securities" and may not be resold by the recipients thereof except pursuant to an effective registration statement under the Securities Act or an available exemption thereunder. Reorganized SN will not be a public reporting company as of the Effective Date.

P. *Cancellation of Instruments, Certificates, and Other Documents*

Except for the purpose of evidencing a right to and allowing Holders of Claims to receive a distribution under the Plan and except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all notes, instruments, Certificates, and other documents evidencing Claims or Interests, and any other credit agreements and indentures evidencing or creating a prepetition Claim or Interest, shall be terminated and canceled, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged. Notwithstanding the foregoing, DIP Credit Agreement, Indentures, and the Collateral Trust Agreement, as applicable, shall continue in effect solely to the extent necessary to: (i) allow the DIP Agent, a disbursing agent, or the Indenture Trustees to make distributions to the Holders of DIP Claims, Secured Notes Claims and Unsecured Notes Claims, as applicable; (ii) permit the DIP Agent, the Indenture Trustees, and the Collateral Trustee to assert their charging liens; and (iii) allow the DIP Agent, the Indenture Trustees, Holders of Secured and Unsecured Notes, and the Collateral Trustee to maintain any right of indemnification, contribution, subrogation or any other claim or entitlement they may have under the DIP Credit Agreement, the Indentures, or the Collateral Trust Agreement, as applicable, with respect to any party other than the Debtors or Reorganized Debtors. The provisions of the DIP Credit Agreement, the Indentures, and the Collateral Trust Agreement governing the relationships of each of the DIP Agent, the DIP Lenders, the Indenture Trustees, the respective Holders of Secured Notes and Unsecured Notes, and the Collateral Trustee shall not be affected by the Plan, Confirmation, or Effective Date. Notwithstanding confirmation or consummation of this Plan (and for the avoidance of doubt), the Unsecured Notes Indentures and any agreement that governs the rights of the Holders of Unsecured Notes Claims shall continue in effect (and the Unsecured Notes Indenture Trustee shall remain as trustee, register and paying agent) for the purposes of: (1) preserving any rights of the Unsecured Notes Indenture Trustee to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the relevant Indenture, including any rights to priority of payment and/or to exercise charging liens; (2) permitting the Unsecured Notes Indenture Trustee to enforce any obligations owed to it under the Plan; and (3) permitting the Unsecured Notes Indenture Trustee to appear in the case or any proceeding in the case in which it is or may become a party.

Q. *Section 1146(a) Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan (including the Restructuring Transactions) or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar

tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

R. *DIP Agent Fees and Expenses*

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall pay in Cash all DIP Agent Fees and Expenses without the need for the DIP Agent to file fee applications or any other applications or motions with the Bankruptcy Court, and from and after the Effective Date, the Reorganized Debtors shall pay in Cash all DIP Agent Fees and Expenses incurred. For the avoidance of doubt, nothing herein shall be deemed to impair, waive, discharge, or negatively impact or affect the rights of the DIP Agent to exercise its charging liens pursuant to the terms of the DIP Credit Agreement.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption or Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided in the Plan or otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected in the Chapter 11 Cases, shall be assumed by the Reorganized Debtors, effective as of the Effective Date, in accordance with the requirements of sections 365 and 1123 of the Bankruptcy Code and regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order. Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date, notwithstanding the fact that the deadline to object to assumption or rejection of an Executory Contract or Unexpired Lease may be after the Effective Date.

Each Executory Contract or Unexpired Lease assumed by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or as otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease. Notwithstanding anything to the contrary in this Article V, the New Executive Employment Agreements shall be deemed to be entered into or assumed, as applicable, on the Effective Date.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Prior to the Confirmation Hearing, the Secured Ad Hoc Group will identify the Executory Contracts and Unexpired Leases to be included in the Schedule of Rejected Executory Contracts and Unexpired Leases, and the Debtors shall cause Notices of Rejection to be sent to the applicable counterparties in the Schedule of Rejected

Executory Contracts and Unexpired Leases setting forth the date by which objections to the proposed rejection, if any, must be Filed. The Debtors or the Reorganized Debtors, as applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases until the later of (a) the date by which objections to the proposed rejection must be Filed or (b) if such objection is Filed, prior to the date of a decision by the Bankruptcy Court with respect to such objection. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be Filed with the Bankruptcy Court by no later than the date provided in the Notice of Rejection, Confirmation Order or any other order of the Bankruptcy Court establishing the date by which such Proofs of Claim must be Filed. Any and all negotiation, litigation (including of any objection to rejection), dispute resolution or any other matters regarding the rejection of Executory Contracts and Unexpired Leases shall be carried out by the Reorganized Debtors after the Effective Date.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time set in the Notice of Rejection or by the Bankruptcy Court in the Confirmation Order will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

C. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Claims under each Executory Contract and Unexpired Lease to be assumed shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash as soon as reasonably practicable, subject to the limitations described below, by the Reorganized Debtors or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Reorganized Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall only be paid following the entry of a Final Order resolving the dispute and approving the assumption.

Prior to the Confirmation Hearing, the Secured Ad Hoc Group will identify the Executory Contracts and Unexpired Leases to be included in the Schedule of Assumed Executory Contracts and Unexpired Leases, and the Debtors shall cause Notices of Assumption to be sent to applicable counterparties. Any objection to the proposed assumption or cure amount by such counterparty must be Filed by no later than the date provided in the Notice of Assumption, Confirmation Order or any other order of the Bankruptcy Court establishing the date by which such objections must be Filed. The Debtors or the Reorganized Debtors, as applicable, reserve the right to remove an Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases and move it to the Schedule of Rejected Executory Contracts and Unexpired Leases until the later of (a) the date by which objections to the proposed assumption must be Filed or (b) if such objection is Filed, prior to the date of a decision by the Bankruptcy Court with respect to such objection. Any such objection shall be heard after the Confirmation Date at a date determined by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim. Any and all negotiation, litigation (including of any objection to assumption), dispute resolution or any other matters regarding the assumption of Executory Contracts and Unexpired Leases shall be carried out by the Reorganized Debtors after the Effective Date

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. **Any liabilities reflected in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned**

**shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

D. *Indemnification Obligations*

On and as of the Effective Date, the Indemnification Obligations to indemnify any Indemnified Parties with respect to the Exculpation Claims (i) will be assumed; (ii) will survive the effectiveness of the Plan; (iii) will not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, the Confirmation Order or the New Organizational Documents; (iv) will not be limited, reduced, or terminated after the Effective Date; and (v) will survive unimpaired and unaffected. Any payment of Indemnification Obligations by the Reorganized Debtors shall be sought first to the extent of any available coverage under existing insurance policies.

E. *Insurance Policies*

Notwithstanding anything in the Plan to the contrary, unless otherwise listed on the Schedule of Rejected Executory Contracts and Unexpired Leases (provided that no D&O Liability Insurance Policies shall be rejected), all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto to which a Debtor is a party, named insured or beneficiary as of the Effective Date are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance). Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim or Cure Claim need be Filed, and shall survive the Effective Date.

F. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G. *Contracts and Leases After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

H. *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding (1) whether a contract or lease is or was executory

Case 23-90611 Document 1234-10 Filed in TXSB on 04/14/23 Page 59 of 200

or unexpired at the time of assumption, (2) the amount of any Cure Claim, (3) the ability of the Reorganized Debtors or any assignee, as applicable, to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (4) any other matter pertaining to assumption, the Reorganized Debtors shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Distributions on Account of Claims Allowed as of the Effective Date*

Except with respect to the New Common Stock subject to the Post-Effective Date Equity Distribution, or except as provided in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Claim or Interest, on the first Distribution Date, the Disbursing Agent shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date; *provided*, *however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.C. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. Except as may be provided by an order of the Bankruptcy Court for the release of the New Common Stock subject to the Post-Effective Date Equity Distribution, which New Common Stock shall be released as soon as practicable following the entry of such order, a Distribution Date shall occur no more frequently than once in every 90-day period after the Effective Date, as necessary, in the sole discretion of the Reorganized Debtors.

B. *Rights and Powers of the Disbursing Agent*

1. <u>Powers of Disbursing Agent</u>

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2. <u>Expenses Incurred On or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

C. *Special Rules for Distributions to Holders of Disputed Claims*

Except as otherwise agreed by the relevant parties: (1) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (2) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order for the Claims have been Allowed or expunged. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

D. *Delivery of Distributions*

1. Record Date for Distributions

Except for distributions to holders of public securities, three (3) business days before the Effective Date, the Claims Register and the various transfer registers for each Class of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims. The Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after three (3) business days before the Effective Date. In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount. For the avoidance of doubt, no record date for distributions shall apply to holders of public securities.

2. Distribution Process

The Disbursing Agent shall make all distributions required under the Plan, except with respect to distributions to Holders of Allowed DIP Claims, Allowed Secured Notes Claims and Allowed Unsecured Notes Claims, as set forth herein, and shall exercise commercially reasonable efforts to implement appropriate mechanics governing such distributions in accordance with the Plan and the terms of the relevant governing agreement. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to Holders of record or their respective designees as of three (3) business days before the Effective Date: (a) to the address of such Holder or designee as set forth in the Debtors' books and records, provided that the address of such Holder shall be deemed to be the address set forth in any Proof of Claim filed by such Holder (or if the appropriate notice has been provided pursuant to the governing agreement in writing, on or before the date that is ten (10) calendar days before the Effective Date, of a change of address or an identification of designee, to the changed address or to such designee, as applicable); or (b) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the applicable register or the Debtors' books and records, no Proof of Claim has been Filed, and the Disbursing Agent has not received a written notice of a change of address on or before the date that is ten (10) calendar days before the Effective Date. The Debtors, the Reorganized Debtors, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

3. Delivery of Distributions to Holders of Allowed DIP Claims

Except as otherwise provided in the Plan or reasonably requested by the DIP Agent, all distributions to Holders of Allowed DIP Claims shall be deemed completed when made to (or with the consent of) the DIP Agent, which shall be deemed to be the Holder of all Allowed DIP Claims for purposes of distributions to be made hereunder. The DIP Agent shall hold or direct such distributions for the benefit of the Holders of Allowed DIP Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the DIP Agent shall arrange to deliver such distributions to or on behalf of such Holders of Allowed DIP Claims, at the sole expense of the Debtors or the Reorganized Debtors, as applicable. The DIP Agent shall not incur any liability on account of any distributions under the Plan.

4. Delivery of Distributions to Holders of Allowed Secured Notes Claims

Except as otherwise provided in the Plan or reasonably requested by the Secured Notes Indenture Trustee, all distributions to Holders of Allowed Secured Notes Claims shall be deemed completed when made to (or with the consent of) the Secured Notes Indenture Trustee, which shall be deemed to be the Holder of all Allowed Secured Notes Claims for purposes of distributions to be made hereunder. The Secured Notes Indenture Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Secured Notes Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the Secured Notes Indenture Trustee shall arrange to deliver such distributions to or on behalf of such Holders of Allowed Secured Notes Claims, at the sole expense of the Debtors or the Reorganized Debtors, as applicable. Notwithstanding anything to the contrary in

the Plan, the Secured Notes Indenture Trustee may transfer or direct that the distribution be made to the holders of the Secured Notes directly on the books and records of the Reorganized SN's transfer agent or through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise) consistent with the customary practices of DTC. Such distributions shall be subject in all respects to the right of the Secured Notes Indenture Trustee or Collateral Trustee, as applicable, to assert its applicable charging liens against such distributions. The Reorganized Debtors reserve the right to issue New Common Stock to Holders of Allowed Secured Notes Claims directly on the books and records of the transfer agent or to seek to make the New Common Stock eligible to be distributed through the facilities of DTC and as provided for under the Secured Notes Indenture. The Secured Notes Indenture Trustee shall not incur any liability on account of any distributions under the Plan.

5. Delivery of Distributions to Holders of Allowed Unsecured Notes Claims

Except as otherwise provided in the Plan or reasonably requested by the Unsecured Notes Indenture Trustee, all distributions to Holders of Allowed Unsecured Notes Claims shall be deemed completed when made to (or with the consent of) the Unsecured Notes Indenture Trustee, which shall be deemed to be the Holder of all Allowed Unsecured Notes Claims for purposes of distributions to be made hereunder. The Unsecured Notes Indenture Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Unsecured Notes Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the Unsecured Notes Indenture Trustee shall arrange to deliver such distributions to or on behalf of such Holders of Allowed Unsecured Notes Claims. Notwithstanding anything to the contrary in the Plan, the Unsecured Notes Indenture Trustee may transfer or direct that the distribution be made to the holders of the Unsecured Notes directly on the books and records of the Reorganized SN's transfer agent or through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise) consistent with the customary practices of DTC. Such distributions shall be subject in all respects to the right of the Unsecured Notes Indenture Trustee to assert its applicable charging liens against such distributions. The Reorganized Debtors reserve the right to issue New Common Stock to Holders of Allowed Unsecured Notes Claims directly on the books and records of the transfer agent or to seek to make the New Common Stock eligible to be distributed through the facilities of DTC and as provided for under the 2021 Unsecured Notes Indentures and the 2023 Unsecured Notes Indenture. The Unsecured Notes Indenture Trustee shall not incur any liability on account of any distributions under the Plan.

6. Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Disbursing Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Disbursing Agent, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, or withholding distributions pending receipt of information necessary to facilitate such distributions. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

7. Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Effective Date.

8. Fractional, Undeliverable, and Unclaimed Distributions

a. *Fractional Distributions*. Whenever any distribution of fractional shares of New Common Stock or Cash would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction down to the nearest whole interest or share or dollar, as applicable. The total number of authorized shares of New Common Stock to be

distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

b. *Minimum Distributions*. Holders of Allowed Claims entitled to distributions of less than $50 in the aggregate (whether Cash or otherwise) shall not receive distributions, and each such Claims shall be discharged pursuant to Article VIII and their Holders are forever barred pursuant to Article VIII from asserting such Claims against the Debtors, the Reorganized Debtors or their property.

c. *Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is canceled pursuant to Article VI.D.7.d of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Shares of New Common Stock that are un-issuable or un-registerable because the prospective recipient fails to provide the Debtors with the information needed to issue or register such New Common Stock shall be treated as undeliverable and Unclaimed Distributions.

d. *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of 6 months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor, and, to the extent such Unclaimed Distribution is comprised of New Common Stock, they shall be deemed canceled and/or remain unissued, as applicable, with no further action by any person or Entity. Upon such reverting or revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

9. Surrender of Canceled Instruments or Securities

On the Effective Date, each Holder of a Certificate shall be deemed to have surrendered such Certificate to the Disbursing Agent or a Servicer (to the extent the relevant Claim is governed by an agreement and administered by a Servicer). Such Certificate shall be canceled solely with respect to the Debtors, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. Notwithstanding the foregoing, this provision shall not apply to any Claims and Interests Reinstated pursuant to the terms of the Plan.

E. *Claims Paid or Payable by Third Parties*

1. Claims Paid by Third Parties

A Claim shall be correspondingly reduced, and the applicable portion of such Claim shall be Disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives a payment on account of such Claim from a party that is not a Debtor or a Reorganized Debtor; *provided* that the Debtors or the Reorganized Debtors, as applicable, shall provide 21 calendar days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on behalf of the Debtors on account of such Claim, such Holder shall, within 14 calendar days of receipt thereof, repay or return the distribution to the Reorganized Debtors to the extent the Holder's total recovery

on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each business day after the 14-day grace period specified above until the amount is repaid.

2. Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that the Debtors or the Reorganized Debtors, as applicable, shall provide 21 calendar days' notice to the Holder of such Claim prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Notwithstanding anything to the contrary contained herein (including Article VIII), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers, under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F. *Setoffs*

Except as otherwise expressly provided for herein and for purposes of clarification, excluding the DIP Equity Distribution to be made on the Effective Date, each Debtor or Reorganized Debtor, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Debtor or Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

G. *Allocation Between Principal and Accrued Interest*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Allowed Claims, to any portion of such Claims for accrued but unpaid interest.

H. *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, the Confirmation Order, or documents executed as required by the Plan, or required by applicable bankruptcy law, postpetition interest

shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim. Notwithstanding the foregoing, all interest, fees, costs, charges, and other amounts due under the DIP Credit Agreement and the Final DIP Order with respect to the DIP Claims shall continue to accrue until the resolution of the Lien-Related Litigation.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A. *Allowance of Claims*

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B. *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the sole authority to File and prosecute objections to Claims, and the Reorganized Debtors shall have the sole authority to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. On and after the Effective Date, the Reorganized Debtors will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise. For the avoidance of doubt, no claims administration shall occur prior to the Effective Date.

C. *Estimation of Claims*

On or after the Effective Date, the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors or Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D. *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors, as applicable, without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E. *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F. *Disallowance of Claims*

Except as otherwise provided in the Plan, any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors, as applicable. All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. For purposes of clarification, this paragraph shall not apply to the DIP Equity Distribution on the Effective Date.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtors any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G. *Amendments to Claims*

On or after the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

H. *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors. For the avoidance of doubt, the foregoing shall not apply to a DIP Claim with respect to the DIP Equity Distribution.

I. *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order (or, if applicable, upon the Post-Effective Date Equity Distribution), the Reorganized Debtors shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided in the Plan.

## ARTICLE VIII.
## EFFECT OF CONFIRMATION OF THE PLAN

A. *Discharge of Claims and Termination of Interests*

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.**

B. *Exculpation*

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any claim related to any act or omission (including acts or omissions prior to the Petition Date) in connection with, relating to, or arising out of the Chapter 11 Cases, the preparation and filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Disclosure Statement, the Plan, or any other documents relating to the Plan and the Chapter 11 Cases or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the preparation for and filing of the Chapter 11 Cases, administration of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, gross negligence, or willful misconduct (collectively, the "<u>Exculpation Claims</u>"), but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

C. *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that (1) have been released pursuant to the Plan, (2) shall be discharged pursuant to the Plan, or**

**(3) are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

D. *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

E. *Release of Liens*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, release, or other agreement or document created, assumed, or Reinstated pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, to the extent securing any Claims discharged under the Plan, shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors, or the Debtors, as applicable, and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, or any other Holder of a Secured Claim.

The DIP Agent, the Secured Notes Indenture Trustee, and the Collateral Trustee shall execute and deliver all documents reasonably requested by the Debtors or the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors and their designees to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto, at the sole expense of the Debtors or the Reorganized Debtors, as applicable. The Secured Notes Indenture Trustee or the Collateral Trustee is authorized to release such mortgages, deeds of trust, Liens, pledges, and other security interests as of any date prior to the Effective Date as they may be authorized or directed in accordance with the Secured Notes Indenture, the Collateral Trustee Agreement, or any other documents governing the rights of Holders of Secured Notes Claims, and such release shall be deemed to occur on such prior date.

F. *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as non-contingent, or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

G. *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

H. *Subordination Rights*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan take into account and conform to the relative priorities and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights.

## ARTICLE IX.
## DEADLINE FOR EFFECTIVE DATE; CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A. *Deadline for Occurrence of the Effective Date*

The Effective Date shall occur as soon as practicable after the Confirmation Date, but in no event later than 45 days after the Confirmation Date; *provided* that the Debtors and the Requisite DIP Lenders may agree to extend the occurrence of the Effective Date.

B. *Conditions Precedent to the Effective Date of the Plan*

It shall be a condition to the occurrence of the Effective Date that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1. the Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Requisite DIP Lenders;

2. the Plan and the applicable documents in the Plan Supplement, including any exhibits, schedules, documents, amendments, modifications, or supplements thereto, and inclusive of any modifications, amendments, or supplements made after the Confirmation Date but before the Effective Date, shall have been filed, in form and substance reasonably acceptable to the Requisite DIP Lenders;

3. the Requisite DIP Lenders shall be satisfied, in an exercise of their sole discretion, that the 13-week forecast and the monthly cash flow forecast for the next 12 months as of the Effective Date, which shall be prepared in good faith by the CRO, reflects that the Reorganized Debtors will have sufficient liquidity to operate in the ordinary course of business after the Effective Date;

4. the DIP Agent shall have released the Carve-Out Trigger Notice Reserves to the Reorganized Debtors;

5. the Reorganized Debtors shall have funded the Professional Fee Settlement Reserve;

6. the New Organizational Documents shall be in full force and effect, in form and substance acceptable to the Requisite DIP Lenders; and

7. the New Executive Employment Agreements shall be in full force and effect, in form and substance acceptable to the Requisite DIP Lenders.

C. *Waiver of Conditions*

The conditions to the Confirmation and Effective Date of the Plan set forth in Article IX of the Plan may be waived by the Debtors, with the reasonable consent of the Requisite DIP Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D. *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

E. *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A. *Modification of Plan*

Effective as of the date hereof: (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein; *provided* that no amendment or modification may be made by the Debtors without the consent, not to be unreasonably withheld, of the Requisite DIP Lenders.

B. *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of

Action by any Entity, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim against a Debtor, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims; *provided* that the Bankruptcy Court's jurisdiction with respect to the foregoing shall be on a non-exclusive basis;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors or the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to the Plan, any Executory Contracts or Unexpired Leases set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigation matters, including the Lien-Related Litigation and any other matters involving the Sanchez Entities, SOG, SNMP, subsequent transferees of the foregoing, or current or former directors or officers of the Debtors or of any of the foregoing;

7. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by a Final Order in the Chapter 11 Cases, and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

8. enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. enforce or resolve disputes regarding the Professional Fee Settlement;

10. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

11. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.E.1 of the Plan; (b) with respect to the exculpation, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such exculpation, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

13. enter and enforce any order for the sale of property pursuant to section 363, 1123, or 1146(a) of the Bankruptcy Code;

14. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

17. enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18. enforce all orders previously entered by the Bankruptcy Court;

19. hear and determine disputes involving all matters the implementation of the Plan; and

20. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Subject to Article IX hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B. *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Dissolution of the Creditors' Committee*

On the Effective Date, the Creditors' Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of (i) prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date by the Creditors' Committee and its Professionals and objecting to requests for payment of Professional Fee Claims, (ii) transitioning management of the Lien-Related Litigation to the Lien-Related Litigation Creditor Representative, (iii) transitioning management of any other Causes of Action (including against SOG, SNMP, and the Sanchez Entities) to the Reorganized Debtors or other appropriate litigant), and (iv) appoint the Lien-Related Litigation Creditor Representative. The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date, except that (a) the Reorganized Debtors may, subject to Article IV.D. hereof, agree to pay for activities within the scope of clauses (ii) and (iv) as expenses of the Lien-Related Litigation Creditor Representative and (b) the Reorganized Debtors may agree to pay for activities within the scope of clause (iii).

The Lien-Related Litigation Creditor Representative and its professional advisors shall be entitled to become parties to the *Stipulated Protective Order* entered at Docket No. 306, which shall remain in effect following the Effective Date, subject to the provisions of this Plan and the Confirmation Order. The Creditors' Committee and its professional advisors shall be authorized to transition the management of the Lien-Related Litigation to the Lien-Related Litigation Creditor Representative and its advisors, and the Creditors' Committee and its professional advisors shall be authorized to transition the management of other litigation (including against SOG, SNMP, and the Sanchez Entities) to the Reorganized Debtors or other appropriate litigant and its advisors. In each case, the Creditors' Committee shall be deemed to share a common interest with the applicable successor litigant, and, pursuant to Rule 502(d) of the Federal Rules of Evidence, the transmission to the successor litigant of material protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection shall not result in a waiver or forfeiture of any such privilege or protection held by the Creditors' Committee.

D. *Payment of Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor and Reorganized Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's or Reorganized Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code; *provided* that upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of SN, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of SN.

E. *Reservation of Rights*

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F. *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G. *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **Sanchez Energy Corporation**<br>1000 Main Street, Suite 3000<br>Houston, Texas 77002<br>Attn: Gregory Kopel<br><br>with copies to: |
| **Counsel to Debtors** | |
| JACKSON WALKER L.L.P<br>Matthew D. Cavenaugh<br>Elizabeth Freeman<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Telephone: (713) 752-4284<br>Facsimile: (713) 308-4184<br>mcavenaugh@jw.com<br>efreeman@jw.com | AKIN GUMP STRAUSS HAUER & FELD LLP<br>Marty L. Brimmage<br>Lacy M. Lawrence<br>2300 N. Field Street, Suite 1800<br>Dallas, Texas 75201<br>Telephone: (214) 969-2800<br>Facsimile: (214) 969-4343<br>mbrimmage@akingump.com<br>llawrence@akingump.com<br><br>-and-<br><br>Ira S. Dizengoff<br>Jason P. Rubin<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br>idizengoff@akingump.com<br>lbeckerman@akingump.com<br>jrubin@akingump.com<br><br>-and-<br><br>James Savin<br>2001 K Street NW<br>Washington, D.C. 20006<br>Telephone: (202) 887-4000<br>Facsimile: (202) 887-4288<br>jsavin@akingump.com |

H. *Term of Injunctions or Stays*

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

I. *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J. *Plan Supplement*

After any of such documents included in the Plan Supplement are Filed, copies of such documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Claims, Noticing and Solicitation Agent's website at https://cases.primeclerk.com/sanchezenergy or the Bankruptcy Court's website at https://www.pacer.gov/.

K. *Non-Severability*

If, prior to Confirmation, the Bankruptcy Court holds any term or provision of the Plan to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

L. *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

M. *Closing of Chapter 11 Cases*

After the full administration of the Chapter 11 Cases, the Reorganized Debtors shall File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N. *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: April 30, 2020

SANCHEZ ENERGY CORPORATION
on behalf of itself and all other Debtors

*/s/ Mohsin Y. Meghji*

Name: Mohsin Y. Meghji
Title: Chief Restructuring Officer
Sanchez Energy Corporation

# EXHIBIT 5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SANCHEZ ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 19-34508 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: ECF No. 1248** |

**ORDER GRANTING EMERGENCY MOTION MODIFYING PARAGRAPH 17 OF THE ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SANCHEZ ENERGY CORPORATION AND ITS DEBTOR AFFILIATES**

Upon the motion (the "Motion")[2] of the above-captioned Debtors (collectively, the "Debtors") for entry of an order (this "Order") modifying paragraph 17 of the Confirmation Order for the limited purpose of extending the Contract Objection Deadline (as defined in the Confirmation Order) from May 20, 2020 to June 22, 2020 with respect to specified counterparties and executory contracts, and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the circumstances warrant the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sanchez Energy Corporation (0102); SN Palmetto, LLC (3696); SN Marquis LLC (0102); SN Cotulla Assets, LLC (0102); SN Operating, LLC (2143); SN TMS, LLC (0102); SN Catarina, LLC (0102); Rockin L Ranch Company, LLC (0102); SN EF Maverick, LLC (0102); SN Payables, LLC (0102); SN UR Holdings, LLC (0102). The location of the Debtors' service address is 1000 Main Street, Suite 3000, Houston, Texas 77002.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

modification proposed by the Debtors, and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; this Court ORDERS:

1. The Confirmation Order is hereby modified by deleting paragraph 17 thereof in its entirety and replacing it with the following:

> 17. **Executory Contracts and Unexpired Leases**. Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties and except as expressly otherwise provided in paragraphs 23-25 of this Confirmation Order, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date, notwithstanding the fact that the deadline to object to assumption or rejection of an Executory Contract or Unexpired Lease is May 20, 2020, or such later date as the Debtors or Reorganized Debtors and the applicable party may agree (the "**Contract Objection Deadline**"), which may be after the Effective Date; *provided that* with respect to those parties identified on **Exhibit 2** and those Executory Contracts identified on **Exhibit 3**, the Contract Objection Deadline is June 22, 2020 or such later date as the Debtors or Reorganized Debtors and the applicable party may agree. Any Executory Contract or Unexpired Lease that is subject to an unresolved objection to the proposed assumption or rejection of such Executory Contract or Unexpired Lease that is filed prior to the Contract Objection Deadline shall not be deemed to be assumed or rejected, as applicable, until entry of an order resolving the dispute and approving the assumption or rejection, as applicable, of such Executory Contract or Unexpired Lease or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty; *provided that* after the Effective Date, the Reorganized Debtors may settle any dispute regarding any Cure Claim without any further notice to any party or any action, order, or approval of this Court.

2. **Exhibits A** and **B** to the Motion are deemed annexed to the Confirmation Order as **Exhibits 2** and **3**, respectively.



1" = "1" "25885938v.1" "" 25885938v.1

3. The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

4. The terms and conditions of this Order shall be immediately effective and enforceable upon entry.

Dated:

____________________________________
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## Specified Contract Counterparties

Case 20-33233 Document 1263 Filed in TXSB on 06/24/20 Page 5 of 32

- Occidental Petroleum Corporation and Western Midstream Partners, LP and their respective direct and indirect subsidiaries and affiliates (collectively, the "Occidental and Western Parties"), including:[1]
  - Anadarko Petroleum Corporation
  - Anadarko Energy Services Company
  - Anadarko E&P Onshore, LLC
  - Anadarko E&P Company LP
  - Kerr-McGee Oil & Gas Onshore LP
  - Kerr-McGee Oil & Gas Onshore, LLC
  - Springfield Pipeline, LLC
  - WGR Operating, LP
  - Western Gas Operating, LLC
  - Western Gas Partners, LP
  - Western Midstream Partners, LP
- Marathon Oil EF, LLC
- Mitsui E&P Texas LP
- Mitsui & Co. Energy Marketing & Services (USA), Inc.
- Eagle Ford TX LP
- Gavilan Resources, LLC
- GSO ST Holdings LP, and each of its affiliates that have a contractual relationship with the Debtors
- GSO ST Holdings Associates LLC, and each of its affiliates that have a contractual relationship with the Debtors
- SN EF UnSub GP, LLC
- SN EF UnSub LP
- SN EF UnSub Holdings, LLC
- Catarina Midstream, LLC
- Plains South Texas Gathering, LLC and Plains Gas Solutions, LLC
- TPL SouthTex Processing Company LP

---

[1] The Occidental and Western Parties are provided an extension, through the Contract Objection Deadline, to raise any objections with respect to the Debtors' proposed rejection of all contracts listed on the Schedule of Rejected Executory Contracts and Unexpired Leases that name any of the Occidental and Western Parties and with respect to the counterparties listed below (solely with respect to the contracts identified below), or any other agreements that amend, supplement, or otherwise are related to or are allegedly integrated with such contracts; *provided* that (a) nothing contained herein shall confer upon the Occidental and Western Parties standing to object to the Debtors' proposed assumption or rejection of any such contracts and all parties' rights to raise any and all claims or defenses to such objections are expressly reserved, and (b) nothing contained in this footnote shall limit the rights of Gavilan Resources, LLC to object, through June 22, 2020, to the Debtors' proposed assumption or rejection of any contracts to which it is a party.

- Gavilan Resources, LLC (with respect to the Joint Development Agreement, Crude Oil Production Marketing Agreement, Residue Gas Marketing Agreement, and Natural Gas Liquids Marketing Agreement and any amendments to any of these agreements only).

- BP Oil Supply, a division of BP Products North America, Inc. (with respect to a certain "Amendment to the Purchase Agreement" and any other agreement to which it and any of the above-referenced entities are jointly listed as counterparties).

- TPL SouthTex Transmission Company LP
- Carnero G&P LLC and its affiliates
- Hilcorp Energy I, L.P.
- Archrock Partners Operation LLC, Archrock Sevices LP and their affiliates
- Seco Pipeline, LLC
- Sanchez Midstream Partners LP
- Sanchez Midstream Partners GP LLC
- Venado Oil & Gas, LLC and each of its direct and indirect subsidiaries (including, without limitation, Venado EF L.P. and its subsidiaries)
- Targa Resources Corporation
- B.L. Stanley, Ltd., Worthey Properties, Ltd. Robert Edward Worthey Trust, Teressa Kountz Trust and Tonya Hedleston Trust

# EXHIBIT B

## Specified Contracts

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation | Frio LaSalle Pipeline, LP | Fourth Amendment to Gas Gathering Agreement |
| SN Palmetto, LLC | Marathon Oil EF LLC | Marketing Agreement |
| SN Cotulla Assets, LLC | Eagle Ford Gathering LLC | Amendment to Gas Services Agreement |
| SN Marquis, LLC | American Midstream (Lavaca) LLC | Firm Gas Gathering Agreement |
| SN Cotulla Assets, LLC | Regency Field Services LLC | Natural Gas Sale and Purchase Contract |
| SN Cotulla Assets, LLC | Frio Lasalle Pipeline LP | Letter Agreement |
| SN Catarina, LLC | Catarina Midstream, LLC | Firm Gathering and Processing Agreement |
| SN Cotulla Assets, LLC | ETC Field Services LLC | First Amendment to Gas Gathering Agreement |
| SN Catarina, LLC | ETC Texas Pipeline, Ltd.<br>Shell Western E&P | Gathering and Natural Gas Services Agreement |
| SN Catarina, LLC | Houston Pipe Line Company, LP<br>Shell Western E&P<br>SWEPI, LP<br>Houston Pipe Line Company LP | Intrastate Natural Gas Transportation Service Agreement |
| SN Catarina, LLC | Houston Pipe Line Company LP<br>SWEPI LP d/b/a Shell Western E&P<br>Houston Pipe Line Company LP | Interruptible Natural Gas Transportation Service Agreement |
| SN Catarina, LLC | ETC Texas Pipeline, Ltd.<br>Shell Western E&P | Gathering and Natural Gas Services Agreement |
| SN Catarina, LLC | SWEPI LP dba Shell Western E&P<br>Houston Pipe Line Company LP | Intrastate Natural Gas Transportation Service Agreement |
| SN Catarina, LLC | Humble Gas Pipeline Company<br>SWEPI LP | Gas Transportation Agreement |
| SN Catarina, LLC | Humble Gas Pipeline Company<br>SWEPI LP | Gas Transportation Agreement |
| SN Catarina, LLC | Eagle Ford<br>SWEPI LP | Gas Services Agreement |
| SN Catarina, LLC | SWEPI LP<br>Eagle Ford Gathering LLC | Interconnect Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN Catarina, LLC | Humble Gas Pipeline Company<br>SWEPI LP | Gas Transportation Agreement |
| SN Catarina, LLC | Humble Gas Pipeline Company<br>SWEPI LP | Gas Transportation Agreement |
| SN Catarina, LLC | SWEPI LP<br>Eagle Ford | Gas Services Agreement |
| SN Catarina, LLC | SWEPI LP<br>Velocity South Texas Gathering, LLC<br>Velocity Midstream Partners, LLC | Oil Gathering Agreement |
| SN Catarina, LLC | Etc Texas Pipeline, Ltd<br>SWEPI LP, dba Shell Western E&P | Gathering and Processing Agreement |
| SN Catarina, LLC | Plains Gas Solutions, LLC<br>SWEPI LP | Interruptible Condensate Stabilization Agreement |
| SN Catarina, LLC | ETC Texas Pipeline, Ltd.<br>SWEPI LP, dba Shell Western E&P | Second Amendment to Individual Transaction Confirmation |
| SN Catarina, LLC | ETC Texas Pipeline, Ltd.<br>SWEPI LP, dba Shell Western E&P | First Amendment to Individual Transaction Confirmation |
| SN Catarina, LLC | Gazelle Transportation Inc.<br>Shell Exploration & Production Company (SEPCOo) on behalf of SWEPI LP | Sale to and Purchase from Gazelle Transportation, Inc. |
| SN Catarina, LLC | Shell Exploration & Production Company (SEPCO) on behalf of SWEPI LP<br>Gazelle Transportation Inc. | Amendment to Purchase and Sale Agreement |
| SN Catarina, LLC | Gazelle Transportation<br>Shell Exploration & Production Company (SEPCO) on behalf of SWEPI LP | Amendment to Purchase and Sale Agreement |
| SN Catarina, LLC | Jag Energy USA, Inc.<br>SWEPI LP | Natural Gas Liquids. Commercial Terms Confirmation |
| SN Catarina, LLC | Eagle Ford Gathering LLC | First Amendment to Gas Services Agreement |
| Sanchez Energy Corporation | Springfield Pipeline, LLC | Extension Rider for License Agreement |



1" = "1" "25885938v.1" "" 25885938v.1

010316

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN Catarina, LLC | Anadarko E&P Onshore, LLC<br>Eagle Ford Gathering, LLC | Gas Service Agreement |
| SN Catarina, LLC | Axis Marketing, LLC | Raw Make Purchase/Sales Agreement |
| Sanchez Energy Corporation<br>SN Catarina, LLC | TPL Southtex Processing Company LP by TPL Southtex Pipeline Company LLC, its general partner | Amendment Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | TPL Southtex Processing Company LP by TPL Southtex Pipeline Company LLC, its general partner | First Amendment to Firm Gas Processing Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | TPL Southtex Processing Company LP | Firm Gas Processing Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | TPL Southtex Processing Company LP | Firm Gas Gathering Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | TPL Southtex Processing Company LP<br>Carnero Processing, LLC | Omnibus Amendment to the Gathering LLC and the Processing LLC Agreement |
| SN Catarina, LLC | Eagle Ford Gathering, LLC | First Amendment to Gas Gathering Agreement |
| SN Catarina, LLC | Eagle Ford Gathering, LLC | Second Agreement Gas Services |
| SN Catarina, LLC | Eagle Ford Gathering, LLC | Third Amendment to Gas Services Agreement |
| SN Catarina, LLC | SWEPI LP<br>Eagle Ford Gathering LLC | Gas Services Agreement |
| SN Catarina, LLC | SWEPI LP, Doing Business As Shell Western E&P<br>Etc Texas Pipeline, Ltd | Individual Transaction Confirmation to Gathering and Processing Agreement |
| SN Catarina, LLC | SWEPI LP, doing business as SWEPI LP, doing business as Shell Western E&P<br>ETC Texas Pipeline, Ltd. | Gathering and Processing Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 1 to the Purchase Agreement |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation<br>SN Catarina, LLC | Shell Trading (US) Company | Amendment 2 to the Purchase Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 3 to the Purchase Agreement |
| SN Catarina, LLC<br>Sanchez Energy Corporation | Shell Trading (US) Company | Crude Oil Purchase Agreement |
| SN Catarina, LLC | Seco Pipeline, LLC | Firm Transportation Service Agreement |
| SN EF Maverick, LLC | Kerr-Mcgee Oil & Gas Onshore, LP<br>Anadarko E&P Onshore, LLC | Specified Midstream Assumption Agreement |
| SN EF Maverick, LLC | Bp Products North America, Inc.<br>Anadarko E&P Onshore, LLC | First Amendment to Service Contract |
| SN EF Maverick, LLC | Bp Oil Supply, a division of BP Products North America, Inc. | Amendment to the Purchase Agreement |
| SN EF Maverick, LLC | BP Products North America, Inc.<br>Anadarko E&P Onshore, LLC | Crude Oil Purchase Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Double Eagle Pipeline, LLC C/O Copano Double Eagle, LLC<br>Kinder Morgan Crude & Condensate, LLC | Throughput and Deficiency Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC, F.K.A. Anadarko E&P Company, LP<br>WGR Operating, LP by Western Gas Operating, LLC, its General Partner | Treating and Handling Fees - Brasada Gas Processing Plant |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>WGR Operating, LP | Gas Processing Agreement Amendment No. 1 |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>WGR Operating, LP | Gas Processing Agreement Amendment No. 2 |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>WGR Operating, LP | Gas Processing Agreement Amendment No. 3 |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>WGR Operating, LP | Gas Processing Agreement Amendment No. 4 |



1" = "1" "25885938v.1" "" 25885938v.1

Case 20-33233 Document 6310 Filed in TXSB on 03/28/20 Page 13 of 31

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | Wgr Operating, LP by Western Gas Operating, LLC, its General Partner<br>Anadarko E&P Company, LP | Gas Processing Agreement |
| SN EF Maverick, LLC<br>SN Catarina, LLC | WGR Operating, LP | WGR Gas Agreement |
| SN EF Maverick, LLC | TPL SouthTex Processing Company, LP by TPL Southtex Processing Company, LLC, its General Partner | First Amendment to the Interruptible Gas Gathering, Processing and Purchase Agreement |
| SN EF Maverick, LLC | Carnero G&P, LLC | Firm Gas Gathering, Processing and Purchase Agreement |
| SN EF Maverick, LLC<br>Sanchez Energy Corporation | TPL Southtex Processing Company, LP | Interruptible Gas Gathering, Processing and Purchase Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Eagle Ford Midstream, LP By Net General Partners, LLC, Its General Partner | First Amendment to Firm Agreement NGPA Sec. 311 Gas Transportation Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Eagle Ford Midstream, LP by Net General Partners, LLC, its General Partner | First Amendment to Firm Intrastate Gas Transportation Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Eagle Ford Midstream, LP | Firm NGPA Section 311 Gas Transportation Agreement |
| SN EF Maverick, LLC | Eagle Ford Midstream, LP<br>Anadarko Energy Services Company | Firm Intrastate Gas Transportation Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Endeavor Natural Gas, LP<br>Cima Energy, Ltd<br>Upstream Energy Services, LLC | Gas Gathering Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Endeavor Natural Gas, LP | First Amendment to Gas Gathering Agreement |


1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Endeavor Natural Gas, LP | Interconnection Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Endeavor Natural Gas, LP | Interconnection Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Endeavor Natural Gas, LP | Interconnection Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Enterprise Products Operating, LLC, By Enterprise Products Olpgp, Inc. | Purchase Agreement |
| SN EF Maverick, LLC | Enterprise Products Operating, LLC<br>Anadarko Energy Services Company | Transportation Services Agreement |
| SN EF Maverick, LLC | Enterprise Products Operating, LLC, By Enterprise Products Olpgp, Inc.<br>Anadarko Petroleum Corporation | First Amendment to Gas Gathering, Processing and Purchase Contract |
| SN EF Maverick, LLC | Anadarko Petroleum Corporation<br>Enterprise South Texas Gathering, LP | Second Amendment to Gas Gathering, Processing and Purchase Contract No. 8527 |
| SN EF Maverick, LLC | Anadarko Petroleum Corporation<br>Enterprise South Texas Gathering, LP | Gas Gathering, Processing and Purchase Contract No. 8527 |
| SN EF Maverick, LLC | Anadarko E&P Company, LP, c/o Anadarko Petroleum Corporation<br>Enterprise Hydrocarbons L.P., by Enterprise Products Operating, LLC, its general partner | Gas Processing Agreement |
| SN EF Maverick, LLC | Enterprise Texas Pipeline, LLC | Interruptible Gas Transportation Agreement for Intrastate Service |
| SN EF Maverick, LLC | Enterprise Texas Pipeline, LLC | Interruptible Gas Transportation Agreement for NGPA Section 311 Service |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Enterprise Hydrocarbons LP, by Enterprise Products Operating | Second Amendment to Gas Processing Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| | LLC, its general partner, by Enterprise Products OLPGP Inc., its sole manager | |
| SN EF Maverick, LLC | Enterprise Hydrocarbons, LP; by Enterprise Products Operating, LLC; by Enterprise Products OLPGP, Inc. | Third Amendment to Gas Processing Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>ETC Texas Pipeline, Ltd; by LG Pl, LLC | Individual Transaction Confirmation |
| SN EF Maverick, LLC | ETC Texas Pipeline, Ltd.<br>Anadarko E&P Company LP | Gathering and Processing Agreement |
| SN EF Maverick, LLC | ETC Texas Pipeline, Ltd.; by LG PL, LLC<br>Anadarko E&P Company LP | Second Amendment to Amended and Restated Individual Transaction Confirmation |
| SN EF Maverick, LLC | Texas Pipeline, LLC<br>Anadarko E&P Company, LP | First Amendment to Firm Transportation Agreement |
| SN EF Maverick, LLC | Texas Pipeline, LLC<br>Anadarko E&P Company, LP | Second Amendment to Firm Transportation Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore LLC<br>Texas Pipeline, LLC | Third Amendment to Firm Transportation Agreement |
| SN EF Maverick, LLC | Texas Pipeline, LLC<br>Anadarko E&P Company LP | Firm Transportation Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Texas Pipeline LLC | Amendment to Firm Transportation Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Texas Pipeline, LLC, By Howard Midstream Energy Partners, LLC<br>Allocation Specialists, Ltd., By Petroleum Documentation, LLC | NGL Bank Service Agreement |
| SN EF Maverick, LLC | Amid Crude Trucking, LLC | Truck Purchase Agreement |
| SN EF Maverick, LLC | Anadarko E&P Company, LP<br>Trimac Transportation Central, Inc. | Motor Transportation Contract |
| SN EF Maverick, LLC | Dupre Logistics, LLC | Truck Transportation Agreement |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | Plains Gas Solutions, LLC<br>Anadarko E&P Onshore, LLC | First Amendment to Firm Condensate Processing Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Plains Gas Solutions, LLC | Condensate Processing Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Plains Gas Solutions, LLC | Raw Make (Y-Grade) Purchase and Sale Agreement |
| SN EF Maverick, LLC | Plains South Texas Gathering, LLC<br>Anadarko E&P Onshore, LLC | Shipping Agreement |
| SN EF Maverick, LLC | Gavilan Resources, LLC | Crude Oil Production Marketing Agreement |
| SN EF Maverick, LLC | Gavilan Resources, LLC | Natural Gas Liquids Marketing Agreement |
| SN EF Maverick, LLC | Gavilan Resources, LLC | Residue Gas Marketing Agreement |
| SN EF Maverick, LLC | Eagle Ford TX LP<br>Anadarko E&P Company LP<br>Anadarko Energy Services Company | Maverick Crude Oil Production Marketing Agreement |
| SN EF Maverick, LLC | Eagle Ford TX LP<br>Anadarko E&P Company LP<br>Anadarko Energy Services Company | Maverick Natural Gas Liquids Marketing Agreement |
| SN EF Maverick, LLC | Eagle Ford TX LP<br>Anadarko E&P Company LP<br>Anadarko Energy Services Company | Maverick Residue Gas Marketing Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Anadarko E&P Onshore, LLC<br>Mitsui E&P Texas, LP | Maverick Crude Oil Marketing Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Anadarko E&P Onshore, LLC<br>Mitsui E&P Texas, LP | Maverick Natural Gas Liquids Marketing Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company | Maverick Residue Gas Marketing Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| | Anadarko E&P Onshore, LLC<br>Mitsui E&P Texas, LP | |
| SN EF Maverick, LLC | Sm Energy Company<br>Anadarko Energy Services Company<br>Anadarko E&P Onshore, LLC | Maverick Residue Gas Marketing Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC , f/k/a Anadarko E&P Company LP<br>Anadarko Energy Services Company<br>Sm Energy Company | Maverick Natural Gas Liquids Marketing Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC , f/k/a Anadarko E&P Company LP<br>Anadarko Energy Services Company<br>SM Energy Company | Maverick Oil Production Marketing Agreement |
| Sanchez Energy Corporation<br>SN Catarina, LLC<br>SN EF Maverick, LLC | Anadarko E&P Onshore, LLC<br>Anadarko Energy Services Company<br>Kerr-Mcgee Oil & Gas Onshore LP | First Amendment to the Retained Marketing Contracts Services Agreement |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Eagle Ford Midstream, LP | Assignment and Consent to Assignment Agreement |
| SN EF Maverick, LLC<br>Sanchez Energy Corporation | Anadarko E&P Onshore, LLC<br>Kerr-Mcgee Oil & Gas Onshore, LP | Retained Midstream Contracts Services Agreement |
| SN Catarina, LLC<br>SN EF Maverick, LLC<br>Sanchez Energy Corporation | Anadarko E&P Onshore LLC<br>Kerr-Mcgee Oil & Gas Onshore LP<br>Anadarko Energy Services Company | Retained Marketing Contracts Services Agreement |
| Sanchez Energy Corporation<br>SN Catarina, LLC<br>SN EF Maverick, LLC | Kerr-Mcgee Oil & Gas Onshore LP<br>Anadarko Energy Services Company<br>Anadarko E&P Onshore, LLC | Second Amendment to the Retained Marketing Contracts Services Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | TPL Southtex Transmission Company, LP | Interruptible Interstate Gas Transportation Service Agreement |
| SN EF Maverick, LLC | TPL Southtex Transmission Company, LP | Interruptible Interstate Gas Transportation Service Agreement |
| Sanchez Energy Corporation | Springfield Pipeline, LLC | Second Amended and Restated Lease Dedication and Gas Gathering Agreement |
| Sanchez Energy Corporation | Springfield Pipeline, LLC | Second Amended and Restated Lease Dedication and Oil Gathering Agreement |
| Sanchez Energy Corporation | Springfield Pipeline, LLC | First Amendment to Second Amended and Restated Lease Dedication and Gas Gathering Agreement |
| Sanchez Energy Corporation | Springfield Pipeline, LLC | Agreement to Amend Gas Gathering Agreements |
| SN EF Maverick, LLC | Anadarko E&P Onshore LLC Springfield Pipeline LLC | Attachment to Firm Intrastate Gas Transportation Service Agreement |
| SN EF Maverick, LLC | Anadarko E&P Onshore, LLC Springfield Pipeline, LLC | Firm Intrastate Gas Transportation Service Agreement |
| SN EF Maverick, LLC | Tauber Oil Company | Purchase Contract |
| SN EF Maverick, LLC | Tauber Oil Company | Sales Contract |
| SN EF Maverick, LLC | WGR Operating, LP | Confirmation for Delivery |
| Sanchez Energy Corporation | WGR Operating, LP | Master Agreement for Purchase, Sale or Exchange of Liquid Hydrocarbons |
| SN EF Maverick, LLC | Kinder Morgan Tejas Pipeline, LLC | Confirmation Email |
| SN EF Maverick, LLC | Kinder Morgan Tejas Pipeline, LLC | Confirmation Email |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN Catarina, LLC | WTG Gas Marketing, Inc. | Transaction Confirmation for Immediate Delivery |
| SN EF Maverick, LLC | Anadarko Energy Services Company<br>Techgen SA De CV | Transaction Confirmation |
| SN Cotulla Assets, LLC | Arrowhead Gathering Company, LLC | Interconnect Agreement |
| SN Cotulla Assets, LLC | Arrowhead Gathering Company, LLC | Petroleum Transportation Agreement |
| SN Cotulla Assets, LLC | Arrowhead Gathering Company, LLC | Memorandum of Petroleum Transportation Agreement |
| SN Cotulla Assets, LLC | Arrowhead Gathering Company, LLC | Petroleum Transportation Agreement |
| SN Cotulla Assets, LLC | EXCO Operating Company, LP<br>Chesapeake Energy Marketing, Inc. | First Amendment to Crude Oil Purchase Contract |
| SN Cotulla Assets, LLC | EXCOo Operating Company, LP<br>Chesapeake Energy Marketing, LLC | Second Amendment to Crude Oil Purchase Contract |
| SN Cotulla Assets, LLC | EXCO Operating Company, LP<br>Chesapeake Energy Marketing, Inc. | Crude Oil Purchase Contract |
| SN Cotulla Assets, LLC | Flint Hills Resources, LP | Purchase Agreement |
| SN Cotulla Assets, LLC | Flint Hills Resources, LP | Purchase Agreement |
| SN Cotulla Assets, LLC | Enterprise Hydrocarbons, LP<br>EXCO Operating Company, LP | Gas Processing Agreement |
| SN Cotulla Assets, LLC | EXCO Operating Company, LP<br>Mockingbird Midstream Gas Services, LLC | Gas Gathering Contract |
| SN Cotulla Assets, LLC | Mockingbird Midstream Gas Services, LLC | Gas Gathering Contract |
| SN Cotulla Assets, LLC | Mockingbird Midstream Gas Services, LLC<br>Buffco Production, Inc. | Gas Gathering Contract |
| SN Cotulla Assets, LLC | Mockingbird Midstream Gas Services, LLC<br>Buffco Production, Inc. | Gas Gathering Contract |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 1 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 2 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 3 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 4 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 1 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 2 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 3 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 4 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 5 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 6 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 7 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 1 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 10 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 11 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 12 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 2 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 3 to Purchase Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 4 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 5 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 6 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 7 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 8 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 9 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 13 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 14 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 15 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 16 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 17 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 18 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 19 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 20 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 21 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 22 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 23 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 24 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 25 to Purchase Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 26 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 27 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 28 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 29 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Amendment 30 to Purchase Agreement |
| Sanchez Energy Corporation | Shell Trading (US) Company | Purchase Agreement |
| SN Cotulla Assets, LLC | Trafigura Trading, LLC | Amendment to Purchase Agreement |
| SN Cotulla Assets, LLC | Buffco Production, Inc.<br>Upstream Energy Services, LP | Natural Gas Marketing, Transportation and Processing Agency Agreement |
| SN Cotulla Assets, LLC | Upstream Energy Services, LLC | Natural Gas Marketing, Transportation and Processing Agency Agreement Amended |
| SN Cotulla Assets, LLC | Upstream Energy Services, LLC | Natural Gas Marketing, Transportation and Processing Agency Agreement |
| SN Catarina, LLC | BASF Intertrade Corporation | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | BASF Intertrade Corporation | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | ENGIE Energy Marketing Na, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | ENGIE Energy Marketing Na, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Anadarko Energy Services Company | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Air Liquide Large Industries US, LP | Base Contract for Sale and Purchase of Natural Gas |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN Catarina, LLC | ARM Energy Management, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | BG Energy Merchants, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Cotulla Assets, LLC<br>SN Catarina, LLC | BP Energy Company | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | CIMA Energy, Ltd | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Coahuila Energy, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Conocophillips Company | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Conocophillips Company | Special Provisions to NAESB Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Direct Energy Business Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | DTE Energy Trading, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Hartree Partners, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Houston Pipe Line Company, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Howard Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Koch Energy Services, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Kinder Morgan Texas Pipeline, LLC<br>Kinder Morgan Tejas Pipeline, LLC | Amendment to Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Kinder Morgan Pipeline, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Macquarie Energy, LLC | Base Contract for Sale and Purchase of Natural Gas |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN Catarina, LLC | Mercuria Energy America, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Mmgs, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | WTG Gas Marketing, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Occidental Energy Marketing, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Pacific Summit Energy, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Petrochina International (America), Inc | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Repsol Energy North America Corporation | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Sempra Gas & Power Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Sempra Gas & Power Marketing, LLC | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC Sanchez Energy Corporation | Shell Energy North America (US), LP | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Targa Gas Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Tenaska Marketing Ventures | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Tenaska Marketing Ventures | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Trafigura Trading, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Trafigura Trading, LLC | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Trailstone NA Logistics, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Tripolarity Energy Corporation | Base Contract for Sale and Purchase of Natural Gas |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN Catarina, LLC | Twin Eagle Resource Management, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | United Energy Trading, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Cotulla Assets, LLC | BP Energy Comopany | Base Contract for Sale and Purchase of Natural Gas |
| SN Cotulla Assets, LLC | Kinder Morgan Texas Pipeline, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Cotulla Assets, LLC | Texla Energy Management, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Occidental Energy Marketing, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Anadarko Energy Services Company | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Anadarko Energy Services Company | Master Agreement for Purchase, Sale or Exchange of Liquid Hydrocarbons |
| SN EF Maverick, LLC | Air Liquide Large Industries US, LP | Master Agreement for Purchase, Sale and Exchange of Liquid Hydrocarbons |
| SN EF Maverick, LLC | ARM Energy Management, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | BP Energy Company | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Calpine Energy Services, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | CIMA Energy, Ltd | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Coahuila Energy, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Cokinos Energy Corporation | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Conocophillips Company | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Conocophillips Company | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | Diamond Shamrock Refining Company, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Direct Energy Business Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | DTE Energy Trading, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Enterprise Products Operating, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Hartree Partners, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Houston Pipe Line Comapny, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Koch Energy Services, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Kinder Morgan Texas Pipeline, LLC<br>Kinder Morgan Texas Pipeline, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Macquarie Energy, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Mercuria Energy America, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Mitsui & Co. Energy Marketing And Services (USA), Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | WTG Gas Marketing, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Pacific Summit Energy, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Petrochina International (America), Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Sempra Gas & Power Markering,LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Sempra Gas & Power Marketing, LLC | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Shell Energy North America (US), LP | Base Contract for Sale and Purchase of Natural Gas |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation | | |
| SN EF Maverick, LLC | Superior Natural Gas Corporation | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Superior Natural Gas Corporation | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Techgen SA DE CV | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Tenaska Marketing Ventures | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Tenaska Marketing Ventures | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Trafigura Trading, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Trafigura Trading, LLC | Special Provisions to the Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Trailstone Na Logistics, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Tripolarity Energy Corporation | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Twin Eagle Resource Management, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | United Energy Trading, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Valero Refining - Texas, LP | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Targa Gas Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| Sanchez Energy Corporation | Tenaris Global Services (USA) Corporation | Agreement For The Provision Of Goods |
| SN Cotulla Assets, LLC | EP Energy E&P Company, LP | Letter Agreement to Purchase Oil and Gas Interests |
| Sanchez Energy Corporation | SN Midstream, LLC<br>Sanchez Midstream Partners LP | Gathering Letter Agreement |



1" = "1" "25885938v.1" "" 25885938v.1

010333

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| Sanchez Energy Corporation | NGL Crude Terminals, LLC | Letter Agreement |
| Sanchez Energy Corporation<br>SN Catarina, LLC | Catarina Midstream, LLC | Amendment No.1 to Firm Gathering and Processing Agreement |
| SN EF Maverick, LLC | Carnero G&P, LLC | Firm Gas Gathering, Processing and Purchase Agreement |
| SN EF Maverick, LLC | Carnero G&P, LLC | Ratification and Assumption Agreement |
| SN EF Maverick, LLC | Carnero G&P LLC | Memorandum of Firm Gas Gathering Agreement |
| SN EF Maverick, LLC | Carnero G&P LLC | Firm Gas Gathering, Processing, and Purchasing Agreement |
| SN EF Maverick, LLC | Eagle Ford TX, LP<br>Carnero G&P, LLC | Ratification and Assumption Agreement |
| SN EF Maverick, LLC | Carnero G&P LLC | Memorandum Of Agreement Relating To Firm Gas Gathering Agreement |
| SN EF Maverick, LLC | Venado EF L.P. | Approval Letter to Natural Gas Liquids Marketing Agreement |
| SN EF Maverick, LLC | Carnero G&P, LLC<br>Venado EF, L.P | Ratification and Assumption Agreement |
| SN EF Maverick, LLC | Venado EF, L.P<br>Carnero G&P, LLC | Memorandum of Agreement |
| SN EF Maverick, LLC | Mitsui E&P Texas, LP | Take-In-Kind Letter Agreement with Mitsui |
| SN EF Maverick, LLC | Mitsui E&P Texas, LP<br>Carnero G&P, LLC | Letter Agreement |
| SN EF Maverick, LLC | Carnero G&P, LLC | Memorandum of Agreement |
| SN Catarina, LLC | Nextera Energy Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Mitsui & Co. Energy Marketing And Services (USA), Inc. | Amendment to Special Provisions to Base Contract |

| Debtor(s) | Counterparty(ies) | Contract Description |
| --- | --- | --- |
| | | for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | Nextera Energy Marketing, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Palmetto LLC | Marathon Oil EF LLC | Marketing Agreement (Oil-Gas) |
| SN EF Maverick, LLC | Enterprise Hydrocarbons LP | Gas Processing Agreement |
| SN EF Maverick, LLC | Enterprise Hydrocarbons LP | Amendment No. 2 to Gas Processing Agreement |
| SN EF Maverick, LLC | Enterprise South Texas Gathering LP | Amendment No. 2 to Gas Gathering, Processing and Purchase Contract No. 8527 |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Enterprise South Texas Gathering LP<br>Anadarko Petroleum Corporation | Gas Gathering, Processing, and Purchase Contract |
| SN EF Maverick, LLC | Jag Energy USA, Inc. | Purchase Order |
| SN Marquis, LLC | Lonestar Resources US Inc. | Amendment No. 1 to Purchase and Sale Agreement |
| SN Catarina, LLC | WWM Logistics, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC | WWM Logistics, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC | Total Gas & Power North America, Inc. | Base Contract for Sale and Purchase of Natural Gas |
| SN Catarina, LLC<br>SN EF Maverick, LLC | SN EF Maverick, LLC<br>SN Catarina, LLC | Base Contract for Sale and Purchase of Natural Gas |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Springfield Pipeline LLC<br>Anadarko E&P Onshore LLC | Firm Intrastate Gas Transportation Service Agreement |
| SN EF Maverick, LLC | Total Gas & Power North America, Inc. | Base Contract for Sale and Purchase of Natural Gas |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Trimac Transportation Central Inc.<br>Anadarko E&P Company LP | Motor Transportation Contract |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Trimac Transportation Central Inc.<br>Anadarko E&P Onshore LLC | Revised Appendix A |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Trimac Transportation Inc.<br>Anadarko E&P Onshore LLC | Revised Appendix A |
| SN Cotulla Assets, LLC | EP Energy E&P Company LP | Letter Agreement Re Agreement to Purchase Oil & Gas Interests |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Exco Operating Company LP<br>Enterprise Hydrocarbons LP | Base Contract for Sale and Purchase of Natural Gas |
| Sanchez Energy Corporation<br>Sanchez Energy Corporation<br>Sanchez Energy Corporation<br>SN EF Maverick, LLC<br>SN EF Maverick, LLC<br>SN EF Maverick, LLC<br>Sanchez Energy Corporation<br>SN EF Maverick, LLC | Anadarko Energy Services Company<br>Kerr Mcgee Oil & Gas Onshore LP<br>Anadarko E&P Onshore LLC<br>Anadarko Energy Services Company<br>Kerr Mcgee Oil & Gas Onshore LP<br>Anadarko E&P Onshore LLC<br>SN EF Maverick, LLC<br>Sanchez Energy Corporation | Marketing Transition Services Agreement |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Carnero G&P LLC<br>SN EF Unsub, LP | Memorandum of Agreement |

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | Eagle Ford TX LP | Letter Agreement Re: Gas Agreements |
| SN EF Maverick, LLC<br>SN EF Maverick, LLC | Carnero G&P LLC<br>Eagle Ford TX LP | Memorandum of Agreement |
| SN EF Maverick, LLC | Venado EF LP | Letter Agreement Re: Gas Agreements |
| SN EF Maverick, LLC | Shell Trading (US) Company | Amendment No. 1 |
| SN EF Maverick, LLC | Shell Trading (US) Company | Oil Delivery Contract |
| SN EF Maverick, LLC | Anadarko Energy Services Company | Downstream Marketing Agreements Assumption Agreement |
| SN Cotulla Assets, LLC | Flint Hills Resources LP | Purchase Agreement |
| SN Catarina, LLC | Catarina Midstream, LLC | Letter Re: Notice of Rate Adjustment |
| SN Catarina, LLC | Conocophillips Company | Transaction Confirmation |
| SN EF Maverick, LLC<br>SN Catarina, LLC<br>SN Catarina, LLC<br>SN EF Maverick, LLC | Texas Pipeline Webb County Lean System LLC<br>SN Catarina, LLC<br>Texas Pipeline Webb County Lean System LLC<br>SN EF Maverick, LLC | Interruptible Transport Service Agreement |
| SN EF Maverick, LLC | BP Energy Company | Transaction Confirmation |
| SN EF Maverick, LLC | Conocophillips Company | Transaction Confirmation |
| SN EF Maverick, LLC | Eagle Ford Midstream, LP | Natural Gas Transportation Service Agreement |
| Sanchez Energy Corporation<br>Sanchez Energy Corporation<br>SN EF Maverick, LLC | Shell Energy North America (US), L.P.<br>SN EF Maverick, LLC<br>Shell Energy North America (US), L.P.<br>SN EF Maverick, LLC | Transaction Confirmation |



1" = "1" "25885938v.1" "" 25885938v.1

| Debtor(s) | Counterparty(ies) | Contract Description |
|---|---|---|
| SN EF Maverick, LLC | | |
| SN EF Maverick, LLC | Shell Trading (US) Company | STUSCO Contract Ref: No. CLP0001886 |
| SN EF Maverick, LLC | Shell Trading (US) Company | Amendment 002 to STUSCO Contract Ref: No. CLP0001886 |
| SN EF Maverick, LLC | Shell Trading (US) Company | Amendment 0001 to STUSCO Contract Ref: No. CLP0001886 |
| SN EF Maverick, LLC | Twin Eagle Resource Management, LLC | Gas Transaction Confirmation |
| Sanchez Energy Corporation<br>SN Catarina, LLC | Shell Trading (US) Company | Supply Agreement |
| Sanchez Energy Corporation<br>SN Catarina, LLC | Shell Trading (US) Company | Price Amendment to Supply Agreement |
| Sanchez Energy Corporation<br>SN Payables, LLC | Shell Trading (US) Company | Price Amendment to Supply Agreement |
| Sanchez Energy Corporation<br>SN Catarina, LLC | Shell Trading (US) Company | Abstract of Amendment No. 3 to Price Contract |
| SN EF Maverick, LLC | BP Oil Supply | Oil Trade Confirmation |
| SN EF Maverick, LLC | BP Oil Supply | Trade Confirmation |
| SN EF Maverick, LLC | Flint Hills Resources LP | Purchase Agreement |



1" = "1" "25885938v.1" "" 25885938v.1

010338

# EXHIBIT 6

# (FILED UNDER SEAL)

# EXHIBIT 7

# (FILED UNDER SEAL)

# EXHIBIT 8

# (FILED UNDER SEAL)

# EXHIBIT 9

# (FILED UNDER SEAL)

# EXHIBIT 10

# (FILED UNDER SEAL)

# EXHIBIT 11

# (FILED UNDER SEAL)

# EXHIBIT 12

# (FILED UNDER SEAL)

# EXHIBIT 13

**RETAINED MARKETING CONTRACTS SERVICES AGREEMENT**

This Retained Marketing Contracts Services Agreement (the "Agreement") is entered as of the Effective Date defined below by and among SN EF Maverick, LLC ("SNEF") and SN Catarina, LLC ("SN Catarina") (collectively SNEF and SN Catarina are referred to herein as "Provider") and Anadarko E&P Onshore LLC ("AEP"), Kerr-McGee Oil & Gas Onshore LP ("KMOG"), and Anadarko Energy Services Company ("AESC") (collectively AEP, KMOG and AESC are referred to herein as "Recipient"), and, solely for the purposes of Section 9.18, Sanchez Energy Corporation, a Delaware corporation ("SN Parent"). Recipient and Provider are sometimes referred to herein individually as a "Party" or collectively as the "Parties".

WHEREAS, pursuant to Schedule 13.4 of that certain Purchase and Sale Agreement dated effective July 1, 2016 (as the same may be amended from time to time, the "PSA") by and among AEP and KMOG, on the one hand, and Provider, SN EF UnSub, LP ("UnSub") and Gavilan Resources, LLC (f/k/a Aguila Production, LLC) ("AcqCo") on the other hand, Provider shall serve as marketing agent on behalf of Recipient and its Affiliates with respect to Retained Marketing Contracts as of the date of termination of the Marketing Transition Services Agreement (as that term is defined in the PSA);

WHEREAS, Provider has requested that AESC also purchase gas from the tailgate of the Raptor Plant; and

WHEREAS, the Parties are entering into this Agreement to provide for the specific terms and conditions under which Provider shall perform Recipient's obligations with respect to such Retained Marketing Contracts and the Raptor Agreement(s) (as defined below).

NOW, THEREFORE, for and in consideration of the foregoing, the representations, warranties and covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**ARTICLE I. DEFINITIONS AND INTERPRETATION**

**1.1 Definitions**. The following terms when used herein shall have the meanings set forth below.

"**Accounting Services**" means those services to be performed hereunder which are set forth in Section 3.1(m).

"**AEP**" shall have the meaning as set out in the preamble.

"**AESC**" shall have the meaning as set out in the preamble.

"**Agreement**" shall have the meaning as set out in the preamble.

"**Affiliate**" shall mean any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, another Person; *provided*, *however*, that the Western Gas Entities shall not be deemed to be Affiliates of Recipient. The term "***control***" and its derivatives with respect to any Person means the possession, directly or

indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or partnership or other ownership interests, by contract or otherwise.

"**AcqCo**" shall have the meaning as set out in the recitals.

"**Bankruptcy**" means with respect to any Party, (i) the filing by such Party of a petition or the commencement of, or the acquiescence in the commencement of, a proceeding or cause of action under any bankruptcy, insolvency or similar law providing for protection from its creditors, or a Party having any such proceeding or cause of action filed or commenced against it; (ii) the seeking by such Party of the appointment of a trustee, receiver, liquidator, custodian or other similar official over it or any substantial part of its property, or consenting to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it; (iii) the making of an assignment or any general arrangement for the benefit of its creditors, (iv) such Party admitting its inability to pay its debts as they fall due, (v) such Party becoming bankrupt or insolvent (however documented or evidenced), or (vi) such Party making a general assignment for the benefit of its creditors.

"**Business Day**" means a day (other than a Saturday or Sunday) on which commercial banks in Texas are generally open for business.

"**Carrier**" means any one, as applicable, of the pipelines (or storage facilities), including gathering systems, identified in the applicable Transportation Agreement(s).

"**Claims**" shall have the meaning as set out in Section 3.6.

"**Commodity Contract(s)**" means a contract(s) for the purchase and sale of Hydrocarbons entered into by and between Recipient and a Third Party(ies) that has been retained by Recipient, as identified on Exhibit A hereto.

"**Day**" means a period of 24 consecutive hours, starting at 9:00 a.m. Central Clock Time on any calendar day.

"**Defaulting Party**" shall have the meaning as set out in Section 8.1.

"**Effective Date**" means the date on which the Marketing Transition Services Agreement (as defined in the PSA) terminates.

"**Event of Default**" shall have the meaning as set out in Section 8.1.

"**Governmental Body**" means any instrumentality, subdivision, court, administrative agency, commission, official or other governmental authority of the United States or any other country or any state, municipality, locality or other government or political subdivision thereof, or any quasi-governmental or private body exercising any administrative, executive, judicial, legislative, police, regulatory, taxing, importing or other governmental or quasi-governmental body.