<u>Schedule I</u>
to the Collateral Agreement

**<u>Subsidiary Parties</u>**

1. None.

Schedule II
to the Collateral Agreement

**Pledged Stock; Debt Securities**

A. Pledged Stock

| Loan Party | Issuer | Type of Equity Interest[5] | Certificate Number/ Uncertificated | Number of Shares Owned (Common Shares Unless Noted Otherwise) | Percentage of Ownership | Percentage of Ownership Pledged |
|---|---|---|---|---|---|---|
| SN EF UnSub Holdings, LLC | SN EF UnSub, LP | Partnership Interest | N/A | 100% | 100% | 100% |
| SN EF UnSub GP, LLC | SN EF UnSub, LP | Non-Economic General Partner Interest | N/A | N/A | 100% | 100% |

B. Pledged Debt Securities

| Loan Party | Debtor | Description of Indebtedness | Outstanding Principal Amount | Excluded Asset (Y/N) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

[5] If Equity interest is an interest in a limited partnership or an interest in a limited liability company, indicate whether or not the interest is a "security" under Article 8 of the UCC.

<u>Schedule III</u>
to the Collateral Agreement

**<u>Intellectual Property</u>**

**<u>Copyright</u>**

None.

**<u>Patents</u>**

None.

**<u>Trademarks</u>**

None.

Schedule IV
to the Collateral Agreement

**Securities Accounts**

None.

Schedule V
to the Collateral Agreement

**Deposit Accounts**

| | |
|---|---|
| **Entity:** | **SN EF UnSub, LP** |
| **Institution:** | **JPMorgan Chase Bank, N.A.** |
| **Account No.:** | **110958532** |
| **Type:** | **Deposit** |
| **Tax ID:** | **36-4855302** |

<u>Schedule VI</u>
to the Collateral Agreement

**Commodity Accounts**

None.

Schedule VII
to the Collateral Agreement

**Commercial Tort Claims**

None.

Exhibit I
to the Collateral Agreement

SUPPLEMENT NO. ______ dated as of ____________________ (this "Supplement"), to the Collateral Agreement dated as of March 1, 2017 (as heretofore amended and/or supplemented, the "Collateral Agreement"), among SN EF UnSub, LP, a Delaware limited liability company (the "Borrower"), each Subsidiary Party party thereto, SN EF UnSub Holdings LLC, SN EF UnSub GP, LLC and JPMORGAN CHASE BANK, N.A., as Collateral Agent (in such capacity, the "Agent") and Administrative Agent for the Secured Parties.

A. Reference is made to the Credit Agreement dated as of March 1, 2017 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Credit Agreement"), among the Borrower, the Lenders and agents party thereto from time to time, the Agent and the other parties named therein.

B. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement and the Collateral Agreement referred to therein.

C. The Pledgors and Grantors have entered into the Collateral Agreement in order to induce the Lenders to make Loans and each Issuing Bank to issue Letters of Credit. Section 5.14 of the Collateral Agreement provides that additional Subsidiaries may become Subsidiary Parties under the Collateral Agreement by execution and delivery of an instrument in the form of this Supplement. The undersigned Subsidiary (the "New Subsidiary") is executing this Supplement in accordance with the requirements of the Credit Agreement to become a Subsidiary Party under the Collateral Agreement in order to induce the Lenders to make additional Loans and each Issuing Bank to issue additional Letters of Credit and as consideration for Loans previously made and Letters of Credit previously issued.

Accordingly, the Agent and the New Subsidiary agree as follows:

SECTION 1. In accordance with Section 5.14 of the Collateral Agreement, the New Subsidiary by its signature below becomes a Subsidiary Party and a Pledgor and Grantor under the Collateral Agreement with the same force and effect as if originally named therein as a Subsidiary Party and a Pledgor and Grantor, and the New Subsidiary hereby (a) agrees to all the terms and provisions of the Collateral Agreement applicable to it as a Subsidiary Party and Pledgor and Grantor thereunder and (b) represents and warrants that the representations and warranties made by it as a Pledgor and Grantor thereunder are true and correct in all material respects on and as of the date hereof. In furtherance of the foregoing, the New Subsidiary, as security for the payment and performance in full of the Obligations, does hereby create and grant to the Agent, its successors and assigns, for the benefit of the Secured Parties, their successors and assigns, a security interest in and Lien on all the New Subsidiary's right, title and interest in and to the Collateral of the New Subsidiary; provided that, for the avoidance of doubt, Collateral shall exclude any Property constituting an Excluded Asset while such Property constitutes an Excluded Asset. Each reference to a "Subsidiary Party" or a "Pledgor" or a "Grantor" in the Collateral Agreement shall be deemed to include the New Subsidiary. The Collateral Agreement is hereby incorporated herein by reference.

SECTION 2. The New Subsidiary represents and warrants to the Agent and the other Secured Parties that this Supplement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, subject to (a) the effects of bankruptcy, insolvency, moratorium, reorganization, fraudulent conveyance or other similar laws affecting creditors' rights generally, (b) general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law) and (c) implied covenants of good faith and fair dealing.

SECTION 3. This Supplement may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute but one contract. This Supplement shall become effective when the Agent shall have received a counterpart of this Supplement that bears the signature of the New Subsidiary. Delivery of an executed signature page to this Supplement by facsimile or electronic transmission shall be as effective as delivery of a manually signed counterpart of this Supplement.

SECTION 4. The New Subsidiary hereby represents and warrants that (a) set forth on Schedule I attached hereto is a true and correct schedule of the percentage owned by the New Subsidiary of the issued and outstanding Equity Interests issued

by each Restricted Subsidiary of the New Subsidiary (including all Pledged Stock), and all evidences of Indebtedness for borrowed money and obligations evidenced by bonds, debentures, notes, loan agreements or similar instruments issued to or owned by the New Subsidiary (including all Pledged Debt Securities), in each case set forth in this clause (a) owned by the New Subsidiary as of the date hereof, (b) set forth on Schedule II attached hereto is a true and correct schedule of all Intellectual Property constituting United States registered Trademarks, Patents and Copyrights as of the date hereof, (c) set forth on Schedule III hereto is a true and complete schedule of all Securities Accounts of the New Subsidiary as of the date hereof, (d) set forth on Schedule IV hereto is a true and complete schedule of all Deposit Accounts of the New Subsidiary as of the date hereof, (e) set forth on Schedule V hereto is a true and complete schedule of all Commodity Accounts of the New Subsidiary as of the date hereof, (f) set forth on Schedule VI hereto is a true and complete schedule of all Commercial Tort Claims of the New Subsidiary as of the date hereof, and (g) set forth under its signature hereto, is the true and correct legal name of the New Subsidiary, its jurisdiction of formation and organizational ID number as of the date hereof.

SECTION 5. Except as expressly supplemented hereby, the Collateral Agreement shall remain in full force and effect.

SECTION 6. **THIS SUPPLEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

SECTION 7. In the event any one or more of the provisions contained in this Supplement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and in the Collateral Agreement shall not in any way be affected or impaired thereby.

SECTION 8. All communications and notices hereunder shall be in writing and given as provided in Section 5.01 of the Collateral Agreement.

SECTION 9. The New Subsidiary agrees to reimburse the Agent for its reasonable out-of-pocket expenses in connection with this Supplement to the extent consistent with Section 13.5 of the Credit Agreement, including the reasonable fees, disbursements and other charges of counsel for the Agent.

IN WITNESS WHEREOF, the New Subsidiary has duly executed this Supplement to the Collateral Agreement as of the day and year first above written.

**[Name of New Subsidiary]**

By: ______________________
Name: ______________________
Title: ______________________

Schedule I
to Supplement No. __ to the
Collateral Agreement

**Pledged Stock; Debt Securities**

A. Pledged Stock

| Loan Party | Issuer | Type of Equity Interest[6] | Certificate Number/ Uncertificated | Number of Shares Owned (Common Shares Unless Noted Otherwise) | Percentage of Ownership | Percentage of Ownership Pledged |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

B. Pledged Debt Securities

| Loan Party | Debtor | Description of Indebtedness | Outstanding Principal Amount | Excluded Asset (Y/N) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

[6] If Equity interest is an interest in a limited partnership or an interest in a limited liability company, indicate whether or not the interest is a "security" under Article 8 of the UCC.

<u>Schedule II</u>
to Supplement No. __ to the
Collateral Agreement

**Intellectual Property**

**Copyright**

**Patents**

**Trademarks**

Schedule III
to Supplement No. __ to the
Collateral Agreement

**Securities Accounts**

Schedule IV
to Supplement No. __ to the
Collateral Agreement

**Deposit Accounts**

Schedule V
to Supplement No. __ to the
Collateral Agreement

**Commodity Accounts**

Schedule VI
to Supplement No. __ to the
Collateral Agreement

**Commercial Tort Claims**

Exhibit II
to the Collateral Agreement

**Form of Perfection Certificate**

See attached.

**PERFECTION CERTIFICATE**

Reference is made to (i) the Credit Agreement dated as of March 1, 2017 (as amended, restated, amended and restated, modified, waived and/or supplemented from time to time, the "Credit Agreement"), among SN EF UnSub, LP (the "Company" or the "Borrower"), JPMorgan Chase Bank, N.A., as Administrative Agent and Collateral Agent and the Lenders and agents from time to time parties thereto and (ii) the Collateral Agreement dated as of March 1, 2017 (the "Collateral Agreement"), among the Borrower, the Subsidiary Parties (as defined therein), Holdings (as defined therein), Parent (as defined therein, and together with Holdings, collectively, the "Parent Pledgors") and JPMorgan Chase Bank, N.A., as Collateral Agent. Capitalized terms used but not defined herein have the meanings assigned in the Credit Agreement or the Collateral Agreement, as applicable.

The undersigned, an Authorized Officer of the Borrower, an Authorized Officer of Holdings and an Authorized Officer of Parent, hereby certify on the Closing Date to the Collateral Agent, Administrative Agent and each other Secured Party on behalf of the Credit Parties and the Parent Pledgors as applicable (the Credit Parties and the Parent Pledgors being, collectively, the "Relevant Parties") as follows:

SECTION 1. Names. (a) Set forth on Schedule 1(a) is, as of the Closing Date, (i) the exact legal name of each Relevant Party, as such name appears in its certificate of organization or like document (ii) each other legal name such Relevant Party has had in the past five years, together with the date of the relevant name change, (iii) each other name used by each Relevant Party on any filings with the Internal Revenue Service at any time within the five years preceding the date hereof and (iv) to its knowledge, all other names or trade names under which it currently conducts business.

(a) Except as set forth on Schedule 1(b) and for the Acquisition, no Relevant Party has changed its identity or corporate structure or entered into a similar reorganization in any way within the past five years. Changes in identity or corporate structure would include mergers, consolidations and acquisitions of all or substantially all of the assets of (or all or substantially all the assets constituting a business unit, division, product line or line of business of) a Person or other acquisitions of material assets outside the ordinary course of business, as well as any change in the form, nature or jurisdiction of organization or otherwise. With respect to any such change that has occurred within the past five years, Schedules 1(a), 1(b) and 2 set forth the information required by Sections 1 and 2 of this Perfection Certificate as to each acquiree or constituent party to such merger, consolidation or acquisition. Except as set forth in Schedule 1(b), no Credit Party has changed its jurisdiction of organization at any time during the past twelve months.

(b) Set forth on Schedule 1(c) is the exact legal name of each direct and indirect Subsidiary of the Borrower, as such name appears in its certificate of organization or like document as of the Closing Date.

SECTION 2. Jurisdictions and Locations. Except as set forth on Schedule 2, as of the Closing Date, each Relevant Party is a registered organization and set forth on Schedule 2 is (i) the jurisdiction of organization and the form of organization of each Relevant Party, (ii) the organizational identification number, if any, of such Relevant Party assigned by such jurisdiction and (iii) the address of the chief executive office of such Relevant Party.

SECTION 3. Stock Ownership and other Equity Interests. Set forth on Schedule 3 is, as of the Closing Date, a true and correct list, of all the issued and outstanding stock, partnership interests, limited liability company membership interests or other equity interest of the Borrower and the Borrower's Subsidiaries, and the record owners of such stock, partnership interests, membership interests or other equity interests, (a) specifying the issuer and certificate number (if any) of, and the number and percentage of ownership represented by, such equity interests and setting forth the percentage of such equity interests pledged under the Collateral Agreement and the other information to be shown in Schedule 3, and (b) if any such equity interest constitutes an Excluded Asset, identifying such equity interest as such.

SECTION 4. Debt Instruments. Set forth on Schedule 4 is, as of the Closing Date, a true and correct list, for each Credit Party, of all evidences of Indebtedness for borrowed money and all obligations evidenced by bonds, notes, debentures, loan agreements or similar instruments owned by such Credit Party as of the date hereof, including those that are required to be pledged under the Credit Agreement and the Security Documents, other than the Intercompany Note, stating if such indebtedness

is pledged under the Collateral Agreement and to the extent applicable, specifying the creditor and debtor thereunder and the outstanding principal amount thereof, and if any such indebtedness constitutes an Excluded Asset, identifying such indebtedness as such.

SECTION 5. Real Property. Set forth on (a) Schedule 5(a) is a true and correct list, for each Credit Party, of all real property owned by such Credit Party located in the United States as of the Closing Date and (b) Schedule 5(b) is a true and correct list, for each Credit Party, of all real property leased by such Credit Party located in the United States as of the Closing Date.

SECTION 6. Intellectual Property. (a) Set forth on Schedule 6(a) is a true and correct list, with respect to each Credit Party, of all United States patents and patent applications owned by such Credit Party as of the Closing Date (except, for the avoidance of doubt, as otherwise indicated on Schedule 6(a)), including the name of the owner, title, registration or application number of any registrations or applications.

(a) Set forth on Schedule 6(b) is a true and correct list, with respect to each Credit Party, of all United States trademark registrations and applications owned by such Credit Party as of the Closing Date (except, for the avoidance of doubt, as otherwise indicated on Schedule 6 (b)), including the name of the registered owner and the registration or application number of any registrations and applications.

(b) Set forth on Schedule 6(c) is a true and correct list, with respect to each Credit Party, of all United States copyright registrations and applications owned by such Credit Party as of the Closing Date (except, for the avoidance of doubt, as otherwise indicated on Schedule 6 (c)), including the name of the registered owner, title and the registration or serial number of any copyright registrations.

If any property listed in Schedule 6(a), 6(b) or 6(c), as applicable, constitutes an Excluded Asset, such Schedule shall identify such property as such.

SECTION 7. Letters of Credit. Set forth on Schedule 7 is a true and correct list of all Letters of Credit issued in favor of each Credit Party, as beneficiary thereunder, as of the Closing Date.

SECTION 8. Securities Accounts. Set forth in Schedule 8 is a true and correct list, for each Credit Party, of all Securities Accounts held by such Credit Party as of the Closing Date, specifying for each such Securities Account, the type of the Account, the name of the Account, the Account number and the name and the address of the securities intermediary maintaining such Account, and if such Securities Account constitutes an Excluded Account, identifying such Account as such.

SECTION 9. Deposit Accounts. Set forth in Schedule 9 is a true and correct list, for each Credit Party, of all Deposit Accounts held by such Credit Party as of the Closing Date, specifying for each such Deposit Account, the type of the Account, the name of the Account, the Account number and the name and the address of the bank maintaining such Account, and if such Deposit Account constitutes an Excluded Account, identifying such Account as such.

SECTION 10. Commodity Accounts. Set forth in Schedule 10 is a true and correct list, for each Credit Party, of all Commodity Accounts held by such Credit Party as of the Closing Date, specifying for each such Commodity Account, the type of the Account, the name of the Account, the Account number and the name and the address of the commodity intermediary maintaining such Account, and if such Commodity Account constitutes an Excluded Account, identifying such Account as such.

SECTION 11. Commercial Tort Claims. Set forth in Schedule 11 is a true and correct list, with respect to each Credit Party, of Commercial Tort Claims held by such Credit Party as of the Closing Date, specifying the Credit Party/plaintiff, the defendant and a description of the claim adequate for perfection under Section 9-108 of the UCC and, if any such Commercial Tort Claim constitutes an Excluded Asset, identifying such Commercial Tort Claim as such.

[Signature Pages Follow]

IN WITNESS WHEREOF, the undersigned has caused this Perfection Certificate to be executed and delivered as of the date first above written.

**SN EF UNSUB, LP**

By: SN EF UNSUB GP, LLC, its general partner

By: /s/ Cameron W. George
Name: Cameron W. George
Title: Chief Financial Officer and Treasurer

**SN EF UNSUB, LLC**

By: /s/ Eduardo A. Sanchez
Name: Eduardo A. Sanchez
Title: President

**SN EF UNSUB GP, LLC**

By: /s/ Cameron W. George
Name: Cameron W. George
Title: Chief Financial Officer and Treasurer

Accepted and Agreed to:

**JPMORGAN CHASE BANK, N.A.,**
as Administrative Agent

By: /s/ Darren Vanek
Name: Darren Vanek
Title: Authorized Officer

**Schedule 1(a)**
**Legal and Other Names**

None.

**Schedule 1(b)**
**Changes in Identity, Corporate Structure and Jurisdiction of Organization**

None.

**Schedule 1(c)**
**Subsidiaries**

None.

**Schedule 2**

**Jurisdiction and Locations**

| Relevant Party | Jurisdiction & Form of Organization | Organizational ID Number | Chief Executive Office |
|---|---|---|---|
| **SN EF UNSUB, LP** | Delaware, limited partnership | 6257670 | 1000 Main Street, Suite 3000, Houston, Texas 77002 |
| **SN EF UNSUB HOLDINGS, LLC** | Delaware, limited liability company | 6257548 | 1000 Main Street, Suite 3000, Houston, Texas 77002 |
| **SN EF UNSUB GP, LLC** | Delaware, general partnership | 6257546 | 1000 Main Street, Suite 3000, Houston, Texas 77002 |

**Schedule 3**

DESCRIPTION OF EQUITY INTERESTS ISSUED BY RESTRICTED SUBSIDIARIES

| EQUITY INTERESTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **PLEDGOR** | **ISSUER** | **TYPE OF EQUITY INTEREST** | **PAR VALUE** | **CERTIFICATE NO (S).** | **NUMBER OF SHARES** | **EQUITY INTEREST OWNED BY PLEDGOR AS A PERCENTAGE OF ALL OUTSTANDING EQUITY INTERESTS ISSUED BY ISSUER** | **EQUITY INTEREST PLEDGED BY PLEDGOR AS A PERCENTAGE OF TOTAL EQUITY INTEREST OWNED BY PLEDGOR IN ISSUER** |
| SN EF UnSub Holdings, LLC | SN EF UnSub, LP | Partnership Interest | N/A | N/A | N/A | 100% | 100% |
| SN EF UnSub GP, LLC | SN EF UnSub, LP | Non-Economic General Partner Interest | N/A | N/A | N/A | 100% | 100% |

**Schedule 4**

**Debt Instruments**

None.

**Schedule 5(a)**

**Owned Real Property**

None.

**Schedule 5(b)**
**Leased Real Property**

See attached, which will be applicable to the Borrower as of the Closing Date.

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 10/15/2005 | 10/15/2019 | TX | Dimmit | 329 | 131 | 7000 |
| JEANNE E LUFKIN | ANADARKO E&P COMPANY LP | 04/05/2010 | 04/05/2015 | TX | Dimmit | 385 | 752 | 14931 |
| BETTY T THON | ANADARKO E&P COMPANY LP | 04/05/2010 | 04/05/2015 | TX | Dimmit | 387 | 582 | 15240 |
| JOE P PRITCHETT | ANADARKO E&P COMPANY LP | 08/26/2010 | 08/26/2014 | TX | Dimmit | 399 | 695 | 17211 |
| BOTTOM INVESTMENT COMPANY LTD | ANADARKO E&P COMPANY LP | 08/26/2010 | 08/26/2014 | TX | Dimmit | 399 | 709 | 17215 |
| VICTORIA TRADING COMPANY LLC | ANADARKO E&P COMPANY LP | 08/26/2010 | 08/26/2014 | TX | Dimmit | 399 | 712 | 17216 |
| ROBERT T PELLER ET UX | ANADARKO E&P COMPANY LP | 03/11/2011 | 03/11/2014 | TX | Dimmit | 406 | 729 | 18412 |
| MEKUSUKEY OIL COMPANY LLC | ANADARKO E&P COMPANY LP | 03/28/2011 | 03/28/2014 | TX | Dimmit | 417 | 612 | 19856 |
| KINGDON R HUGHES FAMILY LIMITED PARTNER | ANADARKO E&P COMPANY LP | 07/25/2011 | 07/25/2014 | TX | Dimmit | 425 | 589 | 21253 |
| JUDY M THON JONES | ANADARKO E&P COMPANY LP | 06/04/2012 | 06/04/2015 | TX | Dimmit | 445 | 620 | 24591 |
| JAMES A THON | ANADARKO E&P COMPANY LP | 06/04/2012 | 06/04/2015 | TX | Dimmit | 445 | 628 | 24593 |
| BETTY LOU GLADEN | ANADARKO E&P COMPANY LP | 05/31/2012 | 05/31/2015 | TX | Dimmit | 445 | 624 | 24592 |
| SANDRA L MOLUMBY | ANADARKO E&P COMPANY LP | 06/04/2012 | 06/04/2015 | TX | Dimmit | 445 | 636 | 24595 |
| LAURIE A BURBANK | ANADARKO E&P COMPANY LP | 06/04/2012 | 06/04/2015 | TX | Dimmit | 445 | 632 | 24594 |
| WILLIAM A PHILLIPS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 667 | 26041 |
| SCOTT EDWARD RUFF | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 654 | 26037 |
| NELVIA LOUISE PHILLIPS MORGAN | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 664 | 26040 |
| JAMES J PHILLIPS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 660 | 26039 |
| MARGARET P MATTHEWS REVOCABLE TRUST | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 648 | 26035 |
| RONALD D RUFF | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 630 | 26029 |
| PHILLIP A RUFF | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 642 | 26033 |
| APRIL P ELLIOTT | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 651 | 26036 |
| MARY SUE KORUS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 627 | 26028 |
| CYNTHIA M PHILLIPS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 636 | 26031 |
| ELIZABETH KLOSTERMAN | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 645 | 26034 |
| DONALD K PHILLIPS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 456 | 469 | 26264 |
| LOIS M PHILLIPS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 639 | 26032 |
| ROBERT A RUFF | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 657 | 26038 |
| CATHLEEN J STUBBLEFIELD | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 454 | 633 | 26030 |
| UNA S HENG | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2015 | TX | Dimmit | 461 | 254 | 26955 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| LISA THON KOLLAR TRUST | ANADARKO E&P ONSHORE LLC | 01/04/2013 | 01/04/2016 | TX | Dimmit | 463 | 89 | 27233 |
| PAIGE L THON TRUST | ANADARKO E&P ONSHORE LLC | 01/04/2013 | 01/04/2016 | TX | Dimmit | 463 | 85 | 27232 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 10/15/2005 | 10/15/2019 | TX | Dimmit | 329 | 397 | 7052 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 10/15/2005 | 10/15/2019 | TX | Dimmit | 338 | 617 | 8649 |
| BOY SCOUTS OF AMERICA | ANADARKO E&P COMPANY LP | 04/30/2011 | 04/30/2016 | TX | Dimmit | 409 | 226 | 18821 |
| EPISCOPAL FOUNDATION OF TEXAS | ANADARKO E&P COMPANY LP | 04/30/2011 | 04/30/2016 | TX | Dimmit | 409 | 229 | 18822 |
| SALVATION ARMY | ANADARKO E&P COMPANY LP | 04/30/2011 | 04/30/2016 | TX | Dimmit | 409 | 232 | 18823 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 10/15/2005 | 10/15/2019 | TX | Dimmit | 335 | 276 | 8081 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P COMPANY LP | 10/25/2005 | 10/25/2010 | TX | Dimmit | 338 | 621 | 8650 |
| BARBARA C MARTIN | ANADARKO E&P COMPANY LP | 05/06/2010 | 05/06/2018 | TX | Dimmit | 387 | 585 | 15241 |
| SOUTH SPUR LP | ANADARKO E&P COMPANY LP | 03/06/2006 | 05/01/2017 | TX | Dimmit | 343 | 325 | 9442 |
| ELIZABETH L SEMMENS | ANADARKO E&P ONSHORE LLC | 07/25/2013 | 07/25/2018 | TX | Dimmit | 496 | 197 | 31626 |
| JAMES ARTHUR MONSEN DANIELS | ANADARKO E&P ONSHORE LLC | 07/25/2013 | 07/25/2018 | TX | Dimmit | 496 | 194 | 31625 |
| SUSAN DANIELS SCHMITZ | ANADARKO E&P ONSHORE LLC | 07/25/2013 | 07/25/2018 | TX | Dimmit | 500 | 6 | 32007 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P COMPANY LP | 10/25/2005 | 10/25/2012 | TX | Dimmit | 338 | 631 | 8652 |
| MARY LOIS FRIDAY HULSMAN | ANADARKO E&P COMPANY LP | 10/25/2005 | 10/25/2010 | TX | Dimmit | 338 | 636 | 8653 |
| THE SOUTH TEXAS CHILDRENS HOME | ANADARKO E&P COMPANY LP | 10/25/2005 | 10/25/2010 | TX | Dimmit | 338 | 626 | 8651 |
| MARY MARSHALL SMITH TRUST FBO KATHARINE MARSHALL | ANADARKO E&P COMPANY LP | 04/01/2010 | 04/01/2013 | TX | Dimmit | 385 | 255 | 14820 |
| MARY MARSHALL SMITH TRUST FBO MARGARET M MURDOCK | ANADARKO E&P COMPANY LP | 04/01/2010 | 04/01/2013 | TX | Dimmit | 385 | 262 | 14821 |
| ALVAN BLALACK JR ET UX | SUN OIL COMPANY | 02/08/1968 | 02/08/1973 | TX | Dimmit | 27 | 384 | 113502 |
| FLOYD R PORTER | SUN OIL COMPANY | 02/13/1968 | 02/13/1973 | TX | Zavala | 3 | 172 | 113530 |
| JOHN B BAGGETT ET AL | SUN OIL COMPANY | 03/01/1968 | 03/01/1978 | TX | Zavala | 3 | 251 | 113554 |
| ERIN BAIN JONES | SUN OIL COMPANY | 06/03/1968 | 06/03/1973 | TX | Zavala | 3 | 578 | 113797 |
| ERIN BAIN JONES | SUN OIL COMPANY | 06/03/1968 | 06/03/1973 | TX | Zavala | 3 | 582 | 113798 |
| ERIN BAIN JONES | SUN OIL COMPANY | 06/03/1968 | 06/03/1973 | TX | Zavala | 3 | 586 | 113799 |
| ERIN BAIN JONES | SUN OIL COMPANY | 06/03/1968 | 06/03/1973 | TX | Zavala | 3 | 590 | 113800 |
| JOHN B BAGGETT ET AL | SUN OIL COMPANY | 01/09/1969 | 01/09/1979 | TX | Dimmit<br>Zavala | 29<br>4 | 86<br>425 | 129<br>114336 |



013179

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| DOYLE STANDIFER ET UX | SUN OIL COMPANY | 05/06/1969 | 05/06/1974 | TX | Dimmit | 29 | 322 | 114642 |
| MINNIE HELEN BORMAN | SUN OIL COMPANY | 05/16/1969 | 05/16/1974 | TX | Dimmit | 29 | 332 | 114666 |
| G G BOYD ET AL | SUN OIL COMPANY | 05/19/1969 | 05/19/1974 | TX | Dimmit | 29 | 355 | 114678 |
| MARILYN D ANDERSON ET AL | SUN OIL COMPANY | 05/13/1969 | 05/13/1974 | TX | Dimmit | 29 | 377 | 114700 |
| L B BEACH ET AL | SUN OIL COMPANY | 05/13/1969 | 05/13/1974 | TX | Dimmit | 29 | 381 | 114700-A |
| LILLIAN SPEAS ET AL | SUN OIL COMPANY | 05/19/1969 | 05/19/1974 | TX | Dimmit | 29 | 366 | 114736 |
| RUTH W HOLLINSHEAD ET AL | SUN OIL COMPANY | 06/06/1969 | 06/06/1974 | TX | Dimmit | 29 | 359 | 114737 |
| JAMES F MINX | SUN OIL COMPANY | 09/16/1969 | 09/16/1974 | TX | Dimmit | 29 | 469 | 114826 |
| DOLORES SEDLOCK ET VIR | SUN OIL COMPANY | 09/16/1969 | 09/16/1974 | TX | Dimmit | 30 | 10 | 114829 |
| ALLYEDEL H CROCKETT | SUN OIL COMPANY | 06/20/1970 | 06/20/1975 | TX | Dimmit | 31 | 330 | 693 |
| LARRY D GOMEZ | SUN OIL COMPANY | 06/26/1970 | 06/26/1975 | TX | Dimmit | 31 | 464 | 841 |
| AUDREY HAWKINS ET AL | SUN OIL COMPANY | 09/01/1970 | 09/01/1975 | TX | Dimmit | 33 | 505 | 2577 |
| PAUL E EFAW ET UX | SUN OIL COMPANY | 11/10/1971 | 11/10/1976 | TX | Dimmit | 39 | 193 | 1997 |
| MARY M RODRIGUEZ | SUN OIL COMPANY | 04/14/1971 | 04/14/1976 | TX | Dimmit | 147 | 136 | 779 |
| CHARLES B NICHOLS JR ET UX | SUN OIL COMPANY | 04/21/1971 | 04/21/1976 | TX | Dimmit | 37 | 257 | 300984 |
| OLGA R KINNARD ET AL | SUN OPERATING LIMITED PARTNERSHIP | 06/24/1988 | 06/24/1993 | TX | Dimmit<br>Zavala | 97<br>55 | 145<br>185 | 1086<br>46827 |
| B M PRICE ET UX | THE SUPERIOR OIL COMPANY | 02/17/1969 | 02/17/1979 | TX | Dimmit | 29 | 293 | T16318 |
| JOHN F ROBERTSON | SUN OPERATING LIMITED PARTNERSHIP | 05/30/1989 | 05/30/1994 | TX | Zavala | 57 | 53 | NA |
| ROY L BROWN JR | SUN OPERATING LIMITED PARTNERSHIP | 06/19/1989 | 06/19/1994 | TX | Zavala | 57 | 68 | 48131 |
| MARTHA W BAILEY | SUN OPERATING LIMITED PARTNERSHIP | 06/19/1989 | 06/19/1994 | TX | Zavala | 57 | 65 | 48130 |
| FRED L JOHNSTON JR ET AL | SUN OPERATING LIMITED PARTNERSHIP | 06/19/1989 | 06/19/1994 | TX | Zavala | 57 | 76 | 48144 |
| BETTY SUE PRICE OFFNER ET VIR | FOX AND HOLLAND | 02/08/1982 | 02/08/1987 | TX | Dimmit | 82 | 666 | |
| ROBERT PRICE ET UX | FOX & HOLLAND | 02/08/1982 | 02/08/1987 | TX | Dimmit | 82 | 671 | 546 |
| MARY MAY PRICE RIHA ET VIR | FOX & HOLLAND | 02/08/1982 | 02/08/1987 | TX | Dimmit | 82 | 676 | |
| I L TAYLOR | ROBERT C SINCLAIR | 04/01/1970 | 04/01/1980 | TX | Dimmit | 33 | 122 | 800045 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| MILDA M OLSON ET AL | ROBERT C SINCLAIR | 04/14/1970 | 04/14/1975 | TX | Dimmit | 30 | 460 | 800046 |
| WALTER SCOTT LIGHT | LIGHTNING OIL COMPANY | 01/01/1970 | 01/01/1980 | TX | Dimmit | 30 | 270 | 229 |
| SAL ALVIN ARMSTRONG | J W DOAK | 04/18/1970 | 04/18/1975 | TX | Dimmit | 30 | 495 | 458 |
| ERIN BAIN JONES | W W OATMAN | 05/11/1970 | 05/11/1975 | TX | Dimmit | 31 | 186 | 4150 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 10/15/2005 | 10/15/2019 | TX | Webb | 2329 | 707 | 960221 |
| MOODY FOUNDATION ET AL | EDWARD G VAUGHAN | 12/01/2005 | 11/30/2010 | TX | Dimmit | 329 | 484 | 7078 |
| BRISCOE RANCH INC | EDWARD G VAUGHAN | 12/01/2005 | 11/30/2010 | TX | Dimmit | 329 | 394 | 7051 |
| MOODY FOUNDATION ET AL | EDWARD G VAUGHAN | 12/01/2005 | 11/30/2010 | TX | Dimmit | 460<br>329 | 233<br>487 | 79160<br>7079 |
| BRISCOE RANCH INC | EDWARD G VAUGHAN | 12/01/2005 | 11/30/2010 | TX | Dimmit<br>LaSalle | 329<br>330<br>458<br>460 | 138<br>379<br>515<br>230 | 7002<br>7250<br>78892<br>79159 |
| DIANA M STUMBERG ET AL | ST MARY LAND AND EXPLORATION COMPANY | 11/05/2008 | 11/04/2011 | TX | Dimmit | 354 | 171 | 11322 |
| HAZEN FIRST BAPTIST CHURCH | ANADARKO E&P COMPANY LP | 08/17/2010 | 08/17/2018 | TX | Dimmit | 398 | 26 | 16937 |
| RANDALL L GAMMILL | ANADARKO E&P COMPANY LP | 08/16/2010 | 08/16/2018 | TX | Dimmit | 394 | 189 | 16294 |
| JO ANN SNOW | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2014 | TX | Dimmit | 397 | 32 | 16768 |
| JANET LOUISE AREHART | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2014 | TX | Dimmit | 397 | 26 | 16766 |
| PATRICIA MCALLISTER | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2014 | TX | Dimmit | 397 | 35 | 16769 |
| KENNETH M BRIGGS | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2014 | TX | Dimmit | 397 | 38 | 16770 |
| RICHARD E BRIGGS ET UX | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2014 | TX | Dimmit | 397 | 29 | 16767 |
| BECKY DEWAN | ANADARKO E&P COMPANY LP | 11/16/2010 | 11/16/2018 | TX | Dimmit | 405 | 560 | 18184 |
| CONLEY EUGENE HOUSE ET UX | ANADARKO E&P COMPANY LP | 05/11/2011 | 05/11/2019 | TX | Dimmit | 425 | 586 | 21252 |
| CHERYL LYNN RINER | ANADARKO E&P ONSHORE LLC | 08/20/2013 | 08/20/2016 | TX | Dimmit | 492 | 764 | 31322 |
| JAMES SCOTT DURDEN | ANADARKO E&P ONSHORE LLC | 08/20/2013 | 08/20/2016 | TX | Dimmit | 492 | 759 | 31321 |
| CHAD ALAN DURDEN | ANADARKO E&P ONSHORE LLC | 08/20/2013 | 08/20/2016 | TX | Dimmit | 492 | 754 | 31320 |
| KAREN RENEE HALL | ANADARKO E&P ONSHORE LLC | 08/20/2013 | 08/20/2016 | TX | Dimmit | 492 | 750 | 31319 |
| BRISCOE RANCH INC | EDWARD G VAUGHAN | 03/06/2006 | 10/15/2019 | TX | Webb | 2435 | 504 | 977956 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BRISCOE RANCH INC | EDWARD G VAUGHAN | 01/02/2007 | 10/15/2019 | TX | Webb | 2484 | 238 | 986336 |
| BRISCOE RANCH INC | ST MARY LAND & EXPLORATION COMPANY | 04/24/2008 | 12/31/2013 | TX | Webb | 2583 | 185 | 1003979 |
| BRISCOE RANCH INC | ST MARY LAND & EXPLORATION COMPANY | 04/24/2008 | 12/31/2013 | TX | Webb | 2583 | 182 | 1003978 |
| WILLIAM WEST LLOYD ET AL | ANADARKO E&P COMPANY LP | 06/09/2006 | 12/31/2013 | TX | Maverick | 1041 | 67 | 144189 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 06/10/2006 | 10/15/2015 | TX | Maverick | 1073 | 94 | 147028 |
| WILLIAM WEST LLOYD ET AL | ANADARKO E&P COMPANY LP | 06/09/2006 | 12/31/2013 | TX | Maverick<br>Webb | 1041<br>2435 | 74<br>507 | 144190<br>977957 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 06/10/2006 | 10/15/2015 | TX | Maverick<br>Webb | 1073<br>2528 | 108<br>616 | 147031<br>993897 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 03/06/2006 | 10/15/2019 | TX | Webb<br>Dimmit | 2435<br>339 | 499<br>561 | 977955<br>8823 |
| WESLEY WEST MINERALS LTD ET AL | ANADARKO E&P COMPANY LP | 06/09/2006 | 06/09/2014 | TX | Maverick<br>Webb | 1067<br>2509 | 161<br>755 | 146519<br>990517 |
| WESLEY WEST MINERALS LTD ET AL | ANADARKO E&P COMPANY LP | 06/09/2006 | 10/31/2013 | TX | Maverick | 1067 | 185 | 146523 |
| WESLEY WEST MINERALS LTD ET AL | ANADARKO E&P COMPANY LP | 06/09/2006 | 10/31/2013 | TX | Maverick | 1067 | 173 | 146521 |
| CAGE MINERALS LTD ET AL | ANADARKO E&P COMPANY LP | 08/31/2006 | 03/01/2010 | TX | Maverck<br>Dimmit<br>Webb | 1076<br>369<br>2791 | 419<br>459<br>132 | 147391<br>12859<br>1044021 |
| DOUGLAS M VANDER PLOEG ET UX | ANADARKO E&P COMPANY LP | 02/01/2011 | 02/01/2014 | TX | Maverick<br>Dimmit<br>Webb | 1281<br>405<br>3073 | 101<br>367<br>569 | 164624<br>18144<br>1098663 |
| DIAMOND H RANCHES LIMITED PARTNERSHIP | ANADARKO E&P COMPANY LP | 05/14/2007 | 05/14/2010 | TX | Dimmit | 344 | 6 | 9540 |
| SARA CAROLINE SPENCE | ANADARKO E&P COMPANY LP | 07/20/2010 | 07/20/2018 | TX | Dimmit | 392 | 478 | 15989 |
| JOHN CALHOUN MOORE | ANADARKO E&P COMPANY LP | 04/03/2012 | 04/03/2018 | TX | Dimmit | 439 | 695 | 23611 |
| WILLIAM A BEINHORN JR FAMILY LTD | ANADARKO E&P COMPANY LP | 03/06/2006 | 03/06/2011 | TX | Dimmit | 343 | 690 | 9504 |
| FITZSIMONS OIL AND GAS MANAGEMENT TRUST | ANADARKO E&P COMPANY LP | 12/22/2005 | 12/22/2008 | TX | Dimmit<br>Maverick | 332<br>1012 | 649<br>222 | 7649<br>141603 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| EWING ENTERPRISES LIMITED PARTNERSHIP | ANADARKO E&P COMPANY LP | 09/20/2006 | 09/20/2009 | TX | Dimmit | 344 | 1 | 9539 |
| LA BANDERA RANCH LP | ANADARKO E&P COMPANY LP | 09/29/2006 | 09/29/2009 | TX | Dimmit | 343 | 844 | 9538 |
| DONNA RUTH RAMSEY | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2017 | TX | Dimmit | 429 | 83 | 21796 |
| KATHLEEN FITZSIMONS LOVE ET AL | ANADARKO E&P COMPANY LP | 01/17/2012 | 01/17/2021 | TX | Dimmit | 430 | 773 | 22088 |
| JACKSON BENJAMIN LOVE JR | ANADARKO E&P COMPANY LP | 01/17/2012 | 01/17/2021 | TX | Dimmit | 430 | 766 | 22087 |
| SARAH JANE HENDERSON STRONSKY | ANADARKO E&P ONSHORE LLC | 03/28/2013 | 03/28/2018 | TX | Dimmit | 470 | 833 | 28385 |
| RALPH EDWIN HENDERSON JR | ANADARKO E&P ONSHORE LLC | 03/28/2013 | 03/28/2018 | TX | Dimmit | 470 | 837 | 28386 |
| CHARLES LEONARD HENDERSON | ANADARKO E&P ONSHORE LLC | 03/28/2013 | 03/28/2018 | TX | Dimmit | 471 | 1 | 28887 |
| CARL DAVID HENDERSON | ANADARKO E&P ONSHORE LLC | 03/28/2013 | 03/28/2018 | TX | Dimmit | 470 | 829 | 28384 |
| BRUCE HARRISON HENDERSON | ANADARKO E&P ONSHORE LLC | 03/28/2013 | 03/28/2018 | TX | Dimmit | 471 | 5 | 28388 |
| ST TX MF-107481& DIAMOND H RANCHES LP | ANADARKO E&P COMPANY LP | 05/14/2007 | 05/14/2010 | TX | Dimmit | 336 | 199 | 8251 |
| WILLIAM WEST LLOYD ET AL | ANADARKO E&P COMPANY LP | 06/09/2006 | 12/31/2013 | TX | Maverick<br>Webb | 1041<br>339 | 60<br>550 | 144183<br>8821 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 06/10/2006 | 10/15/2015 | TX | Maverick<br>Webb | 1073<br>344 | 99<br>128 | 147023<br>15489 |
| ROGERS DENTONIO RANCH LTD | ANADARKO E&P COMPANY LP | 03/06/2006 | 03/06/2011 | TX | Dimmit | 344 | 46 | 9545 |
| LOLA WRIGHT FOUNDATION | ANADARKO E&P COMPANY LP | 06/14/2011 | 06/14/2014 | TX | Dimmit | 423 | 49 | 20796 |
| RISKEN FAMILY TRUST | ANADARKO E&P COMPANY LP | 03/22/2012 | 03/22/2020 | TX | Dimmit | 445 | 66 | 24499 |
| AUDREY JO SCOTT BOLIN | ANADARKO E&P COMPANY LP | 04/18/2012 | 04/18/2021 | TX | Dimmit | 439 | 678 | 23607 |
| SARAH JEAN SCOTT BURGE | ANADARKO E&P COMPANY LP | 04/18/2012 | 04/18/2021 | TX | Dimmit | 439 | 674 | 23606 |
| THOMAS GUIN | ANADARKO E&P COMPANY LP | 04/18/2012 | 04/18/2021 | TX | Dimmit | 439 | 682 | 23608 |
| HILDA MARIE SCOTT PERCIVAL | ANADARKO E&P COMPANY LP | 04/18/2012 | 04/18/2021 | TX | Dimmit | 439 | 670 | 23605 |
| RALPH H GUIN | ANADARKO E&P COMPANY LP | 04/18/2012 | 04/18/2018 | TX | Dimmit | 449 | 521 | 25265 |
| AUDREY G BAILEY | ANADARKO E&P COMPANY LP | 05/29/2012 | 05/29/2021 | TX | Dimmit | 453 | 531 | 25849 |
| KENNETH A WITBRODT ET AL | ANADARKO E&P ONSHORE LLC | 08/21/2013 | 08/21/2021 | TX | Dimmit | 495 | 204 | 31491 |
| GLADYS ELAINE MASSIE GOWAN | ANADARKO E&P ONSHORE LLC | 06/26/2013 | 06/26/2021 | TX | Dimmit | 495 | 208 | 31492 |
| CLAUDE P MASSIE | ANADARKO E&P ONSHORE LLC | 06/26/2013 | 06/26/2021 | TX | Dimmit | 495 | 212 | 31493 |
| BRIAN R MASSIE | ANADARKO E&P ONSHORE LLC | 08/26/2013 | 08/26/2018 | TX | Dimmit | 495 | 216 | 31494 |
| JANE ANN SHAW | ANADARKO E&P ONSHORE LLC | 09/02/2013 | 09/02/2016 | TX | Dimmit | 491 | 516 | 31083 |
| JENICA DAWN HERNDON | ANADARKO E&P ONSHORE LLC | 08/26/2013 | 08/26/2018 | TX | Dimmit | 504 | 77 | 32389 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| MAUND FAMILY LIMITED PARTNERSHIP ET AL | ANADARKO E&P COMPANY LP | 03/06/2006 | 03/06/2011 | TX | Dimmit | 343 | 694 | 9505 |
| LAWRENCE MCDANIEL GATES | ANADARKO E&P COMPANY LP | 08/03/2010 | 08/03/2017 | TX | Dimmit | 393 | 379 | 16162 |
| SHAUNA LOIS GATES BELL | ANADARKO E&P COMPANY LP | 07/21/2010 | 07/21/2020 | TX | Dimmit | 393 | 398 | 16168 |
| KAREN H GATES FIELDS | ANADARKO E&P COMPANY LP | 08/03/2010 | 08/03/2020 | TX | Dimmit | 393 | 382 | 16163 |
| MARIUS SMITH | ANADARKO E&P COMPANY LP | 07/21/2010 | 07/21/2020 | TX | Dimmit | 393 | 395 | 16167 |
| PATRICIA PYATT COSIMANO | ANADARKO E&P COMPANY LP | 08/16/2010 | 08/16/2018 | TX | Dimmit | 395 | 525 | 16565 |
| GEORGE F GRANTHAM | ANADARKO E&P COMPANY LP | 07/28/2010 | 07/28/2020 | TX | Dimmit | 395 | 522 | 16564 |
| JAY M GATES III | ANADARKO E&P COMPANY LP | 07/21/2010 | 07/21/2020 | TX | Dimmit | 395 | 528 | 16566 |
| MILDRED PATTERSON ET AL RECEIVERSHIP | ANADARKO E&P COMPANY LP | 07/25/2011 | 07/25/2017 | TX | Dimmit | 420 | 759 | 20412 |
| LUCILLE J SWANSON ET AL RECEIVERSHIP | ANADARKO E&P COMPANY LP | 07/25/2011 | 07/25/2017 | TX | Dimmit | 420 | 757 | 20411 |
| DENNIS PAT VANWEY ET AL RECEIVERSHIP | ANADARKO E&P COMPANY LP | 07/25/2011 | 07/25/2020 | TX | Dimmit | 420 | 762 | 20413 |
| HAROLD M STARK ET AL RECEIVERSHIP | ANADARKO E&P COMPANY LP | 08/24/2011 | 08/24/2020 | TX | Dimmit | 426 | 580 | 21449 |
| MARIE PREYSZ SCHOONOVER ET AL RECEIVERSH | ANADARKO E&P COMPANY LP | 08/24/2011 | 08/24/2020 | TX | Dimmit | 426 | 577 | 21448 |
| LILLIE W BOYD ET AL | ANADARKO E&P COMPANY LP | 08/24/2011 | 08/24/2014 | TX | Dimmit | 429 | 541 | 21885 |
| RISKEN FAMILY TRUST | ANADARKO E&P COMPANY LP | 03/22/2012 | 03/22/2018 | TX | Dimmit | 445 | 70 | 24500 |
| BARRY LEE HUTCHISON | ANADARKO E&P COMPANY LP | 08/22/2012 | 08/22/2018 | TX | Dimmit | 456 | 530 | 26278 |
| JONATHAN MYERS | ANADARKO E&P ONSHORE LLC | 11/14/2013 | 11/14/2018 | TX | Dimmit | 505 | 738 | 32601 |
| JAMES MYERS | ANADARKO E&P ONSHORE LLC | 12/10/2013 | 12/10/2018 | TX | Dimmit | 505 | 734 | 32600 |
| BRENDA M LOPEZ | ANADARKO E&P ONSHORE LLC | 11/18/2013 | 11/18/2018 | TX | Dimmit | 505 | 741 | 32602 |
| B L STANLEY LTD | ST MARY LAND & EXPLORATION COMPANY | 10/15/2008 | 10/15/2011 | TX | Webb | 2672 | 185 | 1020907 |
| BRISCOE RANCH INC | ST MARY LAND & EXPLORATION COMPANY | 10/02/2008 | 12/31/2013 | TX | Webb | 2668 | 642 | 1020289 |
| WORTHEY PROPERTIES LTD | ST MARY LAND & EXPLORATION COMPANY | 03/01/2009 | 07/31/2015 | TX | Webb | 2750 | 95 | 1036351 |
| ST TX MF-110291 & SOUTH SPUR LP | ANADARKO E&P COMPANY LP | 03/06/2009 | 03/06/2011 | TX | Dimmit | 369 | 468 | 12860 |
| G E LIGHT III TRUST ET AL | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit<br>LaSalle | 379<br>492 | 830<br>207 | 13825<br>84338 |
| GEORGE E LIGHT JR AND SARAH LIGHT TRUST1 | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit<br>LaSalle | 379<br>492 | 836<br>213 | 13826<br>84339 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| LIGHT MINERAL TRUST ET AL | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit<br>LaSalle | 379<br>492 | 825<br>202 | 13824<br>84337 |
| ST TX M-110600 (PSL) -CHAPARRAL WILDLIFE | CHESAPEAKE EXPLORATION LLC | 01/28/2010 | 01/28/2013 | TX | Dimmit<br>LaSalle | 391<br>513 | 488<br>32 | 15860<br>87603 |
| GEORGE E LIGHT III ET AL | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit | 380 | 11 | 13830 |
| GEORGE E LIGHT JR & SARAH LIGHT TRUST 1 | ST MARY LAND AND EXLPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit | 380 | 7 | 13829 |
| RANCHO ENCANTADO LP | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit | 380 | 16 | 13831 |
| GEORGE E LIGHT III, BILLIE RAE LIGHT TR | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit | 380 | 1 | 13828 |
| LIGHT MINERAL TRUST | ST MARY LAND AND EXPLORATION COMPANY | 10/29/2009 | 10/29/2012 | TX | Dimmit | 379 | 840 | 13827 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 03/01/2010 | 10/15/2019 | TX | Dimmit | 382 | 13 | 14190 |
| MARGARET MITCHELL SEBERN | ANADARKO E&P COMPANY LP | 02/23/2010 | 02/23/2019 | TX | Dimmit | 383 | 654 | 14548 |
| DONNA W MERKEL ET AL | ANADARKO E&P COMPANY LP | 04/30/2010 | 04/30/2013 | TX | Dimmit | 385 | 526 | 14884 |
| CONSTANCE L YEAGER | ANADARKO E&P COMPANY LP | 05/06/2010 | 05/06/2015 | TX | Dimmit | 387 | 456 | 15211 |
| MCROREY CHILDRENS TRUST | ANADARKO E&P COMPANY LP | 06/29/2010 | 06/29/2017 | TX | Dimmit | 388 | 648 | 15418 |
| MAUREEN RUSSO | ANADARKO E&P COMPANY LP | 05/21/2010 | 05/21/2018 | TX | Dimmit | 389 | 719 | 15602 |
| MARTIN SHEEHAN | ANADARKO E&P COMPANY LP | 05/21/2010 | 05/21/2018 | TX | Dimmit | 393 | 388 | 16165 |
| PAUL L SHEEHAN | ANADARKO E&P COMPANY LP | 05/21/2010 | 05/21/2018 | TX | Dimmit | 393 | 401 | 16169 |
| WILLIAM N SHEEHAN III | ANADARKO E&P COMPANY LP | 05/21/2010 | 05/21/2018 | TX | Dimmit | 391 | 286 | 15828 |
| CATHY WIRE | ANADARKO E&P COMPANY LP | 05/21/2010 | 05/21/2018 | TX | Dimmit | 391 | 649 | 15876 |
| IDA E SHEEHAN FORD | ANADARKO E&P COMPANY LP | 05/21/2010 | 05/21/2018 | TX | Dimmit | 393 | 728 | 16234 |
| ELIZABETH ENGWALL REVERE | ANADARKO E&P COMPANY LP | 07/25/2012 | 07/25/2018 | TX | Dimmit | 450 | 641 | 25465 |
| CHRISTINE BLAKENEY | ANADARKO E&P COMPANY LP | 07/25/2012 | 07/25/2018 | TX | Dimmit | 450 | 637 | 25464 |
| MARCIA LOUISE MENATH | ANADARKO E&P COMPANY LP | 08/15/2012 | 08/15/2018 | TX | Dimmit | 455 | 623 | 26168 |
| SHARRON BENTHAL VEREEN | ANADARKO E&P COMPANY LP | 09/26/2012 | 09/26/2018 | TX | Dimmit | 457 | 363 | 26401 |
| GELA WEST | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 390 | 550 | 15691 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| STEVE GROTE | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 392 | 481 | 15990 |
| ELAINE D HEFFLER | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 392 | 484 | 15991 |
| ROBERT MICHAEL STAVINOHA | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 393 | 405 | 16170 |
| WILLIAM DAVID STAVINOHA | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 393 | 392 | 16166 |
| REBECCA ANN OLEY | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 393 | 408 | 16171 |
| BARBARA JO STAVINOHA | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 393 | 411 | 16172 |
| DOROTHY LYNN HOSTER | ANADARKO E&P COMPANY LP | 07/15/2010 | 07/15/2015 | TX | Dimmit | 394 | 192 | 16295 |
| MARGARET WESCOE | ANADARKO E&P COMPANY LP | 03/10/2010 | 03/10/2018 | TX | Dimmit | 392 | 487 | 15992 |
| BRANDON CHRISTOPHER WESCOE | ANADARKO E&P COMPANY LP | 05/12/2010 | 05/12/2018 | TX | Dimmit | 392 | 490 | 15993 |
| SANDRA D WESCOE | ANADARKO E&P COMPANY LP | 05/13/2010 | 05/13/2018 | TX | Dimmit | 395 | 565 | 16572 |
| TRACI W MCDEVITT | ANADARKO E&P COMPANY LP | 05/13/2010 | 05/13/2018 | TX | Dimmit | 402 | 198 | 17629 |
| MARTIN W WILSON, A MINOR | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 785 | 22244 |
| MARK E WILSON | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 777 | 22242 |
| ELIZABETH TAZEWELL WILSON | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 769 | 22240 |
| ELIZABETH F ORTON | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 761 | 22238 |
| CHRISTOPHER D WILSON | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 745 | 22234 |
| CLARE A WILSON, A MINOR | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 753 | 22236 |
| CHERE MATLOCK | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2018 | TX | Dimmit | 431 | 737 | 22232 |
| ALICE E WILSON A MINOR | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 729 | 22230 |
| VIRGINIA ORTON HUBBARD | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 809 | 22250 |
| VICTORIA A WILSON A MINOR | ANADARKO E&P COMPANY LP | 09/19/2011 | 09/19/2019 | TX | Dimmit | 431 | 801 | 22248 |
| TYLER J WILSON | ANADARKO E&P COMPANY LP | 10/19/2011 | 10/19/2019 | TX | Dimmit | 431 | 793 | 22246 |
| SCOTT M FLEMING | ANADARKO E&P COMPANY LP | 08/24/2010 | 08/24/2013 | TX | Dimmit | 393 | 385 | 16164 |
| BERNARD PREECE ET AL | ANADARKO E&P COMPANY LP | 07/09/2010 | 07/09/2017 | TX | Dimmit | 393 | 414 | 16173 |
| MELRAY LLC | ANADARKO E&P COMPANY LP | 07/22/2010 | 07/22/2018 | TX | Dimmit | 393 | 318 | 16140 |
| KAY WILLIAMS | ANADARKO E&P COMPANY LP | 07/22/2010 | 07/22/2017 | TX | Dimmit | 394 | 147 | 16284 |
| BARBARA FELTON LEVISAY | ANADARKO E&P COMPANY LP | 03/25/2011 | 03/25/2016 | TX | Dimmit | 409 | 667 | 18878 |
| ANITA CARROLL HAMILTON | ANADARKO E&P COMPANY LP | 04/13/2011 | 04/13/2016 | TX | Dimmit | 410 | 828 | 19044 |
| ANDREA CARROLL TIMMONS | ANADARKO E&P COMPANY LP | 04/13/2011 | 04/13/2016 | TX | Dimmit | 410 | 831 | 19045 |
| CARPENTER LAND MANAGEMENT COMPANY | ANADARKO E&P COMPANY LP | 05/10/2011 | 05/10/2016 | TX | Dimmit | 418 | 591 | 20043 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| LOCKESBURG FIRST UNITED METHODIST CHURCH | ANADARKO E&P COMPANY LP | 09/04/2011 | 09/04/2016 | TX | Dimmit | 423 | 615 | 20919 |
| NORMA MCLEOD RICE | ANADARKO E&P COMPANY LP | 02/03/2012 | 02/03/2017 | TX | Dimmit | 439 | 702 | 23613 |
| EDWIN HARRISON | ANADARKO E&P COMPANY LP | 02/03/2012 | 02/03/2017 | TX | Dimmit | 439 | 714 | 23616 |
| HAROLD HARRISON | ANADARKO E&P COMPANY LP | 02/03/2012 | 02/03/2017 | TX | Dimmit | 439 | 698 | 23612 |
| SUSAN SMITH | ANADARKO E&P COMPANY LP | 02/03/2012 | 02/03/2017 | TX | Dimmit | 439 | 710 | 23615 |
| SHARON CHANEY | ANADARKO E&P COMPANY LP | 02/03/2012 | 02/03/2017 | TX | Dimmit | 439 | 706 | 23614 |
| PAMELA SUE WILLIAMS REVOCABLE TRUST | ANADARKO E&P ONSHORE LLC | 06/27/2013 | 06/27/2016 | TX | Dimmit | 482 | 325 | 30186 |
| CHET E STUART | ANADARKO E&P ONSHORE LLC | 05/15/2013 | 05/15/2016 | TX | Dimmit | 482 | 322 | 30185 |
| DONALD K MARTIN | ANADARKO E&P ONSHORE LLC | 04/18/2013 | 04/18/2016 | TX | Dimmit | 482 | 310 | 30181 |
| ROBBIE L MCLEOD | ANADARKO E&P ONSHORE LLC | 04/18/2013 | 04/18/2016 | TX | Dimmit | 482 | 313 | 30182 |
| GARY A MCLEOD | ANADARKO E&P ONSHORE LLC | 04/18/2013 | 04/18/2016 | TX | Dimmit | 482 | 316 | 30183 |
| BOBBIE L MCLEOD | ANADARKO E&P ONSHORE LLC | 04/18/2013 | 04/18/2016 | TX | Dimmit | 482 | 307 | 30180 |
| EVELYN G THRELKELD | ANADARKO E&P ONSHORE LLC | 05/01/2013 | 05/01/2016 | TX | Dimmit | 482 | 319 | 30184 |
| VICKI L SMITH | ANADARKO E&P ONSHORE LLC | 05/15/2013 | 05/15/2016 | TX | Dimmit | 500 | 316 | 32057 |
| KEITH C STUART | ANADARKO E&P ONSHORE LLC | 05/15/2013 | 05/15/2016 | TX | Dimmit | 502 | 65 | 32199 |
| VIRGINIA MAE ALEXANDER | ANADARKO E&P ONSHORE LLC | 01/26/2014 | 01/26/2017 | TX | Dimmit | 512 | 193 | 33490 |
| JOHN RICHARD KIKER | ANADARKO E&P ONSHORE LLC | 01/25/2014 | 01/25/2017 | TX | Dimmit | 512 | 196 | 33491 |
| PATRICIA L LAKE | ANADARKO E&P ONSHORE LLC | 03/26/2014 | 03/26/2017 | TX | Dimmit | 516 | 704 | 34283 |
| KENNETH T GREEN | ANADARKO E&P ONSHORE LLC | 03/26/2014 | 03/26/2017 | TX | Dimmit | 516 | 701 | 34282 |
| GAYLYN GREEN | ANADARKO E&P ONSHORE LLC | 04/04/2014 | 04/04/2017 | TX | Dimmit | 515 | 582 | 34081 |
| TIMOTHY J GREEN | ANADARKO E&P ONSHORE LLC | 04/04/2014 | 04/04/2017 | TX | Dimmit | 515 | 579 | 34080 |
| KATHLEEN IRIS SLOAN | ANADARKO E&P ONSHORE LLC | 04/06/2014 | 04/06/2017 | TX | Dimmit | 517 | 546 | 34428 |
| NELDA Y BRASHEAR | ANADARKO E&P ONSHORE LLC | 01/25/2014 | 01/25/2017 | TX | Dimmit | 512 | 199 | 33492 |
| SAM L GREEN | ANADARKO E&P ONSHORE LLC | 01/21/2014 | 01/21/2017 | TX | Dimmit | 515 | 576 | 34079 |
| WEAVER JAMES BARKMAN JR | ANADARKO E&P ONSHORE LLC | 01/21/2014 | 01/21/2017 | TX | Dimmit | 515 | 573 | 34078 |
| THELMA HOWELL | ANADARKO E&P ONSHORE LLC | 01/25/2014 | 01/25/2017 | TX | Dimmit | 512 | 190 | 33489 |
| WILLIAM MICHAEL PATTERSON | ANADARKO E&P ONSHORE LLC | 05/15/2014 | 05/15/2017 | TX | Dimmit | 519 | 136 | 34644 |
| JO P POPHAM | ANADARKO E&P ONSHORE LLC | 05/15/2014 | 05/15/2017 | TX | Dimmit | 519 | 128 | 34642 |
| MARY SUZANNE PATTERSON BACK | ANADARKO E&P ONSHORE LLC | 05/15/2014 | 05/15/2017 | TX | Dimmit | 519 | 132 | 34643 |
| ALBERT EDWARD PATTERSON JR | ANADARKO E&P ONSHORE LLC | 05/15/2014 | 05/15/2017 | TX | Dimmit | 519 | 120 | 34640 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| ADELL MCLEOD | ANADARKO E&P ONSHORE LLC | 05/22/2013 | 05/22/2016 | TX | Dimmit | 493 | 598 | 31425 |
| JOSEPH GEROME PATTERSON | ANADARKO E&P ONSHORE LLC | 05/15/2014 | 05/15/2017 | TX | Dimmit | 519 | 124 | 34641 |
| J JOANN CARROLL ET AL | ANADARKO E&P ONSHORE LLC | 04/23/2014 | 04/23/2017 | TX | Dimmit | 517 | 543 | 34427 |
| KEVIN JAMES GREEN | ANADARKO E&P ONSHORE LLC | 03/26/2014 | 03/26/2017 | TX | Dimmit | 515 | 570 | 34077 |
| SUSAN L BESANCON | ANADARKO E&P ONSHORE LLC | 07/09/2014 | 07/09/2017 | TX | Dimmit | 519 | 821 | 34793 |
| ROBERT GRAVES | ANADARKO E&P ONSHORE LLC | 07/01/2014 | 07/01/2017 | TX | Dimmit | 519 | 833 | 34796 |
| HARRY C COOPER | ANADARKO E&P ONSHORE LLC | 07/09/2014 | 07/09/2017 | TX | Dimmit | 519 | 825 | 34794 |
| JAMES M BRANCH | ANADARKO E&P ONSHORE LLC | 07/01/2014 | 07/01/2017 | TX | Dimmit | 526 | 255 | 35599 |
| BEVERLY JO MOORE | ANADARKO E&P ONSHORE LLC | 07/21/2014 | 07/21/2017 | TX | Dimmit | 526 | 251 | 35598 |
| DANNY F GRAVES | ANADARKO E&P ONSHORE LLC | 07/09/2014 | 07/09/2017 | TX | Dimmit | 519 | 829 | 34795 |
| ST TX M-111277 | ANADARKO E&P COMPANY LP | 07/20/2010 | 07/20/2015 | TX | Dimmit | 392<br>396 | 363<br>579 | 15971<br>16714 |
| BRAZORIA COUNTY OIL AND GAS CORPORATION | ANADARKO E&P COMPANY LP | 08/01/2010 | 08/01/2014 | TX | Dimmit | 392 | 370 | 15972 |
| DEVOIN E GARRISON | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 76 | 16475 |
| VERNEAL ZOGRAN | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 73 | 16474 |
| SAM O GARRISON | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 70 | 16473 |
| MITCHELL RAY WOODY | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 67 | 16472 |
| MARTHA GARRISON LIZZA | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 64 | 16471 |
| JOE A GARRISON | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 61 | 16470 |
| JOAN MAYS | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 58 | 16469 |
| GEORGIA KAY BILLSING | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 52 | 16467 |
| DEBBIE GARRISON HUFF | THE POWELL GROUP | 09/08/2010 | 09/08/2015 | TX | Dimmit | 395 | 45 | 16465 |
| GREGORY ALLEN GOLDSBORO | ANADARKO E&P COMPANY LP | 06/27/2011 | 06/27/2014 | TX | Dimmit | 418 | 157 | 19936 |
| RAND J SPRINGMAN | ANADARKO E&P COMPANY LP | 06/01/2011 | 06/01/2014 | TX | Dimmit | 416 | 589 | 19712 |
| JOHN J SPRINGMAN IV | ANADARKO E&P COMPANY LP | 06/01/2011 | 06/01/2014 | TX | Dimmit | 416 | 595 | 19714 |
| SUSAN MARIE OLSON | ANADARKO E&P COMPANY LP | 06/01/2011 | 06/01/2014 | TX | Dimmit | 416 | 592 | 19713 |
| BRENDA PAYNE | ANADARKO E&P COMPANY LP | 08/10/2011 | 08/10/2014 | TX | Dimmit | 423 | 460 | 20887 |
| FRANCES HEROD | ANADARKO E&P COMPANY LP | 08/10/2011 | 08/10/2014 | TX | Dimmit | 423 | 463 | 20888 |
| MARILYN JOHNSTON | ANADARKO E&P COMPANY LP | 08/10/2011 | 08/10/2014 | TX | Dimmit | 423 | 466 | 20889 |
| BETTY BENNETT | ANADARKO E&P COMPANY LP | 08/10/2011 | 08/10/2014 | TX | Dimmit | 423 | 469 | 20890 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| LINDA CAGLE | ANADARKO E&P COMPANY LP | 08/10/2011 | 08/10/2014 | TX | Dimmit | 423 | 457 | 20886 |
| EARL SCHWARM INSURANCE TRUST | ANADARKO E&P COMPANY LP | 06/07/2011 | 06/07/2014 | TX | Dimmit | 423 | 453 | 20885 |
| DELL M KELBY | ANADARKO E&P COMPANY LP | 08/30/2011 | 08/30/2014 | TX | Dimmit | 420 | 224 | 20343 |
| SUSAN L WODTKE REVOCABLE TRUST AGMT | ANADARKO E&P COMPANY LP | 08/02/2011 | 08/02/2014 | TX | Dimmit | 420 | 221 | 20342 |
| CHARLES F KOEHNE | ANADARKO E&P COMPANY LP | 08/31/2011 | 08/31/2014 | TX | Dimmit | 423 | 438 | 20881 |
| SHELBY KUCHLER | ANADARKO E&P COMPANY LP | 08/29/2011 | 08/29/2014 | TX | Dimmit | 423 | 441 | 20882 |
| MARJORIE M SPRINGMAN | ANADARKO E&P COMPANY LP | 08/29/2011 | 08/29/2014 | TX | Dimmit | 423 | 445 | 20883 |
| PHYLLIS E. MCELHENEY TRUST DTD 7/30/1992 | ANADARKO E&P COMPANY LP | 09/04/2011 | 09/04/2014 | TX | Dimmit | 425 | 311 | 21184 |
| R L SUTHERLAND III | ANADARKO E&P COMPANY LP | 08/29/2011 | 08/29/2014 | TX | Dimmit | 423 | 449 | 20884 |
| IRIS WHITEHEAD HALL | ANADARKO E&P COMPANY LP | 08/31/2011 | 08/31/2014 | TX | Dimmit | 427 | 390 | 21529 |
| JON S BROWN | ANADARKO E&P COMPANY LP | 10/31/2011 | 10/31/2014 | TX | Dimmit | 427 | 407 | 21533 |
| JANET D VAN SANT | ANADARKO E&P COMPANY LP | 11/08/2011 | 11/08/2014 | TX | Dimmit | 427 | 412 | 2153 |
| JOSEPH J SPRINGMAN SR TRUST | ANADARKO E&P COMPANY LP | 10/10/2011 | 10/10/2014 | TX | Dimmit | 427 | 399 | 21531 |
| BERTRICE F SCRIBNER MARCH 1988 TRUST | ANADARKO E&P COMPANY LP | 10/26/2011 | 10/26/2014 | TX | Dimmit | 427 | 394 | 21530 |
| JEWEL D BROWN | ANADARKO E&P COMPANY LP | 11/08/2011 | 11/08/2014 | TX | Dimmit | 427 | 404 | 21532 |
| JOHN F PETTIT JR | ANADARKO E&P COMPANY LP | 01/19/2012 | 01/19/2015 | TX | Dimmit | 433 | 125 | 22468 |
| DAVID BROWN | ANADARKO E&P COMPANY LP | 01/30/2012 | 01/30/2015 | TX | Dimmit | 436 | 141 | 22996 |
| BRENDA S BROWN | ANADARKO E&P COMPANY LP | 02/05/2012 | 02/05/2015 | TX | Dimmit | 436 | 125 | 22992 |
| DANIEL E SPRINGMAN | ANADARKO E&P COMPANY LP | 01/17/2012 | 01/17/2015 | TX | Dimmit | 436 | 121 | 22991 |
| CINDY BROWN | ANADARKO E&P COMPANY LP | 01/30/2012 | 01/30/2015 | TX | Dimmit | 436 | 133 | 22994 |
| GEORGE L SPRINGMAN REVOCABLE TRUST DTD | ANADARKO E&P COMPANY LP | 01/17/2012 | 01/17/2015 | TX | Dimmit | 436 | 129 | 22993 |
| LEWIS S BROWN | ANADARKO E&P COMPANY LP | 02/10/2012 | 02/10/2015 | TX | Dimmit | 436 | 145 | 22997 |
| DOROTHY D WHITLOCK | ANADARKO E&P COMPANY LP | 02/10/2012 | 02/10/2015 | TX | Dimmit | 436 | 137 | 22995 |
| MELISSA MUNOZ | ANADARKO E&P COMPANY LP | 03/07/2012 | 03/07/2015 | TX | Dimmit | 436 | 118 | 22990 |
| M SUZANNE IMMEN | ANADARKO E&P COMPANY LP | 02/05/2012 | 02/05/2015 | TX | Dimmit | 439 | 749 | 23626 |
| MARY B DUFFY | ANADARKO E&P COMPANY LP | 04/17/2012 | 04/17/2015 | TX | Dimmit | 439 | 757 | 23628 |
| MARILYN M CALVERT | ANADARKO E&P COMPANY LP | 04/17/2012 | 04/17/2015 | TX | Dimmit | 439 | 745 | 23625 |
| JAKE F BROWN | ANADARKO E&P COMPANY LP | 04/17/2012 | 04/17/2015 | TX | Dimmit | 439 | 753 | 23627 |
| MARION BROWN | ANADARKO E&P COMPANY LP | 01/30/2012 | 01/30/2015 | TX | Dimmit | 442 | 304 | 24054 |
| KAREN LOMAS WOODY | ANADARKO E&P COMPANY LP | 10/22/2012 | 10/22/2015 | TX | Dimmit | 457 | 360 | 26400 |

Case 22-33553 Document 635-1 Filed in TXSB on 03/06/23 Page 152 of 386

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| TEXAS LAND AND MINERAL COMPANY LLC ET AL | ANADARKO E&P COMPANY LP | 11/20/2012 | 11/20/2015 | TX | Dimmit | 458 | 290 | 26535 |
| GARY KOEHNE ET AL HEIRS RECEIVERSHIP | ANADARKO E&P ONSHORE LLC | 05/17/2013 | 05/17/2016 | TX | Dimmit | 478 | 227 | 29445 |
| MCROREY CHILDRENS TRUST | ANADARKO E&P COMPANY LP | 08/02/2010 | 08/02/2017 | TX | Dimmit | 392 | 360 | 15970 |
| EDNA FELL | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 398 | 029 | 16938 |
| JOHN SCHALLHORN | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 398 | 33 | 16939 |
| JANET SCHALLHORN VANDERFORD | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 398 | 037 | 16940 |
| MARY JEAN DABBS | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 398 | 041 | 16941 |
| KAREN SULLARDS | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 399 | 706 | 17214 |
| WILLIAM DAY SCHALLHORN | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 399 | 691 | 17210 |
| EUGENIA TAYLOR | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 399 | 702 | 17213 |
| JOHN D SCHALLHORN | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 399 | 698 | 17212 |
| TOM SCHALLHORN | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 399 | 483 | 17170 |
| DEE ANN SCHALLHORN JOHNSON | ANADARKO E&P COMPANY LP | 10/14/2010 | 10/14/2018 | TX | Dimmit | 400 | 113 | 17276 |
| SWONKE FAMILY TRUST | ANADARKO E&P COMPANY LP | 07/14/2010 | 07/14/2014 | TX | Dimmit | 399 | 715 | 17217 |
| DENNI DAVIS WASHBURN | ANADARKO E&P COMPANY LP | 11/08/2010 | 05/08/2017 | TX | Dimmit | 400 | 342 | 17324 |
| MARIE S MIEGEL | ANADARKO E&P COMPANY LP | 11/08/2010 | 05/08/2017 | TX | Dimmit | 400 | 348 | 17325 |
| ST TX MF-112121 & BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 09/01/2010 | 09/01/2013 | TX | La Salle | 530 | 251 | 90198 |
| JAMES B WINDHAM JR | ANADARKO E&P COMPANY LP | 11/19/2010 | 11/19/2019 | TX | Dimmit | 405 | 557 | 18183 |
| MARIEANNE HOLLARN AKA MARIANNE DUNAWAY | ANADARKO E&P COMPANY LP | 03/28/2011 | 03/28/2019 | TX | Dimmit | 410 | 169 | 18939 |
| JOSEPH MARSHALL HOLLARN III | ANADARKO E&P COMPANY LP | 03/28/2011 | 03/28/2019 | TX | Dimmit | 410 | 163 | 18937 |
| ROBERT CHARLES WINDHAM ET UX | ANADARKO E&P COMPANY LP | 02/03/2011 | 02/03/2019 | TX | Dimmit | 412 | 384 | 19214 |
| CLARA SELF HARRIS | ANADARKO E&P COMPANY LP | 02/01/2012 | 02/01/2017 | TX | Dimmit | 433 | 143 | 22473 |
| ROBERT CHARLES VIVION | ANADARKO E&P COMPANY LP | 01/20/2012 | 01/20/2017 | TX | Dimmit | 431 | 722 | 22228 |
| GAY NELL WILLIAMS | ANADARKO E&P COMPANY LP | 02/01/2012 | 02/01/2017 | TX | Dimmit | 433 | 155 | 22476 |
| EARLENE HARRIS FOGLE | ANADARKO E&P COMPANY LP | 01/20/2012 | 01/20/2017 | TX | Dimmit | 433 | 151 | 22475 |
| RONNY O WARD | ANADARKO E&P COMPANY LP | 02/01/2012 | 02/01/2017 | TX | Dimmit | 433 | 147 | 22474 |
| HENRY LYNN HARRIS | ANADARKO E&P COMPANY LP | 01/23/2012 | 01/23/2017 | TX | Dimmit | 433 | 129 | 22469 |
| JULIE ANN HARRIS RICE | ANADARKO E&P COMPANY LP | 01/23/2012 | 01/23/2017 | TX | Dimmit | 433 | 132 | 22470 |
| BILLIE MILLS HARRIS | ANADARKO E&P COMPANY LP | 01/23/2012 | 01/23/2020 | TX | Dimmit | 433 | 136 | 22471 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| DEBRA HARRIS MOORE | ANADARKO E&P COMPANY LP | 01/23/2012 | 01/23/2017 | TX | Dimmit | 433 | 139 | 22472 |
| ARTHUR LEE HARRIS | ANADARKO E&P COMPANY LP | 03/08/2012 | 03/08/2018 | TX | Dimmit | 439 | 721 | 23618 |
| NITA SUE SANDERS | ANADARKO E&P COMPANY LP | 03/08/2012 | 03/08/2018 | TX | Dimmit | 439 | 724 | 23619 |
| ALICE LANE COMPTON | ANADARKO E&P COMPANY LP | 03/08/2012 | 03/08/2018 | TX | Dimmit | 439 | 718 | 23617 |
| GORDON WAYNE HARRIS | ANADARKO E&P COMPANY LP | 07/24/2012 | 07/24/2018 | TX | Dimmit | 450 | 657 | 25469 |
| RICKY LEE HARRIS | ANADARKO E&P COMPANY LP | 07/24/2012 | 07/24/2018 | TX | Dimmit | 450 | 669 | 25472 |
| SHERRI LYNN WEATHEREAD | ANADARKO E&P COMPANY LP | 08/15/2012 | 08/15/2018 | TX | Dimmit | 450 | 661 | 25470 |
| VONNITA ANN LEONARDI | ANADARKO E&P COMPANY LP | 07/24/2012 | 07/24/2018 | TX | Dimmit | 450 | 649 | 25467 |
| BILLY JACK GRAVES | ANADARKO E&P COMPANY LP | 07/12/2012 | 07/12/2018 | TX | Dimmit | 450 | 673 | 25473 |
| WALTER CHARLES HARRIS | ANADARKO E&P COMPANY LP | 07/24/2012 | 07/24/2018 | TX | Dimmit | 450 | 665 | 25471 |
| MELINDA HARRIS WALKER | ANADARKO E&P COMPANY LP | 07/17/2012 | 07/17/2017 | TX | Dimmit | 450 | 653 | 25468 |
| JEFFREY ALLEN HARRIS | ANADARKO E&P COMPANY LP | 07/24/2012 | 07/24/2018 | TX | Dimmit | 455 | 118 | 26085 |
| MARY HELEN WINDHAM SEAGO ET UX | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2019 | TX | Dimmit | 467 | 91 | 27796 |
| WILL ALSTON BEINHORN | ANADARKO E&P COMPANY LP | 12/15/2010 | 12/15/2014 | TX | Dimmit | 403 | 403 | 17810 |
| DORIS R MONROE TRUST | ANADARKO E&P COMPANY LP | 06/08/2011 | 06/08/2016 | TX | Dimmit | 419 | 106 | 20117 |
| WILL ALSTON BEINHORN | ANADARKO E&P COMPANY LP | 12/15/2010 | 06/15/2015 | TX | Dimmit | 403 | 409 | 17812 |
| GARY ECKHARDT ET UX | ANADARKO E&P COMPANY LP | 11/05/2010 | 11/05/2013 | TX | Dimmit | 403 | 400 | 17809 |
| WILL ALSTON BEINHORN | ANADARKO E&P COMPANY LP | 12/15/2010 | 12/15/2016 | TX | Dimmit | 403 | 406 | 17811 |
| EVELYN I METCALF | ANADARKO E&P COMPANY LP | 09/23/2010 | 09/23/2015 | TX | Dimmit | 402<br>415 | 201<br>461 | 17630<br>19563 |
| GLEN RAY METCALF | ANADARKO E&P COMPANY LP | 03/09/2011 | 03/09/2016 | TX | Dimmit | 406 | 384 | 18328 |
| ALICE KUEHLER | ANADARKO E&P COMPANY LP | 03/17/2011 | 03/17/2016 | TX | Dimmit | 406 | 388 | 18329 |
| DONALD DETTEN | ANADARKO E&P COMPANY LP | 03/16/2011 | 03/16/2016 | TX | Dimmit | 406 | 396 | 18331 |
| PAUL A DETTEN ET UX | ANADARKO E&P COMPANY LP | 03/18/2011 | 03/18/2016 | TX | Dimmit | 406 | 400 | 18332 |
| GLADYS LOOTEN | ANADARKO E&P COMPANY LP | 03/17/2011 | 03/17/2016 | TX | Dimmit | 406 | 392 | 18330 |
| FRANK VANCE | ANADARKO E&P COMPANY LP | 03/15/2011 | 03/15/2016 | TX | Dimmit | 406 | 356 | 18321 |
| MARY RUTH RICE | ANADARKO E&P COMPANY LP | 03/14/2011 | 03/14/2016 | TX | Dimmit | 406 | 364 | 18323 |
| JACK JOHN METCALF | ANADARKO E&P COMPANY LP | 03/09/2011 | 03/09/2016 | TX | Dimmit | 406 | 376 | 18326 |
| CAROL JEAN MAYFIELD | ANADARKO E&P COMPANY LP | 03/14/2011 | 03/14/2016 | TX | Dimmit | 406 | 372 | 18325 |
| LINDA KAY CARTER | ANADARKO E&P COMPANY LP | 03/11/2011 | 03/11/2016 | TX | Dimmit | 406 | 368 | 18324 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| HARRY VANCE JR | ANADARKO E&P COMPANY LP | 03/15/2011 | 03/15/2016 | TX | Dimmit | 406 | 360 | 18322 |
| PLUMA PETERSON | ANADARKO E&P COMPANY LP | 03/16/2011 | 03/16/2016 | TX | Dimmit | 406 | 744 | 18416 |
| IRENE DETTEN LEWIS | ANADARKO E&P COMPANY LP | 03/17/2011 | 03/17/2016 | TX | Dimmit | 406 | 380 | 18327 |
| ELIZABETH ANN METCALF | ANADARKO E&P COMPANY LP | 03/14/2011 | 03/14/2016 | TX | Dimmit | 408 | 385 | 18688 |
| SAM METCALF | ANADARKO E&P COMPANY LP | 03/16/2011 | 03/16/2016 | TX | Dimmit | 408 | 389 | 18689 |
| BLANCHE C KOETTING | ANADARKO E&P COMPANY LP | 03/17/2011 | 03/17/2016 | TX | Dimmit | 406 | 740 | 18415 |
| RUTH KINCANNON | ANADARKO E&P COMPANY LP | 03/16/2011 | 03/16/2016 | TX | Dimmit | 406 | 732 | 18413 |
| FRANCES ANN SINCLAIR | ANADARKO E&P COMPANY LP | 03/18/2011 | 03/18/2016 | TX | Dimmit | 406 | 736 | 18414 |
| SAN JACINTO BAPTIST CHURCH | ANADARKO E&P COMPANY LP | 03/14/2011 | 03/14/2016 | TX | Dimmit | 408 | 393 | 18690 |
| DORIS GABEL | ANADARKO E&P COMPANY LP | 03/18/2011 | 03/18/2016 | TX | Dimmit | 408 | 381 | 18687 |
| DAN METCALF | ANADARKO E&P COMPANY LP | 03/16/2011 | 03/16/2016 | TX | Dimmit | 418 | 148 | 19933 |
| BILL M VANCE | ANADARKO E&P COMPANY LP | 03/15/2011 | 03/15/2016 | TX | Dimmit | 418 | 154 | 19935 |
| KATHY TERRY | ANADARKO E&P COMPANY LP | 03/16/2011 | 03/16/2016 | TX | Dimmit | 418 | 151 | 19934 |
| JUDY DETTEN TRUST | ANADARKO E&P COMPANY LP | 09/22/2011 | 09/22/2016 | TX | Dimmit | 422 | 387 | 20698 |
| ANNA M WINK | ANADARKO E&P COMPANY LP | 03/17/2011 | 03/17/2016 | TX | Dimmit | 422 | 391 | 20699 |
| SHARON DAUGHTERS | ANADARKO E&P COMPANY LP | 07/26/2011 | 07/26/2016 | TX | Dimmit | 425 | 695 | 21287 |
| TRIPLE B INVESTMENTS LLC | ANADARKO E&P COMPANY LP | 11/26/2010 | 11/25/2016 | TX | Dimmit | 401 | 548 | 17517 |
| EARLENE F BRENNER ET AL | ANADARKO E&P COMPANY LP | 02/25/2011 | 02/25/2017 | TX | Dimmit | 406 | 681 | 18405 |
| RISKEN FAMILY TRUST | ANADARKO E&P COMPANY LP | 03/22/2012 | 03/22/2015 | TX | Dimmit | 445 | 640 | 24596 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | 03/01/2011 | 03/01/2014 | TX | Dimmit | 405 | 563 | 18185 |
| GLORIA DELGADO | ANADARKO E&P COMPANY LP | 11/18/2010 | 11/18/2015 | TX | Dimmit | 406 | 196 | 18282 |
| JUDITH L LEITCH | ANADARKO E&P COMPANY LP | 03/10/2011 | 03/10/2016 | TX | Dimmit | 408 | 378 | 18686 |
| AUSTIN PRESBYTERIAN THEOLOGICAL SEMINARY | ANADARKO E&P COMPANY LP | 03/21/2011 | 03/21/2014 | TX | Dimmit | 406 | 724 | 18411 |
| JUANITA A PETERS | ANADARKO E&P COMPANY LP | 03/01/2011 | 03/01/2016 | TX | Dimmit | 409 | 664 | 18877 |
| GENEVIEVE C GREEN | ANADARKO E&P COMPANY LP | 04/21/2011 | 04/21/2018 | TX | Dimmit | 409 | 680 | 18882 |
| TULLY R CURRIE | ANADARKO E&P COMPANY LP | 04/21/2011 | 04/21/2018 | TX | Dimmit | 409 | 677 | 18881 |
| CANDACE ALLEGRA CURRIE | ANADARKO E&P COMPANY LP | 04/20/2011 | 04/20/2018 | TX | Dimmit | 409 | 674 | 18880 |
| JOHN QUIN BECKELHEIMER | ANADARKO E&P COMPANY LP | 04/21/2011 | 04/21/2018 | TX | Dimmit | 409 | 671 | 18879 |
| MILBURN W HOBSON TRUST DTD 6/19/89 | ANADARKO E&P COMPANY LP | 08/01/2011 | 08/01/2014 | TX | Dimmit | 422 | 395 | 20700 |
| RALPH J KIMBLE | ANADARKO E&P COMPANY LP | 10/21/2011 | 10/21/2014 | TX | Dimmit | 427 | 735 | 21605 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| JEFFERY L TRIM | ANADARKO E&P COMPANY LP | 04/02/2012 | 04/02/2015 | TX | Dimmit | 445 | 61 | 24498 |
| MARTHA KIMBLE | ANADARKO E&P COMPANY LP | 04/12/2012 | 04/12/2015 | TX | Dimmit | 443 | 152 | 24176 |
| LOUIS E BOSBY JR | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 646 | 23600 |
| ELIZABETH EARHART | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 627 | 23596 |
| ERNEST JEFFREY BOSBY | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 651 | 23601 |
| JENNIFER BOSBY GEORGE | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 637 | 23598 |
| SUSAN T ALLEN | ANADARKO E&P COMPANY LP | 04/17/2012 | 04/17/2015 | TX | Dimmit | 442 | 832 | 24143 |
| BETSY BOSBY HINES | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 656 | 23602 |
| MARY FRICKS | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 661 | 23603 |
| ROY LOGAN KIMBLE | ANADARKO E&P COMPANY LP | 10/21/2011 | 10/21/2014 | TX | Dimmit | 435 | 797 | 22943 |
| MARIAN JEFFREY | ANADARKO E&P COMPANY LP | 06/06/2012 | 06/06/2015 | TX | Dimmit | 445 | 56 | 24497 |
| LINDA BOSBY LICHTMAN | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 439 | 641 | 23599 |
| WILLIAM KEITH KIMBLE | ANADARKO E&P COMPANY LP | 04/23/2012 | 04/23/2015 | TX | Dimmit | 439 | 632 | 23597 |
| MEREDITH B TRIM | ANADARKO E&P COMPANY LP | 03/16/2012 | 03/16/2015 | TX | Dimmit | 456 | 521 | 26276 |
| DAVID TRIM | ANADARKO E&P ONSHORE LLC | 01/22/2013 | 01/22/2016 | TX | Dimmit | 465 | 235 | 27497 |
| FAYRENE JACQUES REVOCABLE TRUST | ANADARKO E&P COMPANY LP | 09/08/2011 | 09/08/2020 | TX | Dimmit | 427 | 741 | 21607 |
| JUDY WAY | ANADARKO E&P COMPANY LP | 11/02/2011 | 11/02/2020 | TX | Dimmit | 427 | 738 | 21606 |
| SCOTT FAMILY TRUST | ANADARKO E&P COMPANY LP | 01/31/2012 | 01/31/2021 | TX | Dimmit | 435 | 803 | 22945 |
| SCOTT FAMILY TRUST | ANADARKO E&P COMPANY LP | 01/23/2012 | 01/23/2018 | TX | Dimmit | 435 | 800 | 22944 |
| KRISTI DOMAN | ANADARKO E&P COMPANY LP | 09/06/2012 | 09/06/2018 | TX | Dimmit | 453 | 539 | 25851 |
| GREGORY FOWLER GATLIN | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2020 | TX | Dimmit | 429 | 54 | 21790 |
| WESLEY GATLIN JR | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2020 | TX | Dimmit | 429 | 64 | 21792 |
| SUSAN GATLIN KELLY | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2020 | TX | Dimmit | 429 | 59 | 21791 |
| ANNE GATLIN BURKEL | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2020 | TX | Dimmit | 429 | 69 | 21793 |
| JOHN H BRYMER IV | ANADARKO E&P COMPANY LP | 12/29/2011 | 12/29/2019 | TX | Dimmit | 433 | 114 | 22463 |
| MICHMER CONTRACTING INC | ANADARKO E&P COMPANY LP | 12/29/2011 | 12/29/2014 | TX | Dimmit | 433 | 105 | 22460 |
| FREDRICK MATTHEW BRYMER | ANADARKO E&P COMPANY LP | 12/29/2011 | 12/29/2014 | TX | Dimmit | 433 | 111 | 22462 |
| JAMES A BRYMER | ANADARKO E&P COMPANY LP | 12/29/2011 | 12/29/2014 | TX | Dimmit | 433 | 108 | 22461 |
| GREGORY FOWLER GATLIN | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2014 | TX | Dimmit | 432 | 480 | 22358 |
| SUSAN GATLIN KELLY | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2014 | TX | Dimmit | 432 | 490 | 22360 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| ANNE GATLIN BURKEL | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2014 | TX | Dimmit | 432 | 485 | 22359 |
| WESLEY GATLIN JR | ANADARKO E&P COMPANY LP | 12/08/2011 | 12/08/2014 | TX | Dimmit | 432 | 475 | 22357 |
| MICHELLE MOCK LUSIGNAN | ANADARKO E&P COMPANY LP | 04/09/2012 | 04/09/2020 | TX | Dimmit | 437 | 511 | 23258 |
| GAYE L KOPAS | ANADARKO E&P COMPANY LP | 04/09/2012 | 04/09/2020 | TX | Dimmit | 437 | 505 | 23256 |
| LINDA H LEE | ANADARKO E&P COMPANY LP | 04/09/2012 | 04/09/2020 | TX | Dimmit | 437 | 508 | 23257 |
| DULLNIG INVESTMENTS LTD | JOINT RESOURCES COMPANY | 01/01/2010 | 01/01/2013 | TX | Dimmit | 379 | 258 | 13696 |
| RHONDA WEISENBERGER | CHESAPEAKE EXPLORATION LLC | 04/04/2012 | 04/04/2015 | TX | Dimmit | 438 | 412 | 23402 |
| JEANNINE URIAS | CHESAPEAKE EXPLORATION LLC | 04/04/2012 | 04/04/2015 | TX | Dimmit | 438 | 409 | 23401 |
| JOHN F MILES | CHESAPEAKE EXPLORATION LLC | 03/29/2012 | 03/29/2015 | TX | Dimmit | 438 | 407 | 23399 |
| KATHLEEN FITZSIMONS LOVE ET AL | ANADARKO E&P COMPANY LP | 01/17/2012 | 01/17/2018 | TX | Dimmit | 430 | 780 | 22089 |
| JACKSON BENJAMIN LOVE JR | ANADARKO E&P COMPANY LP | 01/17/2012 | 01/17/2018 | TX | Dimmit | 430 | 759 | 22086 |
| SOUTHWEST PETROLEUM COMPANY LP | ANADARKO E&P COMPANY LP | 05/29/2012 | 05/29/2015 | TX | Dimmit | 445 | 644 | 24597 |
| S AND C PROPERTIES | ANADARKO E&P COMPANY LP | 05/29/2012 | 05/29/2015 | TX | Dimmit | 445 | 654 | 24599 |
| BIG SKY MINERAL TRUST | ANADARKO E&P COMPANY LP | 05/29/2012 | 05/29/2015 | TX | Dimmit | 445 | 649 | 24598 |
| BARBARA J FARROW REVOCABLE TRUST | ANADARKO E&P COMPANY LP | 07/10/2012 | 07/10/2018 | TX | Dimmit | 450 | 645 | 25466 |
| HAL BERDOLL ET UX | ANADARKO E&P COMPANY LP | 06/01/2012 | 06/01/2014 | TX | Dimmit | 444 | 569 | 24432 |
| JANE NORTH LYON | ANADARKO E&P COMPANY LP | 04/30/2012 | 04/30/2015 | TX | Dimmit | 442 | 828 | 24142 |
| SHIRLEY ANN ORMOND | ANADARKO E&P COMPANY LP | 04/18/2012 | 04/18/2021 | TX | Dimmit | 439 | 691 | 23610 |
| BURRIS A WORKMAN ET UX | ANADARKO E&P COMPANY LP | 01/24/2012 | 01/24/2021 | TX | Dimmit | 432 | 700 | 22401 |
| ANNIE BETTIE HERREN LIVING TRUST | ANADARKO E&P COMPANY LP | 04/27/2012 | 04/27/2018 | TX | Dimmit | 445 | 74 | 24501 |
| HENRY PETER HILLEBRANDT | ANADARKO E&P COMPANY LP | 05/01/2012 | 05/01/2016 | TX | Dimmit | 439 | 666 | 23604 |
| JACK RICHARD FRITZ | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 455 | 556 | 26162 |
| JEAN LOUISE BELL | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 455 | 563 | 26163 |
| JOANN GRACE FRITZ LIFE TENANT | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2021 | TX | Dimmit | 455 | 569 | 26164 |
| BRADLEY STEPHEN FRITZ | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2021 | TX | Dimmit | 455 | 550 | 26161 |
| JULIE ANN FRITZ-RUBERT | ANADARKO E&P COMPANY LP | 10/03/2012 | 10/03/2021 | TX | Dimmit | 455 | 575 | 26165 |
| MARGARET T JENSEN REVOCABLE TRUST | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2021 | TX | Dimmit | 458 | 295 | 26536 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| JOE S SHANNON | ANADARKO E&P COMPANY LP | 06/25/2012 | 06/25/2018 | TX | Dimmit | 453 | 535 | 25850 |
| KATHRYN A CLARDY | ANADARKO E&P COMPANY LP | 11/26/2012 | 11/26/2018 | TX | Dimmit | 456 | 505 | 26272 |
| DEBBIE GARDNER SILVESTRI | ANADARKO E&P COMPANY LP | 11/26/2012 | 11/26/2018 | TX | Dimmit | 456 | 501 | 26271 |
| HERBERT HOLLAND | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 459 | 512 | 26722 |
| MAURICE G ONEILL | ANADARKO E&P COMPANY LP | 10/16/2012 | 10/16/2018 | TX | Dimmit | 459 | 528 | 26726 |
| HELEN DAVIS HUTTO | ANADARKO E&P COMPANY LP | 09/06/2012 | 09/06/2018 | TX | Dimmit | 459 | 524 | 26725 |
| GREGORY W MONTGOMERY | ANADARKO E&P COMPANY LP | 09/06/2012 | 09/06/2018 | TX | Dimmit | 459 | 520 | 26724 |
| JENNY GARDNER | ANADARKO E&P COMPANY LP | 08/29/2012 | 08/29/2018 | TX | Dimmit | 459 | 516 | 26723 |
| LAWRENCE E ONEILL | ANADARKO E&P COMPANY LP | 10/02/2012 | 10/02/2018 | TX | Dimmit | 455 | 655 | 26176 |
| NANCY A WILSON | ANADARKO E&P COMPANY LP | 10/04/2012 | 10/04/2018 | TX | Dimmit | 455 | 659 | 26177 |
| ANNETTE DAVIS | ANADARKO E&P COMPANY LP | 09/27/2012 | 09/27/2018 | TX | Dimmit | 455 | 663 | 26178 |
| THOMAS M ONEILL | ANADARKO E&P COMPANY LP | 09/27/2012 | 09/27/2018 | TX | Dimmit | 455 | 651 | 26175 |
| JOHN HOLLAND | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 455 | 647 | 26174 |
| ROBERT L MONTGOMERY | ANADARKO E&P COMPANY LP | 09/26/2012 | 09/26/2018 | TX | Dimmit | 455 | 643 | 26173 |
| FRED W DAVIS JR | ANADARKO E&P COMPANY LP | 09/06/2012 | 09/06/2018 | TX | Dimmit | 455 | 639 | 26172 |
| BRUCE R GARDNER | ANADARKO E&P COMPANY LP | 08/16/2012 | 08/16/2015 | TX | Dimmit | 455 | 631 | 26170 |
| MARGARET J DAVIS | ANADARKO E&P COMPANY LP | 09/06/2012 | 09/06/2018 | TX | Dimmit | 452 | 794 | 25771 |
| SUSANNE PARRISH | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 452 | 806 | 25774 |
| GARY M CLARK | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 452 | 802 | 25773 |
| CAROLE CLARK NAGEL | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 452 | 810 | 25775 |
| MATTHEW ONEILL | ANADARKO E&P COMPANY LP | 09/27/2012 | 09/27/2018 | TX | Dimmit | 455 | 627 | 26169 |
| WILLIAM H GARDNER JR | ANADARKO E&P COMPANY LP | 08/16/2012 | 08/16/2015 | TX | Dimmit | 452 | 786 | 25769 |
| MARY ELIZABETH SIMS | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 452 | 790 | 25770 |
| GAIL GARDNER LEVERETT | ANADARKO E&P COMPANY LP | 08/16/2012 | 08/16/2018 | TX | Dimmit | 452 | 798 | 25772 |
| SAMMY NEAL CLARK | ANADARKO E&P COMPANY LP | 08/21/2012 | 08/21/2018 | TX | Dimmit | 455 | 635 | 26171 |
| JO BETH FAWCETT | ANADARKO E&P ONSHORE LLC | 03/05/2013 | 03/05/2016 | TX | Dimmit | 470 | 825 | 28383 |
| DAVID HOLLAND | ANADARKO E&P ONSHORE LLC | 03/07/2013 | 03/07/2019 | TX | Dimmit | 469 | 63 | 28143 |
| PATRICIA VANDERVOORT | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2018 | TX | Dimmit | 469 | 55 | 28141 |
| SARAH VANDERVOORT HARRIS | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2018 | TX | Dimmit | 469 | 59 | 28142 |
| MORRIS E BURNS | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 474 | 280 | 28929 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| FRED G BURNS | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 474 | 268 | 28926 |
| JEANINE HELEN RUBY | ANADARKO E&P ONSHORE LLC | 05/20/2013 | 05/20/2016 | TX | Dimmit | 478 | 127 | 29425 |
| EARDLEY MINERALS LLC | ANADARKO E&P ONSHORE LLC | 05/16/2013 | 05/16/2018 | TX | Dimmit | 474 | 260 | 28924 |
| MARY LILLIAN WILFONG | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 474 | 256 | 28923 |
| MARY ELIZABETH BRAKER | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 87 | 29417 |
| VICKI ANN SPIEKERMAN | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 92 | 29418 |
| RAYMOND A LANDRUM JR | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 122 | 29424 |
| B R WOOD | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 117 | 29423 |
| JOHN HILL LANDRUM | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 102 | 29420 |
| RENEE BERRY | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 97 | 29419 |
| AGNES JAN SPAHN | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 107 | 29421 |
| JOHN G WOOD | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 478 | 112 | 29422 |
| CARROLL ROSS BURNS | ANADARKO E&P ONSHORE LLC | 05/02/2013 | 05/02/2018 | TX | Dimmit | 474 | 272 | 28927 |
| WALT BARNHILL | ANADARKO E&P ONSHORE LLC | 04/19/2013 | 04/19/2018 | TX | Dimmit | 474 | 276 | 28928 |
| KAY SHOUMAKER | ANADARKO E&P ONSHORE LLC | 04/19/2013 | 04/19/2018 | TX | Dimmit | 474 | 264 | 28925 |
| COURTNEY JACKSON | ANADARKO E&P ONSHORE LLC | 10/21/2013 | 10/21/2018 | TX | Dimmit | 498 | 593 | 31859 |
| ROBIN E CLARK | ANADARKO E&P ONSHORE LLC | 10/16/2013 | 10/16/2018 | TX | Dimmit | 498 | 597 | 31860 |
| JAMES L IRWIN | ANADARKO E&P ONSHORE LLC | 09/26/2013 | 09/26/2018 | TX | Dimmit | 498 | 589 | 31858 |
| MICHAEL R IRWIN | ANADARKO E&P ONSHORE LLC | 09/09/2013 | 09/09/2018 | TX | Dimmit | 498 | 585 | 31857 |
| KELLY ANN WOOD | ANADARKO E&P ONSHORE LLC | 08/12/2013 | 08/12/2018 | TX | Dimmit | 498 | 581 | 31856 |
| JAMES D CHANDLER | ANADARKO E&P ONSHORE LLC | 09/25/2013 | 09/25/2018 | TX | Dimmit | 498 | 573 | 31854 |
| JAMES PATRICK SAUNDERS | ANADARKO E&P ONSHORE LLC | 10/02/2013 | 10/02/2018 | TX | Dimmit | 498 | 577 | 31855 |
| LINN ALEXANDRA WILLIAMS | ANADARKO E&P ONSHORE LLC | 09/02/2013 | 09/02/2018 | TX | Dimmit | 498 | 569 | 31853 |
| CHRISTOPHER WRIGHT WILLIAMS | ANADARKO E&P ONSHORE LLC | 09/02/2013 | 09/02/2018 | TX | Dimmit | 498 | 564 | 31852 |
| JEAN W MCDERMOTT | ANADARKO E&P ONSHORE LLC | 09/23/2013 | 09/23/2018 | TX | Dimmit | 498 | 560 | 31851 |
| E KENT FELDMAN | ANADARKO E&P ONSHORE LLC | 09/09/2013 | 09/09/2018 | TX | Dimmit | 498 | 556 | 31850 |
| ROBERT W FELDMAN | ANADARKO E&P ONSHORE LLC | 09/09/2013 | 09/09/2018 | TX | Dimmit | 498 | 552 | 31849 |
| OLLIE E CLARK JR | ANADARKO E&P ONSHORE LLC | 09/09/2013 | 09/09/2018 | TX | Dimmit | 498 | 544 | 31847 |
| WILLIAM NEWTON ROBINSON | ANADARKO E&P ONSHORE LLC | 09/09/2013 | 09/09/2018 | TX | Dimmit | 498 | 548 | 31848 |
| ESTATE OF ROBERT ALLEN BURNS | ANADARKO E&P ONSHORE LLC | 09/10/2013 | 09/10/2018 | TX | Dimmit | 498 | 540 | 31846 |

Leases

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| ERIN WILLIAMS | ANADARKO E&P ONSHORE LLC | 08/07/2013 | 08/07/2018 | TX | Dimmit | 498 | 532 | 31844 |
| CHRISTOPHER WALLACE WILLIAMS | ANADARKO E&P ONSHORE LLC | 08/12/2013 | 08/12/2018 | TX | Dimmit | 498 | 536 | 31845 |
| JACK VANDERVOORT WILLIAMS | ANADARKO E&P ONSHORE LLC | 08/06/2013 | 08/06/2018 | TX | Dimmit | 498 | 529 | 31843 |
| ROBERT WRIGHT WILLIAMS III | ANADARKO E&P ONSHORE LLC | 08/06/2013 | 08/06/2018 | TX | Dimmit | 498 | 524 | 31842 |
| MARGARET DAWN GORE | ANADARKO E&P ONSHORE LLC | 08/05/2013 | 08/05/2018 | TX | Dimmit | 498 | 520 | 31841 |
| ELIZABETH DEE DOMINY | ANADARKO E&P ONSHORE LLC | 08/06/2013 | 08/06/2018 | TX | Dimmit | 498 | 516 | 31840 |
| CRYSTAL RAGSDALE | ANADARKO E&P ONSHORE LLC | 08/06/2013 | 08/06/2018 | TX | Dimmit | 498 | 512 | 31839 |
| GJERTRUD J WILLIAMS | ANADARKO E&P ONSHORE LLC | 09/02/2013 | 09/02/2018 | TX | Dimmit | 498 | 601 | 31861 |
| SUSAN SAUNDERS HALE | ANADARKO E&P ONSHORE LLC | 10/16/2013 | 10/16/2018 | TX | Dimmit | 500 | 798 | 32161 |
| KATHRYN KUNC | ANADARKO E&P COMPANY LP | 06/26/2012 | 06/26/2018 | TX | Dimmit | 457 | 209 | 26377 |
| HARLOW ROYALTIES LTD | ANADARKO E&P COMPANY LP | 10/04/2012 | 10/04/2018 | TX | Dimmit | 457 | 45 | 26336 |
| WILLIAM J COPPER | ANADARKO E&P COMPANY LP | 06/15/2012 | 06/15/2018 | TX | Dimmit | 457 | 217 | 26379 |
| TIMOTHY W COPPER | ANADARKO E&P COMPANY LP | 10/11/2012 | 10/11/2018 | TX | Dimmit | 457 | 213 | 26378 |
| CYPRESS ATLANTIC I LTD | ANADARKO E&P COMPANY LP | 10/17/2012 | 10/17/2018 | TX | Dimmit | 455 | 545 | 26160 |
| SUSAN S WAGNER TRUST ET AL | ANADARKO E&P COMPANY LP | 10/26/2012 | 10/26/2015 | TX | Dimmit | 459 | 498 | 26719 |
| SUZANNE J PACHE | ANADARKO E&P ONSHORE LLC | 01/16/2013 | 01/16/2016 | TX | Dimmit | 462 | 418 | 27144 |
| SANDRA J CAUDLE | ANADARKO E&P COMPANY LP | 10/03/2012 | 10/03/2018 | TX | Dimmit | 459 | 504 | 26720 |
| JAMES STEVEN STEWART | ANADARKO E&P COMPANY LP | 10/02/2012 | 10/02/2018 | TX | Dimmit | 459 | 508 | 26721 |
| JANET RUTH STEWART GLYNN | ANADARKO E&P COMPANY LP | 10/03/2012 | 10/03/2018 | TX | Dimmit | 459 | 494 | 26718 |
| DAVID M FRETWELL | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 11 | 27214 |
| EDWARD L FRETWELL III | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 1 | 27212 |
| MARTHA LIDJI | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 6 | 27213 |
| JENNIFER LYNN HALL | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 462 | 813 | 27206 |
| LINDA E MAYFIELD | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 462 | 828 | 27209 |
| STUART BUMPAS | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 462 | 838 | 27211 |
| DONALD L BUMPAS | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 462 | 818 | 27207 |
| RUTH J BUMPAS LIFE TENANT | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 16 | 27215 |
| ROGER M BUMPAS | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 462 | 823 | 27208 |
| ALISON MONNICH | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 21 | 27216 |
| EUGENE F BUMPAS JR | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 462 | 833 | 27210 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| CAROL BUMPAS LIFE TENANT | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 337 | 27263 |
| ALEX BUMPAS | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 332 | 27262 |
| GILES BUMPAS | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 327 | 27261 |
| JUD BUMPAS | ANADARKO E&P ONSHORE LLC | 01/07/2013 | 01/07/2016 | TX | Dimmit | 463 | 342 | 27264 |
| WHITETAIL RESOURCES LLC | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2019 | TX | Dimmit | 465 | 107 | 27477 |
| DENNIS G LANDBERG | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2016 | TX | Dimmit | 466 | 121 | 27616 |
| KEVIN W LANDBERG | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2016 | TX | Dimmit | 466 | 127 | 27617 |
| GARY J LANDBERG | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2016 | TX | Dimmit | 466 | 133 | 27618 |
| LINDA K KRAMER | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2016 | TX | Dimmit | 466 | 145 | 27620 |
| DEBRA L BURNS | ANADARKO E&P ONSHORE LLC | 02/21/2013 | 02/21/2016 | TX | Dimmit | 466 | 139 | 27619 |
| STANLEY RAY CRAWFORD | ANADARKO E&P ONSHORE LLC | 08/01/2012 | 08/01/2015 | TX | Dimmit | 498 | 608 | 31863 |
| THOMAS R BRANUM ET UX | ANADARKO E&P ONSHORE LLC | 04/25/2013 | 04/25/2019 | TX | Dimmit | 473 | 112 | 28765 |
| ROBERT LARRY WHELESS | ANADARKO E&P ONSHORE LLC | 05/14/2013 | 05/14/2016 | TX | Dimmit | 476 | 288 | 29147 |
| ROBERT LARRY WHELESS | ANADARKO E&P ONSHORE LLC | 05/14/2013 | 05/14/2019 | TX | Dimmit | 476 | 292 | 29148 |
| ANIMAL HUMANE SOCIETY OF HENNEPIN COUNTY | ANADARKO E&P ONSHORE LLC | 04/30/2013 | 04/30/2016 | TX | Dimmit | 476 | 298 | 29150 |
| WILLIAM KENNETH SPARKS ET UX | ANADARKO E&P ONSHORE LLC | 04/03/2013 | 10/03/2018 | TX | Dimmit | 474 | 251 | 28919 |
| SAMUEL FACHORN | ANADARKO E&P ONSHORE LLC | 06/18/2013 | 06/18/2016 | TX | Dimmit | 497 | 573 | 31746 |
| RITA JO FRAILICKS | ANADARKO E&P ONSHORE LLC | 06/18/2013 | 06/18/2016 | TX | Dimmit | 497 | 588 | 31749 |
| REGINA LYNN NOVOSAD SMITH | ANADARKO E&P ONSHORE LLC | 06/18/2013 | 06/18/2016 | TX | Dimmit | 497 | 578 | 31747 |
| SAM NED FACHORN LIVING TRUST | ANADARKO E&P ONSHORE LLC | 06/18/2013 | 06/18/2016 | TX | Dimmit | 497 | 563 | 31744 |
| RENEE DAWN MEDINA | ANADARKO E&P ONSHORE LLC | 06/18/2013 | 06/18/2016 | TX | Dimmit | 497 | 583 | 31748 |
| LEONARD L SCARCELLA | ANADARKO E&P ONSHORE LLC | 06/18/2013 | 06/18/2016 | TX | Dimmit | 497 | 568 | 31745 |
| JEAN H HAMPTON | ANADARKO E&P ONSHORE LLC | 08/05/2013 | 08/05/2018 | TX | Dimmit | 498 | 605 | 31862 |
| LEONARD L BALL ET UX | ANADARKO E&P ONSHORE LLC | 03/12/2013 | 03/12/2019 | TX | Dimmit | 487 | 772 | 30808 |
| NANCY VAN DUYNE | ANADARKO E&P COMPANY LP | 09/19/2012 | 09/19/2015 | TX | Dimmit | 498 | 612 | 31864 |
| JANICE CAROL WEATHERWAX | ANADARKO E&P ONSHORE LLC | 07/16/2013 | 07/16/2018 | TX | Dimmit | 498 | 617 | 31866 |
| NANCY JEAN PORTER | ANADARKO E&P ONSHORE LLC | 07/16/2013 | 07/16/2018 | TX | Dimmit | 498 | 614 | 31865 |
| LILA R SCHLOSSTEIN | ANADARKO E&P ONSHORE LLC | 10/09/2013 | 10/09/2018 | TX | Dimmit | 498 | 626 | 31870 |
| RAND ROBERT BOOKMAN | ANADARKO E&P ONSHORE LLC | 10/09/2013 | 10/09/2018 | TX | Dimmit | 498 | 629 | 31871 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BARBARA MEISTER CUMMINS | ANADARKO E&P ONSHORE LLC | 08/15/2013 | 08/15/2018 | TX | Dimmit | 498 | 620 | 31867 |
| KATHRYN MEISTER MATTHEWS | ANADARKO E&P ONSHORE LLC | 08/15/2013 | 08/15/2018 | TX | Dimmit | 498 | 622 | 31868 |
| CAROLYN MEISTER | ANADARKO E&P ONSHORE LLC | 08/15/2013 | 08/15/2018 | TX | Dimmit | 498 | 624 | 31869 |
| EDWARD H MEISTER | ANADARKO E&P ONSHORE LLC | 07/23/2013 | 07/23/2018 | TX | Dimmit | 500 | 795 | 32160 |
| SUSAN BATT | ANADARKO E&P ONSHORE LLC | 10/09/2013 | 10/09/2018 | TX | Dimmit | 500 | 792 | 32159 |
| LINDA L MEISTER | ANADARKO E&P ONSHORE LLC | 02/17/2014 | 02/17/2019 | TX | Dimmit | 511 | 672 | 33416 |
| STEVEN J MEISTER ET AL | ANADARKO E&P ONSHORE LLC | 02/17/2014 | 02/17/2019 | TX | Dimmit | 511 | 675 | 33417 |
| MICHAEL EDWARD MEISTER | ANADARKO E&P ONSHORE LLC | 02/17/2014 | 02/17/2019 | TX | Dimmit | 511 | 678 | 33418 |
| THOMAS R MEISTER ET AL | ANADARKO E&P ONSHORE LLC | 02/17/2014 | 02/17/2019 | TX | Dimmit | 511 | 684 | 33420 |
| TERRIE L WASHBURN | ANADARKO E&P ONSHORE LLC | 12/04/2013 | 12/04/2018 | TX | Dimmit | 511 | 681 | 33419 |
| ROBERT W HAMMERSTEIN III | ANADARKO E&P ONSHORE LLC | 10/09/2013 | 10/09/2018 | TX | Dimmit | 511 | 669 | 33415 |
| GEORGE T SMITH ET UX | JOINT RESOURCES COMPANY | 12/13/2009 | 12/13/2016 | TX | Dimmit | 378 | 674 | 13611 |
| MPT FARM LLC | ANADARKO E&P ONSHORE LLC | 02/06/2014 | 02/06/2017 | TX | Dimmit | 508 | 167 | 32959 |
| JON F DULLNIG ET AL | ANADARKO E&P ONSHORE LLC | 11/11/2013 | 11/11/2020 | TX | Dimmit | 499 | 837 | 32005 |
| YALE SMITH JR | ANADARKO E&P ONSHORE LLC | 11/11/2013 | 11/11/2020 | TX | Dimmit | 500 | 1 | 32006 |
| KATHERINE FROST HARPER TRUST | ANADARKO E&P ONSHORE LLC | 03/10/2014 | 03/10/2021 | TX | Dimmit | 512 | 370 | 33520 |
| WILL MCGARRETT HARPER TRUST | ANADARKO E&P ONSHORE LLC | 03/10/2014 | 03/10/2021 | TX | Dimmit | 512 | 365 | 33519 |
| JOHN L ROBERTSON JR | ANADARKO E&P ONSHORE LLC | 05/20/2014 | 05/20/2019 | TX | Dimmit | 518 | 9 | 34494 |
| EDWARD ROBERSON | ANADARKO E&P ONSHORE LLC | 05/15/2014 | 05/15/2019 | TX | Dimmit | 517 | 829 | 34489 |
| BETTE ROBY | ANADARKO E&P ONSHORE LLC | 05/21/2014 | 05/21/2019 | TX | Dimmit | 517 | 837 | 34491 |
| MELISSA G SMITH | ANADARKO E&P ONSHORE LLC | 06/23/2014 | 06/23/2019 | TX | Dimmit | 519 | 483 | 34716 |
| LINDA DIANNE SMITH | ANADARKO E&P ONSHORE LLC | 06/18/2014 | 06/18/2019 | TX | Dimmit | 519 | 487 | 34717 |
| LINDA ROBINSON-KELLY | ANADARKO E&P ONSHORE LLC | 06/19/2014 | 06/19/2019 | TX | Dimmit | 523 | 492 | 35222 |
| CARLON ARTHUR CLEMENTS | ANADARKO E&P ONSHORE LLC | 06/26/2014 | 06/26/2019 | TX | Dimmit | 523 | 496 | 35223 |
| RICHARD JOSEPH ROBERSON JR | ANADARKO E&P ONSHORE LLC | 07/15/2014 | 07/15/2019 | TX | Dimmit | 523 | 500 | 35224 |
| DOUGLAS B ROBERSON | ANADARKO E&P ONSHORE LLC | 05/08/2014 | 05/08/2019 | TX | Dimmit | 518 | 5 | 34493 |
| PAMELA J HIRSCH | ANADARKO E&P ONSHORE LLC | 05/27/2014 | 05/27/2019 | TX | Dimmit | 517 | 833 | 34490 |
| ARTHUR BROWN | ANADARKO E&P ONSHORE LLC | 05/19/2014 | 05/19/2019 | TX | Dimmit | 518 | 1 | 34492 |
| GEORGE DWIGHT CLIFTON | ANADARKO E&P ONSHORE LLC | 06/09/2014 | 06/09/2019 | TX | Dimmit | 519 | 507 | 34722 |
| MONTY LLOYD BRIDGES | ANADARKO E&P ONSHORE LLC | 06/23/2014 | 06/23/2019 | TX | Dimmit | 519 | 499 | 34720 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| DELIA A SMITH | ANADARKO E&P ONSHORE LLC | 07/01/2014 | 07/01/2019 | TX | Dimmit | 519 | 479 | 34715 |
| JAMES MARSHAL BRIDGES | ANADARKO E&P ONSHORE LLC | 06/23/2014 | 06/23/2019 | TX | Dimmit | 519 | 491 | 34718 |
| BARBARA B JONES | ANADARKO E&P ONSHORE LLC | 05/27/2014 | 05/27/2019 | TX | Dimmit | 517 | 821 | 34487 |
| TOM CLIFTON | ANADARKO E&P ONSHORE LLC | 06/05/2014 | 06/05/2019 | TX | Dimmit | 517 | 825 | 34488 |
| CHRISTINE ANN FIRTH | ANADARKO E&P ONSHORE LLC | 07/01/2014 | 07/01/2019 | TX | Dimmit | 519 | 514 | 34724 |
| NINA MEEKS | ANADARKO E&P ONSHORE LLC | 06/05/2014 | 06/05/2019 | TX | Dimmit | 517 | 817 | 34486 |
| SARA B INNMON | ANADARKO E&P ONSHORE LLC | 06/12/2014 | 06/12/2019 | TX | Dimmit | 519 | 495 | 34719 |
| LARRY RICHARD JONES | ANADARKO E&P ONSHORE LLC | 06/09/2014 | 06/09/2019 | TX | Dimmit | 519 | 503 | 34721 |
| JAMES M ROBINSON | ANADARKO E&P ONSHORE LLC | 07/03/2014 | 07/03/2019 | TX | Dimmit | 525 | 90 | 35423 |
| JOHN RICHARD DICUS | ANADARKO E&P ONSHORE LLC | 06/10/2014 | 06/10/2019 | TX | Dimmit | 519 | 511 | 34723 |
| ROBERT ATKIN | ANADARKO E&P ONSHORE LLC | 11/18/2013 | 11/18/2018 | TX | Dimmit | 506 | 55 | 32616 |
| JACK C ATKIN JR | ANADARKO E&P ONSHORE LLC | 12/05/2013 | 12/05/2018 | TX | Dimmit | 506 | 58 | 32617 |
| ALLAN RAWSON ATKIN | ANADARKO E&P ONSHORE LLC | 11/22/2013 | 11/22/2018 | TX | Dimmit | 506 | 61 | 32618 |
| GAYLYNN A DENNIS | ANADARKO E&P ONSHORE LLC | 11/12/2013 | 11/12/2018 | TX | Dimmit | 506 | 64 | 32619 |
| JERRY KAY FLOYD | ANADARKO E&P ONSHORE LLC | 11/12/2013 | 11/12/2018 | TX | Dimmit | 506 | 68 | 32620 |
| PAULINE ELIZABETH GREEN | ANADARKO E&P ONSHORE LLC | 01/09/2014 | 01/09/2019 | TX | Dimmit | 506 | 74 | 32622 |
| ELIZABETH MOON | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 78 | 32623 |
| CAMILLE LOFFREDO | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 82 | 32624 |
| CATHY ANN LOFFREDO | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 86 | 32625 |
| JOAN LOFFREDO | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 90 | 32626 |
| SHAREN MAY KINCAID | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 94 | 32627 |
| THOMAS J DEVLIN | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 104 | 32629 |
| VICKI LOU ROLANDI | ANADARKO E&P ONSHORE LLC | 01/09/2014 | 01/09/2019 | TX | Dimmit | 506 | 113 | 32631 |
| LINDA LEE STOKES | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 117 | 32632 |
| MARY NESTLER | ANADARKO E&P ONSHORE LLC | 01/28/2014 | 01/28/2019 | TX | Dimmit | 511 | 687 | 33421 |
| GREGORY J DEVLIN | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 511 | 695 | 33423 |
| JOSEPH JAMES LOFFREDO | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 511 | 699 | 33424 |
| MARY ALLENE HAMBLEN | ANADARKO E&P ONSHORE LLC | 01/27/2014 | 01/27/2019 | TX | Dimmit | 511 | 703 | 33425 |
| DEANNA DONALDSON | ANADARKO E&P ONSHORE LLC | 02/14/2014 | 02/14/2019 | TX | Dimmit | 511 | 707 | 33426 |
| PATRICIA LARSON | ANADARKO E&P ONSHORE LLC | 11/26/2013 | 11/26/2018 | TX | Dimmit | 511 | 711 | 33427 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| JOLENE D SCHWARTZ | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 511 | 714 | 33428 |
| BERNARD GEORGE DEVLIN | ANADARKO E&P ONSHORE LLC | 01/28/2014 | 01/28/2019 | TX | Dimmit | 511 | 718 | 33429 |
| ROBERT JOSEPH DEVLIN | ANADARKO E&P ONSHORE LLC | 02/24/2014 | 02/24/2019 | TX | Dimmit | 511 | 722 | 33430 |
| JULIE ANN NAISBITT | ANADARKO E&P ONSHORE LLC | 02/18/2014 | 02/18/2019 | TX | Dimmit | 511 | 726 | 33431 |
| JOSETTE DORIUS | ANADARKO E&P ONSHORE LLC | 02/24/2014 | 02/24/2019 | TX | Dimmit | 511 | 730 | 33432 |
| JAMES J DEVLIN | ANADARKO E&P ONSHORE LLC | 02/12/2014 | 02/12/2019 | TX | Dimmit | 517 | 767 | 34473 |
| ELIZABETH FOGLE | ANADARKO E&P ONSHORE LLC | 07/15/2014 | 07/15/2019 | TX | Dimmit | 527 | 817 | 35845 |
| EDWIN T ATKIN | ANADARKO E&P ONSHORE LLC | 11/19/2013 | 11/19/2018 | TX | Dimmit | 506 | 71 | 32621 |
| MARJORIE DEVLIN | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 506 | 98 | 32628 |
| BEVERLY JOAN GATTIS | ANADARKO E&P ONSHORE LLC | 01/09/2014 | 01/09/2019 | TX | Dimmit | 506 | 109 | 32630 |
| JOHN MICHAEL LOFFREDO | ANADARKO E&P ONSHORE LLC | 01/14/2014 | 01/14/2019 | TX | Dimmit | 511 | 691 | 33422 |
| ROBERT JAMES WALLWORK | ANADARKO E&P ONSHORE LLC | 03/13/2014 | 03/13/2019 | TX | Dimmit | 515 | 189 | 33970 |
| WHITETAIL RESOURCES LLC | ANADARKO E&P ONSHORE LLC | 03/13/2014 | 03/13/2019 | TX | Dimmit | 515 | 184 | 33969 |
| EDMUND SEVERN OLSEN III | ANADARKO E&P ONSHORE LLC | 06/10/2014 | 06/10/2017 | TX | Dimmit | 528 | 1 | 35851 |
| ELIZABETH WITHERS KENNEDY | ANADARKO E&P ONSHORE LLC | 05/14/2014 | 05/14/2017 | TX | Dimmit | 516 | 284 | 34192 |
| TRYON K HUGGINS III | ANADARKO E&P ONSHORE LLC | 05/14/2014 | 05/14/2017 | TX | Dimmit | 516 | 272 | 34190 |
| JOHN MICHAEL VESTAL JR TRUST U/W/O LO | ANADARKO E&P ONSHORE LLC | 05/14/2014 | 05/14/2017 | TX | Dimmit | 516 | 278 | 34191 |
| MARISSA LOUISE VESTAL TRUST U/W/O LOUISE | ANADARKO E&P ONSHORE LLC | 05/14/2014 | 05/14/2017 | TX | Dimmit | 516 | 266 | 34189 |
| CAROLYN WROUGHTON SMITH BRADSHAW | ANADARKO E&P ONSHORE LLC | 10/06/2014 | 10/06/2019 | TX | Dimmit | 530 | 749 | 36343 |
| A JAY MUNOZ | ANADARKO E&P ONSHORE LLC | 10/06/2014 | 10/06/2019 | TX | Dimmit | 530 | 752 | 36344 |
| RONNIE WROUGHTON SMITH | ANADARKO E&P ONSHORE LLC | 10/06/2014 | 10/06/2019 | TX | Dimmit | 530 | 756 | 36345 |
| RICARDO J MUNOZ DDS | ANADARKO E&P ONSHORE LLC | 10/06/2014 | 10/06/2019 | TX | Dimmit | 530 | 759 | 36346 |
| WILLIAM GERALD GUTHRIE JR | ANADARKO E&P ONSHORE LLC | 10/02/2014 | 10/02/2019 | TX | Dimmit | 530 | 737 | 36339 |
| PEGGY NUETZMAN | ANADARKO E&P ONSHORE LLC | 10/07/2014 | 10/07/2019 | TX | Dimmit | 530 | 734 | 36338 |
| REAVIS EDWARD CLEMENTS | ANADARKO E&P ONSHORE LLC | 10/07/2014 | 10/07/2019 | TX | Dimmit | 530 | 743 | 36341 |
| ROBERT D CLEMENTS | ANADARKO E&P ONSHORE LLC | 10/08/2014 | 10/08/2019 | TX | Dimmit | 530 | 740 | 36340 |
| LINDA MAGERS | ANADARKO E&P ONSHORE LLC | 10/14/2014 | 10/14/2019 | TX | Dimmit | 530 | 746 | 36342 |
| THOMAS W JONES | ANADARKO E&P ONSHORE LLC | 10/28/2014 | 10/28/2019 | TX | Dimmit | 530 | 731 | 36337 |
| SUE BISHOP | ANADARKO E&P ONSHORE LLC | 10/20/2014 | 10/20/2019 | TX | Dimmit | 530 | 728 | 36336 |
| LESLIE KITTLEMAN | ANADARKO E&P ONSHORE LLC | 10/06/2014 | 10/06/2019 | TX | Dimmit | 530 | 762 | 36347 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| WELDON L KNIGHT | ANADARKO E&P ONSHORE LLC | 10/29/2014 | 10/29/2019 | TX | Dimmit | 532 | 751 | 36646 |
| ROSE D BRANCH | ANADARKO E&P ONSHORE LLC | 07/09/2014 | 07/09/2017 | TX | Dimmit | 526 | 263 | 35601 |
| BARBARA S BENNEFELD | ANADARKO E&P ONSHORE LLC | 07/01/2014 | 07/01/2017 | TX | Dimmit | 526 | 259 | 35600 |
| SYLVIA A HAWKINS | ANADARKO E&P ONSHORE LLC | 06/16/2014 | 06/16/2019 | TX | Dimmit | 527 | 28 | 35705 |
| CHRISTINE GLAVIN | ANADARKO E&P ONSHORE LLC | 08/06/2014 | 08/06/2019 | TX | Dimmit | 527 | 36 | 35707 |
| JAMES C CANTRELL JR | ANADARKO E&P ONSHORE LLC | 08/06/2014 | 08/06/2019 | TX | Dimmit | 525 | 364 | 35477 |
| KEVIN LEE TUCKER | ANADARKO E&P ONSHORE LLC | 07/21/2014 | 07/21/2019 | TX | Dimmit | 525 | 368 | 35478 |
| HEATHER TALCOTT | ANADARKO E&P ONSHORE LLC | 07/03/2014 | 07/03/2019 | TX | Dimmit | 525 | 360 | 35476 |
| RODGER OLSON | ANADARKO E&P ONSHORE LLC | 07/21/2014 | 07/21/2019 | TX | Dimmit | 525 | 356 | 35475 |
| KARI BRAUNE | ANADARKO E&P ONSHORE LLC | 06/26/2014 | 06/26/2019 | TX | Dimmit | 527 | 40 | 35708 |
| FLAKE DIANE BARBER | ANADARKO E&P ONSHORE LLC | 08/04/2014 | 08/04/2019 | TX | Dimmit | 527 | 32 | 35706 |
| TERRY GRISSO | ANADARKO E&P ONSHORE LLC | 12/04/2014 | 12/04/2019 | TX | Dimmit | 534 | 310 | 36857 |
| AMFAR THE FOUNDATION FOR AIDS RESEARCH | ANADARKO E&P ONSHORE LLC | 11/12/2014 | 11/12/2017 | TX | Dimmit | 534 | 313 | 36858 |
| TAMMIE PRACHYL | ANADARKO E&P ONSHORE LLC | 11/06/2014 | 11/06/2019 | TX | Dimmit | 534 | 307 | 36856 |
| GABRIEL HALL | ANADARKO E&P ONSHORE LLC | 06/11/2014 | 06/11/2019 | TX | Dimmit | 527 | 821 | 35846 |
| RAYMOND GILBERY | ANADARKO E&P ONSHORE LLC | 07/15/2014 | 07/15/2019 | TX | Dimmit | 527 | 825 | 35847 |
| NORMA DEVLIN FREESTONE | ANADARKO E&P ONSHORE LLC | 07/22/2014 | 07/22/2019 | TX | Dimmit | 527 | 829 | 35848 |
| JOHN C GREEN ET AL RECEIVERSHIP | ANADARKO E&P ONSHORE LLC | 08/05/2014 | 08/05/2019 | TX | Dimmit | 522 | 312 | 35105 |
| CONNIE EMPOLEN | ANADARKO E&P ONSHORE LLC | 07/15/2014 | 07/15/2019 | TX | Dimmit | 532 | 357 | 36601 |
| BRUCE KEVIN NEELY | ANADARKO E&P ONSHORE LLC | 09/11/2014 | 09/11/2019 | TX | Dimmit | 532 | 367 | 36604 |
| JAMES A DORROH | ANADARKO E&P ONSHORE LLC | 09/10/2014 | 09/10/2019 | TX | Dimmit | 532 | 370 | 36605 |
| RICHARD BRENT NEELY | ANADARKO E&P ONSHORE LLC | 10/09/2014 | 10/09/2019 | TX | Dimmit | 532 | 374 | 36606 |
| HELEN DAVIS TESS | ANADARKO E&P ONSHORE LLC | 09/30/2014 | 09/30/2019 | TX | Dimmit | 532 | 377 | 36607 |
| JEFF RICHARDSON | ANADARKO E&P ONSHORE LLC | 09/10/2014 | 09/10/2019 | TX | Dimmit | 532 | 380 | 36608 |
| CHERYL SCHOEN | ANADARKO E&P ONSHORE LLC | 09/10/2014 | 09/10/2019 | TX | Dimmit | 532 | 383 | 36609 |
| BETTY BASSORE | ANADARKO E&P ONSHORE LLC | 10/29/2014 | 10/29/2019 | TX | Dimmit | 532 | 386 | 36610 |
| CHRISTOPHER TODD BASSORE | ANADARKO E&P ONSHORE LLC | 10/29/2014 | 10/29/2019 | TX | Dimmit | 532 | 389 | 36611 |
| JULI BASSORE HEINZLER | ANADARKO E&P ONSHORE LLC | 10/29/2014 | 10/29/2019 | TX | Dimmit | 532 | 392 | 36612 |
| BRIAN NEELY | ANADARKO E&P ONSHORE LLC | 10/21/2014 | 10/21/2019 | TX | Dimmit | 532 | 395 | 36613 |
| JOAN DOLAN | ANADARKO E&P ONSHORE LLC | 09/10/2014 | 09/10/2019 | TX | Dimmit | 532 | 398 | 36614 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| ELIZABETH JEAN LITTLE | ANADARKO E&P ONSHORE LLC | 10/30/2014 | 10/30/2019 | TX | Dimmit | 532 | 403 | 36615 |
| DANA BASSORE WILDERS | ANADARKO E&P ONSHORE LLC | 10/29/2014 | 10/29/2019 | TX | Dimmit | 532 | 406 | 36616 |
| LEE ANN DONOHO | ANADARKO E&P ONSHORE LLC | 09/22/2014 | 09/22/2019 | TX | Dimmit | 532 | 409 | 36617 |
| SANDRA K PATTERSON | ANADARKO E&P ONSHORE LLC | 10/13/2014 | 10/13/2019 | TX | Dimmit | 532 | 364 | 36603 |
| GLORIA J ROBBINS | ANADARKO E&P ONSHORE LLC | 10/27/2014 | 10/27/2019 | TX | Dimmit | 532 | 361 | 36602 |
| ANNETTE GORDON | ANADARKO E&P ONSHORE LLC | 08/14/2014 | 08/14/2019 | TX | Dimmit | 527 | 837 | 35820 |
| JAMES JOSEPH GILBERY | ANADARKO E&P ONSHORE LLC | 07/23/2014 | 07/23/2019 | TX | Dimmit | 527 | 833 | 35849 |
| MARY L SLOMAN RECEIVERSHIP | ANADARKO E&P ONSHORE LLC | 08/05/2014 | 08/05/2019 | TX | Dimmit | 523 | 830 | 35256 |
| JEFFREY JOHN MOELLER | ANADARKO E&P ONSHORE LLC | 12/16/2014 | 12/16/2017 | TX | Dimmit | 536 | 382 | 37176 |
| PATRICIA MOREAU | ANADARKO E&P ONSHORE LLC | 12/08/2014 | 12/08/2019 | TX | Dimmit | 536 | 388 | 37178 |
| LARRY MOREAU | ANADARKO E&P ONSHORE LLC | 05/29/2014 | 05/29/2019 | TX | Dimmit | 536 | 385 | 37177 |
| MARCIA MCLAUGHLIN | ANADARKO E&P ONSHORE LLC | 12/08/2014 | 12/08/2019 | TX | Dimmit | 536 | 391 | 37179 |
| FITZSIMONS OIL AND GAS MANAGEMENT TRUST | ANADARKO E&P ONSHORE LLC | 04/30/2014 | 04/30/2017 | TX | Dimmit | 517 | 763 | 34472 |
| FITZSIMONS OIL AND GAS MANAGEMENT TRUST | ANADARKO E&P ONSHORE LLC | 04/30/2014 | 04/30/2017 | TX | Dimmit | 517 | 759 | 34471 |
| WESLEY E BANKSTON | ANADARKO E&P ONSHORE LLC | 02/04/2015 | 02/04/2020 | TX | Dimmit | 539 | 360 | 37658 |
| RONNIE GUTHRIE | ANADARKO E&P ONSHORE LLC | 02/23/2015 | 02/23/2020 | TX | Dimmit | 539 | 366 | 37660 |
| CLARA FAY CUZZORT FAVREAU | ANADARKO E&P ONSHORE LLC | 02/09/2015 | 02/09/2020 | TX | Dimmit | 539 | 363 | 37659 |
| FRANCES KAYLEEN JOHNSTON | ANADARKO E&P ONSHORE LLC | 11/13/2014 | 11/13/2017 | TX | Dimmit | 534 | 714 | 36928 |
| LANNY C MYERS | ANADARKO E&P ONSHORE LLC | 11/06/2014 | 11/06/2017 | TX | Dimmit | 534 | 717 | 36929 |
| GLORIA GORBET | ANADARKO E&P ONSHORE LLC | 11/05/2014 | 11/05/2017 | TX | Dimmit | 534 | 720 | 36930 |
| STEVEN L RAGLAND | ANADARKO E&P ONSHORE LLC | 07/21/2014 | 07/21/2017 | TX | Dimmit | 531 | 199 | 36394 |
| DAVID FELTON WILLIAMS | ANADARKO E&P ONSHORE LLC | 02/10/2015 | 02/10/2018 | TX | Dimmit | 538 | 505 | 37545 |
| THE HARPER FAMILY TRUST | ANADARKO E&P ONSHORE LLC | 01/20/2015 | 01/20/2018 | TX | Dimmit | 538 | 509 | 37546 |
| THOMAS W HOPPER | ANADARKO E&P ONSHORE LLC | 11/18/2014 | 11/18/2017 | TX | Dimmit | 538 | 792 | 37593 |
| ROBERT TODD TEMPLETON | ANADARKO E&P ONSHORE LLC | 09/04/2014 | 09/04/2017 | TX | Dimmit | 528 | 179 | 35886 |
| MELISSA BOWMAN | ANADARKO E&P ONSHORE LLC | 07/21/2014 | 07/21/2017 | TX | Dimmit | 528 | 175 | 35885 |
| ANADARKO LAND CORP | ANADARKO E&P ONSHORE LLC | 04/07/2015 | 04/07/2018 | TX | Dimmit | 542 | 345 | 38066 |
| CHIN CHIN HO | ANADARKO E&P ONSHORE LLC | 03/09/2015 | 03/09/2020 | TX | Dimmit | 541 | 421 | 37944 |
| STEVEN REINBOLT | ANADARKO E&P ONSHORE LLC | 03/09/2015 | 03/09/2020 | TX | Dimmit | 541 | 424 | 37945 |
| MICHAEL BOYD | ANADARKO E&P ONSHORE LLC | 02/25/2015 | 02/25/2018 | TX | Dimmit | 539 | 765 | 37708 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| DELIA DAUGHERITY | ANADARKO E&P ONSHORE LLC | 10/07/2014 | 10/07/2019 | TX | Dimmit | 542 | 220 | 38040 |
| DENISE SUTTON | ANADARKO E&P ONSHORE LLC | 10/07/2014 | 10/07/2019 | TX | Dimmit | 542 | 217 | 38039 |
| LINDA M ROBBINS | ANADARKO E&P ONSHORE LLC | 10/23/2014 | 10/23/2019 | TX | Dimmit | 537 | 75 | 37289 |
| ALBERT S ROBBINS | ANADARKO E&P ONSHORE LLC | 10/23/2014 | 10/23/2019 | TX | Dimmit | 537 | 78 | 37290 |
| JANE R SMITH | ANADARKO E&P ONSHORE LLC | 10/30/2014 | 10/30/2019 | TX | Dimmit | 537 | 81 | 37291 |
| NATIONAL AVENUE CHRISTIAN CHURCH | ANADARKO E&P ONSHORE LLC | 10/30/2014 | 10/30/2019 | TX | Dimmit | 537 | 84 | 37292 |
| RICHARD L NEELY | ANADARKO E&P ONSHORE LLC | 01/06/2015 | 01/06/2020 | TX | Dimmit | 537 | 87 | 37293 |
| NANCY BROWN | ANADARKO E&P ONSHORE LLC | 01/06/2015 | 01/06/2020 | TX | Dimmit | 537 | 90 | 37294 |
| THOMAS H DAVIDSON | ANADARKO E&P ONSHORE LLC | 01/05/2015 | 01/05/2020 | TX | Dimmit | 537 | 93 | 37295 |
| ROBERT PAUL CHRISTMAN | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2015 | TX | Dimmit | 537 | 96 | 37296 |
| AUDREY WHITE | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 537 | 99 | 37297 |
| JOHN DAVID CARVER | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 537 | 102 | 37298 |
| 5 QUEENS LLC | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 537 | 105 | 37299 |
| LESLIE EDDIE VIVION AND NANCY JOE VIVION ARDOIN | ROSETTA RESOURCES OPERATING LP | 12/21/2009 | 12/21/2012 | TX | Dimmit | 379 | 498 | 13745 |
| MARTHA OATES | ANADARKO E&P ONSHORE LLC | 11/05/2014 | 11/05/2017 | TX | Dimmit | 544 | 260 | 38286 |
| RETHA JEAN POWELL | ANADARKO E&P ONSHORE LLC | 04/30/2015 | 04/30/2018 | TX | Dimmit | 545 | 525 | 38438 |
| MARTIN POWELL | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 522 | 38437 |
| JAMES LARRY POWELL | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 519 | 38436 |
| BENITA LOU POWELL YORK | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 528 | 38439 |
| AMANDA JONES | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 534 | 38441 |
| LILLIAN E ANDERSON | ANADARKO E&P ONSHORE LLC | 05/19/2015 | 05/19/2018 | TX | Dimmit | 545 | 516 | 38435 |
| LINDA GAIL MCCOY | ANADARKO E&P ONSHORE LLC | 04/30/2015 | 04/30/2018 | TX | Dimmit | 545 | 531 | 38440 |
| LONA L ARCHER | ANADARKO E&P ONSHORE LLC | 04/15/2015 | 04/15/2018 | TX | Dimmit | 545 | 546 | 38445 |
| LITTA TURNER | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 543 | 38444 |
| JACKIE POLK | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 540 | 38443 |
| ANGELA GENTRY | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 537 | 38442 |
| LORI ANN PLATTS | ANADARKO E&P ONSHORE LLC | 05/14/2015 | 05/14/2021 | TX | Dimmit | 545 | 549 | 38446 |
| GARRY L ANDERSON | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 545 | 814 | 38474 |
| CLAUDINE TEAGUE | ANADARKO E&P ONSHORE LLC | 04/20/2015 | 04/20/2018 | TX | Dimmit | 544 | 123 | 38274 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| MODENA PARKS JESTER | ANADARKO E&P ONSHORE LLC | 04/28/2015 | 04/28/2018 | TX | Dimmit | 544 | 117 | 38272 |
| PATRICIA PARKS MCCLENDON | ANADARKO E&P ONSHORE LLC | 04/28/2015 | 04/28/2018 | TX | Dimmit | 544 | 105 | 38268 |
| RONNIE KIDD | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 544 | 120 | 38273 |
| LESLIE EVANS | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 544 | 102 | 38267 |
| CALEB GLENN PARKS TRUST | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 544 | 126 | 38275 |
| CLAY POWELL | ANADARKO E&P ONSHORE LLC | 04/20/2015 | 04/20/2018 | TX | Dimmit | 544 | 114 | 38271 |
| TERRY POWELL | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 544 | 99 | 38266 |
| WESLEY BLAKE POWELL | ANADARKO E&P ONSHORE LLC | 04/20/2015 | 04/20/2018 | TX | Dimmit | 544 | 111 | 38270 |
| PARKER RAY POWELL | ANADARKO E&P ONSHORE LLC | 04/20/2015 | 04/20/2018 | TX | Dimmit | 544 | 108 | 38269 |
| DEBORAH J PUTMAN | ANADARKO E&P ONSHORE LLC | 04/20/2015 | 04/20/2018 | TX | Dimmit | 547 | 115 | 38601 |
| DANNY WAYNE CHISUM, JR., ET AL | ANADARKO E&P ONSHORE LLC | 02/05/2015 | 02/05/2018 | TX | Dimmit | 542 | 279 | 38053 |
| AARON BASSORE | ANADARKO E&P ONSHORE LLC | 10/29/2014 | 10/29/2019 | TX | Dimmit | 544 | 756 | 38359 |
| LOIS GRAY | ANADARKO E&P ONSHORE LLC | 11/11/2014 | 11/11/2019 | TX | Dimmit | 544 | 753 | 38358 |
| SUSAN LEE SMITH | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 546 | 207 | 38507 |
| NORMAN LEE | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 546 | 204 | 38506 |
| STEVEN H LEE | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 546 | 216 | 38510 |
| WILLIAM B KIEBERGER JR | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 546 | 213 | 38509 |
| DAVID ALLAN MARTIN | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 546 | 210 | 38508 |
| MIRAMAR HOLDINGS, LP ET AL | ANADARKO E&P COMPANY LP | 05/01/2015 | 05/01/2018 | TX | Dimmit | 545 | 243 | 38397 |
| FRANKIE GENE POWELL | ANADARKO E&P ONSHORE LLC | 05/20/2015 | 05/20/2018 | TX | Dimmit | 547 | 121 | 38603 |
| STEPHEN LABONTE | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 547 | 118 | 38602 |
| WILLIAM ALLAN RAWLINGS | ANADARKO E&P ONSHORE LLC | 05/14/2015 | 05/14/2021 | TX | Dimmit | 548 | 622 | 38850 |
| SHIRL D MCCOY | ANADARKO E&P ONSHORE LLC | 04/22/2015 | 04/22/2018 | TX | Dimmit | 548 | 477 | 38833 |
| WANDA DEAN ANDERSON | ANADARKO E&P ONSHORE LLC | 04/30/2015 | 04/30/2018 | TX | Dimmit | 549 | 470 | 38927 |
| MARTIN FAMILY TRUST | ANADARKO E&P ONSHORE LLC | 12/03/2014 | 12/03/2017 | TX | Dimmit | 548 | 471 | 38831 |
| BARBARA RUTH FAULES | ANADARKO E&P ONSHORE LLC | 12/04/2014 | 12/04/2017 | TX | Dimmit | 548 | 474 | 38832 |
| SCOTTY L POWELL | ANADARKO E&P ONSHORE LLC | 06/08/2015 | 06/08/2018 | TX | Dimmit | 550 | 372 | 39027 |
| WAYNE MCCOY | ANADARKO E&P ONSHORE LLC | 04/21/2015 | 04/21/2018 | TX | Dimmit | 550 | 369 | 39026 |
| DANIEL JOSEPH BYRD F/K/A HERBERT ESTILLE SISK, III | ANADARKO E&P ONSHORE LLC | 07/09/2015 | 07/09/2018 | TX | Dimmit | 551 | 752 | 39233 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| ANNABELLE GLEGHORN | ANADARKO E&P ONSHORE LLC | 11/12/2014 | 11/12/2019 | TX | Dimmit | 553 | 582 | 39410 |
| LLOYD T EVATT | ANADARKO E&P ONSHORE LLC | 11/03/2014 | 11/03/2019 | TX | Dimmit | 553 | 588 | 39412 |
| JAN MILTON HAUSMANN | ANADARKO E&P ONSHORE LLC | 12/18/2014 | 12/18/2017 | TX | Dimmit | 552 | 441 | 39279 |
| MARGARET L WORD | ANADARKO E&P ONSHORE LLC | 06/25/2015 | 06/25/2020 | TX | Dimmit | 548 | 735 | 38868 |
| DENNIE L LINDSEY | ANADARKO E&P ONSHORE LLC | 07/21/2015 | 07/21/2020 | TX | Dimmit | 551 | 321 | 39162 |
| MOLLIE E STINSON | ANADARKO E&P ONSHORE LLC | 07/21/2015 | 07/21/2020 | TX | Dimmit | 551 | 324 | 39163 |
| DEBORAH K HICKS | ANADARKO E&P ONSHORE LLC | 07/21/2015 | 07/21/2020 | TX | Dimmit | 551 | 327 | 39164 |
| LEAKE EXPLORATION LLC BY ARTHUR GAY LEAKE | ANADARKO E&P ONSHORE LLC | 07/17/2015 | 07/17/2020 | TX | Dimmit | 551 | 318 | 39161 |
| TRUITT GENE LEAKE | ANADARKO E&P ONSHORE LLC | 07/15/2015 | 07/15/2020 | TX | Dimmit | 551 | 315 | 39160 |
| JACKIE RAY LEAKE | ANADARKO E&P ONSHORE LLC | 07/15/2015 | 07/15/2020 | TX | Dimmit | 551 | 312 | 39159 |
| JACK L LEAKE | ANADARKO E&P ONSHORE LLC | 07/07/2015 | 07/07/2020 | TX | Dimmit | 549 | 725 | 38967 |
| JERRY R SHIRES | ANADARKO E&P ONSHORE LLC | 07/02/2015 | 07/02/2020 | TX | Dimmit | 549 | 728 | 38968 |
| JAMES R ADAMS | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 553 | 585 | 39411 |
| BARBARA BASSORE PRUENTE | ANADARKO E&P ONSHORE LLC | 08/04/2015 | 08/04/2020 | TX | Dimmit | 555 | 335 | 39649 |
| HAZEN HIGH SCHOOL SCHOLARSHIP FUND INC | ANADARKO E&P COMPANY LP | 08/17/2015 | 08/17/2018 | TX | Dimmit | 555 | 13 | 39591 |
| DANNY R FANKHAUSER | ANADARKO E&P ONSHORE LLC | 05/21/2015 | 05/21/2018 | TX | Dimmit | 556 | 589 | 39852 |
| SANDRA SVITEK | ANADARKO E&P ONSHORE LLC | 11/06/2014 | 11/06/2019 | TX | Dimmit | 556 | 592 | 39853 |
| LINDA L MORROW | ANADARKO E&P ONSHORE LLC | 04/30/2015 | 04/30/2018 | TX | Dimmit | 557 | 385 | 39960 |
| GENE MARTIN HAUSMANN | ANADARKO E&P ONSHORE LLC | 12/03/2014 | 12/03/2017 | TX | Dimmit | 558 | 601 | 40106 |
| JOYCE MCDANIEL | ANADARKO E&P ONSHORE LLC | 08/05/2015 | 08/05/2020 | TX | Dimmit | 555 | 422 | 39661 |
| LARRY W MCDANIEL | ANADARKO E&P ONSHORE LLC | 09/01/2015 | 09/01/2020 | TX | Dimmit | 555 | 428 | 39663 |
| SHERRY W TAYLOR | ANADARKO E&P ONSHORE LLC | 08/27/2015 | 08/27/2020 | TX | Dimmit | 555 | 425 | 39662 |
| JAMES K WALKER | ANADARKO E&P ONSHORE LLC | 08/10/2015 | 08/10/2020 | TX | Dimmit | 555 | 431 | 39664 |
| RODNEY J LISBY | ANADARKO E&P ONSHORE LLC | 09/01/2015 | 09/01/2018 | TX | Dimmit | 556 | 436 | 39815 |
| PAMELA WELSH | ANADARKO E&P ONSHORE LLC | 08/13/2015 | 08/13/2020 | TX | Dimmit | 556 | 433 | 39814 |
| DAWN WEBSTER | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 559 | 379 | 40156 |
| JULIE BOLES | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 559 | 376 | 40155 |
| JEANETTE L MORRIS | ANADARKO E&P ONSHORE LLC | 10/13/2015 | 10/13/2018 | TX | Dimmit | 559 | 439 | 40165 |
| SANDRA K NOBLES | ANADARKO E&P ONSHORE LLC | 09/29/2015 | 09/29/2018 | TX | Dimmit | 559 | 528 | 40204 |
| LEAH K PITTS | ANADARKO E&P ONSHORE LLC | 08/27/2015 | 08/27/2020 | TX | Dimmit | 559 | 448 | 40168 |

**Leases**

| Lessor | Lessee | Effective Date | Expiration | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| KRISTA L LEWIS | ANADARKO E&P ONSHORE LLC | 08/05/2015 | 08/05/2020 | TX | Dimmit | 559 | 445 | 40167 |
| ARVIL WAYNE MORRIS | ANADARKO E&P ONSHORE LLC | 10/13/2015 | 10/13/2018 | TX | Dimmit | 559 | 442 | 40166 |
| LOUIS B REED | ANADARKO E&P ONSHORE LLC | 10/27/2015 | 10/27/2018 | TX | Dimmit | 563 | 557 | 40854 |
| HELEN IDA SAMMONS A/K/A HELEN IDA BENNETT, ET AL | ANADARKO E&P ONSHORE LLC | 11/01/2014 | 11/01/2017 | TX | Dimmit | 567 | 466 | 41367 |
| ROBERT M JOHNSON | ANADARKO E&P ONSHORE LLC | 03/01/2016 | 03/01/2021 | TX | Dimmit | 570 | 236 | 41766 |
| PAULA ANN SMITH | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 570 | 814 | 41874 |
| ROSA LEE COOK | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 570 | 811 | 41873 |
| MARK DEWAYNE CARROZZA | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 570 | 817 | 41875 |
| BETTY JANE KIEREN | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 570 | 250 | 41768 |
| WILLIAM T JACKS SR | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 571 | 726 | 41988 |
| FLOYD WAYNE BRISCOE | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 573 | 679 | 42227 |
| WENDELL RAY BRISCOE | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 573 | 673 | 42225 |
| SAMMY JOE BRISCOE | ANADARKO E&P ONSHORE LLC | 01/01/2015 | 01/01/2018 | TX | Dimmit | 573 | 676 | 42226 |
| BARBARA A HARRIS | ANADARKO E&P ONSHORE LLC | 10/20/2015 | 10/20/2020 | TX | Dimmit | 576 | 239 | 42491 |
| ST OF TEXAS 118148 (CHAPARRAL WMA) | ANADARKO E&P ONSHORE LLC | 07/19/2016 | 07/19/2019 | TX | Dimmit | 577 | 454 | 42708 |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/1/2012 | TX | Dimmit | 457 | 658 | 26430 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/4/2012 | TX | Dimmit | 455 | 217 | 26098 |
| DOLPH BRISCOE III | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/5/2007 | TX | Dimmit | | | |
| RIO BRAVO LAND CO ET AL | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/29/2007 | TX | Maverick<br>Dimmit | 1042<br>339 | 294<br>557 | 1042<br>8822 |
| WESLEY WEST MINERALS LTD ET AL | ANADARKO E&P COMPANY LP | Surface Use Agmt | 6/9/2006 | TX | Maverick<br>Webb | | | |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/1/2006 | TX | Dimmit | 356 | 172 | 11716 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/22/2010 | TX | Dimmit<br>La Salle | 430<br>619 | 310<br>173 | 22005<br>97908 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/21/2010 | TX | Dimmit | 432 | 749 | 22412 |
| HUGH A FITZSIMONS III | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/5/2009 | TX | Dimmit | | | |
| LABANDERA RANCH LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 10/23/2009 | TX | Dimmit | 408 | 567 | 18727 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | 1308 | 415 | 167321 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | 1308 | 420 | 167322 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | | | |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | | | |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | | | |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/11/2011 | TX | Dimmit | 400 | 140 | 17282 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/11/2011 | TX | Dimmit | 400 | 82 | 17269 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/6/2010 | TX | Dimmit | 399 | 219 | 17115 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/22/2010 | TX | Dimmit | 397 | 749 | 16909 |
| SOUTH SPUR LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/1/2010 | TX | Dimmit | 399 | 432 | 17163 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/19/2011 | TX | Dimmit | 401 | 10 | 17420 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 2/8/2011 | TX | Dimmit | 402 | 258 | 17641 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 2/8/2011 | TX | Dimmit | 402 | 267 | 17642 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/3/2011 | TX | Dimmit | 403 | 744 | 17886 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Surface/Subsurface Wellbore | 3/3/2011 | TX | Dimmit | 403 | 744 | 17887 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 2/18/2011 | TX | Maverick | 1282 | 280 | 164790 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 2/18/2011 | TX | Maverick | 1282 | 290 | 164791 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/23/2011 | TX | Maverick | 1285 | 486 | 165124 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/23/2011 | TX | Maverick | 1285 | 497 | 165125 |
| DOLPH BRISCOE III | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/1/2011 | TX | Dimmit | 409 | 86 | 18791 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/2/2011 | TX | Maverick | 1295 | 107 | 166036 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/2/2011 | TX | Maverick | 1295 | 96 | 166035 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/2/2011 | TX | Maverick | 1295 | 85 | 166034 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/1/2011 | TX | Maverick | 1313 | 159 | 167779 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | O/G LSE-Surface Rights/Rentals | 12/1/2011 | TX | Dimmit | | | |
| DOLPH BRISCOE III ET UX | ANADARKO E&P COMPANY LP | Surface Use Agmt | 12/1/2011 | TX | Dimmit | | | |
| STATE OF TEXAS | ANADARKO E&P COMPANY LP | Surface Use Agmt | 12/1/2011 | TX | Webb | | | |
| B L STANLEY LTD | ANADARKO E&P COMPANY LP | Surface Use Agmt | 10/15/2008 | TX | Webb | | | |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| GARY ECKHARDT ET UX | ANADARKO E&P COMPANY LP | Surface Use Agmt | 12/1/2011 | TX | Dimmit | | | |
| MARY LOIS FRIDAY HULSMAN | ANADARKO E&P COMPANY LP | Surface Use Agmt | 12/1/2011 | TX | Dimmit | | | |
| WORTHEY PROPERTIES LTD | ANADARKO E&P COMPANY LP | Surface Use Agmt | 3/1/2009 | TX | Webb | | | |
| FITZSIMONS ENTITY ET AL | ANADARKO E&P COMPANY LP | Surface Use Agmt | 12/22/2005 | TX | Maverick | 1348 | 125 | 171232 |
| MAUND FAMILY LIMITED PARTNERSHIP ET AL | ANADARKO E&P COMPANY LP | Surface Use Agmt | 3/6/2006 | TX | Dimmit | 437 | 59 | 23169 |
| RANCHO ENCANTADO LP | ANADARKO E&P COMPANY LP | Surface Use Agmt | 10/29/2009 | TX | Dimmit | | | |
| ROGERS DENTONIO RANCH LTD | ANADARKO E&P COMPANY LP | Surface Use Agmt | 3/6/2006 | TX | Dimmit | 437 | 55 | 23167 |
| SOUTH SPUR LP | ANADARKO E&P COMPANY LP | Surface Use Agmt | 3/6/2006 | TX | Dimmit | 437 | 57 | 23168 |
| WILLIAM A BEINHORN JR FAMILY LTD | ANADARKO E&P COMPANY LP | Surface Use Agmt | 3/6/2006 | TX | Dimmit | | | |
| RIO BRAVO LAND CO | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/7/2011 | TX | Maverick | 1308 | 408 | 167320 |
| WILLIAM K SPARKS | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/13/2011 | TX | Dimmit | 419 | 161 | 20130 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/17/2011 | TX | Dimmit | 425 | 239 | 21160 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/17/2011 | TX | Dimmit | 425 | 230 | 21159 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/17/2011 | TX | Dimmit | | | |
| PRIME OPERATING COMPANY ET AL | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/22/2011 | TX | Dimmit | | | |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/9/2011 | TX | Maverick | 1327 | 210 | 169188 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/9/2011 | TX | Maverick | 1327 | 221 | 169189 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | 1327 | 229 | 169190 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | 1336 | 5 | 170026 |
| B L STANLEY LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/28/2010 | TX | Webb | 3225 | 480 | 1127253 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/9/2012 | TX | Dimmit | 439 | 131 | 23504 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/9/2012 | TX | Dimmit | 439 | 140 | 23505 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/22/2012 | TX | Dimmit<br>Dimmit | 445<br>467 | 672<br>227 | 26180<br>27820 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/1/2012 | TX | Dimmit<br>Dimmit | 455<br>467 | 677<br>234 | 26181<br>27821 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/1/2012 | TX | Dimmit<br>Dimmit | 455<br>467 | 682<br>241 | 26182<br>27822 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/20/2012 | TX | Dimmit<br>Dimmit | 455<br>467 | 687<br>248 | 26183<br>27823 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/1/2012 | TX | Dimmit<br>Dimmit | 455<br>467 | 692<br>255 | 26184<br>27824 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/1/2012 | TX | Dimmit | 455 | 246 | 26102 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/1/2012 | TX | La Salle | 660 | 161 | 101081 |
| ALBERT WILEY BLAKEWAY ET AL | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/21/2012 | TX | Dimmit | 444 | 127 | 24352 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/13/2012 | TX | Dimmit | 444 | 271 | 24380 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/29/2011 | TX | Webb<br>Dimmit | 3365<br>440 | 294<br>689 | 1154340<br>23799 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 10/10/2011 | TX | Dimmit | 422 | 102 | 20635 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 10/10/2011 | TX | Dimmit | 422 | 111 | 20636 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/1/2012 | TX | Dimmit | 436 | 462 | 23075 |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/1/2012 | TX | Dimmit | 439 | 254 | 23529 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/1/2012 | TX | Dimmit | 439 | 263 | 23530 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/23/2011 | TX | Dimmit | 409 | 693 | 18884 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/10/2011 | TX | Dimmit | 403 | 735 | 17885 |
| SOUTH SPUR LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/1/2011 | TX | Dimmit | 409 | 683 | 18883 |
| SOUTH SPUR LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/19/2012 | TX | Dimmit | 435 | 342 | 22839 |
| DIAMOND H RANCHES LIMITED PARTNERSHIP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 5/18/2012 | TX | Dimmit | 442 | 413 | 24073 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/16/2012 | TX | Dimmit | 444 | 278 | 24381 |
| B L STANLEY LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/1/2011 | TX | Webb | 3305 | 219 | 1142843 |
| RANCHO ENCANTADO LP (unrecorded letter agreement) | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/12/2011 | TX | Dimmit | | | unrecorded |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/30/2012 | TX | Maverick | 1347 | 371 | 171206 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/30/2012 | TX | Maverick | 1347 | 361 | 171205 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/30/2012 | TX | Maverick | 1347 | 351 | 171204 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 2/10/2011 | TX | Dimmit | 450 | 511 | 25438 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/29/2011 | TX | Dimmit | 450 | 502 | 25437 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 1/31/2011 | TX | Dimmit | 450 | 154 | 25365 |
| WORTHEY PROPERTIES LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/2/2010 | TX | Webb | 3255 | 547 | 1133279 |
| WORTHEY PROPERTIES LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/2/2010 | TX | Webb | 3294 | 556 | 1140805 |
| ROGERS DENTONIO RANCH LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/20/2012 | TX | Dimmit | 459 | 339 | 26690 |
| MARY LOIS FRIDAY HULSMAN | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/5/2012 | TX | Dimmit | 455 | 228 | 26100 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 10/1/2012 | TX | Dimmit | 451 | 23 | 25503 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/1/2012 | TX | Dimmit | 455 | 223 | 26099 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/1/2012 | TX | Webb | 3371 | 851 | 1155535 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/9/2012 | TX | Dimmit | 455 | 716 | 26189 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 10/1/2012 | TX | Maverick | 1382 | 344 | 174552 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/15/2012 | TX | Dimmit | 459 | 303 | 26684 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/1/2012 | TX | Dimmit | 459 | 308 | 26685 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/3/2012 | TX | Dimmit | 455 | 257 | 26104 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/3/2012 | TX | Dimmit | 455 | 253 | 26103 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/19/2012 | TX | Dimmit | 459 | 297 | 26683 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/9/2012 | TX | Dimmit | 455 | 706 | 26188 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/21/2012 | TX | Dimmit | 455 | 240 | 26101 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/21/2012 | TX | Dimmit | 455 | 667 | 26179 |
| RUDOLFO SANTOSCOY | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/1/2012 | TX | Dimmit | 448 | 361 | 25060 |
| M.P.T. | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 3/1/2012 | TX | Dimmit | 448 | 400 | 25066 |
| DIAMOND H RANCHES LIMITED PARTNERSHIP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 6/25/2012 | TX | Dimmit | 448 | 413 | 25068 |
| LEONARD SCARCELLA | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/19/2012 | TX | Dimmit | 448 | 370 | 25061 |
| JOHN MARK FACHORN | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/6/2012 | TX | Dimmit | 448 | 376 | 25062 |
| REGINA LYNN ANDREWS | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/8/2012 | TX | Dimmit | 448 | 394 | 25065 |
| RITA JO FRAILICKS | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/2/2012 | TX | Dimmit | 448 | 388 | 25064 |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| RENEE DAWN MEDINA | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/16/2012 | TX | Dimmit | 448 | 382 | 25063 |
| STEVEN ROSS FACHORN ET AL | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/19/2012 | TX | Dimmit | 468 | 86 | 27962 |
| RANCHO ENCANTADO LP | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 7/10/2012 | TX | Dimmit | 462 | 657 | 27192 |
| WORTHEY PROPERTIES LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 12/2/2010 | TX | Webb | 3390 | 329 | 1159311 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 9/16/2010 | TX | Maverick | 1340 | 312 | 170484 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 11/9/2011 | TX | Dimmit | 468 | 92 | 27963 |
| CHARLES NOLAN SMITH ET AL | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 2/13/2014 | TX | Dimmit | 509 | 73 | 33051 |
| BRISCOE RANCH INC | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 4/1/2012 | TX | Dimmit | 436 | 471 | 23076 |
| TEJAS SALES INTERNATIONAL LTD | ANADARKO E&P COMPANY LP | Right of Way/Easement/Facility | 8/2/2012 | TX | Dimmit | 448 | 406 | 25067 |
| DIMMIT COUNTY REGULATORY COMPLIANCE | ANADARKO E&P ONSHORE LLC | Surface License / Permit (road bore) | 2/14/2013 | TX | Dimmit | | | unrecorded |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/26/2013 | TX | Dimmit | 469 | 471 | 28196 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/1/2013 | TX | Dimmit | 470 | 240 | 28286 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/1/2013 | TX | Dimmit | 470 | 252 | 28287 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/1/2013 | TX | Dimmit | 470 | 230 | 28285 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/10/2013 | TX | Dimmit | 466 | 26 | 27607 |
| ROGERS DENTONIO RANCH LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/24/2013 | TX | Dimmit | 465 | 344 | 27513 |
| MAUND FAMILY LIMITED PARTNERSHIP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/22/2013 | TX | Dimmit | 465 | 352 | 27514 |
| DIMMIT COUNTY REGULATORY COMPLIANCE | ANADARKO E&P ONSHORE LLC | Surface License / Permit | 3/7/2013 | TX | Dimmit | | | |
| WILLIAM A BEINHORN JR FAMILY LIMITED PARTNERSHIP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/15/2013 | TX | Dimmit | 469 | 479 | 28197 |
| MAUND FAMILY LIMITED PARTNERSHIP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/1/2013 | TX | Dimmit | 470 | 799 | 28378 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/1/2013 | TX | Dimmit | 474 | 709 | 28968 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/1/2013 | TX | Dimmit | 474 | 699 | 28967 |
| 1812 PARTNERS LTD ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/15/2013 | TX | Dimmit | 473 | 794 | 28876 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2013 | TX | Dimmit | 473 | 828 | 28880 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2013 | TX | Dimmit | 473 | 814 | 28878 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2013 | TX | Dimmit | 473 | 787 | 28875 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2013 | TX | Dimmit | 473 | 807 | 28877 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2013 | TX | Dimmit | 473 | 835 | 28881 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 5/1/2013 | TX | Maverick<br>Dimmit | 1405<br>475 | 117<br>541 | 176560<br>29061 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 5/1/2013 | TX | Maverick | 1408 | 69 | 176831 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/1/2013 | TX | Dimmit | 478 | 80 | 29416 |
| THOMAS R BURANUM ET UX | ANADARKO E&P ONSHORE LLC | Surface Use Agmt | 4/25/2013 | TX | Dimmit | | | |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/11/2013 | TX | Dimmit | 480 | 800 | 29869 |
| SOUTH SPUR LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/21/2013 | TX | Dimmit | 465 | 225 | 27496 |
| THOMAS R BRANUM ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/25/2013 | TX | Dimmit | 473 | 406 | 28814 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/24/2013 | TX | Dimmit | 481 | 380 | 30016 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/24/2013 | TX | Dimmit | 481 | 390 | 30017 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/1/2013 | TX | Dimmit | 479 | 195 | 29541 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/1/2013 | TX | Dimmit | 479 | 186 | 29540 |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/1/2013 | TX | Dimmit | 479 | 168 | 29538 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/1/2013 | TX | Dimmit | 479 | 177 | 29539 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/22/2013 | TX | Dimmit | 464 | 661 | 27444 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/22/2013 | TX | Dimmit | 464 | 670 | 27445 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2013 | TX | Dimmit | 470 | 614 | 28348 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2013 | TX | Dimmit | 470 | 623 | 28349 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2013 | TX | Dimmit | 470 | 632 | 28350 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 9/1/2013 | TX | Webb | 3488 | 4 | 1178545 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/1/2013 | TX | Dimmit | 494 | 297 | 30365 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/1/2013 | TX | Dimmit | 484 | 290 | 30364 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/24/2011 | TX | Dimmit | 489 | 416 | 30856 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/9/2013 | TX | Dimmit | 490 | 63 | 30944 |
| RANCHO ENCANTADO LP ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/17/2013 | TX | Dimmit | 490 | 74 | 30945 |
| FAITH RANCH LP ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/1/2013 | TX | Dimmit | 1418 | 225 | 177752 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/8/2013 | TX | Maverick | 1418 | 249 | 177754 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Surface License / Permit | 11/25/2013 | TX | Webb | 3566 | 35 | 1192139 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 9/30/2013 | TX | Webb | 3526 | 510 | 1185584 |
| WORTHEY PROPERTIES LTD ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 9/12/2013 | TX | Webb | 3526 | 521 | 1185585 |
| B L STANLEY LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 10/9/2013 | TX | Webb | 3526 | 535 | 1185586 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/19/2013 | TX | Maverick | 1418 | 235 | 177753 |
| 1812 PARTNERS LTD ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/6/2013 | TX | Dimmit<br>Maverick | 490<br>1430 | 81<br>290 | 30946<br>178836 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 9/1/2013 | TX | Dimmit | 496 | 434 | 31664 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 10/1/2013 | TX | Dimmit | 496 | 441 | 31665 |
| EL PESCADO MINERALS LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/1/2013 | TX | Dimmit | 484 | 526 | 30409 |
| EL PESCADO MINERALS LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/1/2013 | TX | Dimmit | 484 | 517 | 30408 |
| EL PESCADO MINERALS LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/1/2013 | TX | Dimmit | 484 | 508 | 30407 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 11/1/2013 | TX | Dimmit | 503 | 46 | 32347 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/1/2014 | TX | Dimmit | 504 | 505 | 32454 |
| COTULLA LAND & INVESTMENTS LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 10/9/2013 | TX | Webb<br>Dimmit | 3545<br>503 | 625<br>1 | 1188987<br>32342 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 11/25/2013 | TX | Dimmit | 503 | 15 | 32343 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 12/1/2013 | TX | Maverick | 1442 | 142 | 179874 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/17/2014 | TX | Dimmit | 506 | 413 | 32694 |
| WORTHEY PROPERTIES LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/22/2014 | TX | Webb | 3575 | 243 | 1193975 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/1/2014 | TX | Dimmit | 508 | 28 | 32930 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/1/2014 | TX | Dimmit | 508 | 21 | 32929 |
| BEINHORN JR FAMILY LIMTED PARTNERSHIP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/6/2014 | TX | Dimmit | 508 | 35 | 32931 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/25/2014 | TX | La Salle | 775 | 18 | 110443 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/7/2014 | TX | Maverick | 1447 | 251 | 180393 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/25/2014 | TX | Maverick | 1447 | 261 | 180394 |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| B L STANLEY LTD | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/13/2014 | TX | Webb | 3582 | 516 | 1195064 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2014 | TX | Dimmit | 512 | 586 | 33538 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/1/2014 | TX | Dimmit | 512 | 593 | 33539 |
| SOUTH SPUR LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/15/2014 | TX | Dimmit | 514 | 784 | 33917 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 12/1/2013 | TX | Dimmit<br>La Salle | 508<br>792 | 169<br>468 | 32960<br>111976 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/21/2014 | TX | Dimmit | 517 | 52 | 34335 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/10/2014 | TX | Webb | 3630 | 820 | 1203865 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/10/2014 | TX | Webb | 3630 | 800 | 1203864 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/10/2014 | TX | Dimmit | 513 | 599 | 33732 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/9/2014 | TX | Dimmit | 513 | 663 | 33734 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2014 | TX | La Salle | 797 | 49 | 112408 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2014 | TX | La Salle | 797 | 56 | 112409 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/9/2014 | TX | Dimmit<br>Webb | 513<br>3639 | 624<br>843 | 33733<br>1205581 |
| COMANCHE MAVERICK RANCH INVESTMENTS LP | ANADARKO E&P ONSHORE LLC | Surface Use Agmt | 11/25/2013 | TX | Maverick | 1437 | 50 | |
| INDIO FAITH LAND CO LLC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/25/2014 | TX | Maverick | 1447 | 270 | 180395 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/1/2014 | TX | Dimmit | 520 | 781 | 34922 |
| BRISCOE RANCH INC ET AL | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/1/2014 | TX | Webb<br>Dimmit | 3672<br>570 | 306<br>539 | 1211604<br>41799 |
| RANCHO ENCANTADO LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 5/29/2014 | TX | Dimmit | | | |
| FITZSIMONS OIL & GAS MANAGEMENT TRUST | ANADARKO E&P ONSHORE LLC | Surface Use Agmt | 4/30/2014 | TX | Dimmit | 517 | 759 | 34471 |
| FITZSIMONS OIL & GAS MANAGEMENT TRUST | ANADARKO E&P ONSHORE LLC | Surface Use Agmt | 4/30/2014 | TX | Dimmit | 517 | 763 | 34472 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/1/2014 | TX | Dimmit | 526 | 461 | 35624 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 12/1/2014 | TX | Dimmit | 539 | 191 | 37635 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/1/2014 | TX | Dimmit | 539 | 198 | 37636 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 11/1/2014 | TX | Dimmit | 541 | 107 | 37894 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 11/1/2014 | TX | Dimmit | 541 | 100 | 37893 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2015 | TX | Dimmit | 540 | 754 | 37862 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/1/2015 | TX | Dimmit | 0540 | 0761 | 37863 |
| DOLPH BRISCOE III ET UX | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 2/12/2012 | TX | Dimmit | 531 | 108 | 36379 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 9/5/2013 | TX | Dimmit | 529 | 510 | 36137 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/16/2012 | TX | Dimmit | 531 | 103 | 36378 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/1/2014 | TX | Dimmit | 527 | 124 | 35721 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/1/2014 | TX | Dimmit | 527 | 117 | 35720 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/20/2014 | TX | Dimmit | 527 | 131 | 35722 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/11/2014 | TX | Dimmit | 526 | 456 | 35623 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/20/2014 | TX | Dimmit | 527 | 98 | 35719 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/29/2012 | TX | Dimmit | 537 | 604 | 37418 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 8/1/2012 | TX | Dimmit | 537 | 599 | 37417 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/19/2012 | TX | Dimmit | 537 | 616 | 37420 |

| Lessor/Grantor | Lessee/Grantee | Agreement Type | Effective Date | State | County | Book | Page | Reception |
|---|---|---|---|---|---|---|---|---|
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/23/2015 | TX | Webb | 3752 | 159 | 1226326 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 9/2/2014 | TX | Dimmit | 529 | 517 | 36138 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/26/2012 | TX | Dimmit | 537 | 609 | 37419 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 4/14/2014 | TX | Dimmit | 529 | 505 | 36136 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/23/2015 | TX | Dimmit | 540 | 768 | 37864 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/11/2015 | TX | Dimmit | 541 | 114 | 37895 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 10/1/2014 | TX | La Salle | 863 | 313 | 118002 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/20/2015 | TX | Webb | 3781 | 231 | 1231539 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 5/1/2015 | TX | Dimmit | 547 | 806 | 38733 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 1/30/2015 | TX | Dimmit | 546 | 449 | 38520 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 6/5/2015 | TX | Dimmit | 546 | 466 | 38522 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 7/1/2015 | TX | Dimmit | 552 | 352 | 39268 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2016 | TX | Dimmit | 562 | 476 | 40713 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2016 | TX | Dimmit | 562 | 496 | 40717 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2016 | TX | Dimmit | 562 | 481 | 40714 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2016 | TX | Dimmit | 562 | 491 | 40716 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 3/14/2016 | TX | Dimmit | 562 | 486 | 40715 |
| BRISCOE RANCH INC | ANADARKO E&P ONSHORE LLC | Right of Way/Easement/Facility | 10/1/2015 | TX | Dimmit | 560 | 49 | 40299 |
| BRASK DIAMOND H RANCHES LP | ANADARKO E&P COMPANY LP | Surface Use Agreement | 11/15/2010 | TX | Dimmit | | | |
| ST TX DOT 664-141 (driveway access to office off US 277) | ANADARKO PETROLEUM CORPORATION | Right of Way/Easement/Facility | 12/7/2011 | TX | Dimmit | | | unrecorded |
| ADELA A SMITH FAMILY LIMITED PARTNERSHIP | KERR-MCGEE OIL & GAS ONSHORE LP | Right of Way/Easement/Facility | 1/1/2011 | TX | Dimmit | 427 | 335 | 21522 |
| CHARLES W WILSON SR ET AL | UNION PACIFIC RESOURCES COMPANY | Right of Way/Easement/Facility | 5/11/1994 | TX | Dimmit | 251 | 497 | 731 |
| CHARLES H BARRIER ET AL | UNION PACIFIC RESOURCES COMPANY | Right of Way/Easement/Facility | 6/1/1994 | TX | Dimmit | 251 | 499 | 731 |

**Schedule 6(a)**

**U.S. Patents**

None.

**Schedule 6(b)**

**U.S. Trademarks**

None.

**Schedule 6(c)**

**U.S. Copyrights**

None.

**Schedule 7**

**Letters of Credit**

None.

**Schedule 8**

**Securities Accounts**

None.

**Schedule 9**

**Deposit Accounts**

| | |
|---|---|
| **Entity:** | **SN EF UnSub, LP** |
| **Institution:** | **JPMorgan Chase Bank, N.A.** |
| **Account No.:** | **110958532** |
| **Type:** | **Deposit** |
| **Tax ID:** | **36-4855302** |

**Schedule 10**

**Commodity Accounts**

None.

**Schedule 11**

**Commercial Tort Claims**

None.

**EXHIBIT F TO**
**CREDIT AGREEMENT**

**[FORM OF]**
**ASSIGNMENT AND ASSUMPTION**[1]

This Assignment and Assumption (this "Assignment and Assumption") is dated as of the Effective Date set forth below and is entered into by and between [*Insert name of Assignor*] (the "Assignor") and [*Insert name of Assignee*] (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as amended, amended and restated, refinanced, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Assumption as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, (i) all of the Assignor's rights and obligations in its capacity as a Lender under the Credit Agreement and any other documents or instruments delivered pursuant thereto to the extent related to the amount and percentage interest identified below of all of such outstanding rights and obligations of the Assignor under the respective facilities identified below (including any participations in L/C Obligations included in such facilities) and (ii) to the extent permitted to be assigned under applicable law, all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender under the Credit Agreement) against any person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (the rights and obligations sold and assigned pursuant to clauses (i) and (ii) above being referred to herein collectively as the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and Assumption, without representation or warranty by the Assignor.

1. Assignor: __________________________

2. Assignee: __________________________

3. Is Assignee a Lender/an Affiliate of a Lender/an "Approved Fund"/Is this an "assignment of the entire remaining amount of the assigning Lender's Commitment or Loans"? Yes: No:
   Specify if "Yes": _________________________.

4. Borrower: SN EF UnSub, LP, a Delaware limited partnership (the "Borrower").

5. Administrative Agent: JPMorgan Chase Bank, N.A., as the Administrative Agent, under the Credit Agreement.

6. Credit Agreement: Credit Agreement, dated as of March [●], 2017 among SN EF UnSub, LP, the Borrower, the Lenders from time to time party thereto, JPMorgan Chase Bank, N.A., as the Administrative Agent, the Collateral Agent and an Issuing Bank and each other Issuing Bank from time to time party thereto.

[1] To be used in the case of any sale, assignment or transfer by a Lender to an assignee other than the Borrower or the Borrower's Subsidiaries and their respective Affiliates.



013222

7. Assigned Interest:

| Commitments / Loans | Aggregate Amount of Commitments of all Lenders | Amount of Commitments / Loans Assigned | Percentage Assigned of Commitments of all Lenders[2] |
|---|---|---|---|
| Commitments / Loans | $ | $ | % |

Effective Date: _____________ ___, 20___ [TO BE INSERTED BY THE ADMINISTRATIVE AGENT AND WHICH SHALL BE THE EFFECTIVE DATE OF RECORDATION OF TRANSFER IN THE REGISTER THEREFOR].

9. Notice and Wire Instructions:

**[NAME OF ASSIGNOR]**

Notices:

______________________________
______________________________
______________________________
Attention:
Facsimile:

with a copy to:

______________________________
______________________________
______________________________
Attention:
Facsimile:

Wire Instructions:

**[NAME OF ASSIGNEE]**

Notices:

______________________________
______________________________
______________________________
Attention:
Facsimile:

with a copy to:

______________________________
______________________________
______________________________
Attention:
Facsimile:

Wire Instructions:

[2] Set forth, to at least 9 decimals, as a percentage of the Loans of all Lenders thereunder.

The terms set forth in this Assignment and Assumption are hereby agreed to:

**ASSIGNOR**

[NAME OF ASSIGNOR]

By: ______________________________
Name:
Title:

**ASSIGNEE**

[NAME OF ASSIGNEE]

By: ______________________________
Name:
Title:

Accepted and Consented to:

JPMORGAN CHASE BANK, N.A., as Administrative Agent

By: ______________________________
Name:
Title:

JPMORGAN CHASE BANK, N.A., as Issuing Bank

By: ______________________________
Name:
Title:

CITIBANK, N.A., as Issuing Bank

By: ______________________________
Name:
Title:

[INSERT NAME], as Issuing Bank

By: ______________________________
Name:
Title:

[SN EF UNSUB, LP, as Borrower][1]

By: ______________________________
Name:
Title:

[1] Borrower's consent shall not be required if such assignment is to a Lender, affiliate of a Lender or an Approved Fund or if an Event of Default under Section 11.1 or Section 11.5 of the Credit Agreement has occurred and is continuing.

**ANNEX 1**

**STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT AND ASSUMPTION**

1. *Assignor*. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the Credit Agreement or any other Credit Document, other than as to the matters set forth in this Section 1, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Documents or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Subsidiaries or other Affiliates or any other person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or other Affiliates or any other person of any of their respective obligations under any Credit Document.

2 *Assignee*. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Assumption and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it is not the Borrower, a Subsidiary of the Borrower, a natural person, a Disqualified Institution or a Defaulting Lender and otherwise satisfies all other requirements, if any, specified in the Credit Agreement that are required to be satisfied by it in order to acquire the Assigned Interest and become a Lender, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement as a Lender thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it is sophisticated with respect to decisions to acquire assets of the type represented by the Assigned Interest and either it, or the person exercising discretion in making its decision to acquire the Assigned Interest, is experienced in acquiring assets of such type, (v) it has received a copy of the Credit Agreement, together with copies of the most recent financial statements delivered pursuant to Section 9.1(a)-(b) thereof, as applicable, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption and to purchase the Assigned Interest on the basis of which it has made such analysis and decision independently and without reliance on the Administrative Agent or any other Lender and (vi) if it is a Non-U.S. Lender, attached to this Assignment and Assumption is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender and, based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

3. *Payments*. From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

4. *General Provisions*. This Assignment and Assumption shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment and Assumption may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment and Assumption by fax or other electronic delivery shall be effective as delivery of a manually executed counterpart of this Assignment and Assumption. This Assignment and Assumption shall be governed by, and construed in accordance with, the law of the State of New York.

[Remainder of page intentionally left blank]

**EXHIBIT G TO
CREDIT AGREEMENT**

**FORM OF NOTE**

___________, ____

FOR VALUE RECEIVED, the undersigned, a Delaware limited partnership (the "Borrower"), hereby promises to pay to _____________________ or registered assigns (the "Lender"), in accordance with the provisions of the Agreement (as hereinafter defined), the principal amount of each Loan from time to time made by the Lender to the Borrower under that certain Credit Agreement, dated as of March [●], 2017 (as amended, restated, amended and restated, refinanced, extended, supplemented or otherwise modified in writing from time to time, the "Agreement," the terms defined therein being used herein as therein defined), among the Borrower, SN EF UnSub, LP, a Delaware limited partnership, the Lenders from time to time party thereto, JPMorgan Chase Bank, N.A., as the Administrative Agent, the Collateral Agent and an Issuing Bank and each other Issuing Bank from time to time party thereto.

The Borrower promises to pay interest on the unpaid principal amount of each Loan from the date of such Loan until such principal amount is paid in full, at such interest rates and at such times as provided in the Agreement. All payments of principal and interest shall be made to the Administrative Agent for the ratable account of the Lender in Dollars in immediately available funds at the Administrative Agent's Office. If any amount is not paid in full when due hereunder, such unpaid amount shall bear interest, to be paid upon demand, from the due date thereof until the date of actual payment (and before as well as after judgment) computed at the per annum rate set forth in Section 2.8(c) of the Agreement. This Note is subject to mandatory prepayments and to voluntary prepayments and to all other terms and conditions as provided in the Agreement.

This Note is one of the promissory notes referred to in the Agreement and is entitled to the benefits thereof. This Note is also entitled to the benefits of the other Credit Documents and is secured by the Collateral. Upon the occurrence and continuation of one or more of the Events of Default specified in the Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable all as provided in the Agreement. Loans made by the Lender shall be evidenced by an account or accounts maintained by the Lender and by the Register and subaccounts maintained by the Administrative Agent in accordance with the Agreement. The Lender may also attach schedules to this Note and endorse thereon the date, amount and maturity of its Loans and payments with respect thereto.

The Borrower, for itself, its successors and assigns, hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and non-payment of this Note.

No failure to exercise and no delay in exercising, on the part of the Administrative Agent, any right, remedy, power or privilege hereunder or under the Credit Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. A waiver by the Administrative Agent of any right,

remedy, power or privilege hereunder or under any Credit Document on any one occasion shall not be construed as a bar to any right or remedy that the Administrative Agent would otherwise have on any future occasion. The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers and privileges provided by law.

THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

Case 22-33553 Document 63-32 Filed in TXSB on 08/04/22 Page 158 of 386

**IN WITNESS WHEREOF**, this Note is executed as of the date set forth above.

SN EF UNSUB, LP

By: ______________________________
Name:
Title:

LOANS AND PAYMENTS WITH RESPECT THERETO

| Date | Type of Loan Made | Amount of Loan Made | End of Interest Period | Amount of Principal or Interest Paid This Date | Outstanding Principal Balance This Date | Notation Made By |
|---|---|---|---|---|---|---|
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ | ___ | ___ | ___ |

**EXHIBIT H TO
CREDIT AGREEMENT**

**GLOBAL INTERCOMPANY NOTE**

[●], 2017

FOR VALUE RECEIVED, each of the undersigned, to the extent a borrower from time to time from any other entity listed on the signature pages hereto (each, in such capacity, an "**Issuer**"), hereby promises to pay on demand to such other entity listed below (each, in such capacity as lender to the applicable Issuer, a "**Holder**" and, together with each Issuer, a "**Note Party**"), in immediately available funds in the currencies as shall be agreed upon from time to time, at such location as the applicable Holder shall from time to time designate, the unpaid principal amount of all loans and advances or other credit extensions made by such Holder to such Issuer. Each Issuer promises also to pay interest on the unpaid principal amount of all such loans and advances or other credit extensions in like money at said location from the date of such loans and advances until paid at such rate per annum as shall be agreed upon from time to time by the applicable Issuer and the applicable Holder.

With respect to any Issuer and any Holder between whom loans, advances or other credit extensions exist as of the date of this Note (such loans, advances or other credit extensions, "**Existing Obligations**"), (a) if any Existing Obligation is evidenced by a promissory note or other instrument or agreement in existence as of the date hereof (an "**Existing Note**"), it is agreed to between such Issuer and such Holder that the obligations under such Existing Note are hereafter to be evidenced by this Note and (b) it is agreed to between such Issuer and such Holder that the agreements in existence as of the date hereof with respect to any Existing Obligation (including agreements contained in any Existing Note) as to principal, amortization, currency, payment location and interest rate (if any) will continue to have effect under this Note until modified by agreement between such Issuer and such Holder.

Reference is hereby made to the Credit Agreement dated as of March [●], 2017 (as amended, amended and restated, refinanced, supplemented or otherwise modified from time to time, the "**Credit Agreement**") among SN EF UnSub, LP, a Delaware limited partnership (the "**Borrower**"), the Lenders party thereto from time to time (collectively, the "**Lenders**" and individually, a "**Lender**"), JPMorgan Chase Bank, N.A., as administrative agent and collateral agent (in such capacity, the "**Agent**") and the other parties party thereto. Capitalized terms used herein and not otherwise defined shall have the meanings assigned thereto in the Credit Agreement.

Upon the earlier to occur of (x) the commencement of any bankruptcy, reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar proceeding of any jurisdiction relating to the applicable Issuer or (y) any exercise of remedies (including the termination of the Commitments) pursuant to Section 11 of the Credit Agreement, the unpaid principal amount of all loans and advances evidenced by this note (the "**Note**") shall become immediately due and payable without presentment, demand, protest or notice of any kind in connection with this Note. This Note is subject to the terms of the Credit Agreement, and shall be pledged by each applicable Holder that is a Credit Party pursuant to the Collateral Agreement. The applicable Issuer hereby acknowledges and agrees that the Secured Parties may, pursuant to the Collateral Agreement as in effect from time to time, exercise all rights provided therein with respect to this Note.

The indebtedness evidenced by this Note owed by any Issuer shall rank pari passu in right of payment with any other obligation of such Issuer, except as provided in the immediately succeeding sentence. The indebtedness evidenced by this Note owed by any Issuer that is a Credit Party to any Holder that is not a Credit Party shall be subordinate and junior in right of payment, to the extent and in the manner hereinafter set forth, to (i) all Obligations of the Borrower or such Issuer under the Credit Agreement and (ii) all other Indebtedness of the Borrower or such Issuer or any guaranty other than Indebtedness that by its terms expressly provides that it shall not be Senior Indebtedness hereunder (such obligations and such Indebtedness and other indebtedness and obligations in connection with any renewal, refunding, restructuring or refinancing thereof, including interest thereon accruing after the commencement of any proceedings referred to in clause (i) below, whether or not such interest is an allowed claim in such proceeding, being hereinafter collectively referred to as "**Senior Indebtedness**"):

(i) In the event of any insolvency or bankruptcy proceedings, and any receivership, liquidation, reorganization

or other similar proceedings in connection therewith, relative to any Issuer or to its creditors, as such, or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of such Issuer, whether or not involving insolvency or bankruptcy, then (x) the holders of Senior Indebtedness shall be paid in full in cash in respect of all amounts constituting Senior Indebtedness (other than (A) contingent indemnification obligations and (B) Obligations under Cash Management Agreements and Hedge Agreements) and no Letter of Credit shall remain outstanding (unless the Letter of Credit Exposure of the L/C Obligations related thereto has been Cash Collateralized, back-stopped by a letter of credit reasonably satisfactory to the applicable Issuing Bank or deemed reissued under another agreement reasonably acceptable to the applicable Issuing Bank) before any Holder is entitled to receive (whether directly or indirectly), or make any demands for, any payment on account of this Note and (y) until the holders of Senior Indebtedness are paid in full in cash in respect of all amounts constituting Senior Indebtedness (other than (A) contingent indemnification obligations and (B) Obligations under Cash Management Agreements and Hedge Agreements), any payment or distribution to which such Holder would otherwise be entitled (other than a payment or distribution in (A) equity securities or (B) debt securities of such Issuer that are subordinated, to at least the same extent as this Note, to the payment of all Senior Indebtedness then outstanding (such Indebtedness being hereinafter referred to as "**Restructured Debt Securities**")) shall be made to the holders of Senior Indebtedness;

(ii) if any Event of Default occurs and is continuing and the Borrower has received notice that the Agent is exercising remedies in respect thereof (provided that notice shall be deemed to have been received by the Borrower upon the occurrence of an Event of Default pursuant to Section 11.5 of the Credit Agreement) then no payment or distribution of any kind or character shall be made by or on behalf of the Issuer or any other Person on its behalf with respect to this Note; and

(iii) if any payment or distribution of any character, whether in cash, securities or other property (other than Restructured Debt Securities), in respect of this Note shall (despite these subordination provisions) be received by any Holder in violation of clause (i) or (ii) above before all Senior Indebtedness shall have been paid in full in cash (other than (A) contingent indemnification obligations and (B) Obligations under Cash Management Agreements and Hedge Agreements), such payment or distribution shall be held in trust for the benefit of, and shall be paid over or delivered to, the holders of Senior Indebtedness (or their representatives), ratably according to the respective aggregate amounts remaining unpaid thereon, to the extent necessary to pay all Senior Indebtedness in full in cash.

To the fullest extent permitted by law, no present or future holder of Senior Indebtedness shall be prejudiced in its right to enforce the subordination of this Note by any act or failure to act on the part of any Issuer or by any act or failure to act on the part of such holder or any trustee or agent for such holder. Each Holder and each Issuer hereby agree that the subordination of this Note is for the benefit of the Agent and the Lenders and the Agent and the Lenders are obligees under this Note to the same extent as if their names were written herein as such and the Agent may, on behalf of itself and the Lenders, proceed to enforce the subordination provisions herein.

Notwithstanding the foregoing, nothing contained in the subordination provisions set forth above is intended to or will impair, as between each Issuer and each Holder, the obligations of such Issuer, which are absolute and unconditional, to pay to such Holder the principal of and interest on this Note as and when due and payable in accordance with its terms, or is intended to or will affect the relative rights of such Holder and other creditors of such Issuer other than the holders of Senior Indebtedness.

Each Holder is hereby authorized to record all loans and advances or other credit extensions made by it to any Issuer (all of which shall be evidenced by this Note), and all repayments or prepayments thereof, in its books and records, such books and records constituting prima facie evidence of the accuracy of the information contained therein. For the avoidance of doubt, this Note as between each Issuer and each Holder contains additional terms to any intercompany loan agreement between them and this Note does not in any way replace such intercompany loans between them nor does this Note in any way change the principal amount of any intercompany loans between them.

Upon execution and delivery after the date hereof by the Borrower or any subsidiary of the Borrower of a counterpart signature page hereto, such subsidiary shall become a Note Party hereunder with the same force and effect as if

originally named as a Note Party hereunder. The rights and obligations of each Note Party hereunder shall remain in full force and effect notwithstanding the addition of any new Note Party as a party to this Note.

Each Issuer hereby waives presentment, demand, protest or notice of any kind in connection with this Note. All payments under this Note shall be made without offset, counterclaim or deduction of any kind.

Indebtedness governed by this Note shall be maintained in "registered form" within the meaning of Section 163(f) of the Internal Revenue Code of 1986, as amended. An Issuer or its designee (which shall, at the Agent's request, be the Agent, acting solely for these purposes as non-fiduciary agent of the Issuer) shall record the transfer of the right to payments of principal and interest on the indebtedness governed by this Note to holders of the Senior Indebtedness in a register (the "Register"), and no such transfer shall be effective until entered in the Register.

**THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

[SEPARATE SIGNATURE PAGES TO BE ATTACHED]

**EACH AS ISSUER AND HOLDER:**

SN EF UNSUB, LP

By: ____________________________
Name:
Title:

[●]

By: ____________________________
Name:
Title:

[●]

By: ____________________________
Name:
Title:

[●]

By: ____________________________
Name:
Title:

**FORM OF SOLVENCY CERTIFICATE**

**SOLVENCY CERTIFICATE**

March [●], 2017

Pursuant to that certain Credit Agreement dated as of the date hereof (as amended, restated, modified, waived and/or supplemented from time to time, "**Credit Agreement**") by and among SN EF UNSUB, LP, a Delaware limited partnership (the "**Borrower**"), JPMorgan Chase Bank, N.A., as administrative agent and collateral agent, and the lenders and agents from time to time party thereto, the undersigned hereby certifies, solely in such undersigned's capacity as [ ] of the Borrower, and not individually, as follows:

As of the date hereof, after giving effect to the consummation of the Transactions, including the making of the Loans under the Credit Agreement on the date hereof, and after giving effect to the application of the proceeds of such Loans:

1. The fair value of the assets of the Borrower and its Subsidiaries, on a consolidated basis, exceeds, on a consolidated basis, their debts and liabilities, subordinated, contingent or otherwise;

2. The present fair saleable value of the property of the Borrower and its Subsidiaries, on a consolidated basis, is greater than the amount that will be required to pay the probable liability, on a consolidated basis, of their debts and other liabilities, subordinated, contingent or otherwise, as such debts and other liabilities become absolute and matured;

3. The Borrower and its Subsidiaries, on a consolidated basis, are able to pay their debts and liabilities, subordinated, contingent or otherwise, as such liabilities become absolute and matured; and

4. The Borrower and its Subsidiaries, on a consolidated basis, are not engaged in, and are not about to engage in, business for which they have unreasonably small capital.

For purposes of this Certificate, the amount of any contingent liability at any time shall be computed as the amount that would reasonably be expected to become an actual and matured liability. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement.

The undersigned is familiar with the business and financial position of the Borrower and its Subsidiaries. In reaching the conclusions set forth in this Certificate, the undersigned has made such other investigations and inquiries as the undersigned has deemed appropriate, having taken into account the nature of the particular business anticipated to be conducted by the Borrower and its Subsidiaries after consummation of the Transactions contemplated by the Credit Agreement.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the undersigned has executed this Certificate in such undersigned's capacity as chief financial officer of the Borrower, on behalf of the Borrower, and not individually, as of the date first stated above.

SN EF UNSUB, LP

By: ______________________________
Name:
Title:

**EXHIBIT J-1**

**FORM OF NON-BANK TAX CERTIFICATE**
**(For Non-U.S. Lenders That Are Not Treated As Partnerships For**
**U.S. Federal Income Tax Purposes)**

Reference is made to the Credit Agreement dated as of March [●], 2017 (as amended, restated, amended and restated, refinanced, supplemented or otherwise modified from time to time, the "Credit Agreement"), among SN EF UnSub, LP, a Delaware limited partnership (the "Borrower"), each lender from time to time party thereto (collectively, the "Lenders"), JPMorgan Chase Bank, N.A., as the Administrative Agent, the Collateral Agent and an Issuing Bank and the other parties party thereto. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement.

Pursuant to the provisions of Section 5.4(e)(i) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record and beneficial owner of the Loan(s) (as well as any note(s) evidencing such Loan(s)) in respect of which it is providing this certificate, (ii) it is not a "bank" within the meaning of Section 881(c)(3)(A) of the Code, (iii) it is not a ten percent shareholder of the Borrower within the meaning of Section 871(h)(3)(B) of the Code, (iv) it is not a "controlled foreign corporation" related to the Borrower as described in Section 881(c)(3)(C) of the Code, and (v) no payments in connection with any Credit Document are effectively connected with the undersigned's conduct of a U.S. trade or business.

The undersigned has furnished the Administrative Agent and the Borrower with a certificate of its non-U.S. person status on IRS Form W-8BEN or W-8BEN-E, as applicable, (or applicable successor IRS Form). By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstances renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform the Borrower and the Administrative Agent in writing and deliver promptly to the Borrower and the Administrative Agent an updated certificate or other appropriate documentation (including any new documentation reasonably requested by the Borrower or the Administrative Agent) or promptly notify the Borrower and the Administrative Agent in writing of its inability to do so, and (2) the undersigned shall have at all times furnished the Borrower and the Administrative Agent with a properly completed and currently effective certificate in either the calendar year in which payment is to be made by the Borrower or the Administrative Agent to the undersigned, or in either of the two calendar years preceding each such payment.

[Signature Page Follows]

[Non-U.S. Lender]

By: ______________________________
Name:
Title:

[Address]

Dated: , 20[ ]

**EXHIBIT J-2**

**FORM OF NON-BANK TAX CERTIFICATE**
**(For Non-U.S. Lenders That Are Treated As Partnerships For U.S. Federal Income Tax Purposes)**

Reference is made to the Credit Agreement dated as of March [●], 2017 (as amended, restated, amended and restated, refinanced, supplemented or otherwise modified from time to time, the "Credit Agreement"), among SN EF UnSub, LP, a Delaware limited partnership (the "Borrower"), each lender from time to time party thereto (collectively, the "Lenders"), JPMorgan Chase Bank, N.A., as the Administrative Agent, the Collateral Agent and an Issuing Bank and the other parties party thereto. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement.

Pursuant to the provisions of Section 5.4(e)(i) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record owner of the Loan(s) (as well as any note(s) evidencing such Loan(s)) in respect of which it is providing this certificate, (ii) its direct or indirect partners/members are the sole beneficial owners of payments on such Loan(s) (as well as any note(s) evidencing such Loan(s)), (iii) with respect to the extension of credit pursuant to this Credit Agreement or any other Credit Document, neither the undersigned nor any of its direct or indirect partners/members claiming the benefit of the portfolio interest exemption is a bank within the meaning of Section 881(c)(3)(A) of the Code, (iv) none of its direct or indirect partners/members claiming the benefit of the portfolio interest exemption is a ten percent shareholder of the Borrower within the meaning of Section 871(h)(3)(B) of the Code, (v) none of its direct or indirect partners/members claiming the benefit of the portfolio interest exemption is a "controlled foreign corporation" related to the Borrower as described in Section 881(c)(3)(C) of the Code, and (vi) no payments in connection with any Credit Document are effectively connected with the conduct of a U.S. trade or business by the undersigned or its direct or indirect partners/members claiming the benefit of the portfolio interest exemption.

The undersigned has furnished the Administrative Agent and the Borrower with IRS Form W-8IMY accompanied by one of the following forms from each of its partners/members that is claiming the portfolio interest exemption: (i) an IRS Form W-8BEN or W-8BEN-E, as applicable, (or applicable successor IRS Form) or (ii) an IRS Form W-8IMY accompanied by an IRS Form W-8BEN or W-8BEN-E, as applicable, (or applicable successor IRS Form) from each of such partner's/member's beneficial owners that is claiming the portfolio interest exemption. By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstances renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform the Borrower and the Administrative Agent in writing and deliver promptly to the Borrower and the Administrative Agent an updated certificate or other appropriate documentation (including any new documentation reasonably requested by the Borrower or the Administrative Agent) or promptly notify the Borrower and the Administrative Agent in writing of its inability to do so, and (2) the undersigned shall have at all times furnished the Borrower and the Administrative Agent with a properly completed and currently effective certificate in either the calendar year in which each payment is to be made to the undersigned, or in either of the two calendar years preceding each such payment.

[Signature Page Follows]

[Non-U.S. Lender]

By: ______________________________
Name:
Title:

[Address]

Dated: , 20[ ]

**EXHIBIT J-3**

**FORM OF NON-BANK TAX CERTIFICATE**
**(For Non-U.S. Participants That Are Not Treated As Partnerships For U.S. Federal Income Tax Purposes)**

Reference is made to the Credit Agreement dated as of March [●], 2017 (as amended, restated, amended and restated, refinanced, supplemented or otherwise modified from time to time, the "Credit Agreement"), among SN EF UnSub, LP, a Delaware limited partnership (the "Borrower"), each lender from time to time party thereto (collectively, the "Lenders"), JPMorgan Chase Bank, N.A., as the Administrative Agent, the Collateral Agent and an Issuing Bank and the other parties party thereto. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement.

Pursuant to the provisions of Section 5.4(e)(i) and Section 13.6(c) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record and beneficial owner of the participation in respect of which it is providing this certificate, (ii) it is not a bank within the meaning of Section 881(c)(3)(A) of the Code, (iii) it is not a ten percent shareholder of the Borrower within the meaning of Section 871(h)(3)(B) of the Code, (iv) it is not a "controlled foreign corporation" related to the Borrower as described in Section 881(c)(3)(C) of the Code, and (v) no payments in connection with any Credit Document are effectively connected with the undersigned's conduct of a U.S. trade or business.

The undersigned has furnished its participating Lender with a certificate of its non-U.S. person status on IRS Form W-8BEN or W-8BEN-E, as applicable, (or applicable successor IRS Form). By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstances renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform such Lender in writing and deliver promptly to such Lender an updated certificate or other appropriate documentation (including any new documentation reasonably requested by such Lender) or promptly notify such Lender in writing of its inability to do so, and (2) the undersigned shall have at all times furnished such Lender with a properly completed and currently effective certificate in either the calendar year in which each payment is to be made to the undersigned, or in either of the two calendar years preceding each such payment.

[Signature Page Follows]

[Non-U.S. Participant]

By: ______________________________
Name:
Title:

[Address]

Dated: , 20[ ]

**EXHIBIT J-4**

**FORM OF NON-BANK TAX CERTIFICATE**
**(For Non-U.S. Participants That Are Treated As Partnerships For U.S. Federal Income Tax Purposes)**

Reference is made to the Credit Agreement dated as of March [●], 2017 (as amended, restated, amended and restated, refinanced, supplemented or otherwise modified from time to time, the "Credit Agreement"), among SN EF UnSub, LP, a Delaware limited partnership (the "Borrower"), each lender from time to time party thereto (collectively, the "Lenders"), JPMorgan Chase Bank, N.A., as the Administrative Agent, the Collateral Agent and an Issuing Bank and the other parties party thereto. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Credit Agreement.

Pursuant to the provisions of Section 5.4(e)(i) and Section 13.6(c) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record owner of the participation in respect of which it is providing this certificate, (ii) its direct or indirect partners/members are the sole beneficial owners of payments on such participation, (iii) with respect to such participation, neither the undersigned nor any of its direct or indirect partners/members claiming the benefit of the portfolio interest exemption is a bank within the meaning of Section 881(c)(3)(A) of the Code, (iv) none of its direct or indirect partners/members claiming the benefit of the portfolio interest exemption is a ten percent shareholder of the Borrower within the meaning of Section 871(h)(3)(B) of the Code, (v) none of its direct or indirect partners/members claiming the benefit of the portfolio interest exemption is a "controlled foreign corporation" related to the Borrower as described in Section 881(c)(3)(C) of the Code, and (vi) no payments in connection with any Credit Document are effectively connected with the conduct of a U.S. trade or business by the undersigned or its direct or indirect partners/members claiming the benefit of the portfolio interest exemption.

The undersigned has furnished its participating Lender with IRS Form W-8IMY accompanied by one of the following forms from each of its partners/members that is claiming the portfolio interest exemption: (i) an IRS Form W-8BEN or W-8BEN-E, as applicable, (or applicable successor IRS Form) or (ii) an IRS Form W-8IMY accompanied by an IRS Form W-8BEN or W-8BEN-E, as applicable, (or applicable successor IRS Form) from each of such partner's/member's beneficial owners that is claiming the portfolio interest exemption. By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstances renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform such Lender in writing and deliver promptly to such Lender an updated certificate or other appropriate documentation (including any new documentation reasonably requested by such Lender) or promptly notify such Lender in writing of its inability to do so, and (2) the undersigned shall have at all times furnished such Lender with a properly completed and currently effective certificate in either the calendar year in which each payment is to be made to the undersigned, or in either of the two calendar years preceding each such payment.

[Signature Page Follows]

Case 22-3459-00587 Document 632-16-24 Filed in TXSB on 08/04/22 Page 153 of 280

[Non-U.S. Participant]

By: ________________________________________
Name:
Title:

[Address]

Dated: , 20[ ]



013242

**EXHIBIT K TO**
**CREDIT AGREEMENT**

**FORM OF NOTICE OF PURCHASE ELECTION**

NOTICE OF PURCHASE ELECTION

[●], 20[__]

To: JPMorgan Chase Bank, N.A.,
as Administrative Agent

SN EF UnSub, LP, the Administrative Agent and certain Lenders and other agents have heretofore entered into a Credit Agreement, dated as of March [1], 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"). Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Credit Agreement.

This Notice of Purchase Election is being delivered pursuant to Section 13.6(b)(vii) of the Credit Agreement.

Please be advised that [GSO] irrevocably agrees to acquire all of the rights and obligations under the Credit Agreement of the Lenders in accordance with Section 13.6(b)(vii) of the Credit Agreement.

Very truly yours,

[GSO]

By: ______________________________
Name:
Title:

**EXHIBIT L TO**
**CREDIT AGREEMENT**

**FORM OF GSO PREFERRED EQUITY DOCUMENTATION**

[On file with Administrative Agent]

**EXHIBIT M-1 TO**
**CREDIT AGREEMENT**

**LEGAL OPINION OF KIRKLAND & ELLIS LLP**

[Attached]

KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue

New York, New York 10022

(212) 446-4800

Facsimile:
(212) 446-4900

www.kirkland.com

March 1, 2017

To the Agent
and each of the Lenders under the
Credit Agreement (referred to below)
on the date hereof (the "Lenders"):

Re: Credit Agreement dated as of March 1, 2017, by and among SN EF UNSUB, LP, a Delaware limited partnership (the "Borrower"), the financial institutions from time to time party thereto as lenders (the "Lenders"), and JPMorgan Chase Bank, N.A., as Administrative Agent and Collateral Agent for the Lenders (in such capacity, the "Agent") (such credit agreement herein referred to as the "Credit Agreement")

Ladies and Gentlemen:

We are issuing this opinion letter in our capacity as counsel to and at the request of the Borrower, SN EF UnSub Holdings, LLC ("Holdings") and SN EF UnSub GP, LLC ("Parent") in respect of the Credit Agreement. References herein to the "Covered Parties" means the Borrower, Holdings and Parent.

The opinions expressed herein are being provided pursuant to Section 6.1(d) of the Credit Agreement. Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Credit Agreement (with references herein to the Credit Agreement and each document defined therein meaning the Credit Agreement and each such document as executed and delivered on the date hereof). The Lenders and the Agent are sometimes referred to in this opinion letter as "you".

In connection with the preparation of this letter, we have, among other things, reviewed executed counterparts of:

(a) the Credit Agreement;

(b) the Notes delivered to the Lenders on the date hereof; and

(c) the Collateral Agreement.

We have also reviewed unfiled copies of UCC Form-1 Financing Statements naming each Covered Party, as debtor, and the Agent, as secured party, copies of which are attached hereto on Exhibit 1 (the "Financing Statement") to be filed in the Uniform Commercial Code filing office of the Secretary of State of Delaware (the "UCC Filing Office").

References in this opinion letter to the "New York UCC" mean the Uniform Commercial Code as in effect on the date hereof in the State of New York. For purposes hereof, (a) the documents listed in items (a) through (c) above (each in the form reviewed by us for purposes of this opinion letter) are called the "Operative Documents" and (b) the document listed in item (c) (in the form reviewed by us for purposes of this opinion letter) is called the "Security Document". The term "Organizational Documents" whenever used in the letter means the certificate of limited partnership or formation, as applicable, of each Covered

Party, and the partnership agreement or limited liability company agreement, as applicable, of the each Covered Party, as in effect on the date hereof.

Subject to the assumptions, qualifications, exclusions and other limitations which are identified in this opinion letter, we advise you, and with respect to each legal issue addressed in this opinion letter, it is our opinion, that:

1. Each Covered Party is a limited partnership or limited liability company, as applicable, existing and in good standing under the Delaware Revised Uniform Limited Partnership Act ("DRULPA") or the Delaware Limited Liability Company Act ("DLLCA"), as applicable. For purposes of this opinion, we have relied exclusively upon certificates issued by a governmental authority in the relevant jurisdiction, and such opinions are not intended to provide any conclusion or assurance beyond that conveyed by those certificates.

2. Each Covered Party has the limited partnership or limited liability company, as applicable, power to execute, deliver and perform its obligations under the Operative Documents to which it is a party.

3. Each Covered Party has taken the limited partnership or limited liability company, as applicable, action necessary to authorize its execution, delivery and performance of the Operative Documents to which it is a party.

4. Each Operative Document has been duly executed and delivered on behalf of each Covered Party that is a party thereto.

5. Each of the Operative Documents is a valid and binding obligation of each Covered Party that is a party thereto and is enforceable against such Covered Party in accordance with its terms.

6. The execution and delivery by any Covered Party of the Operative Documents to which it is a party, and the performance by any Covered Party of the Operative Documents to which it is a party, and the granting of any security interests pursuant to any Security Document to which it is a party, will not (i) constitute a violation of the Organizational Documents of such Covered Party or (ii) constitute a violation of any applicable provision of existing State of New York law or United States federal statutory law or published governmental regulation applicable to such Covered Party, in each case to the extent covered by this opinion letter, or any applicable provision of the DRULPA or DLLCA, as applicable.

7. No consent, approval, authorization or order of, or filing with, any United States federal or New York governmental authority or body or any Delaware governmental agency or body acting pursuant to the DRULPA or DLLCA, as applicable, is required in order for any Covered Party to obtain the right to execute and deliver any Operative Document, or perform its obligations under, any Operative Document to which it is a party, except for (i) those obtained or made prior to the date hereof, (ii) filings required for the perfection of security interests granted under the Security Document or to release existing liens, (iii) consents, approvals, authorizations, orders or filings required in connection with the ordinary course of conduct by the Covered Parties of their respective businesses and ownership or operation by the Covered Parties of their respective assets in the ordinary course of business (as to which we express no opinion), (iv) those that may be required under federal securities laws and regulations or state "blue sky" laws and regulations (as to which we express no opinion) or any other laws, regulations or governmental requirements which are excluded from the coverage of this opinion letter and (v) consents, approvals, authorizations, orders or filings that may be required by any banking, insurance or other regulatory statutes to which you may be subject (as to which we express no opinion).

8. The Borrower is not an "investment company" required to be registered as such under the Investment Company Act of 1940, as amended, or the rules and regulations thereunder.

9. The Collateral Agreement creates a valid security interest in favor of the Agent, for the benefit of the Secured Parties in the "Collateral" (as defined in the Collateral Agreement) of each Covered Party described therein in which a security interest may be created under Article 9 of the New York UCC (the "Code Collateral").

10. Upon the filing in the UCC Filing Office of the Financing Statements, together with the payment of all filing and recordation fees associated therewith, the Agent will have a perfected security interest (for the benefit of the Secured

Parties) in that portion of the Code Collateral of the Covered Parties in which a security interest can be perfected by the filing of a Uniform Commercial Code financing statement in the Delaware UCC Filing Office.

11. Assuming application of the proceeds of the Loans as contemplated by the Credit Agreement and, for purposes of Regulation X of the Board of Governors of the Federal Reserve System, no Lender or Agent is subject to Regulation T of the Board of Governors of the Federal Reserve System, the execution and delivery of the Credit Agreement by the Borrower and the making of the Loans under the Credit Agreement will not violate Regulation U or X of the Board of Governors of the Federal Reserve System.

With your consent, we have assumed for purposes of this letter and the opinions herein:

(a) that each document we have reviewed for purposes of this letter is accurate and complete, each such document that is an original is authentic, each such document that is a copy conforms to an authentic original, and all signatures on each such document are genuine, and that all natural persons who have signed any document have the legal capacity to do so;

(b) that each Operative Document and every other agreement we have examined for purposes of this letter has been duly authorized, executed and delivered by the parties thereto and constitutes a valid and binding obligation of each party to that document, enforceable against each such party in accordance with its respective terms and that each such party has satisfied all legal requirements that are applicable to such party to the extent necessary to entitle such party to enforce such agreement and that each party to any Operative Document is in good standing and duly incorporated or organized under the laws of its jurisdiction of organization (except that we make no such assumption in this paragraph (b) with respect to the Covered Parties;

(c) there are no agreements or understandings among the parties, written or oral (other than the Operative Documents), and there is no usage of trade or course of prior dealing among the parties that would, in either case, define, supplement or qualify the terms of the Operative Documents; and

(d) that the status of the Operative Documents as legally valid and binding obligations of the parties is not affected by any (i) breaches of, or defaults under, agreements or instruments, (ii) violations of statutes, rules, regulations or court or governmental orders, or (iii) failures to obtain required consents, approvals or authorizations from, or make required registrations, declarations or filings with, governmental authorities, provided that we make no such assumption to the extent we have opined as to such matters with respect to the Covered Parties herein.

In addition, for purposes of this letter and the opinions herein we have also assumed with your consent: (i) each Covered Party has the requisite rights to any Collateral existing on the date hereof and will have the requisite rights to each item of Collateral arising after the date hereof, (ii) value (as defined in Section 1-204 of the New York UCC) has been given by you to the Covered Parties for the security interests and other rights in and assignments of Collateral described in or contemplated by the Operative Documents, and (iii) all information regarding the secured party on the Financing Statements is accurate and complete in all respects.

In preparing this letter, we have relied without any independent verification upon: (i) information contained in certificates obtained from governmental authorities; (ii) factual information represented to be true in the Operative Documents; (iii) factual information provided to us in a support certificate signed by the Covered Parties; (iv) factual information we have obtained from such other sources as we have deemed reasonable; and (v) we have examined the originals or copies certified to our satisfaction, of such Organizational Documents and other partnership or limited liability company, as applicable, records of the Covered Parties as we deem necessary for or relevant to our opinions. We have assumed without investigation that the information upon which we have relied is accurate and does not omit disclosures necessary to prevent such information from being misleading.

The terms "knowledge," "actual knowledge" and "aware" whenever used in this letter with respect to our firm mean conscious awareness at the time this letter is delivered on the date it bears by the lawyers with Kirkland & Ellis LLP at that time who spent substantial time representing the Covered Parties in connection with the Operative Documents (herein called our "Designated Transaction Lawyers").

Each opinion (an "enforceability opinion") in this letter that any particular contract is a valid and binding obligation, is enforceable in accordance with its terms or creates a security interest is subject to: (i) applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally and judicially developed doctrines in this area such as substantive consolidation and equitable subordination; (ii) the effect of general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity); (iii) an implied covenant of good faith and fair dealing; and (iv) other commonly recognized statutory and judicial constraints on enforceability including statutes of limitations. "General principles of equity" include but are not limited to: principles limiting the availability of specific performance and injunctive relief; principles which limit the availability of a remedy under certain circumstances where another remedy has been elected; principles requiring reasonableness, good faith and fair dealing in the performance and enforcement of an agreement by the party seeking enforcement; principles which may permit a party to cure a material failure to perform its obligations; and principles affording equitable defenses such as waiver, laches and estoppel.

Each enforceability opinion is also subject to the qualification that certain provisions of the Operative Documents may not be enforceable in whole or in part, although the inclusion of such provisions does not render the Operative Documents invalid, and the Operative Documents and the law of the State of New York contain adequate remedial provisions for the practical realization of the rights and benefits afforded thereby.

Each enforceability opinion is further subject to the effect of rules of law that may render guaranties or other similar instruments or agreements unenforceable under circumstances where your actions, failures to act or waivers, amendments or replacement of the Operative Documents (i) so radically change the essential nature of the terms and conditions of the guaranteed obligations and the related transactions that, in effect, a new relationship has arisen between you and the Covered Parties which is substantially and materially different from that presently contemplated by the Operative Documents, (ii) release the primary obligor, or (iii) impair the guarantor's recourse against the primary obligor.

We also express no opinion regarding the enforceability of the so-called "fraudulent conveyance or fraudulent transfer savings clauses" and any similar provisions in any Operative Document, to the extent such provisions purport to limit the amount of the obligations of any party or the right to contribution of any other party with respect to such obligations.

We render no opinion regarding the validity, binding effect or enforceability of any Operative Document with respect to any Covered Party to the extent such Operative Document involves any obligation (including any guaranty) of such Covered Party with respect to any "swap" (as such term is defined in the Commodity Exchange Act) if such Covered Party is not an "eligible contract participant" (as such term is defined in the Commodity Exchange Act) at the time such obligation is incurred by such Covered Party.

We render no opinion with regard to usury or other laws limiting or regulating the maximum amount of interest that may be charged, collected, received or contracted for other than the internal laws of the State of New York, and without limiting the foregoing, we expressly disclaim any opinion as to the usury or other such laws of any other jurisdiction (including laws of other states made applicable through principles of Federal preemption or otherwise) which may be applicable to the transactions contemplated by the Operative Documents.

Our opinions regarding the creation and perfection of security interests are subject to the effect of (i) the limitations on the existence and perfection of security interests in proceeds resulting from the operation of Section 9-315 of the New York UCC and (ii) certain provisions of the Bankruptcy Code, including Section 547 with respect to preferential transfers and Section 552 with respect to any Collateral acquired by a Covered Party subsequent to the commencement of a case under the Bankruptcy Code with respect to such Covered Party.

We express no opinion (i) as to the priority of any security interest, (ii) as to what law governs perfection of the security interests granted in the Collateral, (iii) regarding the perfection of any security interest in money, letter of credit rights, Collateral of a type represented by a certificate of title, any property for which a federal statute or treaty provides for registration or specifies a place of filing different from that specified in Section 9-501 of any applicable Uniform Commercial Code commercial tort claims, crops, farm products, timber to be cut, as-extracted collateral, or consumer goods and (iv) the effectiveness of any supergeneric description of the Collateral in any Security Document.

Nothing contained in this letter covers or otherwise addresses any of the following types of provisions which may be contained in the Operative Documents:

(i) provisions mandating contribution towards judgments or settlements among various parties;

(ii) waivers of benefits and rights to the extent they cannot be waived under applicable law;

(iii) provisions providing for penalties, liquidated damages, acceleration of future amounts due (other than principal) without appropriate discount to present value, late charges, prepayment charges, interest upon interest, or increased interest rates upon default;

(iv) provisions which might require indemnification or contribution in violation of general principles of equity or public policy, including, without limitation, indemnification or contribution obligations which arise out of the failure to comply with applicable state or federal securities laws;

(v) agreements to submit to the jurisdiction of any particular court or other governmental authority (either as to personal or subject matter jurisdiction), except to the extent such submission to the courts of the State of New York is made in compliance with the statutory laws of the State of New York; provisions restricting access to courts; waiver of service of process requirements which would otherwise be applicable; waiver of the right to a jury trial and provisions otherwise purporting to affect the jurisdiction and venue of courts;

(vi) choice-of-law provisions, except to the extent such choice of law of New York law as the governing law is made in compliance with the statutory laws of the State of New York;

(vii) provisions regarding arbitration;

(viii) covenants not to compete;

(ix) provisions that authorize you to set off and apply any deposits at any time held, and any other indebtedness at any time owing, by you to or for the account of any Covered Party, or

(x) requirements in the Operative Documents specifying that provisions thereof may only be waived in writing.

Except as expressly otherwise set forth in this letter, our advice on every legal issue addressed in this letter is based exclusively on the internal laws of the State of New York or the Federal law of the United States which, in each case, in our experience is generally applicable both to general business organizations which are not engaged in regulated business activities and to transactions of the type contemplated in the Operative Documents between the Covered Parties, on the one hand, and you, on the other hand (but without our having made any special investigation as to any other laws), except that we express no opinion or advice as to any law or legal issue (a) which might be violated by any misrepresentation or omission or a fraudulent act, or (b) to which any Covered Party may be subject as a result of your legal or regulatory status, your sale or transfer of the Loans or interests therein or your involvement in the transactions contemplated by the Operative Documents.

Our opinions in paragraphs 9 and 10 are limited to Article 9 of the New York UCC, or Article 9 of the Uniform Commercial Code as adopted in Delaware, as the case may be.

For purposes of the opinions expressed in paragraph 10 with respect to the Covered Parties, we have reviewed the statutory provisions of the Uniform Commercial Code as adopted in Delaware, as set forth in the Commerce Clearing House, Inc. Secured Transactions Guide as supplemented through January 24, 2017 (the "Guide") and, with respect to such Covered Parties, our opinions in such paragraph 10 are based solely on such review and on the assumption that such statutory provisions are given the same interpretation and application in Delaware as the corresponding provisions of the New York Uniform Commercial Code are given in New York.

For purposes of paragraphs 1 through 4 and 6(i) and 7 our opinions are based on the DRULPA or DLLCA, as applicable (without regard to judicial interpretation thereof or rules or regulations promulgated thereunder), as published by Aspen Publishers, Inc., as supplemented through January 24, 2017 with respect to the DLLCA and as published online and on the date hereof at http://www.lexisnexis.com, with respect to the DRULPA. We note however that we are not admitted to practice law in the State of Delaware, and without limiting the forgoing we expressly disclaim any opinions regarding Delaware contract law or general Delaware law that may be incorporated expressly or by operation of law into the DLLCA or DRULPA or into any Organizational Document entered into pursuant thereto.

None of the opinions or other advice contained in this letter considers or covers: (i) any federal or state securities (or "blue sky") laws or regulations (other than our opinion in paragraph 8 regarding the Investment Company Act) or Federal Reserve Board margin regulations (other than our opinion in paragraph 11) or (ii) federal or state antitrust and unfair competition laws and regulations, pension and employee benefit laws and regulations, compliance with fiduciary duty requirements, federal and state environmental, land use and subdivision, tax, racketeering (e.g., RICO), health and safety (e.g., OSHA), and labor laws and regulations, federal and state laws, regulations and policies concerning national and local emergency, possible judicial deference to acts of sovereign states and criminal and civil forfeiture laws, and other federal and state statutes of general application to the extent they provide for criminal prosecution (e.g., mail fraud and wire fraud statutes).

We also express no opinion regarding any laws relating to terrorism or money laundering, including Executive Order No. 13224, 66 Fed. Reg. 49079 (published September 25, 2001) (the "Terrorism Executive Order") or any related enabling legislation or any other similar executive order (collectively with the Terrorism Executive Order, the "Executive Orders"), the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56, the "Patriot Act"), any sanctions and regulations promulgated under authority granted by the Trading with the Enemy Act, 50 U.S.C. App. 1-44, as amended from time to time, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06, as amended from time to time, the Iraqi Sanctions Act, Publ. L. No. 101-513; United Nations Participation Act, 22 U.S.C. § 287c, as amended from time to time, the International Security and Development Cooperation Act, 22 U.S.C. § 2349 aa-9, as amended from time to time, The Cuban Democracy Act, 22 U.S.C. §§ 6001-10, as amended from time to time, The Cuban Liberty and Democratic Solidarity Act, 18 U.S.C. §§ 2332d and 2339b, as amended from time to time, and The Foreign Narcotics Kingpin Designation Act, Publ. L. No. 106-120, as amended from time to time.

We express no opinion as to what law might be applied by any other courts to resolve any issue addressed in this letter. We advise you that issues addressed by this letter may be governed in whole or in part by other laws, but we express no opinion as to whether any relevant difference exists between the laws upon which our opinions are based and any other laws which may actually govern.

This opinion letter speaks as of the time of its delivery on the date it bears. We do not assume any obligation to provide you with any subsequent opinion or advice by reason of any fact about which our Designated Transaction Lawyers did not have actual knowledge at that time, by reason of any change subsequent to that time in any law covered by any of our opinions, or for any other reason.

You may rely upon this letter only for the purpose served by the provision in the Credit Agreement cited in the second paragraph of this opinion letter in response to which it has been delivered. Without our written consent: (i) no person other than you may rely on this opinion letter for any purpose; (ii) this opinion letter may not be cited or quoted in any financial statement, prospectus, private placement memorandum or other similar document; (iii) this opinion letter may not be cited or quoted in any other document or communication which might encourage reliance upon this opinion letter by any person or for any purpose excluded by the restrictions in this paragraph; and (iv) copies of this opinion letter may not be furnished to anyone for purposes of encouraging such reliance. Notwithstanding the foregoing, financial institutions which subsequently become Lenders in accordance with the terms of Section 13.6 of the Credit Agreement may rely on this opinion letter as of the time of its delivery on the date hereof as if this letter were addressed to them.

Sincerely,

/s/ Kirkland & Ellis LLP

KIRKLAND & ELLIS LLP

**EXHIBIT 1**

UCC Financing Statements

UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Print Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SN EF UnSub GP, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1000 Main Street, Suite 3000* | Houston | TX | 77002 | USA |

2. DEBTOR'S NAME

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMorgan Chase Bank, N.A., as Agent | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| MC: NY1-C413, 4 Chase Metrotech Center | Brooklyn | NY | 11245-0001 | USA |

4. COLLATERAL:
All assets.

8. OPTIONAL FILER REFERENCE DATA:
Filed with: Delaware Secretary of State *c/o Sanchez Energy Corporation 509265/2015

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11) International Association of Commercial Administrators (IACA)



013252

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Print Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SN EF UnSub, LP | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 1000 Main Street, Suite 3000* | Houston | TX | 77002 | | USA |

2. DEBTOR'S NAME

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| | | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| | | | | | |

3. SECURED PARTY'S NAME

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| JPMorgan Chase Bank, N.A., as Agent | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| MC: NY1-C413, 4 Chase Metrotech Center | Brooklyn | NY | 11245-0001 | | USA |

4. COLLATERAL:
All assets.

5.

6a. 6b.

7. ALTERNATIVE DESIGNATION (if applicable):

8. OPTIONAL FILER REFERENCE DATA:
Filed with: Delaware Secretary of State *c/o Sanchez Energy Corporation 509265/2015

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Print Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SN EF UnSub Holdings, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS: 1000 Main Street, Suite 3000* | CITY: Houston | STATE: TX / POSTAL CODE: 77002 | COUNTRY: USA |

2. DEBTOR'S NAME

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JPMorgan Chase Bank, N.A., as Agent | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS: MC: NY1-C413, 4 Chase Metrotech Center | CITY: Brooklyn | STATE: NY / POSTAL CODE: 11245-0001 | COUNTRY: USA |

4. COLLATERAL:

All assets.

5. Check only if applicable and check only one box:

6a. Check only if applicable and check only one box:

6b. Check only if applicable and check only one box:

7. ALTERNATIVE DESIGNATION (if applicable):

8. OPTIONAL FILER REFERENCE DATA:

Filed with: Delaware Secretary of State *c/o Sanchez Energy Corporation 509265/2015

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**EXHIBIT M-2 TO
CREDIT AGREEMENT**

**LEGAL OPINION OF KIRKLAND & ELLIS LLP**

[Attached]

March 1, 2017

To the Purchasers
under the Agreement (referred to below) and

to the Agent and each of the Lenders under the

Partnership Credit Agreement (referred to below)
on the date hereof:

Re: (i) Amended and Restated Securities Purchase Agreement, dated as of February 28, 2017, by and among Sanchez Energy Corporation, a Delaware corporation ("SN"), SN UR Holdings, LLC, a Delaware limited liability company ("SN GP Member"), SN EF UnSub Holdings, LLC, a Delaware limited liability company ("Common Unit Purchaser"), SN EF UnSub, LP, a Delaware limited partnership (the "Partnership"), SN EF UnSub GP, LLC, a Delaware limited liability company and the general partner of the Partnership (the "General Partner", and together with SN, SN GP Member, Common Unit Purchaser and the Partnership, the "Company Parties"), Intrepid Private Equity V-A, LLC, a Delaware limited liability company, GSO ST Holdings Associates LLC, a Delaware limited liability company ("GSO Associates") and GSO ST Holdings LP, a Delaware limited partnership ("GSO Holdings", and together with GSO Associates, the "Purchasers") (such agreement herein referred to as the "Agreement"); and (ii) Credit Agreement, dated as of March 1, 2017, by and among the Partnership, the lenders party thereto (the "Lenders") and JPMorgan Bank, as administrative agent (the "Administrative Agent") (such agreement herein referred to as the "Partnership Credit Agreement")

Ladies and Gentlemen:

We are issuing this opinion letter in our capacity as counsel to and at the request of the Company Parties in respect of the Agreement.

The opinions expressed herein are being provided pursuant to Section 2.06(a)(vii) of the Agreement and Section 6.1(d)(ii) of the Partnership Credit Agreement. Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Agreement (with references herein to the Agreement and each document defined therein meaning the Agreement and each such document as executed and delivered on the date hereof). The Purchasers are sometimes referred to in this opinion letter as "you".

In connection with the preparation of this letter, we have, among other things, reviewed executed counterparts of:

a) the Agreement;

b) that certain Commitment Letter by and between GSO Capital Partners LP and the Partnership;

c) that certain Commitment Letter by and between GSO Capital Opportunities Fund III LP, GSO Capital Solutions Fund II LP, GSO Harrington Credit Alpha Fund (Cayman) L.P., GSO Credit Alpha Fund LP, GSO Energy Select Opportunities Fund LP, GSO Energy Partners-A LP, GSO Energy Partners-B LP, GSO Energy Partners-C LP, GSO Energy Partners-C II LP and GSO Energy Partners-D LP and the Partnership;

d) that certain GSO Warrant Agreement to Purchase SN Common Stock, by and between SN and the GSO Funds party thereto;

e) that certain Management Services Agreement, by and between Sanchez Oil & Gas Corporation ("SOG") and the Partnership;

f) that certain GSO Registration Rights Agreement, by and between SN and the GSO Funds party thereto;

g) that certain GSO Voting Agreement, by and between SN and the GSO Funds party thereto;

h) that certain GSO Non-Solicitation Agreement, by and among GSO Capital Partners LP, SN and SOG;

i) that certain Hydrocarbons Purchase and Marketing Agreement (the "Marketing Agreement"), between SN EF Maverick, LLC, as Marketer and the Partnership, as Producer, and solely for purposes of Section 8.15 and 8.16 therein, SN;

j) that certain Purchase and Sale Agreement, (the "Purchase and Sale Agreement") by and among Anadarko E&P Onshore LLC, a Delaware limited liability company ("AEP"), Kerr-McGee Oil & Gas Onshore LP, a Delaware limited partnership ("KMOG", and collectively with AEP, "Seller"), SN EF Maverick, LLC, a Delaware limited liability company ("Maverick"), the Partnership, Aguila Production, LLC, a Delaware limited liability company ("AqCo" and collectively with Maverick and Partnership, "Buyer") and solely for purposes of Section 15.22 and Schedule 13.4(a) therein, SN;

k) that certain Letter Agreement, by and among the Seller, Buyer and solely for purposes of Section 15.22 and Schedule 13.4(a) of the Purchase and Sale Agreement, SN;

l) that certain Joint Development Agreement, by and between Gavilan Resources, LLC (f/k/a Aguila Production, LLC), Maverick, Partnership and solely with respect to Section 2.2, Section 4.5 and Article VII, SN;

m) that certain Development Agreement, among AEP and KMOG, as Anadarko, Maverick, the Partnership and Gavilan Resources, LLC (f/k/a Aguila Production, LLC), as the Drilling Parties, and solely for purposes of Section 4.15 therein, SN;

n) that certain Transition Services Agreement, between AEP and Maverick;

o) Amended and Restated Agreement of Limited Partnership of Partnership, by and between the Partnership, General Partner, as the general partner and the limited partners party thereto;

p) Amended and Restated Limited Liability Company Agreement of General Partner, by and between General Partner, GSO Associates, and SN GP Member;

q) the Partnership Credit Agreement;

r) the Notes (as defined in the Partnership Credit Agreement) delivered to the Lenders on the date hereof; and

s) the Collateral Agreement (as defined in the Partnership Credit Agreement).

For purposes hereof, the documents listed in items (a) through (s) above (each in the form reviewed by us for purposes of this opinion letter) are called the "Operative Documents".

For purposes herein, the "Debt Documents" shall mean:

a) that certain Second Amended and Restated Credit Agreement, dated as of June 30, 2014 among SN, as borrower, the lenders party thereto and Royal Bank of Canada as administrative agent, as amended by that certain First Amendment to Second Amended and Restated Credit Agreement, dated as of September 9, 2014, as amended by that certain Second Amendment to Second Amended and Restated Credit Agreement, dated as of March 31, 2015, as amended by that certain Third Amendment to Second Amended and Restated Credit Agreement, dated as of July 20, 2015, as amended by that certain Fourth Amendment to Second Amended and Restated Credit Agreement, dated as of September 29, 2015, as amended by that certain Fifth Amendment to Second Amended and Restated Credit Agreement, dated as of October 30, 2015, as amended by that certain Sixth Amendment to Second Amended and Restated Credit Agreement, dated as of January 22, 2016 and as amended by that certain Seventh Amendment to Second Amended and Restated Credit Agreement, dated as of March 18, 2016;

b) that certain Amended and Restated Security and Pledge Agreement, dated as of June 30, 2014 among SN, the guarantors party thereto and Royal Bank of Canada, as administrative agent;

c) that certain 6.125% Senior Secured Notes Due 2023 Indenture dated June 27, 2014 among SN, the guarantors party thereto, and U.S. Bank National Association, as trustee; and

d) that certain 7.75% Senior Notes Due 2021 Indenture dated June 13, 2013 among SN, the guarantors party thereto, and U.S. Bank National Association, as trustee, as supplemented by that certain First Supplemental Indenture, dated as of September 11, 2013 and as further supplemented by that certain Second Supplemental Indenture, dated as of June 2, 2014.

Subject to the assumptions, qualifications, exclusions and other limitations which are identified in this opinion letter, we advise you, and with respect to each legal issue addressed in this opinion letter, it is our opinion, that:

1. The execution and delivery by any Company Party of the Operative Documents to which it is a party, and the performance by any Company Party of the Operative Documents to which it is a party, will not constitute a breach or violation of, with respect to any Company Party, or result in the creation of any lien upon or security interest in any Company Party's properties pursuant to, the Debt Documents, provided that we express no opinion with respect to breaches, violations or defaults under any cross-default provision or with respect to any financial covenants or tests in any such agreement or instrument.

With your consent, we have assumed for purposes of this letter and the opinions herein:

(a) that each document we have reviewed for purposes of this letter is accurate and complete, each such document that is an original is authentic, each such document that is a copy conforms to an authentic original, and all signatures on each such document are genuine, and that all natural persons who have signed any document have the legal capacity to do so;

(b) that each Operative Document and every other agreement we have examined for purposes of this letter has been duly authorized, executed and delivered by the parties thereto and constitutes a valid and binding obligation of each party to that document, enforceable against each such party in accordance with its respective terms and that each such party has satisfied all legal requirements that are applicable to such party to the extent necessary to entitle such party to enforce such agreement and that each party to any Operative Document is in good standing and duly incorporated or organized under the laws of its jurisdiction of organization;

(c) there are no agreements or understandings among the parties, written or oral (other than the Operative Documents and the Debt Documents), and there is no usage of trade or course of prior dealing among the parties that would, in either case, define, supplement or qualify the terms of the Operative Documents; and

(d) that immediately prior to giving effect to the Agreement, each of the Operative Documents, including, without limitation the Purchase and Sale Agreement and the Marketing Agreement, as such documents exist, have not been amended or otherwise modified, and each such agreement is in full force and effect and enforceable in accordance with its terms against all parties thereto and all parties thereto were, on the execution date thereof, existing and in good standing in their respective jurisdictions of organization.

In preparing this letter, we have relied without any independent verification upon: (i) information contained in certificates obtained from governmental authorities; (ii) factual information represented to be true in the Operative Documents; (iii) factual information provided to us in a support certificate signed by each of the Company Parties; and (iv) factual information we have obtained from such other sources as we have deemed reasonable and we have examined the originals or copies certified to our satisfaction of such other limited liability or partnership records of the Company Parties as we deem necessary for or relevant to our opinions. We have assumed without investigation that the information upon which we have relied is accurate and does not omit disclosures necessary to prevent such information from being misleading.

The terms "knowledge," "actual knowledge" and "aware" whenever used in this letter with respect to our firm mean

conscious awareness at the time this letter is delivered on the date it bears by the lawyers with Kirkland & Ellis LLP at that time who spent substantial time representing the Company Parties in connection with the Operative Documents (herein called our "Designated Transaction Lawyers").

Except as expressly otherwise set forth in this letter, our advice on every legal issue addressed in this letter is based exclusively on the internal laws of the State of New York or the Federal law of the United States which, in each case, in our experience is generally applicable both to general business organizations which are not engaged in regulated business activities and to transactions of the type contemplated in the Operative Documents between the Company Parties, on the one hand, and you and the other parties thereto, on the other hand (but without our having made any special investigation as to any other laws) and the Debt Documents, except that we express no opinion or advice as to any law or legal issue (a) which might be violated by any misrepresentation or omission or a fraudulent act, or (b) to which any Company Party may be subject as a result of your legal or regulatory status, your sale or transfer of the Loans (as defined in the Partnership Credit Agreement) or interests therein or your involvement in the transactions contemplated by the Operative Documents.

For purposes of our opinion, we have assumed that the Operative Documents governed by the internal laws of Delaware are governed by the internal laws of New York.

None of the opinions or other advice contained in this letter considers or covers: (i) any federal or state securities (or "blue sky") laws or regulations or Federal Reserve Board margin regulations or (ii) federal or state antitrust and unfair competition laws and regulations, pension and employee benefit laws and regulations, compliance with fiduciary duty requirements, federal and state environmental, land use and subdivision, tax, racketeering (e.g., RICO), health and safety (e.g., OSHA), and labor laws and regulations, federal and state laws, regulations and policies concerning national and local emergency, possible judicial deference to acts of sovereign states and criminal and civil forfeiture laws, and other federal and state statutes of general application to the extent they provide for criminal prosecution (e.g., mail fraud and wire fraud statutes).

We also express no opinion regarding any laws relating to terrorism or money laundering, including Executive Order No. 13224, 66 Fed. Reg. 49079 (published September 25, 2001) (the "Terrorism Executive Order") or any related enabling legislation or any other similar executive order (collectively with the Terrorism Executive Order, the "Executive Orders"), the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56, the "Patriot Act"), any sanctions and regulations promulgated under authority granted by the Trading with the Enemy Act, 50 U.S.C. App. 1-44, as amended from time to time, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06, as amended from time to time, the Iraqi Sanctions Act, Publ. L. No. 101-513; United Nations Participation Act, 22 U.S.C. § 287c, as amended from time to time, the International Security and Development Cooperation Act, 22 U.S.C. § 2349 aa-9, as amended from time to time, The Cuban Democracy Act, 22 U.S.C. §§ 6001-10, as amended from time to time, The Cuban Liberty and Democratic Solidarity Act, 18 U.S.C. §§ 2332d and 2339b, as amended from time to time, and The Foreign Narcotics Kingpin Designation Act, Publ. L. No. 106-120, as amended from time to time.

We express no opinion as to what law might be applied by any other courts to resolve any issue addressed in this letter. We advise you that issues addressed by this letter may be governed in whole or in part by other laws, but we express no opinion as to whether any relevant difference exists between the laws upon which our opinions are based and any other laws which may actually govern.

This opinion letter speaks as of the time of its delivery on the date it bears. We do not assume any obligation to provide you with any subsequent opinion or advice by reason of any fact about which our Designated Transaction Lawyers did not have actual knowledge at that time, by reason of any change subsequent to that time in any law covered by any of our opinions, or for any other reason.

You may rely upon this letter only for the purpose served by the provision in the Agreement cited in the second paragraph of this opinion letter in response to which it has been delivered. Without our written consent: (i) no person other than you may rely on this opinion letter for any purpose; (ii) this opinion letter may not be cited or quoted in any financial statement, prospectus, private placement memorandum or other similar document; (iii) this opinion letter may not be cited or quoted in any other document or communication which might encourage reliance upon this opinion letter by any person or for

any purpose excluded by the restrictions in this paragraph; and (iv) copies of this opinion letter may not be furnished to anyone for purposes of encouraging such reliance. Notwithstanding the foregoing, the opinion in this letter may be relied upon by the JPMorgan National Association, in its capacity as Administrative Agent under the Partnership Agreement and the Lenders party thereto to the same extent as if this letter was addressed to them.

Sincerely,

/s/ Kirkland & Ellis LLP

KIRKLAND & ELLIS LLP

**EXHIBIT M-3 TO
CREDIT AGREEMENT**

**LEGAL OPINION OF AKIN GUMP STRAUSS HAUER & FELD LLP**

[Attached]

Akin Gump
STRAUSS HAUER & FELD LLP

March 1, 2017

GSO ST Holdings LP
GSO ST Holdings Associates LLC
JPMorgan Chase Bank, N.A.,
as Administrative Agent
under the First Lien Credit Agreement (defined below)

Re: The Opinion Parties (defined below)

Ladies and Gentlemen:

Solely for purposes of rendering the opinions expressed herein we have acted as special counsel to Sanchez Energy Corporation, a Delaware corporation ("***SN***"), SN EF UnSub Holdings, LLC, a Delaware limited liability company (the "***Common Unit Purchaser***"), SN UR Holdings, LLC, a Delaware limited liability company (the "***GP Member***"), SN EF UnSub GP, LLC, a Delaware limited liability company (the "***GP***"), and SN EF UnSub, LP, a Delaware limited partnership (the "***Partnership***" and, together with the GP Member, the Common Unit Purchaser and the GP, the "***Opinion Parties***"), in connection with the Amended and Restated Securities Purchase Agreement dated February 28, 2017 (the "***Purchase Agreement***") by and among SN, the GP Member, the Common Unit Purchaser, the Partnership, the GP, Intrepid Private Equity V-A, LLC, a Delaware limited liability company ("***Intrepid***"), GSO ST Holdings Associates LLC, a Delaware limited liability company ("***GSO Associates***"), and GSO ST Holdings LP, a Delaware limited partnership ("***GSO Holdings***"). This opinion is being rendered at the request of SN pursuant to Section 2.06(a)(viii)(b) of the Purchase Agreement and Section 6.1(d)(iii) of the First Lien Credit Agreement (the "***First Lien Credit Agreement***") dated March 1, 2017 among the Partnership, as the borrower, JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the "***FLCA Administrative Agent***"), collateral agent (in such capacity, the "***FLCA Collateral Agent***"), and the lenders party thereto (the "***FLCA Lenders***") and others. All capitalized terms used in this letter, without definition, have the meanings assigned to them in the Purchase Agreement.

In connection with this letter, we have examined executed originals or copies of executed originals of the Purchase Agreement and each of the following documents (such following documents, collectively, the "***SN Debt Documents***"):

(a) Indenture, dated as of June 13, 2013, among SN, the subsidiary guarantors named therein and U.S. Bank National Association, as trustee, as supplemented by the First Supplemental Indenture, dated as of September 11, 2013, by and among SN, SN TMS, LLC, the existing guarantors and U.S. Bank National Association as trustee, and the Second Supplemental Indenture, dated as of June 2, 2014, by and among SN, SN Catarina, LLC, the existing guarantors and U.S. Bank National Association as trustee (as so supplemented, the "***2013 Indenture***");

(b) Indenture, dated as of June 27, 2014, among SN, the subsidiary guarantors named therein and U.S. Bank National Association, as trustee (the "***2014 Indenture***" and, together with the 2013 Indenture, the "***Indentures***"); and

(c) Second Amended and Restated Credit Agreement dated as of June 30, 2014 among SN, Royal Bank of Canada, as Administrative Agent, and the subsidiary guarantors, lenders and others named therein, as amended by (i) the First Amendment dated as of September 9, 2014, (ii) the Second Amendment dated as of March 31, 2015, (iii) the Third Amendment dated as of July 20, 2015; (iv) the Fourth Amendment dated as of September 29, 2015, (v) the Fifth Amendment dated as of October 30, 2015, (vi) the Sixth Amendment dated as of January 22, 2016, and (vii) the Seventh Amendment dated as of March 18, 2016 (as so amended, the "***Credit Agreement***").

In addition, we have examined the following documents (collectively, the "***Due Diligence Documents***"):

(i) the Amended and Restated Certificate of Limited Partnership of the Partnership dated March 1, 2017;

(ii) the Amended and Restated Agreement of Limited Partnership of the Partnership dated March 1, 2017;

(iii) the Amended and Restated Certificate of Formation of the GP dated March 1, 2017;

(iv) the Amended and Restated Limited Liability Company Agreement of the GP dated March 1, 2017;

(v) the Amended and Restated Certificate of Formation of Common Unit Purchaser dated March 1, 2017;

(vi) the Amended and Restated Limited Liability Company Agreement of Common Unit Purchaser dated March 1, 2017;

(vii) the Certificate of Formation of the GP Member dated December 21, 2015;

(viii) the Limited Liability Company Agreement of the GP Member dated December 21, 2015;

(ix) SN's Restated Certificate of Incorporation effective as of May 28, 2013;

(x) SN's Certificate of Designations of Series C Junior Participating Preferred Stock;

(xi) SN's Amended and Restated Bylaws;

(xii) certificates executed by the officers of SN on behalf of SN, including the certificates designating, or evidencing the designation of, each of the Opinion Parties as "Unrestricted Subsidiaries" under and as defined in the applicable SN Debt Documents attached hereto as Annex I, Annex II and Annex III, which certificates include copies of the resolutions of the Board of Directors of SN designating each of the Opinion Parties as an Unrestricted Subsidiary of SN under the applicable SN Debt Document (collectively, the "***Certificates***"); and

(xiii) the documents listed on Exhibit A (such documents, together with the Purchase Agreement, in each case, as in effect on the date hereof, the "***Transaction Documents***").

We have examined originals or certified copies of such corporate records of SN and other certificates and documents of officials of SN, public officials and others as we have deemed appropriate for purposes of this letter, except where a statement is qualified as to knowledge or awareness, in which case we have not made any inquiry, as specified below. As to various questions of fact relevant to this letter, we have relied, without independent investigation, upon the Certificates and other Due Diligence Documents, certificates of public officials, certificates of officers of SN and representations and warranties of SN and the Opinion Parties in the Transaction Documents, all of which we assume to be true, correct and complete. We wish to inform you that our knowledge is necessarily limited due to the limited scope of our review. In addition, we have made no inquiry of the Partnership, the Common Unit Purchaser, the GP, the Common Unit Purchaser Parent, SN or any other person or entity, including governmental authorities ("***Person***"), regarding, and have conducted no review of, any judgments, orders, decrees, franchises, licenses, certificates, permits or other public records or agreements to which any such Person or any of their subsidiaries is a party other than the Transaction Documents, the SN Debt Documents and the Due Diligence Documents.

We have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals, and the conformity to authentic original documents of all copies submitted to us as conformed, certified or reproduced copies. In our examination of documents, we have also assumed the legal capacity of natural persons, the corporate or other power and due authorization of each Person not a natural person to execute and deliver such documents and to consummate the transactions contemplated thereby, the due execution and delivery of each such document by all parties thereto (other than, solely with respect to the Certificates, SN), and that each such document constitutes the valid and binding obligation of each party thereto, enforceable against such party in accordance with its terms.

Based upon the foregoing and subject to the assumptions, exceptions, qualifications and limitations set forth herein, we are of the opinion that, as of the date hereof, (i) each of the Opinion Parties has been designated an Unrestricted Subsidiary under and pursuant to each of the SN Debt Documents and (ii) as such, no Opinion Party is required to become a "Guarantor" under and as defined in the respective SN Debt Document, (x) immediately after and, as a consequence of such Opinion Party entering into any Transaction Document to which it (or any other Opinion Party) is a party, or (y) as a consequence of such Opinion Party performing its obligations under such Transaction Document (in accordance with its terms).

The opinions and other matters in this letter are qualified in their entirety and subject to the following:

A. We express no opinion as to the laws of any jurisdiction other than the Included Laws. We have made no special investigation or review of any published constitutions, treaties, laws, rules or regulations or judicial or administrative decisions ("***Laws***"), other than a review of (i) the Laws of the State of New York, (ii) the Delaware General Corporate Law, (iii) the Delaware Act, (iv) the DRULPA and (v) the Federal Laws of the United States of America. For purposes of this opinion, the term "***Included Laws***" means the items described in clauses (i), (ii), (iii), (iv) and (v) of the preceding sentence that are, in our experience, normally applicable to transactions of the type contemplated in the Transaction Documents and the SN Debt Documents. The term Included Laws specifically excludes (a) Laws of any counties, cities, towns, municipalities and special political subdivisions and any agencies thereof; (b) zoning, land use, building and construction Laws; (c) Federal Reserve Board margin regulations; (d) any commodities, environmental, labor, pension, employee benefit, antiterrorism, money laundering, insurance, antitrust, or intellectual property Laws; (e) tax laws; (f) state or United States Federal securities Laws; and (g) any Laws that may be applicable to SN and its subsidiaries by virtue of the particular nature of the business of SN and its subsidiaries, including, without limitation, the laws regulating the acquisition, exploitation, exploration, development, production and transportation of oil and natural gas.

B. This letter and the matters addressed herein are as of the date hereof or such earlier date as is specified herein, and we undertake no, and hereby disclaim any, obligation to advise you of any change in any matter set forth herein, whether based on a change in the Law, a change in any fact relating to SN, the Common Unit Purchaser, the GP Member, the GP, the Partnership, or any other Person, or any other circumstance. This letter is limited to the matters expressly stated herein and no opinions are to be inferred or may be implied beyond the opinions expressly set forth herein.

C. We have assumed that no, and we express no opinion as to whether any, provision in the Transaction Documents purporting to provide that SN, any guarantor under the SN Debt Documents or any other subsidiary of SN other than an Unrestricted Subsidiary (each, an "***SN Person***") has joint and several liability with the Partnership or any other Person (in either case, an "***Other Person***") constitutes (i) a "guarantee" or "other contingent obligation" of any SN Person with respect to any indebtedness or other liability of any Other Person, (ii) a direct or indirect obligation of any SN Person (x) to subscribe for additional equity interests, (y) to maintain or preserve any Other Person's financial condition or (z) to cause any Other Person to achieve any specified levels of operating results or (iii) a "guarantee" by or "other contingent liability of" any Other Person with respect to any indebtedness or other liability any SN Person, in each case, within the meanings of such terms under any applicable SN Debt Document. We have also assumed that (x) none of, and we express no opinion as to whether, the obligations of SN EF Maverick, LLC with respect to hedging transactions under or pursuant to Section 11.9 of the APC/KM PSA constitute Indebtedness under and as defined in each of the Indentures and (y) each Opinion Party has met, and continues to meet, the requirements of an "Unrestricted Subsidiary" as defined in each of the SN Debt Documents since being designated an Unrestricted Subsidiary (other than as a consequence of such Opinion Party (I) entering into any Transaction Document to which it (or any other Opinion Party) is a party, or (II) performing its obligations under such Transaction Document in accordance with its terms).

D. Except with respect to the Transaction Documents (which are addressed in Paragraph C above, in Paragraph F below and in our opinion paragraph above), we have assumed that no SN Person or Opinion Party has entered into any agreement or taken any action, which agreement or action would constitute a failure of any Opinion Party to meet the requirements as an "Unrestricted Subsidiary," or that would otherwise require any Opinion Party to be a "Restricted Subsidiary," under and as defined in each of the respective SN Debt Documents. We are not aware of nor is there known to us any, and to our actual knowledge there is no, agreement entered into or action taken by any SN Person or any Opinion Party that could constitute such a failure or that could otherwise so require any Opinion Party to be a "Restricted Subsidiary," other than (x) the

Transaction Documents (which are addressed in Paragraph C above, in Paragraph F below and in our opinion paragraph above) and (y) the Basic Documents constituting the Credit Facility and the Senior Debt (to which clause (y) we express no opinion). The phrases "known to us," "to our actual knowledge" and similar phrases mean the conscious awareness of facts or other information by lawyers currently in our firm actively involved in negotiating and preparing the Transaction Documents and do not require or imply (a) any examination of this firm's, such lawyer's or any other person's or entity's files, (b) that any inquiry be made of the client, any lawyer (other than the lawyers described above), or any other person or entity, or (c) any review or examination of any agreements, documents, certificates, instruments or other papers (including, but not limited to, the exhibits and schedules to the Transaction Documents and the Due Diligence Documents and the various papers referred to in or contemplated by the Transaction Documents and the Due Diligence Documents and the respective exhibits and schedules thereto) other than the Transaction Documents and the Due Diligence Documents.

E. We understand other counsel are addressing the issue as to whether, and we have assumed that, and express no opinion as to whether, the execution and delivery by each of SN, the "Restricted Subsidiaries" of SN under and as defined in any SN Debt Document and the Opinion Parties of the Transaction Documents to which it is a party do not, and the consummation by each of SN, such "Restricted Subsidiaries" and the Opinion Parties of the transactions contemplated by under each such Transaction Documents to which it is a party will not, breach or result in a default under any SN Debt Document.

F. We express no opinion with respect to the fairness of the Transaction Documents (whether individually or collectively) or any other matter, and in rendering the opinions expressed herein, we have assumed, with your consent, that a court of competent jurisdiction would find all such matters were entirely fair to SN and any Person constituting a "Restricted Subsidiary" of SN under and as defined in any SN Debt Document and, thus, as to any such matter involving an agreement, contract, arrangement or understanding with an Opinion Party, no less favorable to SN or such Restricted Subsidiary than that obtainable from non-Affiliates of SN. We have assumed that no fraud, dishonesty, forgery, coercion, duress or breach of fiduciary duty exists or will exist with respect to any of the matters relevant to the opinions expressed in this letter.

G. We express no opinion as to (i) the compliance of the transactions contemplated by the Transaction Documents with any Laws applicable to any party or (except to the extent that we opine above) any agreements of any party; (ii) the financial condition or solvency of SN, the Common Unit Purchaser, the Common Unit Purchaser Parent, the GP, the Partnership, or any other Person; (iii) the ability (financial or otherwise) of SN, the Common Unit Purchaser, the Common Unit Purchaser Parent, the GP, the Partnership, or any other Person to meet their respective obligations under any Transaction Document; (iv) the enforceability of any Transaction Document; (v) the value of any security provided to secure the payment or obligations contemplated by any Transaction Document; (vi) the conformity of the Transaction Documents to any term sheet or commitment letter; or (vii) except as expressly set forth in this letter, any other matter in respect of or connection with the Transaction Documents, the Opinion Parties or any of their respective Affiliates.

This letter is solely for the benefit of GSO Associates, GSO Holdings, the FLCA Administrative Agent, the FLCA Collateral Agent and the FLCA Lenders and no other Persons shall be entitled to rely upon this letter. Without our prior written consent, this letter may not be quoted in whole or in part or otherwise referred to in any document and may not be furnished or otherwise disclosed to or used by any other Person, except for (i) delivery of copies hereof to counsel for the addressees hereof and to the FLCA Collateral Agent and the FLCA Lenders and their respective counsel, head offices and prospective transferees, (ii) inclusion of copies hereof in a closing file, (iii) use hereof in any legal proceeding arising out of the transactions contemplated by the Purchase Agreement filed by an addressee hereof against this law firm or in which any addressee hereof is a defendant and (iv) where required by applicable Law or competent Governmental Authority.

Very truly yours,

/s/ Akin Gump Straus Hauer & Feld, LLP

AKIN GUMP STRAUSS HAUER & FELD, LLP

**Exhibit A**

1. the APC/KM PSA
2. the Management Services Agreement
3. the Joint Development Agreement
4. the Hydrocarbons Marketing Agreement
5. the GSO Warrant Agreement
6. the GSO Registration Rights Agreement
7. the Equity Commitment Letters
8. the GSO Voting Agreement
9. the GSO Non-Solicitation Agreement
10. the SN Letter Agreement
11. the Partnership Agreement
12. the GP LLC Agreement
13. the Drilling Commitment Agreement

**Annex I**

**Credit Agreement Designation Certificate**

**[See attached.]**

**OFFICER'S CERTIFICATE**

**SANCHEZ ENERGY CORPORATION**

**January 11, 2017**

The undersigned, Howard J. Thill, hereby certifies that he is the duly elected, qualified and acting Executive Vice President and Chief Financial Officer of Sanchez Energy Corporation, a Delaware corporation (the "***Company***"), and, in connection with that certain Second Amended and Restated Credit Agreement (as amended, the "***Credit Agreement***") dated June 30, 2014 among the Company, SN Palmetto, LLC (f/k/a SEP Holdings III, LLC), SN Marquis LLC, SN Cotulla Assets, LLC, SN Operating, LLC, SN TMS, LLC, SN Catarina, LLC, Royal Bank of Canada, as Administrative Agent, and the other financial institutions party thereto, further certifies (on behalf of the Company and not in his individual capacity) that:

1. Each of SN EF UnSub Holdings, LLC, a Delaware limited liability company ("***Holdings***"), SN EF UnSub GP, LLC, a Delaware limited liability company ("***GP***"), and SN EF UnSub, LP, a Delaware limited partnership ("***LP***"), is a Subsidiary of the Company.

2. The Board of Directors of the Company, by resolutions duly adopted by it, which resolutions have not been modified or amended and remain in full force and effect as of the date hereof and are attached hereto as Annex I, has designated each of Holdings, GP and LP as an Unrestricted Subsidiary.

3. The designation of each of Holdings, GP and LP as an Unrestricted Subsidiary is in compliance with the terms of the definition of Unrestricted Subsidiary as set forth in the Credit Agreement.

The terms which are capitalized herein shall, unless otherwise defined, have the same meanings set forth in the Credit Agreement. This officer's certificate is given pursuant to Section 8.16(b) of the Credit Agreement and the definition of Unrestricted Subsidiary in the Credit Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has signed this Officer's Certificate as of the date first set forth above.

**SANCHEZ ENERGY CORPORATION**

By: /s/ Howard J. Thill
Name: Howard J. Thill
Title: Executive Vice President and Chief Financial Officer

Received and acknowledged by:

Royal Bank of Canada, as Administrative Agent

By: ____________________
Name:
Title:

**Annex I**

**Credit Agreement**

**WHEREAS**, the Board has determined that it is in the best interest of the Company that, for purposes of the Credit Agreement, each of SN EF UnSub Holdings, LLC, a Delaware limited liability company (the "***Common Unit Purchaser***"), SN EF UnSub GP, LLC, a Delaware limited liability company ("***GP***"), and SN EF UnSub, LP, a Delaware limited partnership ("***Unsub***"), be designated as an "Unrestricted Subsidiary," as such term is defined in the Credit Agreement.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the Credit Agreement, the Board designates each of the Common Unit Purchaser, GP and UnSub to be an "Unrestricted Subsidiary" as defined in the Credit Agreement until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the Credit Agreement, the Board, on behalf of the Company and in the Company's capacity as the sole member of SN UR Holdings, LLC, a Delaware limited liability company (including in its capacity as (i) the sole member of the Common Unit Purchaser and (ii) the sole member of GP (including in its capacity as the general partner of UnSub)) hereby designates each of the Common Unit Purchaser, GP and UnSub to be an "Unrestricted Subsidiary" as defined in the Credit Agreement until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**Annex II**

**2013 Indenture Designation Certificates**

**[See attached.]**

**SANCHEZ ENERGY CORPORATION**

**Officers' Certificate**

**January 11, 2017**

Delaware Trust Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808
Attention: Trust Administration
Facsimile: (302) 636-8666

This Officers' Certificate is delivered to and filed with you in accordance with Section 4.18 and the definition of "Unrestricted Subsidiary" appearing in Section 1.01 of that certain Indenture, dated as of June 13, 2013 (the "***Original Indenture***"), as supplemented by that certain First Supplemental Indenture, dated as of September 11, 2013 (the "***First Supplemental Indenture***"), and that certain Second Supplemental Indenture, dated as of June 2, 2014 (the "Second Supplemental Indenture", and the Original Indenture as supplemented by the First Supplemental Indenture and the Second Supplemental Indenture, the "***Indenture***"), among Sanchez Energy Corporation (the "***Company***"), the Guarantors party thereto and Delaware Trust Company, as successor trustee (the "***Trustee***") relating to the Company's 7.75% Senior Notes due 2021. All capitalized terms used in this certificate, without definition, have the meanings assigned to them in the Indenture.

Each of the undersigned, in his or her capacity as an officer of the Company, hereby certifies on behalf of the Company that:

(1) Such undersigned officer has read Sections 1.01, 4.07, 4.11 and 4.18 of the Indenture and the definitions and other provisions related thereto.

(2) The statements contained herein are based upon an examination by such undersigned of the Indenture and such corporate records, agreements, documents and other instruments as such undersigned has deemed relevant and necessary as the basis for the statements set forth herein.

(3) SN EF UnSub Holdings, LLC, a Delaware limited liability company ("***Holdings***"), SN EF UnSub GP, LLC, a Delaware limited liability company ("***GP***"), and SN EF UnSub, LP, a Delaware limited partnership ("***LP***"), have no Indebtedness other than Non-Recourse Debt owing to any Person other than the Company or any of its Restricted Subsidiaries, except for any such Indebtedness that is subject to a guarantee by the Company or Restricted Subsidiary that constitutes an Investment in any of Holdings, GP or LP that has been effected as a Restricted Payment, Permitted Payment or Permitted Investment that complies with Section 4.07 of the Indenture.

(4) Except as permitted by Section 4.11 of the Indenture, none of Holdings, GP and LP, as of the date hereof, are parties to any agreement, contract, arrangement or understanding, taken as a whole with all of its other agreements, contracts, arrangements and understandings, with the Company or any Restricted Subsidiary of the Company, except for any such agreement, contract, arrangement or understanding the terms of which are no less favorable to the Company or any such Restricted Subsidiary than those that might have been obtained at the time from Persons who are not Affiliates of the Company, except for any agreement, contract, arrangement or understanding with the Company or Restricted Subsidiary that constitutes an Investment in any of Holdings, GP or LP that has been effected as a Restricted Payment, Permitted Payment or Permitted Investment that complies with Section 4.07 of the Indenture.

(5) Neither the Company nor any of its Restricted Subsidiaries has any direct or indirect obligation (a) to subscribe for additional Equity Interests in any of Holdings, GP or LP or (b) to maintain or preserve any of Holdings', GP's or LP's financial condition or to cause any of Holdings, GP or LP to achieve any specified levels of operating results, except for any equity subscription or credit support obligation of the Company or Restricted

Subsidiary that constitutes an Investment in any of Holdings, GP or LP that has been effected as a Restricted Payment, Permitted Payment or Permitted Investment that complies with Section 4.07 of the Indenture.

(6) None of Holdings, GP or LP has guaranteed or otherwise become an obligor on any Indebtedness of the Company or any of its Restricted Subsidiaries.

(7) Attached as Annex I hereto are resolutions duly adopted by the Board of Directors of the Company (the "***Board***") on January 11, 2017 designating each of Holdings, GP and LP as an Unrestricted Subsidiary for purposes of the Indenture; and such resolutions have not been modified or amended and remain in full force and effect as of the date hereof.

(8) Such undersigned officer is a Company Officer involved in or otherwise familiar with the designation of each of Holdings, GP and LP as an Unrestricted Subsidiary.

(9) Such undersigned officer has made such examination or investigation as is necessary to enable the undersigned to express an informed opinion as to whether or not all conditions and covenants, if any, provided for in the Indenture with respect to the designation of each of Holdings, GP and LP as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied.

(10) In the opinion of such undersigned officer, all conditions and covenants, if any, provided for in the Indenture relating to the designation of each of Holdings, GP and LP as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied and each such designation was permitted by the Indenture. Without limiting the foregoing, such designation complied with the conditions of Section 4.18 and was permitted by Section 4.07 of the Indenture.

**[Signature page to follow]**

Case 22-90018 Document 858-24 Filed in TXSB on 06/12/23 Page 125 of 200

IN WITNESS WHEREOF, the undersigned, in their respective capacities as officers of the Company, have duly executed this Officers' Certificate on behalf of the Company as of the date first set above.

**SANCHEZ ENERGY CORPORATION**

By: /s/ Antonio R. Sanchez, III
Name: Antonio R. Sanchez, III
Title: Chief Executive Officer

By: /s/ Eduardo A. Sanchez
Name: Eduardo A. Sanchez
Title: President

<u>**Annex I**</u>

**2013 Indenture**

**WHEREAS**, the Board has determined that it is in the best interest of the Company that, for purposes of the 2013 Indenture, each of SN EF UnSub Holdings, LLC, a Delaware limited liability company (the "***Common Unit Purchaser***"), SN EF UnSub GP, LLC, a Delaware limited liability company ("***GP***"), and SN EF UnSub, LP, a Delaware limited partnership ("***UnSub***"), be designated as an "Unrestricted Subsidiary," as such term is defined in the 2013 Indenture.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2013 Indenture, the Board designates each of the Common Unit Purchaser, GP and UnSub to be an "Unrestricted Subsidiary" as defined in the 2013 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2013 Indenture, the Board, on behalf of the Company and in the Company's capacity as the sole member of SN UR Holdings, LLC, a Delaware limited liability company (including in its capacity as (i) the sole member of the Common Unit Purchaser and (ii) the sole member of GP (including in its capacity as the general partner of UnSub)), hereby designates each of the Common Unit Purchaser, GP and UnSub to be an "Unrestricted Subsidiary" as defined in the 2013 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**SANCHEZ ENERGY CORPORATION**

**Officers' Certificate**

**February 8, 2016**

U.S. Bank National Association
5555 San Felipe, Suite 1150
Houston, Texas 77056
Attention Corporate Trust Services
Facsimile No.: (713) 235-9213

This Officers' Certificate is delivered to and filed with you in accordance with Section 4.18 and the definition of "Unrestricted Subsidiary" appearing in Section 1.01 of that certain Indenture, dated as of June 13, 2013 (the "***Original Indenture***"), as supplemented by that certain First Supplemental Indenture, dated as of September 11, 2013 (the "***First Supplemental Indenture***"), and that certain Second Supplemental Indenture, dated as of June 2, 2014 (the "Second Supplemental Indenture", and the Original Indenture as supplemented by the First Supplemental Indenture and the Second Supplemental Indenture, the "***Indenture***"), among Sanchez Energy Corporation (the "***Company***"), the Guarantors party thereto and U.S. Bank National Association, as trustee (the "***Trustee***") relating to the Company's 7.75% Senior Notes due 2021. All capitalized terms used in this certificate, without definition, have the meanings assigned to them in the Indenture.

Each of the undersigned, in his or her capacity as an officer of the Company, hereby certifies on behalf of the Company that:

(1) The undersigned officer has read Sections 1.01, 4.07, 4.10, 4.11 and 4.18 of the Indenture and the definitions and other provisions related thereto.

(2) The statements contained herein are based upon an examination by the undersigned of the Indenture and such corporate records, agreements, documents and other instruments as the undersigned has deemed relevant and necessary as the basis for the statements set forth herein.

(3) SN UR Holdings, LLC, a Delaware limited liability company ("***Holdings***"), and SN Terminal, LLC, a Delaware limited liability company ("***Terminal***"), have no Indebtedness other than Non-Recourse Debt owing to any Person other than the Company or any of its Restricted Subsidiaries.

(4) Except as permitted by Section 4.11 of the Indenture, Holdings and Terminal, as of the date hereof, are not parties to any agreement, contract, arrangement or understanding, taken as a whole with all of its other agreements, contracts, arrangements and understandings, with the Company or any Restricted Subsidiary of the Company the terms of which are no less favorable to the Company or any such Restricted Subsidiary than those that might be obtained at the time from Persons who are not Affiliates of the Company.

(5) Neither the Company nor any of its Restricted Subsidiaries has any direct or indirect obligations (a) to subscribe for additional Equity Interests in Holdings or Terminal or (b) to maintain or preserve Holdings' or Terminal's financial condition or to cause Holdings or Terminal to achieve any specified levels of operating results.

(6) Neither Holdings nor Terminal has guaranteed or otherwise become an obligor on any Indebtedness of the Company or any of its Restricted Subsidiaries.

(7) Pursuant to (i) the Limited Liability Company Agreement of Holdings and (ii) that certain Equity Interests Assignment Agreement dated February 8, 2016, the Company is making an Investment in Holdings as a result of the receipt of non-cash consideration from a transaction made pursuant to and in compliance with Section 4.10 of the Indenture, which constitutes a Permitted Investment.

(8) Attached as Annex I hereto are resolutions duly adopted by the Board of Directors of the Company (the "***Board***") on January 19, 2016 designating Holdings and Terminal as Unrestricted Subsidiaries for purposes of the Indenture; and such resolutions have not been modified or amended and remain in full force and effect as of the date hereof.

(9) Each of the undersigned is a Company Officer involved in or otherwise familiar with the designation of each of Holdings and Terminal as an Unrestricted Subsidiary.

(10) The undersigned officer has made such examination or investigation as is necessary to enable the undersigned to express an informed opinion as to whether or not all conditions and covenants, if any, provided for in the Indenture with respect to the designation of each of Holdings and Terminal as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied.

(11) In the opinion of the undersigned officer, all conditions and covenants, if any, provided for in the Indenture relating to the designation of each of Holdings and Terminal as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied and each such designation was permitted by the Indenture.

**[Signature page to follow]**

IN WITNESS WHEREOF, the undersigned, in their respective capacities as officers of the Company, have duly executed this Officers' Certificate on behalf of the Company as of the date first set above.

**SANCHEZ ENERGY CORPORATION**

By: /s/ G. Gleeson Van Riet
Name: G. Gleeson Van Riet
Title: Senior Vice President and Chief Financial Officer

By: /s/ Kirsten A. Hink
Name: Kirsten A. Hink
Title: Senior Vice President and Chief Accounting Officer

**Annex I**

**Indenture**

**WHEREAS**, the Board has determined that it is in the best interest of the Company that, for purposes of the Indentures, each of Holdings and Terminal be designated as an "Unrestricted Subsidiary," as such term is defined in each respective Indenture.

**NOW, THEREFORE, BE IT RESOLVED**, that, for purposes of and in accordance with the 2013 Indenture, the Board designates Holdings to be an "Unrestricted Subsidiary" as defined in the 2013 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2013 Indenture, the Board, on behalf of the Company and in the Company's capacity as the sole member of Holdings, designates Terminal to be an "Unrestricted Subsidiary" as defined in the 2013 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2014 Indenture, the Board designates Holdings to be an "Unrestricted Subsidiary" as defined in the 2014 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2014 Indenture, the Board, on behalf of the Company and in the Company's capacity as the sole member of Holdings, designates Terminal to be an "Unrestricted Subsidiary" as defined in the 2014 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**Annex III**

**2014 Indenture Designation Certificates**

**[See attached.]**

**SANCHEZ ENERGY CORPORATION**

**Officers' Certificate**

**January 11, 2017**

Delaware Trust Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808
Attention: Trust Administration
Facsimile: (302) 636-8666

This Officers' Certificate is delivered to and filed with you in accordance with Section 4.18 and the definition of "Unrestricted Subsidiary" appearing in Section 1.01 of that certain Indenture, dated as of June 27, 2014 (the "***Indenture***"), among Sanchez Energy Corporation (the "***Company***"), the Guarantors party thereto and Delaware Trust Company, as successor trustee (the "***Trustee***") relating to the Company's 6.125% Senior Notes due 2023. All capitalized terms used in this certificate, without definition, have the meanings assigned to them in the Indenture.

Each of the undersigned, in his or her capacity as an officer of the Company, hereby certifies on behalf of the Company that:

(1) Such undersigned officer has read Sections 1.01, 4.07, 4.11 and 4.18 of the Indenture and the definitions and other provisions related thereto.

(2) The statements contained herein are based upon an examination by such undersigned of the Indenture and such corporate records, agreements, documents and other instruments as such undersigned has deemed relevant and necessary as the basis for the statements set forth herein.

(3) SN EF UnSub Holdings, LLC, a Delaware limited liability company ("***Holdings***"), SN EF UnSub GP, LLC, a Delaware limited liability company ("***GP***"), and SN EF UnSub, LP, a Delaware limited partnership ("***LP***"), have no Indebtedness other than Non-Recourse Debt owing to any Person other than the Company or any of its Restricted Subsidiaries, except for any such Indebtedness that is subject to a guarantee by the Company or Restricted Subsidiary that constitutes an Investment in any of Holdings, GP or LP that has been effected as a Restricted Payment, Permitted Payment or Permitted Investment that complies with Section 4.07 of the Indenture.

(4) Except as permitted by Section 4.11 of the Indenture, none of Holdings, GP and LP, as of the date hereof, are parties to any agreement, contract, arrangement or understanding, taken as a whole with all of its other agreements, contracts, arrangements and understandings, with the Company or any Restricted Subsidiary of the Company, except for any such agreement, contract, arrangement or understanding the terms of which are no less favorable to the Company or any such Restricted Subsidiary than those that might have been obtained at the time from Persons who are not Affiliates of the Company, except for any agreement, contract, arrangement or understanding with the Company or Restricted Subsidiary that constitutes an Investment in any of Holdings, GP or LP that has been effected as a Restricted Payment, Permitted Payment or Permitted Investment that complies with Section 4.07 of the Indenture.

(5) Neither the Company nor any of its Restricted Subsidiaries has any direct or indirect obligation (a) to subscribe for additional Equity Interests in any of Holdings, Maverick, GP or LP or (b) to maintain or preserve any of Holdings', GP's or LP's financial condition or to cause any of Holdings, GP or LP to achieve any specified levels of operating results, except for any equity subscription or credit support obligation of the Company or Restricted Subsidiary that constitutes an Investment in any of Holdings, GP or LP that has been effected as a Restricted Payment, Permitted Payment or Permitted Investment that complies with Section 4.07 of the Indenture.

(6) None of Holdings, GP or LP has guaranteed or otherwise become an obligor on any Indebtedness of the Company or any of its Restricted Subsidiaries.

(7) Attached as Annex I hereto are resolutions duly adopted by the Board of Directors of the Company (the "***Board***") on January 11, 2017 designating each of Holdings, GP and LP as an Unrestricted Subsidiary for purposes of the Indenture; and such resolutions have not been modified or amended and remain in full force and effect as of the date hereof.

(8) Such undersigned officer is a Company Officer involved in or otherwise familiar with the designation of each of Holdings, GP and LP as an Unrestricted Subsidiary.

(9) Such undersigned officer has made such examination or investigation as is necessary to enable the undersigned to express an informed opinion as to whether or not all conditions and covenants, if any, provided for in the Indenture with respect to the designation of each of Holdings, GP and LP as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied.

(10) In the opinion of such undersigned officer, all conditions and covenants, if any, provided for in the Indenture relating to the designation of each of Holdings, GP and LP as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied and each such designation was permitted by the Indenture. Without limiting the foregoing, such designation complied with the conditions of Section 4.18 and was permitted by Section 4.07 of the Indenture.

**[Signature page to follow]**

IN WITNESS WHEREOF, the undersigned, in their respective capacities as officers of the Company, have duly executed this Officers' Certificate on behalf of the Company as of the date first set above.

**SANCHEZ ENERGY CORPORATION**

By: /s/ Antonio R. Sanchez, III
Name: Antonio R. Sanchez, III
Title: Chief Executive Officer

By: /s/ Eduardo A. Sanchez
Name: Eduardo A. Sanchez
Title: President

**Annex I**

**2014 Indenture**

**WHEREAS**, the Board has determined that it is in the best interest of the Company that, for purposes of the 2014 Indenture, each of SN EF UnSub Holdings, LLC, a Delaware limited liability company (the "***Common Unit Purchaser***"), SN EF UnSub GP, LLC, a Delaware limited liability company ("***GP***"), and SN EF UnSub, LP, a Delaware limited partnership ("***UnSub***"), be designated as an "Unrestricted Subsidiary," as such term is defined in the 2014 Indenture.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2014 Indenture, the Board designates each of the Common Unit Purchaser, GP and UnSub to be an "Unrestricted Subsidiary" as defined in the 2014 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2014 Indenture, the Board, on behalf of the Company and in the Company's capacity as the sole member of SN UR Holdings, LLC, a Delaware limited liability company (including in its capacity as (i) the sole member of the Common Unit Purchaser and (ii) the sole member of GP (including in its capacity as the general partner of UnSub)), hereby designates each of Holdings, GP and UnSub to be an "Unrestricted Subsidiary" as defined in the 2014 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**SANCHEZ ENERGY CORPORATION**

**Officers' Certificate**

**February 8, 2016**

U.S. Bank National Association
5555 San Felipe, Suite 1150
Houston, Texas 77056
Attention Corporate Trust Services
Facsimile No.: (713) 235-9213

This Officers' Certificate is delivered to and filed with you in accordance with Section 4.18 and the definition of "Unrestricted Subsidiary" appearing in Section 1.01 of that certain Indenture, dated as of June 27, 2014 (the "***Indenture***"), among Sanchez Energy Corporation (the "***Company***"), the Guarantors party thereto and U.S. Bank National Association, as trustee (the "***Trustee***") relating to the Company's 6.125% Senior Notes due 2023. All capitalized terms used in this certificate, without definition, have the meanings assigned to them in the Indenture.

Each of the undersigned, in his or her capacity as an officer of the Company, hereby certifies on behalf of the Company that:

(1) The undersigned officer has read Sections 1.01, 4.07, 4.10, 4.11 and 4.18 of the Indenture and the definitions and other provisions related thereto.

(2) The statements contained herein are based upon an examination by the undersigned of the Indenture and such corporate records, agreements, documents and other instruments as the undersigned has deemed relevant and necessary as the basis for the statements set forth herein.

(3) SN UR Holdings, LLC, a Delaware limited liability company ("***Holdings***"), and SN Terminal, LLC, a Delaware limited liability company ("***Terminal***"), have no Indebtedness other than Non-Recourse Debt owing to any Person other than the Company or any of its Restricted Subsidiaries.

(4) Except as permitted by Section 4.11 of the Indenture, Holdings and Terminal, as of the date hereof, are not parties to any agreement, contract, arrangement or understanding, taken as a whole with all of its other agreements, contracts, arrangements and understandings, with the Company or any Restricted Subsidiary of the Company the terms of which are no less favorable to the Company or any such Restricted Subsidiary than those that might be obtained at the time from Persons who are not Affiliates of the Company.

(5) Neither the Company nor any of its Restricted Subsidiaries has any direct or indirect obligations (a) to subscribe for additional Equity Interests in Holdings or Terminal or (b) to maintain or preserve Holdings' or Terminal's financial condition or to cause Holdings or Terminal to achieve any specified levels of operating results.

(6) Neither Holdings nor Terminal has guaranteed or otherwise become an obligor on any Indebtedness of the Company or any of its Restricted Subsidiaries.

(7) Pursuant to (i) the Limited Liability Company Agreement of Holdings and (ii) that certain Equity Interests Assignment Agreement dated February 8, 2016, the Company is making an Investment in Holdings as a result of the receipt of non-cash consideration from a transaction made pursuant to and in compliance with Section 4.10 of the Indenture, which constitutes a Permitted Investment.

(8) Attached as Annex I hereto are resolutions duly adopted by the Board of Directors of the Company (the "***Board***") on January 19, 2016 designating Holdings and Terminal as Unrestricted Subsidiaries for purposes of the Indenture; and such resolutions have not been modified or amended and remain in full force and effect as

of the date hereof.

(9) Each of the undersigned is a Company Officer involved in or otherwise familiar with the designation of each of Holdings and Terminal as an Unrestricted Subsidiary.

(10) The undersigned officer has made such examination or investigation as is necessary to enable the undersigned to express an informed opinion as to whether or not all conditions and covenants, if any, provided for in the Indenture with respect to the designation of each of Holdings and Terminal as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied.

(11) In the opinion of the undersigned officer, all conditions and covenants, if any, provided for in the Indenture relating to the designation of each of Holdings and Terminal as an Unrestricted Subsidiary for purposes of the Indenture have been satisfied and each such designation was permitted by the Indenture.

[Signature page to follow]

IN WITNESS WHEREOF, the undersigned, in their respective capacities as officers of the Company, have duly executed this Officers' Certificate on behalf of the Company as of the date first set above.

**SANCHEZ ENERGY CORPORATION**

By: /s/ G. Gleeson Van Riet
Name: G. Gleeson Van Riet
Title: Senior Vice President and Chief Financial Officer

By: /s/ Kirsten A. Hink
Name: Kirsten A. Hink
Title: Senior Vice President and Chief Accounting Officer

**Annex I**

**Indenture**

**WHEREAS**, the Board has determined that it is in the best interest of the Company that, for purposes of the Indentures, each of Holdings and Terminal be designated as an "Unrestricted Subsidiary," as such term is defined in each respective Indenture.

**NOW, THEREFORE, BE IT RESOLVED**, that, for purposes of and in accordance with the 2013 Indenture, the Board designates Holdings to be an "Unrestricted Subsidiary" as defined in the 2013 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2013 Indenture, the Board, on behalf of the Company and in the Company's capacity as the sole member of Holdings, designates Terminal to be an "Unrestricted Subsidiary" as defined in the 2013 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2014 Indenture, the Board designates Holdings to be an "Unrestricted Subsidiary" as defined in the 2014 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**RESOLVED FURTHER**, that, for purposes of and in accordance with the 2014 Indenture, the Board, on behalf of the Company and in the Company's capacity as the sole member of Holdings, designates Terminal to be an "Unrestricted Subsidiary" as defined in the 2014 Indenture until such time as the Company, acting through one or more Officers and without need to obtain further authorization from the Board, deems it necessary, desirable or appropriate to change such designation.

**EXHIBIT N-1 TO**
**CREDIT AGREEMENT**

**FORM OF THE JOINT DEVELOPMENT AGREEMENT**

[On file with Administrative Agent]

Case 22-33553 Document 1083-14 Filed in TXSB on 04/12/25 Page 141 of 200

**EXHIBIT N-2 TO
CREDIT AGREEMENT**

**FORM OF THE MANAGEMENT SERVICES AGREEMENT**

[On file with Administrative Agent]

**EXHIBIT N-3 TO**
**CREDIT AGREEMENT**

**FORM OF THE BORROWER'S LPA**

[On file with Administrative Agent]

**EXHIBIT N-4 TO**
**CREDIT AGREEMENT**

**FORM OF THE PARENT LLCA**

[On file with Administrative Agent]

**EXHIBIT N-5 TO
CREDIT AGREEMENT**

**FORM OF THE DEVELOPMENT AGREEMENT**

[On file with Administrative Agent]

Case 22-90054 Document 1-4 Filed in TXSB on 04/28/22 Page 145 of 200

**EXHIBIT N-6 TO**
**CREDIT AGREEMENT**

**FORM OF THE MARKETING AGREEMENT**

[On file with Administrative Agent]



013294

**EXHIBIT N-7 TO**
**CREDIT AGREEMENT**

**FORM OF THE SIDE LETTER AGREEMENT**

[On file with Administrative Agent]

**Schedule 1.1(a)**

**Commitments**

| Lender | Commitment | Borrowing Base Amount at Closing | % of Total | L/C Commitment | % of Total |
|---|---|---|---|---|---|
| **JPMorgan Chase Bank, N.A.** | $54,545,454.55 | $36,000,000.00 | 10.91% | $25,000,000.00 | 50.00% |
| **Citibank, N.A.** | $54,545,454.55 | $36,000,000.00 | 10.91% | $25,000,000.00 | 50.00% |
| **Capital One, National Association** | $37,878,787.88 | $25,000,000.00 | 7.58% | $0.00 | 0.00% |
| **Royal Bank of Canada** | $37,878,787.88 | $25,000,000.00 | 7.58% | $0.00 | 0.00% |
| **BMO Harris Bank, NA** | $33,333,333.33 | $22,000,000.00 | 6.67% | $0.00 | 0.00% |
| **ING Capital LLC** | $33,333,333.33 | $22,000,000.00 | 6.67% | $0.00 | 0.00% |
| **SunTrust Bank** | $33,333,333.33 | $22,000,000.00 | 6.67% | $0.00 | 0.00% |
| **ABN AMRO Capital USA LLC** | $27,272,727.27 | $18,000,000.00 | 5.45% | $0.00 | 0.00% |
| **Canadian Imperial Bank of Commerce, New York Branch** | $27,272,727.27 | $18,000,000.00 | 5.45% | $0.00 | 0.00% |
| **Fifth Third Bank** | $27,272,727.27 | $18,000,000.00 | 5.45% | $0.00 | 0.00% |
| **Natixis, New York Branch** | $27,272,727.27 | $18,000,000.00 | 5.45% | $0.00 | 0.00% |
| **PNC Bank, National Association** | $27,272,727.27 | $18,000,000.00 | 5.45% | $0.00 | 0.00% |
| **BOKF, NA dba Bank of Texas** | $19,696,969.70 | $13,000,000.00 | 3.94% | $0.00 | 0.00% |
| **Citizens Bank, N.A.** | $19,696,969.70 | $13,000,000.00 | 3.94% | $0.00 | 0.00% |
| **Comerica Bank** | $19,696,969.70 | $13,000,000.00 | 3.94% | $0.00 | 0.00% |
| **The Huntington National Bank** | $19,696,969.70 | $13,000,000.00 | 3.94% | $0.00 | 0.00% |
| **TOTAL** | $500,000,000.00 | $330,000,000.00 | 100.00% | $50,000,000.00 | 100.00% |

**Schedule 1.1(e)**

**Closing Date Subsidiary Guarantors**

None.

**Schedule 8.4**

**Litigation**

None.

**Schedule 8.11**

**Subsidiaries**

None.

**Schedule 8.13**

**Properties**

None.

**Schedule 8.16**

**Closing Date Gas Imbalance**

None.

**Schedule 8.17**

**Closing Date Marketing Agreements**

| Type of Agreement | Date | Entity | Other Party | Term | Notes |
|---|---|---|---|---|---|
| Hydrocarbon Purchase and Marketing Agreement | January 12, 2017 | SN EF UnSub, LP<br><br>Sanchez Energy Corporation (Solely for Sections 8.15 and 8.16) | SN EF Maverick, LLC | Earlier to occur of (i) date of termination of both Springfield Agreements[10] and (ii) December 31, 2034 | N/A |

[10] To be executed at the end of the marketing transition period to replace existing agreements between APC and Springfield.

**Schedule 8.18**

**Closing Date Hedge Agreements of Borrower**

ISDA Master Agreement dated as of March 1, 2017 by and between JPMorgan Chase Bank, N.A. and SN EF UnSub, LP

ISDA Master Agreement dated as of March 1, 2017 by and between Citibank, N.A. and SN EF UnSub, LP

| Counterparty | Trade Date | Counterparty Trade ID | Type | Effective Date | Termination Date | Notional Volume | Units | Fixed Price | MTM ($MM) | Credit Support Agreements |
|---|---|---|---|---|---|---|---|---|---|---|
| JPMorgan | Jan. 13, 2017 | 8500012F/3FCX / E12F-RX76 | Swap/NG-HH | Apr. 1, 2017 | Sep. 30, 2018 | 20,241,000 | MMBtu | $3.260 | $5.8 | None |
| Citi | Feb. 21, 2017 | 36313712 / OLNAM36313712 | Swap/NG-HH | Oct. 1, 2018 | Mar. 31, 2020 | 15,561,000 | MMBtu | $2.820 | $(0.8) | None |
| JPMorgan | Jan. 13, 2017 | 85000F9-3NULM / EF9-2DAZP8 | Swap/CL-WTI | Apr. 1, 2017 | Sep. 30, 2018 | 3,417,000 | Bbls | $55.85 | $4.2 | None |
| Citi | Feb. 21, 2017 | 36313651 / OLNAM36313651 | Swap/CL-WTI | Oct. 1, 2018 | Mar. 31, 2020 | 2,541,000 | Bbls | $53.52 | $0.0 | None |

Note: Trades shown above novated to Borrower effective March 1, 2017. Mark-to-market (MTM) values shown as of February 24, 2017.

**Schedule 10.1**

**Closing Date Indebtedness**

None.

**Schedule 10.2(d)**

**Closing Date Liens**

None.

**Schedule 10.5(c)**

**Closing Date Investments**

None.

**Schedule 10.8**

**Closing Date Negative Pledge Agreements**

None.

**Schedule 13.2**

**Notice Addresses**

| Entity | Notice Addresses |
|---|---|
| Borrower: | SN EF UnSub, LP<br>c/o Sanchez Energy Corporation<br><br>Address:<br>1000 Main Street, Suite 3000<br>Houston, Texas 77002<br><br>Telephone: 713-783-8000<br><br>Email: Garrick Hill <ghill@sanchezog.com><br><br>With a copy to:<br>Mary Kogut<br><br>Address:<br>600 Travis Street, Suite 3300<br>Houston, Texas 77002<br><br>Telephone: 713-835-3650<br><br>Email: Mary.kogut@kirkland.com |
| Administrative Agent: | JPMorgan Chase Bank, N.A.<br>Attn: Darren Vanek<br><br>Address:<br>712 Main Street, 5th Floor<br>Houston, Texas 77002<br><br>Telephone: 713-216-0844<br><br>Email: darren.m.vanek@jpmorgan.com<br><br>*With a copy to:*<br>*Matthew Einbinder*<br><br>*Address:*<br>*600 Travis Street, Suite 5400*<br>*Houston, Texas 77002*<br><br>*Telephone: 713-821-5620*<br><br>*Email:* MEinbinder@stblaw.com |

# Exhibit Q

10-Q 1 sn-20190930x10q.htm 10-Q

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# Form 10-Q

**(Mark One)**

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended September 30, 2019**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from to**

**Commission file number: 1-35372**

# Sanchez Energy Corporation
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **45-3090102** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **1000 Main Street, Suite 3000 Houston, Texas** | **77002** |
| (Address of principal executive offices) | (Zip Code) |

**(713) 783-8000**
(Registrant's telephone number, including area code)

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| N/A | N/A | N/A |

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the Registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the Registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | | |
|---|---|---|---|---|
| Large accelerated filer ☐ | Accelerated filer ☒ | Non-accelerated filer ☐ | Smaller reporting company ☐ | Emerging growth company ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☒

Number of shares of Registrant's common stock, par value $0.01 per share, outstanding as of November 4, 2019: 100,154,182

**Sanchez Energy Corporation (Debtor-in-Possession)**
**Form 10-Q**
**For the Quarterly Period Ended September 30, 2019**

**Table of Contents**


| | | |
|---|---|---|
| | **PART I** | |
| Item 1. | Financial Statements | 9 |
| | Condensed Consolidated Balance Sheets as of September 30, 2019 (Unaudited) and December 31, 2018 | 9 |
| | Condensed Consolidated Statements of Operations for the Three and Nine Months Ended September 30, 2019 and 2018 (Unaudited) | 10 |
| | Condensed Consolidated Statements of Stockholders' Deficit for the Nine Months Ended September 30, 2019 and 2018 (Unaudited) | 11 |
| | Condensed Consolidated Statements of Cash Flows for the Nine Months Ended September 30, 2019 and 2018 (Unaudited) | 13 |
| | Notes to the Condensed Consolidated Financial Statements (Unaudited) | 14 |
| Item 2. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 53 |
| Item 3. | Quantitative and Qualitative Disclosures About Market Risk | 76 |
| Item 4. | Controls and Procedures | 79 |
| | **PART II** | |
| Item 1. | Legal Proceedings | 79 |
| Item 1A. | Risk Factors | 80 |
| Item 2. | Unregistered Sales of Equity Securities and Use of Proceeds | 80 |
| Item 3. | Defaults Upon Senior Securities | 80 |
| Item 4. | Mine Safety Disclosures | 81 |
| Item 5. | Other Information | 81 |
| Item 6. | Exhibits | 82 |
| **SIGNATURES** | | 83 |

**CAUTIONARY NOTE REGARDING FORWARD-LOOKING STATEMENTS**

This Quarterly Report on Form 10-Q contains “forward-looking statements” within the meaning of the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. All statements, other than statements of historical facts, included in this Quarterly Report on Form 10-Q that address activities, events or developments that we expect, believe or anticipate will or may occur in the future are forward-looking statements. These statements relate to certain assumptions made based on management’s experience, perception of historical trends and technical analyses, current conditions, anticipated future developments and other factors we believe to be appropriate and reasonable. When used in this Quarterly Report on Form 10-Q, words such as “will,” “potential,” “believe,” “estimate,” “intend,” “expect,” “may,” “should,” “anticipate,” “could,” “plan,” “predict,” “forecast,” “budget,” “guidance,” “project,” “profile,” “model,” “strategy,” “future” or their negatives or the statements that include these words or other similar words that convey the uncertainty of future events or outcomes, are intended to identify forward-looking statements, although not all forward-looking statements contain such identifying words. In particular, statements, express or implied, concerning the outcome of the Chapter 11 Cases (as defined below), our restructuring plans and our ability to increase our financial flexibility, future operating results and returns or our ability to replace or increase reserves, increase production or generate income or cash flows, service our debt and other obligations and repay or otherwise refinance such obligations when due or at maturity, operational and commercial benefits of our partnerships, expected benefits from acquisitions, and our strategic relationship with Sanchez Midstream Partners LP (“SNMP”) are forward-looking statements. Forward-looking statements are not guarantees of performance. Such statements are subject to a number of assumptions, risks and uncertainties, many of which are beyond our control. Although we believe that the expectations reflected in our forward-looking statements are reasonable and are based on reasonable assumptions, there can be no assurance that these assumptions are accurate or that any of these expectations will be achieved (in full or at all) or will prove to have been correct. Important factors that could cause our actual results to differ materially from the expectations reflected in the forward-looking statements include, among others:

- risks and uncertainties associated with the Chapter 11 Cases, including our ability to develop, confirm and consummate a plan of reorganization under Chapter 11 or an alternative restructuring transaction, which may be necessary to continue as a going concern;
- our ability to maintain relationships with suppliers, customers, employees and other third parties as a result of our filing of the Bankruptcy Petitions (as defined below);
- our ability to obtain sufficient financing to allow us to emerge from bankruptcy and execute our business plan post-emergence;
- the length of time that the Company will operate under Chapter 11 protection and the continued availability of operating capital during the pendency of the Chapter 11 Cases;
- our ability to obtain Bankruptcy Court (as defined below) approval of the various motions and forms of orders, including with respect to our DIP Facility (as defined below), and risks associated with third-party motions in the Chapter 11 Cases, which may interfere with our ability to confirm and consummate a plan of reorganization or an alternative restructuring transaction;
- the potential adverse effects of the Chapter 11 Cases on our liquidity and results of operations;
- increased professional fees and advisory costs to execute a reorganization;
- the timing and extent of changes in prices of, and demand for, crude oil and condensate, natural gas liquids (“NGLs”), natural gas and related commodities;
- our ability to comply with the financial and other covenants in our debt instruments, including our DIP Facility, to service and repay our debt, and to address our liquidity needs, particularly if commodity prices remain volatile and/or depressed;
- the extent to which we are able to pursue drilling plans and acquisitions that are successful in maintaining and economically developing our acreage, producing and replacing reserves and achieving anticipated production levels;

- our ability to realize the benefits of our various acquired assets, fully identify and address existing and potential issues or liabilities and accurately estimate reserves, production and costs with respect to such assets;
- the extent to which our current low share price, our listing in the over-the-counter market rather than on a national securities exchange and our ongoing Chapter 11 Cases will impair our access to the equity markets and ability to obtain financing;
- our ability to utilize the services, personnel and other assets of Sanchez Oil & Gas Corporation ("SOG") pursuant to an existing services agreement (the "Services Agreement");
- SOG's ability to attract and retain personnel and other resources to perform its obligations under the Services Agreement;
- the realized benefits of our partnerships and joint ventures, including our transactions with SNMP and our partnership with affiliates of The Blackstone Group Inc. ("Blackstone");
- the accuracy of reserve estimates, which by their nature involve the exercise of professional judgment and may, therefore, be imprecise;
- the extent to which we can optimize reserve recovery and economically develop our properties utilizing horizontal and vertical drilling, advanced completion technologies, hydraulic stimulation and other techniques;
- the availability, proximity and capacity of, and costs associated with, gathering, processing, compression and transportation facilities;
- our ability to successfully execute our hedging strategy and the resulting realized prices therefrom;
- the effectiveness of our internal control over financial reporting;
- the availability, creditworthiness and performance of our counterparties, including financial institutions, operating partners and other parties;
- the extent to which requests for credit assurances from our contractual counterparties could have a material adverse effect on our business, financial condition and results of operations;
- the extent to which minimum volume commitments or "take-or-pay" obligations in excess of our oil and natural gas deliveries to, or transportation needs from, our contractual counterparties due to reduced activity levels or otherwise could have a material adverse effect on our business, financial condition and results of operations;
- results of litigation filed against us or other legal proceedings or out-of-court contractual disputes to which we are party or for which we owe an indemnity;
- competition in the oil and natural gas exploration and production industry generally and with respect to the marketing of oil, natural gas and NGLs, acquisition of leases and properties, attraction and retention of employees and other personnel, procurement of equipment, materials and services and, related thereto, the availability and cost of employees and other personnel, equipment, materials and services;
- the extent to which our production, revenue and cash flow from operating activities are derived from oil and natural gas assets which are concentrated in a single geographic area;

- developments in oil-producing and natural gas-producing countries, the actions of the Organization of Petroleum Exporting Countries ("OPEC") and other factors affecting the supply and pricing of oil and natural gas;

- the extent to which third parties operate our oil and natural gas properties successfully and economically;

- our ability to manage the financial risks where we share with more than one party the costs of drilling, equipping, completing and operating wells, including with respect to the Comanche Assets (as defined in "Item 1. Notes to the Condensed Consolidated Financial Statements—Note 14. Stockholders' and Mezzanine Equity");

- the use of competing energy sources, the development of alternative energy sources and potential economic implications and other effects therefrom;

- the extent to which we incur uninsured losses and liabilities or losses and liabilities in excess of our insurance coverage, including losses related to sabotage, terrorism or other malicious intentional acts (including cyber-attacks) that disrupt operations;

- the impact of, and changes in, government policies, laws and regulations, including tax laws and regulations, environmental laws and regulations relating to air emissions, waste disposal, hydraulic stimulation and access to and use of water, laws and regulations imposing conditions and restrictions on drilling and completion operations and laws, regulations, restrictions and guidelines with respect to derivatives, hedging activities and commercial lending standards; and

- the other factors described under "Part I, Item 2. Management's Discussion and Analysis of Financial Condition and Results of Operations," "Part II, Item 1A. Risk Factors" and elsewhere in this Quarterly Report on Form 10-Q and in our other public filings with the Securities and Exchange Commission (the "SEC").

In light of these risks, uncertainties and assumptions, the events anticipated by our forward-looking statements may not occur, and, if any of such events do, we may not have correctly anticipated the timing of their occurrence or the extent of their impact on our actual results. Accordingly, you should not place any undue reliance on any of our forward-looking statements. Any forward-looking statement speaks only as of the date on which such statement is made, and we undertake no obligation to correct or update any forward-looking statement, whether as a result of new information, future events or otherwise, except as required by applicable law. These cautionary statements qualify all forward-looking statements attributable to us or persons acting on our behalf.

**GLOSSARY OF SELECTED OIL AND NATURAL GAS TERMS**

The following includes a description of the meanings of some of the oil and natural gas industry terms used in this Quarterly Report on Form 10-Q. The definitions "development costs," "development project," "development well," "economically producible," "field," "possible reserves," "probable reserves," "production costs," "proved area," "reservoir," "resources," and "unproved properties" have been excerpted from the applicable definitions contained in Rule 4-10(a) of Regulation S-X.

***American Petroleum Institute ("API") gravity:*** A system of classifying oil based on its specific gravity, whereby the greater the gravity, the lighter the oil.

***Bbl:*** One stock tank barrel, or 42 U.S. gallons liquid volume, used in reference to oil or other liquid hydrocarbons.

***Boe:*** One barrel of oil equivalent, calculated by converting natural gas to oil equivalent barrels at a ratio of six Mcf of natural gas to one Boe of oil.

***Boe/d:*** One Boe per day.

***Btu:*** One British thermal unit, the quantity of heat required to raise the temperature of a one-pound mass of water by one degree Fahrenheit.

***completion:*** The process of treating a drilled well followed by the installation of permanent equipment for the production of oil or natural gas, or in the case of a dry hole, the reporting of abandonment to the appropriate agency.

***condensate:*** A liquid hydrocarbon with an API gravity of 50-100°.

***developed acreage:*** The number of acres that are allocated or assignable to producing wells or wells capable of production.

***development costs:*** Costs incurred to obtain access to proved reserves and to provide facilities for extracting, treating, gathering and storing the oil and natural gas. More specifically, development costs, including depreciation and applicable operating costs of support equipment and facilities and other costs of development activities, are costs incurred to: (i) gain access to and prepare well locations for drilling, including surveying well locations for the purpose of determining specific development drilling sites, clearing ground, draining, road building, and relating public roads, gas lines, and power lines, to the extent necessary in developing the proved reserves; (ii) drill and equip development wells, development-type stratigraphic test wells, and service wells, including the costs of platforms and of well equipment such as casing, tubing, pumping equipment, and the wellhead assembly; (iii) acquire, construct, and install production facilities such as lease flow lines, separators, treaters, heaters, manifolds, measuring devices, and production storage tanks, natural gas cycling and processing plants, and central utility and waste disposal systems; and (iv) provide improved recovery systems.

***development project:*** A development project is the means by which petroleum resources are brought to the status of economically producible. As examples, the development of a single reservoir or field, an incremental development in a producing field or the integrated development of a group of several fields and associated facilities with a common ownership may constitute a development project.

***development well:*** A well drilled within the proved area of an oil or natural gas reservoir to the depth of a stratigraphic horizon known to be productive.

***differential:*** An adjustment to the price of oil or natural gas from an established spot market price to reflect differences in the quality and/or location of oil or natural gas.

***dry hole:*** A well found to be incapable of producing hydrocarbons in sufficient quantities such that proceeds from the sale of such production would exceed production expenses and taxes.

***economically producible:*** The term economically producible, as it relates to a resource, means a resource that generates revenue that exceeds, or is reasonably expected to exceed, the costs of the operation.

***field:*** An area consisting of a single reservoir or multiple reservoirs, all grouped on or related to the same individual geological structural feature and/or stratigraphic condition. The field name refers to both the surface and the underground productive formations.

***gross acres or gross wells:*** The total acres or wells, as the case may be, in which we have a working interest.

***horizontal development:*** A drilling technique used in certain formations where a well is drilled vertically to a certain depth and then drilled at a right angle within a specified interval.

***independent exploration and production company:*** A company whose primary line of business is the exploration and production of oil and natural gas.

***MBbls:*** One thousand Bbls.

***MBoe:*** One thousand Boe.

***Mcf:*** One thousand cubic feet of natural gas.

***MMBbls:*** One million Bbls.

***MMBoe:*** One million Boe.

***MMBtu:*** One million British thermal units.

***MMcf:*** One million cubic feet of natural gas.

***natural gas liquids ("NGLs"):*** The combination of ethane, propane, butane, natural gasolines and other components that when removed from natural gas become liquid under various levels of higher pressure and lower temperature.

***net acres or net wells:*** Gross acres or wells, as the case may be, multiplied by our working interest ownership percentage.

***net production:*** Production that is owned by us less royalties and production due others.

***NYMEX:*** New York Mercantile Exchange.

***operator:*** The individual or company responsible for the exploration and/or production of an oil or natural gas well or lease.

***possible reserves:*** Additional reserves that are less certain to be recovered than probable reserves.

***probable reserves:*** Additional reserves that are less certain to be recovered than proved reserves but that, in sum with proved reserves, are as likely as not to be recovered.

***production costs:*** Costs incurred to operate and maintain wells and related equipment and facilities, including depreciation and applicable operating costs of support equipment and facilities and other costs of operating and maintaining those wells and related equipment and facilities.

***proved area:*** The part of a property to which proved reserves have been specifically attributed.

***proved developed reserves:*** Reserves that can be expected to be recovered through existing wells with existing equipment and operating methods.

***proved developed non-producing reserves***: Reserves that are expected to be recovered from completion intervals which are open at the time of the estimate but which have not yet started producing, wells which were shut-in for market conditions or pipeline connections, or wells not capable of production for mechanical reasons; reserves that are expected to be recovered from zones in existing well which will require additional completion work or future re-completion prior to start production.

***proved oil and natural gas reserves:*** The estimated quantities of oil, natural gas and NGLs that geological and engineering data demonstrate with reasonable certainty to be commercially recoverable in future years from known reservoirs under existing economic and operating conditions.

***proved undeveloped reserves ("PUDs"):*** Proved reserves that are expected to be recovered from new wells on undrilled acreage or from existing wells where a relatively major expenditure is required for recompletion.

***realized price:*** The cash market price less all expected quality, transportation and demand adjustments.

***recompletion:*** The action of reentering an existing wellbore to redo or repair the original completion in order to increase the well's productivity.

***reserve:*** That part of a mineral deposit which could be economically and legally extracted or produced at the time of the reserve determination.

***reservoir:*** A porous and permeable underground formation containing a natural accumulation of producible oil and/or natural gas that is confined by impermeable rock or water barriers and is individual and separate from other reservoirs.

***resources:*** Resources are quantities of oil and natural gas estimated to exist in naturally occurring accumulations. A portion of the resources may be estimated to be recoverable and another portion may be considered unrecoverable. Resources include both discovered and undiscovered accumulations.

***spacing:*** The distance between wells producing from the same reservoir. Spacing is often expressed in terms of feet (e.g., 600 foot well-spacing) and is often established by regulatory agencies.

***trend:*** A geographic area with hydrocarbon potential.

***undeveloped acreage:*** Lease acreage on which wells have not been drilled or completed to a point that would permit the production of commercial quantities of oil and natural gas regardless of whether such acreage contains proved reserves.

***unproved properties:*** Properties with no proved reserves.

***volatile oil:*** A quality of oil with an API gravity of 42-55° with a natural gas-to-oil ratio of 900-3,500 cubic feet per barrel.

***working interest:*** An interest in an oil and natural gas lease that gives the owner of the interest the right to drill for and produce oil and natural gas on the leased acreage and requires the owner to pay a share of the costs of drilling and production operations.

***WTI:*** West Texas Intermediate oil.

## PART I—FINANCIAL INFORMATION

### Item 1. Financial Statements

### Sanchez Energy Corporation (Debtor-in-Possession)
### Condensed Consolidated Balance Sheets
### (in thousands, except par value and share amounts)

| | September 30, 2019 (Unaudited) | December 31, 2018 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 179,538 | $ 197,613 |
| Oil and natural gas receivables | 69,290 | 87,222 |
| Joint interest billings receivables | 10,979 | 33,263 |
| Accounts receivable - related entities | 10,161 | 6,099 |
| Fair value of derivative instruments | 6,263 | 15,714 |
| Other current assets | 24,679 | 33,070 |
| Total current assets | 300,910 | 372,981 |
| Oil and natural gas properties, on the basis of successful efforts accounting: | | |
| Proved oil and natural gas properties | 3,864,327 | 3,792,431 |
| Unproved oil and natural gas properties | 299,456 | 328,643 |
| Total oil and natural gas properties | 4,163,783 | 4,121,074 |
| Less: Accumulated depreciation, depletion, amortization and impairment | (1,947,558) | (1,761,949) |
| Total oil and natural gas properties, net | 2,216,225 | 2,359,125 |
| Other assets: | | |
| Fair value of derivative instruments | 9,346 | 12,102 |
| Right of use assets, net | 280,139 | — |
| Investments (includes investment in SNMP measured at fair value of $0.8 million and $3.9 million as of September 30, 2019 and December 31, 2018, respectively) | 12,200 | 16,664 |
| Other assets | 43,990 | 59,088 |
| Total assets | $ 2,862,810 | $ 2,819,960 |
| **LIABILITIES AND STOCKHOLDERS' DEFICIT** | | |
| Current liabilities: | | |
| Debtor-in-possession financing | $ 50,000 | $ — |
| Accounts payable | 14,372 | 32,382 |
| Other payables | 16,739 | 74,628 |
| Accrued liabilities: | | |
| Capital expenditures | 7,232 | 61,970 |
| Other | 66,298 | 102,728 |
| Fair value of derivative instruments | 700 | 706 |
| Short term debt | — | 304 |
| Short term lease liabilities | 109,494 | — |
| Other current liabilities | 31,961 | 75,581 |
| Total current liabilities | 296,796 | 348,299 |
| Long term debt, net of premium, discount and debt issuance costs | 166,956 | 2,395,408 |
| Asset retirement obligations | 49,183 | 46,175 |
| Fair value of derivative instruments | — | 366 |
| Long term lease liabilities | 173,990 | — |
| Liabilities subject to compromise | 2,398,106 | — |
| Other liabilities | 1 | 21,407 |
| Total liabilities | 3,085,032 | 2,811,655 |
| Commitments and contingencies (Note 17) | | |
| Mezzanine equity: | | |
| Preferred units ($1,000 liquidation preference, 500,000 units authorized, issued and outstanding as of September 30, 2019 and December 31, 2018) | 474,857 | 452,828 |
| Stockholders' deficit: | | |
| Preferred stock ($0.01 par value, 15,000,000 shares authorized; 619,503 and 1,838,985 shares issued and outstanding as of September 30, 2019 and December 31, 2018, respectively, of 4.875% Convertible Perpetual Preferred Stock, Series A; 2,466,013 and 3,527,830 shares issued and outstanding as of September 30, 2019 and December 31, 2018, respectively, of 6.500% Convertible Perpetual Preferred Stock, Series B) | 31 | 53 |
| Common stock ($0.01 par value, 300,000,000 shares authorized; 100,154,824 and 87,328,424 shares issued and outstanding as of September 30, 2019 and December 31, 2018, respectively) | 1,014 | 881 |
| Additional paid-in capital | 1,371,698 | 1,367,427 |
| Accumulated deficit | (2,069,822) | (1,812,884) |
| Total stockholders' deficit | (697,079) | (444,523) |
| Total liabilities and stockholders' deficit | $ 2,862,810 | $ 2,819,960 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

**Sanchez Energy Corporation (Debtor-in-Possession)**

**Condensed Consolidated Statements of Operations (Unaudited)**
**(in thousands, except per share amounts)**

| | Three Months Ended September 30, 2019 | Three Months Ended September 30, 2018 | Nine Months Ended September 30, 2019 | Nine Months Ended September 30, 2018 |
|---|---|---|---|---|
| **REVENUES:** | | | | |
| Oil sales | $ 106,016 | $ 161,243 | $ 362,424 | $ 473,178 |
| Natural gas liquid sales | 22,675 | 69,995 | 92,891 | 175,833 |
| Natural gas sales | 26,572 | 39,460 | 100,932 | 122,330 |
| Sales and marketing revenues | 7,283 | 7,012 | 18,103 | 16,910 |
| Total revenues | 162,546 | 277,710 | 574,350 | 788,251 |
| **OPERATING COSTS AND EXPENSES:** | | | | |
| Oil and natural gas production expenses | 74,740 | 75,594 | 231,441 | 225,186 |
| Exploration expenses | 164 | 2,698 | 4,983 | 3,247 |
| Sales and marketing expenses | 6,672 | 7,239 | 16,591 | 16,498 |
| Production and ad valorem taxes | 9,867 | 15,221 | 34,682 | 42,898 |
| Depreciation, depletion, amortization and accretion | 57,864 | 67,944 | 187,920 | 189,515 |
| Impairment of oil and natural gas properties | 9,761 | 3,117 | 22,906 | 4,259 |
| General and administrative expenses | 20,915 | 21,312 | 66,266 | 73,199 |
| Prepetition restructuring charges | 18,231 | — | 41,855 | — |
| Total operating costs and expenses | 198,214 | 193,125 | 606,644 | 554,802 |
| Operating income (loss) | (35,668) | 84,585 | (32,294) | 233,449 |
| Other income (expense): | | | | |
| Interest income | 221 | 1,130 | 1,447 | 3,400 |
| Other income (expense) | (12,829) | (7,677) | (13,785) | 2,467 |
| Gain on sale of oil and natural gas properties | — | — | — | 1,528 |
| Interest expense | (22,884) | (44,154) | (111,998) | (132,664) |
| Net gains (losses) on commodity derivatives | 13,200 | (28,286) | (20,827) | (142,384) |
| Total other expense | (22,292) | (78,987) | (145,163) | (267,653) |
| Reorganization items | 55,321 | — | 55,321 | — |
| Income (loss) before income taxes | (113,281) | 5,598 | (232,778) | (34,204) |
| Income tax benefit | (833) | — | (23) | — |
| **Net income (loss)** | (112,448) | 5,598 | (232,755) | (34,204) |
| Less: | | | | |
| Preferred stock dividends | (2,312) | (3,987) | (7,153) | (11,961) |
| Preferred unit dividends and distributions | (12,500) | (12,500) | (37,500) | (34,908) |
| Preferred unit amortization | (7,638) | (6,458) | (22,029) | (18,577) |
| **Net loss attributable to common stockholders** | $ (134,898) | $ (17,347) | $ (299,437) | $ (99,650) |
| Net loss per common share - basic and diluted | $ (1.39) | $ (0.21) | $ (3.14) | $ (1.22) |
| Weighted average number of shares used to calculate net loss attributable to common stockholders - basic and diluted | 97,395 | 82,073 | 95,272 | 81,597 |

The accompanying notes are an integral part of these condensed consolidated financial statements.



013319

**Sanchez Energy Corporation (Debtor-in-Possession)**
**Condensed Consolidated Statements of Stockholders' Deficit**
**(Unaudited)**
**(in thousands)**

| | Series A Preferred Stock | | Series B Preferred Stock | | Common Stock | | Additional Paid-in | Accumulated | Total Stockholders' |
|---|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | Shares | Amount | Capital | Deficit | Deficit |
| **BALANCE, December 31, 2018** | 1,839 | $ 18 | 3,528 | $ 35 | 87,329 | $ 881 | $ 1,367,427 | $ (1,812,884) | $ (444,523) |
| Adoption of accounting standards | — | — | — | — | — | — | — | 42,499 | 42,499 |
| Dividends on Series A and Series B Preferred Stock | — | — | — | — | 7,898 | 79 | 3,908 | (2,516) | 1,471 |
| Dividends on SN UnSub Preferred Units | — | — | — | — | — | — | — | (12,500) | (12,500) |
| Accretion of discount on SN UnSub Preferred Units | — | — | — | — | — | — | — | (7,033) | (7,033) |
| Restricted stock awards, net of forfeitures | — | — | — | — | (270) | (1) | 1 | — | — |
| Exchange of preferred stock for common stock | (1,059) | (11) | (1,017) | (10) | 4,837 | 48 | (27) | — | — |
| Non-cash stock-based compensation | — | — | — | — | — | — | 141 | — | 141 |
| Net loss | — | — | — | — | — | — | — | (67,342) | (67,342) |
| **BALANCE, March 31, 2019** | 780 | 7 | 2,511 | 25 | 99,794 | 1,007 | 1,371,450 | (1,859,776) | (487,287) |
| Dividends on Series A and Series B Preferred Stock | — | — | — | — | — | — | — | (2,325) | (2,325) |
| Dividends on SN UnSub Preferred Units | — | — | — | — | — | — | — | (12,500) | (12,500) |
| Accretion of discount on SN UnSub Preferred Units | — | — | — | — | — | — | — | (7,358) | (7,358) |
| Restricted stock awards, net of forfeitures | — | — | — | — | (81) | 4 | (4) | — | — |
| Exchange of preferred stock for common stock | (155) | (1) | — | — | 363 | 2 | (1) | — | — |
| Non-cash stock-based compensation | — | — | — | — | — | — | 158 | — | 158 |
| Net loss | — | — | — | — | — | — | — | (52,965) | (52,965) |
| **BALANCE, June 30, 2019** | 625 | 6 | 2,511 | 25 | 100,076 | 1,013 | 1,371,603 | (1,934,924) | (562,277) |
| Dividends on Series A and Series B Preferred Stock | — | — | — | — | — | — | — | (2,312) | (2,312) |
| Dividends on SN UnSub Preferred Units | — | — | — | — | — | — | — | (12,500) | (12,500) |
| Accretion of discount on SN UnSub Preferred Units | — | — | — | — | — | — | — | (7,638) | (7,638) |
| Restricted stock awards, net of forfeitures | — | — | — | — | (38) | (1) | 1 | — | — |
| Exchange of preferred stock for common stock | (5) | — | (45) | — | 117 | 2 | (2) | — | — |
| Non-cash stock-based compensation | — | — | — | — | — | — | 96 | — | 96 |
| Net loss | — | — | — | — | — | — | — | (112,448) | (112,448) |
| **BALANCE, September 30, 2019** | 620 | $ 6 | 2,466 | $ 25 | 100,155 | $ 1,014 | $ 1,371,698 | $ (2,069,822) | $ (697,079) |

**Sanchez Energy Corporation (Debtor-in-Possession)**
**Condensed Consolidated Statements of Stockholders' Deficit (Continued)**
**(Unaudited)**
**(in thousands)**

| | Series A Preferred Stock | | Series B Preferred Stock | | Common Stock | | Additional Paid-in | Accumulated | Total Stockholders' |
|---|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | Shares | Amount | Capital | Deficit | Deficit |
| **BALANCE, December 31, 2017** | 1,839 | $ 18 | 3,528 | $ 35 | 83,985 | $ 845 | $ 1,362,118 | $ (1,832,156) | $ (469,140) |
| Adoption of accounting standards | — | — | — | — | — | — | — | 22,739 | 22,739 |
| Issuance of common stock | — | — | — | — | 100 | 1 | 565 | — | 566 |
| Dividends on Series A and Series B Preferred Stock | — | — | — | — | 805 | 8 | 3,979 | (3,987) | — |
| Dividends on SN UnSub Preferred Units | — | — | — | — | — | — | — | (12,500) | (12,500) |
| Distributions - SN UnSub Preferred Units | — | — | — | — | — | — | — | 2,592 | 2,592 |
| Accretion of discount on SN UnSub Preferred Units | — | — | — | — | — | — | — | (5,930) | (5,930) |
| Restricted stock awards, net of forfeitures | — | — | — | — | 283 | 4 | (4) | — | — |
| Non-cash stock-based compensation | — | — | — | — | — | — | (375) | — | (375) |
| Net loss | — | — | — | — | — | — | — | (4,815) | (4,815) |
| **BALANCE, March 31, 2018** | **1,839** | **18** | **3,528** | **35** | **85,173** | **858** | **$ 1,366,283** | **(1,834,057)** | **(466,863)** |
| Dividends on Series A and Series B Preferred Stock | — | — | — | — | — | — | — | (3,987) | (3,987) |
| Dividends on SN UnSub Preferred Units | — | — | — | — | — | — | — | (12,500) | (12,500) |
| Accretion of discount on SN UnSub Preferred Units | — | — | — | — | — | — | — | (6,189) | (6,189) |
| Restricted stock awards, net of forfeitures | — | — | — | — | 2,625 | 26 | (26) | — | — |
| Non-cash stock-based compensation | — | — | — | — | — | — | 4,651 | — | 4,651 |
| Net loss | — | — | — | — | — | — | — | (34,987) | (34,987) |
| **BALANCE, June 30, 2018** | **1,839** | **$ 18** | **3,528** | **$ 35** | **87,798** | **884** | **1,370,908** | **(1,891,720)** | **(519,875)** |
| Dividends on Series A and Series B Preferred Stock | — | — | — | — | — | — | — | (3,987) | (3,987) |
| Dividends on SN UnSub Preferred Units | — | — | — | — | — | — | — | (12,500) | (12,500) |
| Accretion of discount on SN UnSub Preferred Units | — | — | — | — | — | — | — | (6,458) | (6,458) |
| Restricted stock awards, net of forfeitures | — | — | — | — | (268) | (1) | 1 | — | — |
| Non-cash stock-based compensation | — | — | — | — | — | — | (1,398) | — | (1,398) |
| Net loss | — | — | — | — | — | — | — | 5,598 | 5,598 |
| **BALANCE, September 30, 2018** | **1,839** | **$ 18** | **3,528** | **$ 35** | **87,530** | **$ 883** | **$ 1,369,511** | **$ (1,909,067)** | **$ (538,620)** |

The accompanying notes are an integral part of these condensed consolidated financial statements.

**Sanchez Energy Corporation (Debtor-in-Possession)**
**Condensed Consolidated Statements of Cash Flows (Unaudited)**
**(in thousands)**

| | Nine Months Ended September 30, 2019 | Nine Months Ended September 30, 2018 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | |
| Net loss | $ (232,755) | $ (34,204) |
| Adjustments to reconcile net loss to net cash provided by operating activities: | | |
| Depreciation, depletion, amortization and accretion | 187,920 | 189,515 |
| Impairment of oil and natural gas properties | 22,906 | 4,259 |
| Gain on sale of oil and natural gas properties | — | (1,528) |
| Stock-based compensation expense | 355 | 4,344 |
| Net losses on commodity derivative contracts | 20,827 | 142,384 |
| Net cash settlements paid on commodity derivative contracts | (5,799) | (69,317) |
| (Gain) loss on other derivatives | (276) | 5,262 |
| Loss on investments | 4,464 | 3,361 |
| Loss (gain) on sale of inventory | 143 | (571) |
| Loss on other assets | 858 | — |
| Loss on prepaid asset impairment | 11,755 | — |
| Amortization of deferred gain on Western Catarina Midstream Divestiture | — | (17,790) |
| Amortization of debt issuance costs | 8,275 | 12,706 |
| Accretion of debt discount, net | 1,019 | 1,112 |
| Reorganization items | 39,238 | — |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | 41,305 | 1,982 |
| Accounts receivable - related entities | (4,062) | (3,365) |
| Other payables | (40,452) | 8,537 |
| Accrued liabilities | 59,218 | 17,595 |
| Other current liabilities | (20,519) | (12,531) |
| Other assets and liabilities, net | 5,330 | (2,225) |
| Net cash provided by operating activities | 99,750 | 249,526 |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | |
| Capital expenditures for the development of oil and natural gas properties | (114,655) | (452,296) |
| Proceeds from the sale of oil and natural gas properties | — | 1,425 |
| Acquisition of oil and natural gas properties | — | 2,834 |
| Payments for purchases of other assets | (761) | (9,573) |
| Proceeds from the sale of other assets | 5,199 | 3,788 |
| Net cash used in investing activities | (110,217) | (453,822) |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | |
| Proceeds from borrowings, including borrowings under DIP Facility | 57,922 | 539,865 |
| Repayment of borrowings | (18,327) | (103,262) |
| Financing costs, including costs related to DIP Facility | (9,505) | (12,995) |
| Preferred dividends paid | — | (11,961) |
| Cash paid to tax authority for employee stock-based compensation awards | (198) | (705) |
| Preferred unit distributions paid | (37,500) | (22,408) |
| Net cash (used in) provided by financing activities | (7,608) | 388,534 |
| (Decrease) increase in cash and cash equivalents | (18,075) | 184,238 |
| Cash and cash equivalents, beginning of period | 197,613 | 184,434 |
| Cash and cash equivalents, end of period | $ 179,538 | $ 368,672 |
| **NON-CASH INVESTING AND FINANCING ACTIVITIES:** | | |
| Change in asset retirement obligations | $ 129 | $ 1,532 |
| Change in accrued capital expenditures | (54,871) | 24,652 |
| ROU assets obtained in exchange for operating lease obligations | 361,648 | — |
| **SUPPLEMENTAL DISCLOSURE:** | | |
| Cash paid for interest | $ 84,803 | $ 120,775 |
| Cash paid for reorganization items | $ 9,521 | $ — |

The accompanying notes are an integral part of these condensed consolidated financial statements

**Sanchez Energy Corporation (Debtor-in-Possession)**

**Notes to the Condensed Consolidated Financial Statements**

**(Unaudited)**

**Note 1. Organization and Business**

Sanchez Energy Corporation (together with our consolidated subsidiaries, "Sanchez Energy," the "Company," "we," "our," "us" or similar terms), a Delaware corporation formed in August 2011, is an independent exploration and production company focused on the acquisition and development of oil and natural gas resources in the onshore United States. We are currently focused on the horizontal development of significant resource potential from the Eagle Ford Shale in South Texas, and we also have other producing properties and undeveloped acreage, including in the Tuscaloosa Marine Shale ("TMS") in Mississippi and Louisiana, as well as other locations in Louisiana and Texas, which may offer potential future development opportunities. As of September 30, 2019, we held approximately 435,000 gross (233,000 net) leasehold acres in the Eagle Ford Shale, where we plan to invest the majority of our 2019 capital budget. We continually evaluate opportunities to manage our overall portfolio, which may include the acquisition of additional properties in the Eagle Ford Shale or other producing areas and, from time to time, the divestiture of non-core assets. Our successful acquisition or divestiture of such properties will generally depend on the circumstances and market conditions at the time we consider such opportunities. As discussed in "—Note 3. Chapter 11 Cases," we are currently operating our business as "debtors-in-possession" in accordance with the applicable provisions of the Bankruptcy Code (as defined below).

**Liquidity**

At this time, we are primarily focused on lowering cash costs across our business and reducing our financial leverage, with an objective of maximizing our liquidity position and improving our balance sheet.

As previously disclosed, the Company substantially reduced its capital expenditures from approximately $593 million in 2018 to a budgeted amount of $100 to $150 million for 2019 in order to preserve capital in the current low and uncertain commodity price environment. As discussed in "Part I, Item 1. Notes to the Condensed Consolidated Financial Statements—Note 17. Commitments and Contingencies," the Company is party to certain agreements that require it to meet annual drilling and development commitments to maintain undeveloped leasehold positions. To reduce its capital expenditures by this magnitude in 2019, the Company exercised privileges under certain of such agreements (primarily by utilizing well "banks" achieved through drilling and developing wells in excess of the quantity required to maintain the related acreage during prior annual periods) and negotiated deferral arrangements. If the Company is unable to negotiate additional extensions, deferrals, waivers or other similar arrangements to delay or otherwise reduce the activity necessary to maintain such undeveloped leasehold positions, it may be unable to continue to hold capital expenditures at comparable low levels in future years. As a result, the Company may be required to seek additional funding sources in order to pursue development plans which would maintain certain of its undeveloped acreage.

In addition, commodity prices remain depressed, and the Company's oil, natural gas and NGL production has declined in connection with reduced development activity. Lower commodity prices and declining production have adversely impacted the Company's revenues and cash flow. This has led to a reduction in forecasted liquidity, which has affected the Company's ability to service the significant obligations associated with its high level of indebtedness.

To improve its liquidity and position the Company for future success, Sanchez Energy undertook a review of various strategic alternatives with its advisors and Board of Directors (the "Board") beginning in 2018. In anticipation of potential liquidity constraints, the Company commenced discussions with its bondholders, other stakeholders and potential third-party investors on a restructuring transaction to reduce the Company's debt and strengthen its overall financial flexibility. On July 15, 2019, the Company elected to defer making an interest payment of approximately $35.2 million on the Company's 6.125% Notes (as defined below) for a 30-day grace period, which expired on August 14, 2019, in order to preserve liquidity and continue discussions with stakeholders. The Debtors filed their Bankruptcy Petitions on the Petition Date (as defined below), prior to the expiration of the grace period. Although the Company has not yet reached an agreement with any of its stakeholders on the terms of a comprehensive restructuring transaction, the Company obtained additional financing pursuant to the DIP Facility (as defined below) on an interim basis, as discussed below.

**Note 2. Basis of Presentation and Summary of Significant Accounting Policies**

The accompanying condensed consolidated financial statements are unaudited and were prepared from the Company's records. The condensed consolidated financial statements were prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP" or "U.S. GAAP") for interim financial information and with the instructions to Form 10-Q and Article 10 of Regulation S-X. The Company derived the condensed consolidated balance sheet as of December 31, 2018 from the audited financial statements filed in its Annual Report on Form 10-K for the fiscal year ended December 31, 2018 (the "2018 Annual Report"). Because this is an interim period filing presented using a condensed format, it does not include all of the disclosures required by U.S. GAAP. These condensed consolidated financial statements should be read in connection with the consolidated financial statements and notes thereto included in the 2018 Annual Report, which contains a summary of the Company's significant accounting policies and other disclosures. In the opinion of management, these financial statements include the adjustments and accruals, all of which are of a normal recurring nature, which are necessary for a fair presentation of the results for the interim periods. These interim results are not necessarily indicative of results to be expected for the entire year.

As of September 30, 2019, the Company's significant accounting policies are consistent with those discussed in "—Note 2. Basis of Presentation and Summary of Significant Accounting Policies," in the notes to the Company's consolidated financial statements contained in the 2018 Annual Report with the addition of the following:

***Leases***

The Company determines if a contractual arrangement is a lease at inception. Operating leases are included in right of use ("ROU") assets, short term lease liabilities and long term lease liabilities in the condensed consolidated balance sheets.

ROU assets represent the Company's right to use an underlying asset for the lease term, and lease liabilities represent the Company's obligation to make lease payments arising from the lease. Operating lease ROU assets and lease liabilities are recognized at commencement date based on the present value of lease payments over the lease term. As most of the Company's leases do not provide an implicit rate, the Company's estimated incremental borrowing rate based on the information available at commencement date is used in determining the present value of lease payments, and the implicit rate is used when readily determinable. The operating lease ROU asset also includes any lease payments made and excludes lease incentives. Lease expense for lease payments is recognized on a straight-line basis over the lease term. The Company gives consideration to various factors, including the terms of the Company's outstanding debt instruments, publicly available data for instruments with similar characteristics and other information, together with internally generated estimates, assumptions and judgment to determine the Company's incremental borrowing rate for purposes of making these calculations.

We have lease agreements with lease and non-lease components, which are accounted for as a single lease component.

***Bankruptcy Accounting***

As further discussed in "—Note 3. Chapter 11 Cases," on August 11, 2019 (the "Petition Date"), Sanchez Energy Corporation, SN Palmetto, LLC, SN Marquis LLC, SN Cotulla Assets, LLC, SN Operating, LLC, SN TMS, LLC, SN Catarina, LLC, Rockin L Ranch Company, LLC, SN Payables, LLC, SN EF Maverick, LLC ("SN Maverick") and SN UR Holdings, LLC ("SN UR Holdings") (each a "Debtor" and collectively, the "Debtors") filed voluntary petitions (the "Bankruptcy Petitions") for reorganization under Chapter 11 of the U.S. Bankruptcy Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

The condensed consolidated financial statements have been prepared as if the Company is a going concern and reflect the application of Accounting Standards Codification 852 "Reorganizations" ("ASC 852"). ASC 852 requires that the financial statements, for periods subsequent to the filing of the Bankruptcy Petitions, distinguish transactions and events that are directly associated with the reorganization from the ongoing operations of the business. Accordingly, certain expenses, gains and losses that are realized or incurred in the bankruptcy proceedings are recorded in "Reorganization items" on the Company's condensed consolidated statements of operations. In addition, prepetition

unsecured and under-secured obligations that may be impacted by the bankruptcy reorganization process have been classified as "Liabilities subject to compromise" on the Company's condensed consolidated balance sheet at September 30, 2019. These liabilities are reported at the amounts expected to be allowed as claims by the Bankruptcy Court, although they may be settled for less. The Company has not taken a view with respect to the ultimate recoveries or payments under these agreements or on account of these liabilities in the presentation of such amounts on the financial statements.

The accompanying condensed consolidated financial statements do not purport to reflect or provide for the consequences of the Chapter 11 Cases. In particular, the condensed consolidated financial statements do not purport to show: (i) the realizable value of assets on a liquidation basis or their availability to satisfy liabilities; (ii) the amount of prepetition liabilities that may be allowed for claims or contingencies, or the status and priority thereof; (iii) the effect on stockholders' deficit accounts of any changes that may be made to the Company's capitalization; or (iv) the effect on operations of any changes that may be made to the Company's business. While operating as debtors-in-possession under Chapter 11 of the Bankruptcy Code, the Debtors may sell or otherwise dispose of or liquidate assets or settle liabilities in amounts other than those reflected on the Company's condensed consolidated financial statements, subject to the approval of the Bankruptcy Court or otherwise as permitted in the ordinary course of business. Further, a plan of reorganization could materially change the amounts and classifications on the Company's historical condensed consolidated financial statements.

***Principles of Consolidation***

The Company's condensed consolidated financial statements include the accounts of the Company and its subsidiaries. All intercompany balances and transactions have been eliminated.

***Use of Estimates***

The accompanying condensed consolidated financial statements are prepared in conformity with U.S. GAAP, which requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. The most significant estimates pertain to proved oil and natural gas reserves and related cash flow estimates used in the depletion and impairment of proved oil and natural gas properties, the evaluation of unproved properties for impairment, the fair value of commodity derivative contracts, embedded derivatives and asset retirement obligations, accrued oil and natural gas revenues and expenses and the allocation of general and administrative ("G&A") expenses. Actual results could differ materially from those estimates.

***Recent Accounting Pronouncements***

In June 2018, the FASB issued ASU 2018-07 "Compensation – Stock Compensation (ASC 718) – Improvements to Nonemployee Share-Based Payment Accounting," which expands the scope of ASC 718, Compensation – Stock Compensation, to include share-based payment transactions for acquiring goods and services from nonemployees. We adopted this ASU effective January 1, 2019, which resulted in our remeasurement of the value of our outstanding unvested awards as of January 1, 2019 and changed the way we value our equity-classified equity awards going forward. Adoption of the standard did not have a material impact on our condensed consolidated financial statements.

In June 2016, the FASB issued ASU 2016-13 "Financial Instruments – Credit Losses (ASC 326): Measurement of Credit Losses on Financial Instruments." This ASU modifies the impairment model to utilize an expected loss methodology in place of the currently used incurred loss methodology, which will result in the more timely recognition of losses, if applicable. This ASU is effective for public business entities for annual and interim periods in fiscal years beginning after December 15, 2019, and earlier adoption is permitted. We are currently in the process of evaluating the impact of adoption of this guidance on our condensed consolidated financial statements.

In February 2016, the FASB issued ASU 2016-02 "Leases (ASC 842)," effective for annual and interim periods for public companies beginning after December 15, 2018, with a modified retrospective approach to be used for implementation. The standard updates the previous lease guidance by requiring the recognition of a ROU asset and lease liability on the statement of financial position for all leases with lease terms of more than 12 months. The lease liability represents the discounted obligation to make future minimum lease payments and the corresponding ROU asset represents the lessee's right to use, or control the use of, a specified asset for the lease term. Recognition, measurement and presentation of expenses and cash flows arising from a lease will depend on classification as an operating or a finance lease. The Company adopted this standard effective January 1, 2019. We elected the package of practical expedients permitting us to not reassess under the new standard our prior conclusions regarding lease identification, lease classification and initial direct costs, the practical expedient to not separate lease and non– lease components for all of our existing lessee arrangements, and to elect an accounting policy to not apply the recognition requirements of ASC 842 to our short term leases. We did not elect the practical expedient for use of hindsight in determining the lease term and assessing impairment of our ROU assets. Adoption of ASC 842 resulted in the recognition of ROU assets and lease liabilities for operating leases on the balance sheet and the derecognition of the deferred gain previously recorded on a sale-leaseback transaction as a cumulative effect adjustment to retained earnings on January 1, 2019. Amounts recognized at January 1, 2019 for operating leases were as follows (in thousands):

| | December 31, 2018 | Adjustments due to Topic 842 | January 1, 2019 |
|---|---|---|---|
| ROU assets | $ — | $ 344,472 | $ 344,472 |
| Short term lease liabilities | — | 99,693 | 99,693 |
| Other current liabilities | 75,581 | (23,720) | 51,861 |
| Long term lease liabilities | — | 246,746 | 246,746 |
| Other long term liabilities | 21,407 | (20,745) | 662 |
| Accumulated deficit | (1,812,884) | 42,499 | (1,770,385) |

No impact was recorded to the condensed consolidated statement of operations related to the adoption of Topic 842.

**Note 3. Chapter 11 Cases**

***Voluntary Reorganization Under Chapter 11***

On the Petition Date, the Debtors filed the Bankruptcy Petitions for reorganization under the Bankruptcy Code in the Bankruptcy Court. The Debtors filed a motion with the Bankruptcy Court seeking to jointly administer the Chapter 11 Cases under the caption *In re Sanchez Energy Corporation*, Case No. 19-34508. The Debtors also filed various motions with the Bankruptcy Court, which were approved, seeking authorization to continue to operate their businesses as debtors-in-possession under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court. Additionally, the Bankruptcy Court has granted certain other relief requested by the Debtors, including interim relief allowing the Company to use its cash to fund the Chapter 11 Cases and to borrow an initial $50 million pursuant to the DIP Facility (as defined below) and giving the Company the authority to, among other things, continue to pay certain vendors and other third parties. During the pendency of the Chapter 11 Cases, all transactions outside the ordinary course of the Company's business require prior approval of the Bankruptcy Court. The Company expects ordinary course operations to continue substantially uninterrupted during the Chapter 11 Cases. SN UnSub (as defined below), its general partner, and certain other unrestricted subsidiaries of the Company are not included in the Chapter 11 Cases and are classified as "non-Debtors".

Subject to certain exceptions, under the Bankruptcy Code, the filing of the Bankruptcy Petitions automatically enjoined, or stayed, the continuation of most judicial or administrative proceedings or filing of other actions against the Debtors or their property to recover, collect or secure a claim arising prior to the date of the Bankruptcy Petitions. Accordingly, although the filing of the Bankruptcy Petitions triggered defaults on the Debtors' debt obligations, creditors are stayed from taking any actions against the Debtors as a result of such defaults, subject to certain limited exceptions permitted by the Bankruptcy Code. Substantially all of the Debtors' prepetition liabilities are subject to settlement and compromise under the Bankruptcy Code.

Under the Bankruptcy Code, unless creditors agree otherwise, prepetition liabilities and postpetition liabilities must be satisfied in full before the Company's existing stockholders are entitled to receive or retain any property under a plan of reorganization. The ultimate recovery to creditors and/or stockholders, if any, will not be determined until

confirmation and implementation of a plan or plans of reorganization. There can be no assurance as to what values, if any, will be ascribed in the Chapter 11 Cases to each of these constituencies or what types or amounts of settlements, if any, they will receive. A plan of reorganization could result in holders of the Debtors' liabilities and/or stockholders receiving no settlement on account of their interests and cancellation of their holdings.

***Executory Contracts***

Subject to certain exceptions, under the Bankruptcy Code, the Debtors may assume, assign or reject certain executory contracts and unexpired leases subject to the approval of the Bankruptcy Court and certain other conditions. Generally, the rejection of an executory contract or unexpired lease is treated as a prepetition breach of such executory contract or unexpired lease and, subject to certain exceptions, relieves a Debtor of performing its future obligations under such executory contract or unexpired leases but entitles the contract counterparty or lessor to a prepetition general unsecured claim for damages caused by such deemed breach. Counterparties to such rejected contracts or leases may assert unsecured claims in the Bankruptcy Court against the applicable Debtor's estate(s) for such damages. Generally, the assumption of an executory contract or unexpired lease requires a Debtor to cure existing monetary defaults under such executory contract or unexpired lease and provide adequate assurance of future performance. Accordingly, any description of an executory contract or unexpired lease with the Debtors in this quarterly report, including where applicable a quantification of a Debtor's obligations under any such executory contract or unexpired lease with the Debtor, is qualified by any overriding rejection rights such Debtor has under the Bankruptcy Code. Further, nothing herein is or shall be deemed an admission with respect to any claim amounts or calculations arising from the rejection of any executory contract or unexpired lease and the Debtors expressly preserve all of their rights with respect thereto. With limited exceptions, the Debtors have not yet made formal determinations with respect to the assumption or rejection of executory contracts or unexpired leases.

***Process for Plan of Reorganization***

Following the Petition Date, the Company has continued to engage with stakeholders in pursuit of a comprehensive restructuring transaction. The Company believes the Chapter 11 Cases provide the most expeditious manner in which to effect a capital structure solution. In order to successfully exit the Chapter 11 Cases, we will need to obtain confirmation by the Bankruptcy Court of a plan (or plans) of reorganization that satisfies the requirements of the Bankruptcy Code. A plan of reorganization would, among other things, resolve the Debtors' prepetition obligations, set forth the revised capital structure of the newly reorganized entity and provide for corporate governance subsequent to exit from the Chapter 11 Cases. However, there can be no assurance that the Company will be able to reorganize its capital structure on terms acceptable to the Company, the other Debtors, their creditors or other stakeholders, or at all.

The Debtors have the exclusive right for 120 days after the Petition Date to file a plan of reorganization (the "Exclusive Filing Period"), and if the Debtors' plan of reorganization is filed within the Exclusive Filing Period, the Debtors also have the exclusive right for 180 days after the Petition Date to solicit acceptances and rejections regarding such plan of reorganization, in each case, subject to extension for cause by the Bankruptcy Court. If the Exclusive Filing Period lapses, any party in interest may file a plan of reorganization for any of the Debtors.

In addition to being voted on by holders of impaired claims and equity interests, a plan of reorganization must satisfy certain requirements of the Bankruptcy Code and must be confirmed by the Bankruptcy Court in order to become effective. A plan of reorganization would be accepted by holders of claims against and equity interests in the Company if (i) more than one-half in number and at least two-thirds in dollar amount of allowed claims actually voting in each class of claims impaired by the plan have voted to accept the plan and (ii) at least two-thirds in amount of allowed equity interests actually voting in each class of equity interests impaired by the plan has voted to accept the plan. A class of claims or equity interests that does not receive or retain any property under the plan on account of such claims or interests is deemed to have voted to reject the plan.

Under certain circumstances set forth in Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm a plan even if such plan has not been accepted by all impaired classes of claims and equity interests. The precise requirements and evidentiary showing for confirming a plan notwithstanding its rejection by one or more impaired classes of claims or equity interests depends upon a number of factors, including the status and seniority of the claims or equity interests in the rejecting class (i.e., secured or unsecured claims, subordinated or senior claims, preferred or common stock). Generally, with respect to common stock or preferred stock interests, a plan may be "crammed down" even if the stockholders receive no recovery if the proponent of the plan demonstrates that (1) no class junior to the

common stock or class or series of preferred stock, as applicable, is receiving or retaining property under the plan and (2) no class of claims or interests senior to the common stock or class or series of preferred stock, as applicable, is being paid more than in full.

The timeline for the Debtors to file a plan of reorganization will depend on the timing and outcome of numerous other ongoing matters in the Chapter 11 Cases. There can be no assurance at this time that the Debtors will be able to successfully develop, confirm and consummate a plan of reorganization or other alternative restructuring transactions that satisfies the conditions of the Bankruptcy Code and is confirmed by the Bankruptcy Court, or that any such plan or transactions will be implemented successfully.

***DIP Facility***

In connection with the Bankruptcy Petitions, the Debtors filed a motion seeking, among other things, interim and final approval of debtor-in-possession financing on terms and conditions set forth in a proposed Senior Secured Debtor-in-Possession Term Loan Credit Agreement (as amended, supplemented or otherwise modified, the "DIP Facility") among Sanchez Energy Corporation, as borrower, the financial institutions or other entities from time to time parties thereto, as lenders (the "DIP Lenders"), and Wilmington Savings Fund Society, FSB ("WSFS"), as administrative agent and collateral agent (the "DIP Agent"). The initial lenders under the DIP Facility are members of an ad hoc group of certain holders of the 7.25% Senior Secured Notes (the "Secured Noteholders") or affiliates of such Secured Noteholders. The DIP Facility was approved by the Bankruptcy Court on an interim basis and the Company closed and borrowed an initial $50 million of new money loans thereunder on August 19, 2019, following the Bankruptcy Court's entry of an interim order approving the DIP Facility on August 16, 2019. On September 19, 2019, the Bankruptcy Court declined to grant final approval of the DIP Facility at that time, and the Debtors, the DIP Lenders and certain other stakeholders are in ongoing discussions regarding the terms of the DIP Facility that will be presented to the Bankruptcy Court again for final approval at a subsequent hearing. The Company's ability to access the remaining additional principal amount of new term loans under the DIP Facility is subject to the final approval of the Bankruptcy Court. On September 24, 2019, the Company, the DIP Agent and the Required Lenders (as defined in the DIP Facility) entered into an amendment to the DIP Facility (the "Amendment"). By its terms, the Amendment was effective as of September 20, 2019. The Amendment provided for, among other things, an extension to October 2, 2019 of the milestone date set forth in the DIP Facility for the entry of a final order of the Bankruptcy Court authorizing the Debtors' entry into the DIP Facility and the other transactions contemplated by the DIP Facility (the "Final DIP Order") and provided for the further extension of such milestone date with the consent of the Required Lenders. The milestone date set forth in the Loan Agreement for the entry of the Final DIP Order was subsequently extended, as contemplated and permitted by the Amendment, by the Required Lenders until the earlier of (i) November 15, 2019 and (ii) the date on which any of the Debtors files any material motion with respect to the Debtors' business operations without the prior written consent of the Required Lenders. The DIP Facility, as it was approved on an interim basis, contains the terms as set forth below (although certain of the below terms are subject to modification prior to final approval of the DIP Facility):

- a senior secured priming superpriority debtor-in-possession term loan facility in an aggregate principal amount of up to $350 million, consisting of (i) a new money, multiple draw term loan facility in the amount of $175 million (the "New Money DIP Loans"), backstopped by certain Secured Noteholders (the "Backstop Lenders"), $50 million of which was available on an interim basis upon entry of the Bankruptcy Court's interim order (the "Interim DIP Order"); and (ii) a refinancing term loan effectuated by way of a conversion of $175 million of 7.25% Senior Secured Notes into obligations under the DIP Facility (the "Roll-Up Loans" and, together with the New Money DIP Loans, the "DIP Loans");

- borrowings under the (i) New Money DIP Loans will bear interest at a rate per annum equal to adjusted LIBOR (subject to a 2% floor) plus 8.00% and (ii) Roll-Up Loans will bear interest at the non-default rate of the 7.25% Senior Secured Notes of 7.25% per annum;

- the Company has paid the Backstop Lenders a 5.00% fee in cash in exchange for their commitment to backstop the New Money DIP Loans, and the Company is also required to pay (i) the DIP Lenders a 1.00% fee on the New Money DIP Loans payable upon the Debtors' emergence from the Chapter 11 Cases and (ii) the DIP Lenders a 0.5% per annum commitment fee on undrawn New Money DIP Loans payable monthly;

- the maturity of the DIP Facility is nine months after the Petition Date, subject to earlier termination upon occurrence of customary defaults;
- the proceeds of the New Money DIP Loans may be used for: (i) transaction costs, fees and expenses; (ii) working capital and general corporate purposes; (iii) bankruptcy-related costs and expenses (including restructuring fees and adequate protection payments); and (iv) subject to final approval of the Bankruptcy Court, refinancing all amounts existing under the Company's existing Credit Agreement;
- the obligations under the New Money DIP Loans will be secured (subject to the Carve-Out (as defined below) and certain "first-out" obligations as set forth in the Interim DIP Order) on the following bases: (i) a superpriority administrative claim; (ii) a perfected first priority senior security interest and lien on all unencumbered property (subject to certain exceptions set forth in the DIP Facility and/or the Interim DIP Order); (iii) a perfected first priority, senior priming security interest and lien on all property subject to valid, perfected and nonavoidable prepetition liens securing the obligations under the 7.25% Senior Secured Notes (subject to certain exceptions as specified in the DIP Facility and/or the Interim DIP Order); and (iv) a perfected junior lien on certain other property subject to valid, perfected and unavoidable prepetition liens;
- the obligations under the Roll-Up Loans will be secured (subject to the Carve-Out and certain "first-out" obligations as set forth in the Interim DIP Order) on the following bases: (i) a superpriority administrative claim and (ii) a perfected first priority, senior priming security interest and lien on all property subject to valid, perfected and nonavoidable prepetition liens securing the obligations under the 7.25% Senior Secured Notes (subject to certain exceptions as specified in the DIP Facility and the Interim DIP Order);
- the Debtors' Chapter 11 Cases are subject to certain milestones, including with respect to the filing and approvals of a disclosure statement and a Chapter 11 plan of reorganization;
- the DIP Facility will provide for certain customary covenants applicable to the Company, including covenants requiring (i) minimum liquidity in an amount of $15 million, subject to certain exclusions; (ii) beginning the first four-week period ending after the Petition Date, compliance with an approved operating debtor-in-possession budget (the "DIP Budget"), subject to permitted variance of 15% (with a variance of 25% for midstream-related disbursements for the first four-week test period), tested on a rolling four-week basis on disbursements excluding certain professional fees, DIP Facility interest and fees and adequate protection payments; and (iii) delivery of a rolling 13-week operating cash flow forecast updated every four weeks and a weekly DIP Budget variance report; and
- the Debtors' obligations to the DIP Lenders and the liens and superpriority claims are subject in each case to a carve-out (the "Carve-Out") that accounts for certain administrative, court and legal fees payable in connection with the Chapter 11 Cases.

In addition, the Interim DIP Order contemplates that under the terms of the Final DIP Order, we will be required to pay the approximately $18.1 million in interest that would have been due on August 15, 2019 under the indenture for the 7.25% Senior Secured Notes, and are required to continue to make the semi-annual interest payments as they come due under the indenture for the 7.25% Senior Secured Notes during the Chapter 11 Cases.

There can be no assurance that the DIP Facility will be approved on a final basis, on the terms described above, or at all. We are in ongoing conversations with the DIP Lenders and other stakeholders regarding the terms of the Final DIP Order and the DIP Facility.

***UnSub Tolling Agreement***

On August 10, 2019, the Company entered into a tolling agreement (the "Tolling Agreement") among Sanchez Energy Corporation, SN UR Holdings, SN EF UnSub Holdings, LLC ("SN UnSub Holdings"), SN Maverick (together with Sanchez Energy Corporation, SN UR Holdings and SN UnSub Holdings, the "Sanchez Parties"), GSO ST Holdings Associates LLC ("GSO LLC") and GSO ST Holdings LP (together with GSO LLC, the "GSO Parties").

Pursuant to the terms of the Tolling Agreement, except for participating in, or filing pleadings in respect of, any matter pending before the applicable bankruptcy court, during the Tolling Period (as defined below), the GSO Parties agreed to not exercise any rights or remedies with respect to any Investor Redemption Event, as defined in the Amended and Restated Limited Liability Company Agreement of SN EF UnSub GP, LLC ("SN UnSub GP"), dated March 1, 2017 (the "LLC Agreement"), or the Amended and Restated Agreement of Limited Partnership of SN EF UnSub, LP, dated March 1, 2017, and all notice or cure periods that may exist with respect to any Investor Redemption Event (as such term defined in the LLC Agreement) will be tolled during the Tolling Period.

The Tolling Agreement expires on the calendar day following the occurrence of any of the following events (the "Tolling Period"): (1) the occurrence of any Bankruptcy Event (as defined in the LLC Agreement) with respect to SN UnSub Holdings; provided, however, that unless a notice of termination has been provided by the GSO Parties or there is less than five calendar days before the Order Deadline (as defined below), the Sanchez Parties will be obligated to provide the GSO Parties at least five business days' written notice prior to commencement of a voluntary chapter 11 proceeding (a "Proceeding") by SN UnSub Holdings; (2) the failure of Sanchez Energy Corporation, SN Maverick or SN UR Holdings, to the extent such party has commenced a Proceeding (the earliest commencement date of a Proceeding by Sanchez Energy Corporation, SN Maverick or SN UR Holdings, as applicable, the "Initial Petition Date"), to obtain a bankruptcy court order approving the Tolling Agreement by the 20th day after the Initial Petition Date (the "Order Deadline"), unless the parties agree to extend such date by written agreement (the Order Deadline was subsequently extended to September 24, 2019); or (3) the effectiveness of delivery by any party of a written notice of termination of the Tolling Period, with such notice to be effective on the fifth business day following delivery of notice to the other parties.

In the event that SN UnSub Holdings commences a Proceeding at any time, the parties have agreed that for all purposes the commencement by SN UnSub Holdings of a Proceeding will be deemed to have occurred on the Initial Petition Date immediately preceding the commencement of the Proceedings with respect to any other Sanchez entity.

On September 19, 2019, the Bankruptcy Court authorized the Debtors' performance of their obligations under the Tolling Agreement.

***Liabilities Subject to Compromise***

The Company's condensed consolidated balance sheet includes amounts classified as "Liabilities subject to compromise," which represent prepetition liabilities that have been allowed, or that the Company anticipates will be allowed, as claims in its Chapter 11 Cases. The amounts represent the Company's current estimate of known or potential obligations to be resolved in connection with the Chapter 11 Cases. The differences between the liabilities the Company has estimated and the claims filed, or to be filed, will be investigated and resolved in connection with the claims resolution process. The Company will continue to evaluate these liabilities throughout the Chapter 11 Cases and adjust amounts as necessary. Such adjustments may be material.

The following table summarizes the components of liabilities subject to compromise included on the condensed consolidated balance sheet (in thousands):

| | September 30, 2019 |
|---|---|
| 7.75% Notes, due June 2021 | $ 600,000 |
| 6.125% Notes, due January 2023 | 1,150,000 |
| Credit Agreement(1) | 7,922 |
| 7.25% Senior Secured Notes, due February 2023 | 500,000 |
| Accounts payable | 22,349 |
| Other payables | 18,329 |
| Accrued interest payable | 65,371 |
| Other accrued expenses | 34,135 |
| Liabilities subject to compromise | $ 2,398,106 |

(1) A standby letter of credit in the amount of approximately $17.1 million was issued under the Credit Agreement on January 10, 2019 and incurred fees at a rate of 3.25% through the Petition Date. The letter of credit remains outstanding and is undrawn as of September 30, 2019 but is currently proposed to be cash collateralized subject to entry of the Final DIP Order.

***Prepetition Restructuring Charges***

Any expenses incurred before the Petition Date and in relation to the Chapter 11 Cases are recorded as prepetition restructuring charges on our consolidated statements of operations.

Prepetition restructuring charges, which primarily consisted of professional, consulting and legal fees related to the Chapter 11 Cases, were $18.2 million and $41.9 million for the three and nine months ended September 30, 2019, respectively. There were no prepetition restructuring charges for the three or nine months ended September 30, 2018.

***Reorganization Items***

The Company has incurred and is expected to continue to incur substantial costs associated with the reorganization. These costs, which are expensed as incurred, are expected to significantly affect the Company's results of operations. Reorganization items represent costs directly associated with the Chapter 11 Cases since the Petition Date. Such costs include accruals related to the DIP Facility and postpetition fees and expenses of court-approved legal and financial advisors, which are subject to Bankruptcy Court orders and/or oversight.

The following table summarizes the components of reorganization items included on the condensed consolidated statements of operations (in thousands):

| | Three and Nine Months Ended September 30, 2019 |
|---|---|
| DIP lender fee on initial borrowing | $ 8,814 |
| DIP Facility costs | 4,512 |
| Legal and other professional advisory fees | 11,571 |
| Unamortized deferred financing fees, discounts and premiums | 30,424 |
| Reorganization items[1] | $ 55,321 |

(1) Includes $9.5 million of cash paid for reorganization items.

***Interest Expense***

The Debtors have discontinued recording interest on debt instruments classified as subject to compromise as of the Petition Date. The contractual interest on liabilities subject to compromise not reflected in the condensed consolidated statements of operations was approximately $21.1 million, representing interest expense from the Petition Date through September 30, 2019. However, it is currently proposed that under the terms of the Final DIP Order, we will be required to pay the approximately $18.1 million in interest that would have been due on August 15, 2019 under the indenture for the Senior Secured 7.25% Notes and are required to continue making the semi-annual interest payments as they come due under the indenture for the 7.25% Senior Secured Notes during the Chapter 11 Cases.

***Magnitude of Potential Claims***

On September 24, 2019, the Debtors filed with the Bankruptcy Court schedules and statements setting forth, among other things, our assets and liabilities, subject to the assumptions filed in connection therewith (the "Schedules and Statements"). The Debtors may subsequently decide to amend or modify the Schedules and Statements.

On October 24, 2019, the Debtors filed a motion to set a bar date to assist with the claims reconciliation process, proposing a bar date of December 13, 2019 and a governmental bar date of February 7, 2020. Through the claims resolution process, differences in amounts scheduled by the Debtors and claims filed by creditors will be investigated and resolved, including through the filing of objections with the Bankruptcy Court where appropriate. In light of the potential number and amount of claims filed, the claims resolution process may take considerable time to complete, and we expect that it will continue after our emergence from bankruptcy. Accordingly, the ultimate number and amount of allowed claims is not presently known, nor can the ultimate recovery with respect to allowed claims presently be ascertained.

***Effect of Filing on Creditors and Stockholders***

Under the priority scheme established by the Bankruptcy Code, unless creditors agree otherwise, prepetition liabilities and postpetition liabilities must be satisfied in full or consensual agreement reached between parties before the holders of our existing common stock or preferred stock are entitled to receive or retain any property under a plan of reorganization. The ultimate recovery to creditors and/or stockholders, if any, will not be determined until confirmation and implementation of a plan or plans of reorganization. There can be no assurance as to what values, if any, will be ascribed in the Chapter 11 Cases to each of these constituencies or what types or amounts of distributions, if any, they would receive. A plan of reorganization could result in holders of our liabilities and/or securities, including our common stock and preferred stock, receiving no distribution on account of their interests and cancellation of their holdings. As discussed above, if certain requirements of the Bankruptcy Code are met, a plan of reorganization can be confirmed notwithstanding its rejection by the holders of our common stock or preferred stock and notwithstanding the fact that such holders do not receive or retain any property on account of their equity interests under the plan. Because of such possibilities, the value of the Debtors' securities is highly speculative.

***Appointment of Creditors' Committee***

On August 26, 2019, the Bankruptcy Court appointed the official committee of unsecured creditors (the "Creditors' Committee"). The Creditors' Committee and its legal representatives have a right to be heard on all matters that come before the Bankruptcy Court with respect to the Debtors.

***Debtor Financial Statements***

Condensed consolidated financial statements of the Debtors are set forth below. These condensed consolidated financial statements exclude the financial statements of the non-Debtors. Transactions and balances of receivables and payables between Debtors are eliminated in consolidation. However, the Debtors' condensed consolidated balance sheet includes receivables from and payables to related non-Debtors.

**Debtors**[1]
**Condensed Consolidated Balance Sheets (Unaudited)**
**(in thousands)**

| | September 30, 2019 | December 31, 2018 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 173,959 | $ 194,723 |
| Oil and natural gas receivables | 42,778 | 55,083 |
| Joint interest billings receivables | 10,969 | 33,261 |
| Fair value of derivative instruments | 367 | 5,154 |
| Other current assets | 20,978 | 28,617 |
| Total current assets | 249,051 | 316,838 |
| Oil and natural gas properties, on the basis of successful efforts accounting: | | |
| Proved oil and natural gas properties | 2,947,641 | 2,890,471 |
| Unproved oil and natural gas properties | 205,121 | 236,931 |
| Total oil and natural gas properties | 3,152,762 | 3,127,402 |
| Less: Accumulated depreciation, depletion, amortization and impairment | (1,651,441) | (1,526,988) |
| Total oil and natural gas properties, net | 1,501,321 | 1,600,414 |
| Other assets: | | |
| Right of use assets, net | 280,139 | — |
| Investments | 4,921 | 9,384 |
| Investments in subsidiaries | 338,097 | 337,475 |
| Other assets | 31,631 | 45,524 |
| Total assets | $ 2,405,160 | $ 2,309,635 |
| **LIABILITIES AND STOCKHOLDERS' DEFICIT** | | |
| Current liabilities: | | |
| Debtor-in-possession financing | $ 50,000 | $ — |
| Accounts payable | 14,372 | 32,382 |
| Accounts payable - related entities | 7,745 | 8,707 |
| Other payables | 16,230 | 74,595 |
| Accrued liabilities: | | |
| Capital expenditures | 5,194 | 54,317 |
| Other | 46,909 | 87,656 |
| Fair value of derivative instruments | 700 | 307 |
| Short term lease liabilities | 109,494 | — |
| Other current liabilities | 31,962 | 75,581 |
| Total current liabilities | 282,606 | 333,545 |
| Long term debt, net of premium, discount and debt issuance costs | — | 2,213,223 |
| Asset retirement obligations | 34,456 | 32,432 |
| Long term lease liabilities | 173,990 | — |
| Liabilities subject to compromise | 2,398,106 | — |
| Other liabilities | 1 | 21,407 |
| Total liabilities | 2,889,159 | 2,600,607 |
| Stockholders' deficit: | | |
| Preferred stock | 31 | 53 |
| Common stock | 1,014 | 881 |
| Additional paid-in capital | 1,371,698 | 1,367,427 |
| Accumulated deficit | (1,856,742) | (1,659,333) |
| Total stockholders' deficit | (483,999) | (290,972) |
| Total liabilities and stockholders' deficit | $ 2,405,160 | $ 2,309,635 |

(1) Sanchez Energy Corporation, SN Palmetto, LLC, SN Marquis LLC, SN Cotulla Assets, LLC, SN Operating, LLC, SN TMS, LLC, SN Catarina, LLC, Rockin L Ranch Company, LLC, SN Payables, LLC, SN EF Maverick, LLC and SN UR Holdings, LLC.

**Debtors[1]**
**Condensed Consolidated Statements of Operations (Unaudited)**
**(in thousands)**

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2019 | 2018 | 2019 | 2018 |
| **REVENUES:** | | | | |
| Oil sales | $ 69,597 | $ 113,183 | $ 242,064 | $ 323,019 |
| Natural gas liquid sales | 15,506 | 49,332 | 65,170 | 119,961 |
| Natural gas sales | 17,941 | 27,674 | 69,713 | 83,640 |
| Sales and marketing revenues | 7,283 | 7,012 | 18,103 | 16,910 |
| Total revenues | 110,327 | 197,201 | 395,050 | 543,530 |
| **OPERATING COSTS AND EXPENSES:** | | | | |
| Oil and natural gas production expenses | 51,196 | 47,262 | 154,064 | 138,322 |
| Exploration expenses | 146 | 2,668 | 4,724 | 3,171 |
| Sales and marketing expenses | 6,672 | 7,239 | 16,591 | 16,498 |
| Production and ad valorem taxes | 6,424 | 10,683 | 23,332 | 29,162 |
| Depreciation, depletion, amortization and accretion | 39,211 | 47,799 | 128,976 | 128,812 |
| Impairment of oil and natural gas properties | 9,597 | 3,103 | 18,206 | 3,543 |
| General and administrative expenses | 21,424 | 19,386 | 60,854 | 66,522 |
| Prepetition restructuring charges | 18,231 | — | 41,855 | — |
| Total operating costs and expenses | 152,901 | 138,140 | 448,602 | 386,030 |
| Operating income (loss) | (42,574) | 59,061 | (53,552) | 157,500 |
| Other income (expense): | | | | |
| Interest income | 220 | 1,129 | 1,442 | 3,397 |
| Other income (expense) | (12,814) | (8,217) | (13,527) | 1,186 |
| Gain on sale of oil and natural gas properties | — | — | — | 1,528 |
| Interest expense | (19,591) | (40,659) | (101,693) | (121,856) |
| Equity in net earnings of subsidiaries | 14,025 | 8,273 | 621 | 12,470 |
| Net (gains) losses on commodity derivatives | 2,774 | (13,989) | (10,748) | (88,429) |
| Total other expense | (15,386) | (53,463) | (123,905) | (191,704) |
| Reorganization items | 55,321 | — | 55,321 | — |
| Net income (loss) before taxes | (113,281) | 5,598 | (232,778) | (34,204) |
| Income tax benefit | (833) | — | (23) | — |
| **Net income (loss)** | $ (112,448) | $ 5,598 | $ (232,755) | $ (34,204) |

(1) Sanchez Energy Corporation, SN Palmetto, LLC, SN Marquis LLC, SN Cotulla Assets, LLC, SN Operating, LLC, SN TMS, LLC, SN Catarina, LLC, Rockin L Ranch Company, LLC, SN Payables, LLC, SN EF Maverick, LLC and SN UR Holdings, LLC.

**Debtors[(1)]**
**Condensed Consolidated Statements of Cash Flows (Unaudited)**
**(in thousands)**

| | Nine Months Ended September 30, 2019 | Nine Months Ended September 30, 2018 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | |
| Net loss | $ (232,755) | $ (34,204) |
| Adjustments to reconcile net loss to net cash provided by operating activities: | | |
| Depreciation, depletion, amortization and accretion | 128,976 | 128,812 |
| Impairment of oil and natural gas properties | 18,206 | 3,543 |
| Gain on sale of oil and natural gas properties | — | (1,528) |
| Stock-based compensation expense | 355 | 4,344 |
| Net losses on commodity derivative contracts | 10,748 | 88,429 |
| Net cash settlements paid on commodity derivative contracts | (3,559) | (55,147) |
| (Gain) loss on other derivatives | (308) | 7,141 |
| Loss on investments | 4,464 | 3,361 |
| Loss (gain) on sale of inventory | 143 | (571) |
| Loss on other assets | 858 | — |
| Loss on prepaid asset impairment | 11,755 | — |
| Amortization of deferred gain on Western Catarina Midstream Divestiture | — | (17,790) |
| Equity in net earnings of subsidiaries | (621) | (12,470) |
| Amortization of debt issuance costs | 5,386 | 9,859 |
| Accretion of debt discount, net | 1,019 | 1,112 |
| Reorganization items | 39,238 | — |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | 35,686 | 75 |
| Accounts receivable - related entities | (962) | 9,259 |
| Other payables | (40,452) | 8,537 |
| Accrued liabilities | 54,915 | 12,980 |
| Other current liabilities | (20,518) | (12,532) |
| Other assets and liabilities, net | 5,260 | (2,390) |
| Net cash provided by operating activities | 17,834 | 140,820 |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | |
| Capital expenditures for the development of oil and natural gas properties | (91,375) | (379,321) |
| Proceeds from the sale of oil and natural gas properties | — | 1,425 |
| Payments for purchases of other assets | (736) | (9,573) |
| Proceeds from the sale of other assets | 5,199 | 3,642 |
| Net cash used in investing activities | (86,912) | (383,827) |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | |
| Proceeds from borrowings, including borrowings under DIP Facility | 57,922 | 539,865 |
| Repayment of borrowings | — | (95,000) |
| Financing costs, including borrowings under DIP Facility | (9,410) | (12,484) |
| Cash paid to tax authority for employee stock-based compensation awards | (198) | (705) |
| Preferred dividends paid | — | (11,961) |
| Net cash provided by (used in) financing activities | 48,314 | 419,715 |
| (Decrease) increase in cash and cash equivalents | (20,764) | 176,708 |
| Cash and cash equivalents, beginning of period | 194,723 | 171,052 |
| Cash and cash equivalents, end of period | $ 173,959 | $ 347,760 |

(1) Sanchez Energy Corporation, SN Palmetto, LLC, SN Marquis LLC, SN Cotulla Assets, LLC, SN Operating, LLC, SN TMS, LLC, SN Catarina, LLC, Rockin L Ranch Company, LLC, SN Payables, LLC, SN EF Maverick, LLC and SN UR Holdings, LLC.

***Ability to Continue as a Going Concern***

We currently expect that the Company's cash flows, cash on hand and any financing that we are able to obtain through the DIP Facility should provide sufficient liquidity for the Company during the pendency of the Chapter 11 Cases. However, the significant risks and uncertainties related to the Company's liquidity and Chapter 11 Cases described above raise substantial doubt about the Company's ability to continue as a going concern. The condensed consolidated financial statements have been prepared on a going concern basis of accounting, which contemplates continuity of operations, realization of assets, and satisfaction of liabilities and commitments in the normal course of business. The condensed consolidated financial statements do not include any adjustments that might result from the outcome of the going concern uncertainty. If the Company cannot continue as a going concern, adjustments to the carrying values and classification of its assets and liabilities and the reported amounts of income and expenses could be required and could be material.

***Covenant Violations***

The Debtors' filing of the Bankruptcy Petitions described above constituted an event of default that accelerated the Company's obligations under the Credit Agreement, its 7.75% Notes, its 6.125% Notes and its 7.25% Senior Secured Notes (each term as defined below). Additionally, other events of default, including cross-defaults, are present under these debt instruments. Under the Bankruptcy Code, the creditors under these debt agreements are stayed from taking any action against the Company as a result of an event of default. Neither SN UnSub nor its general partner are parties to the Chapter 11 Cases, and the Chapter 11 Cases did not result in an event of default under the SN UnSub Credit Agreement (as defined below). See "—Note 7. Debt" for additional details about the Company's debt.

Additionally, the filing of the Bankruptcy Petitions described above constituted an event of default that generally allows counterparties to certain of the Company's derivative contracts (excluding the counterparties to SN UnSub's derivative contracts) to unilaterally terminate contracts to their scheduled settlement date(s) and pursue remedies, which are not subject to the automatic stay. In August 2019, as a result of the Chapter 11 Cases, one of our counterparties terminated its derivative contracts with the Company (excluding SN UnSub's derivative contracts), resulting in a net payable of approximately $1.1 million due to the counterparty.

**Note 4. Revenue Recognition**

***Revenue from Contracts with Customers***

We account for revenue from contracts with customers in accordance with ASC 606. The unit of account in ASC 606 is a performance obligation, which is a promise in a contract to transfer to a customer either a distinct good or service (or bundle of goods or services) or a series of distinct goods or services provided over a period of time. ASC 606 requires that a contract's transaction price, which is the amount of consideration to which an entity expects to be entitled in exchange for transferring promised goods or services to a customer, is to be allocated to each performance obligation in the contract based on relative standalone selling prices and recognized as revenue when (point in time) or as (over time) the performance obligation is satisfied.

*Disaggregation of Revenue*

We recognized revenue of $162.5 million and $277.7 million for the three months ended September 30, 2019 and 2018, respectively, and revenue of $574.4 million and $788.3 million for the nine months ended September 30, 2019 and 2018, respectively. We disaggregate revenue in our income statement based on product type, and we further disaggregate our revenue related to sales and marketing activities.

*Oil, Natural Gas and NGL Revenues*

We recognize revenue from the sale of oil, natural gas and NGLs in the period that the performance obligations are satisfied. Our performance obligations are primarily comprised of the delivery of oil, natural gas or NGLs at a delivery point. Each barrel of oil, MMBtu of natural gas, barrel of NGL or other unit of measure is separately identifiable and represents a distinct performance obligation to which the transaction price is allocated. Performance obligations are satisfied at a point in time once control of the product has been transferred to the customer through delivery of oil, natural gas and NGLs.

*Sales and Marketing Revenue*

Beginning in 2018, we entered into commodity purchase transactions with certain third parties and then subsequently sold the purchased commodity as separate revenue streams. We believe an opportunity exists, from time to time, to participate in additional economic benefits and operational efficiencies in support of our upstream activities by purchasing and reselling production from others, to a limited extent, in order to utilize existing firm transportation arrangements. We retain control of the purchased hydrocarbons prior to delivery to the purchaser. The Company has concluded that we are the principal in these arrangements and therefore we recognize revenue on a gross basis as Sales and Marketing Revenues, with costs to purchase and transport the commodity presented as Sales and Marketing Expenses, in each case within our consolidated statement of operations. Contracts to sell the third-party hydrocarbons are the same contracts as those for which we sell our produced hydrocarbons, and as such, we do not recognize this revenue any differently than our oil, natural gas and NGL revenue discussed previously.

*Remaining Performance Obligations*

Several of our sales contracts contain multiple performance obligations as each barrel of oil, MMBtu of natural gas, barrel of NGL or other unit of measure is separately identifiable. For these contracts, we have taken the optional exception under ASC 606-10-50-14A(b) which is available only for wholly unsatisfied performance obligations for which the criteria in ASC 606-10-32-40 have been met. Under this exception, neither estimation of variable consideration nor disclosure of the transaction price allocated to the remaining performance obligations is required. Revenue is alternatively recognized in the period that control of the commodity is transferred to the customer and the respective variable component of the total transaction price is resolved.

For forms of variable consideration that are not associated with a specific volume and thus do not meet the allocation exception, estimation is required. Examples of such variable consideration consist of deficiency payments, late payment fees, truck rejection charges, inflation adjustments and imbalance penalties; however, these items are immaterial to our condensed consolidated financial statements and/or have a low probability of occurrence. As significant reversals of revenue due to this variability are not probable, no estimation is required.

*Contract Balances*

Under our sales contracts, we invoice customers after our performance obligations have been satisfied, at which point payment is unconditional. Accordingly, our contracts do not give rise to contract assets or liabilities under ASC 606. At September 30, 2019 and December 31, 2018, our receivables from contracts with customers were $69.3 million and $87.2 million, respectively.

**Note 5. Cash and Cash Equivalents**

As of September 30, 2019 and December 31, 2018, cash and cash equivalents consisted of the following (in thousands):

| | September 30, 2019 | December 31, 2018 |
|---|---|---|
| Cash at banks | $ 179,265 | $ 66,426 |
| Money market funds | 273 | 131,187 |
| Total cash and cash equivalents | $ 179,538 | $ 197,613 |

Our cash includes funds held in deposit accounts with highly rated banks, and our cash equivalents include funds held in stable and highly liquid money market accounts with major financial institutions.

**Note 6. Oil and Natural Gas Properties**

*Impairment of Oil and Natural Gas Properties* —The Company recorded a proved property impairment of $4.3 million during the nine months ended September 30, 2019. The Company did not record proved property impairments during the three months ended September 30, 2019 or the three and nine months ended September 30, 2018. Changes in

production rates, levels of reserves, future development costs, and other factors will impact the Company's actual impairment analyses in future periods.

*Unproved Properties*—The Company recorded impairment to our unproved oil and natural gas properties of $9.8 million and $18.6 million for the three and nine months ended September 30, 2019, respectively, and $3.1 million and $4.3 million for the three and nine months ended September 30, 2018, respectively, due to acreage expirations from changes in the development plan.

**Note 7. Debt**

As of September 30, 2019 and December 31, 2018, the Company's outstanding debt consisted of the following (in thousands):

| | Interest Rate | Maturity Date | September 30, 2019 | December 31, 2018 |
|---|---|---|---|---|
| **Short Term Debt:** | | | | |
| Debtor-in-possession financing[1] | Variable | June 11, 2020 | $ 50,000 | $ — |
| SR Credit Agreement[2][3] | Variable | - | $ — | $ 304 |
| Total short term debt | | | $ 50,000 | $ 304 |
| **Long Term Debt:** | | | | |
| 7.75% Notes | 7.75% | June 15, 2021 | $ 600,000 | $ 600,000 |
| SN UnSub Credit Agreement[2] | Variable | March 1, 2022 | 150,000 | 167,500 |
| 4.59% Non-Recourse Subsidiary Term Loan[2] | 4.59% | August 31, 2022 | 3,527 | 3,803 |
| SR Credit Agreement[2] | Variable | October 31, 2022 | 22,941 | 23,187 |
| 6.125% Notes | 6.125% | January 15, 2023 | 1,150,000 | 1,150,000 |
| Credit Agreement[4] | Variable | February 14, 2023[5] | 7,922 | — |
| 7.25% Senior Secured Notes | 7.25% | February 15, 2023[6] | 500,000 | 500,000 |
| | | | 2,434,390 | 2,444,490 |
| Unamortized discount on Additional 7.75% Notes[7] | | | — | (2,222) |
| Unamortized premium on Additional 6.125% Notes[7] | | | — | 1,090 |
| Unamortized discount on 7.25% Senior Secured Notes[7] | | | — | (4,241) |
| Unamortized debt issuance costs[7] | | | (9,512) | (43,709) |
| Total long term debt | | | 2,424,878 | 2,395,408 |
| Less liabilities subject to compromise[8] | | | (2,257,922) | — |
| Total long term debt not subject to compromise | | | $ 166,956 | $ 2,395,408 |

(1) Incurred interest at a weighted-average rate of approximately 10.1% for the postpetition period ended September 30, 2019.
(2) Represents debt instruments which are non-recourse to Sanchez Energy Corporation and its restricted subsidiaries.
(3) Incurred interest at a weighted-average rate of approximately 5.9% and 6.9% for the nine months ended September 30, 2019 and the year ended December 31, 2018, respectively.
(4) A standby letter of credit in the amount of approximately $17.1 million was issued under the Credit Agreement on January 10, 2019 and incurred fees at a rate of 3.25% through the Petition Date. The letter of credit remains outstanding and is undrawn as of September 30, 2019 but is currently proposed to be cash collateralized subject to entry of the Final DIP Order.

(5) The Credit Agreement would mature on the earlier of (i) February 14, 2023 or (ii) the 91st day prior to the scheduled maturity of any "material indebtedness," which is defined to include, without limitation, any indebtedness arising in connection with the 7.75% Notes, 6.125% Notes or the 7.25% Senior Secured Notes. The 7.75% Notes would mature on June 15, 2021; therefore, the Credit Agreement would, as of September 30, 2019, mature on March 15, 2021.
(6) The 7.25% Senior Secured Notes would mature on February 15, 2023, unless on October 10, 2022 either (i) some or all of the 6.125% Notes are still outstanding and have not been defeased or (ii) there is outstanding indebtedness of Sanchez Energy Corporation or any of its restricted subsidiaries that was used to purchase, repurchase, redeem, defease or otherwise acquire or retire for value the 6.125% Notes, and such indebtedness under this clause (ii) has a final maturity date that is earlier than May 17, 2023, in which case of either clause (i) or clause (ii), the 7.25% Senior Secured Notes would mature on October 14, 2022.
(7) Approximately $30.4 million in net discounts, premiums and debt issuance costs were reclassified as reorganization items in connection with the filing of the Bankruptcy Petitions.
(8) The Company's 7.75% Notes, 6.125% Notes, Credit Agreement, and 7.25% Senior Secured Notes were classified as liabilities subject to compromise at September 30, 2019.

The components of interest expense are as follows (in thousands):

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2019 | 2018 | 2019 | 2018 |
| Interest on SR Credit Agreement | $ (342) | $ (360) | $ (917) | $ (1,188) |
| Interest on Senior Notes | (17,704) | (38,296) | (94,299) | (110,158) |
| Interest and commitment fees on SN UnSub Credit Agreement | (1,952) | (2,131) | (6,383) | (6,634) |
| Interest on Non-Recourse Subsidiary Term Loan | (31) | (46) | (116) | (140) |
| Interest, commitment fees and letter of credit fees on Credit Agreement | (106) | (32) | (389) | (726) |
| Interest on DIP Facility | (600) | — | (600) | — |
| Amortization of debt issuance costs | (1,961) | (2,873) | (8,275) | (12,706) |
| Amortization of discounts and premium on Senior Notes | (188) | (416) | (1,019) | (1,112) |
| Total interest expense | $ (22,884) | $ (44,154) | $ (111,998) | $ (132,664) |

On July 15, 2019, the Company elected to defer making an interest payment of approximately $35.2 million on the Company's 6.125% Notes to continue ongoing discussions with certain of its bondholders and other stakeholders regarding a restructuring transaction. The indenture governing the 6.125% Notes provided for a 30-day grace period, which expired on August 14, 2019, to make the scheduled interest payment before such non-payment constituted an event of default under the indenture, which would have entitled the trustee under such indenture or the holders of at least 25% in aggregate principal amount of the outstanding 6.125% Notes to accelerate the maturity thereof. Such event of default would have triggered events of default under the Company's indentures governing the 7.75% Notes, the 7.25% Senior Secured Notes and the Credit Agreement. The Debtors filed the Bankruptcy Petitions prior to expiration of the grace period. Further, the Debtors have discontinued recording interest on debt instruments classified as subject to compromise as of the Petition Date.

***Credit Facilities***

*DIP Facility*

"—Note 3. Chapter 11 Cases" for information on the Company's DIP Facility.

*Third Amended and Restated Credit Agreement*

On February 14, 2018, the Company entered into a revolving credit facility, providing for a $25 million first-out senior secured working capital and letter of credit facility (the "Credit Agreement"), which amended and restated the Company's previous credit facility in its entirety.

On July 10, 2019, the Company borrowed the remaining $7.9 million available under the Credit Agreement. Additionally, on January 10, 2019, a standby letter of credit was issued on our behalf by the lender under the Credit Agreement in the amount of approximately $17.1 million. This letter of credit, as of September 30, 2019, remains

outstanding and is undrawn but is currently proposed to be cash collateralized subject to entry of the Final DIP Order. Further, subject to entry of the Final DIP Order, a portion of the proceeds from the DIP Facility will be used to pay off all $7.9 million of borrowings outstanding under the Credit Agreement and cash collateralize the approximate $17.1 million letter of credit issued under our Credit Agreement. The automatic stay under the Bankruptcy Code does not apply to letters of credit issued under the Credit Agreement and third-party beneficiaries may draw on the letter of credit if permitted by its terms.

The filing of the Bankruptcy Petitions also constituted an event of default which automatically accelerated the Company's obligations under the Credit Agreement. However, under the Bankruptcy Code, the lenders under the Credit Agreement are stayed from taking any action against the Company as a result of these defaults.

During the existence of an event of default and the Chapter 11 Cases, we have no borrowing capacity under the Credit Agreement, even if any available borrowing capacity remained under the Credit Agreement. In addition, as discussed above, subject to entry of the Final DIP Order, we anticipate paying off the borrowings outstanding under the Credit Agreement in full.

*SN UnSub Credit Agreement*

On March 1, 2017, SN UnSub entered into a credit agreement for a $500 million revolving credit facility with a maturity date of March 1, 2022 (the "SN UnSub Credit Agreement").

On May 23, 2019, as part of the most recent semi-annual redetermination, the borrowing base under the SN UnSub Credit Agreement was decreased from $315 million to $240 million. As of September 30, 2019, there were approximately $150.0 million of borrowings and no letters of credit outstanding under the SN UnSub Credit Agreement. The next regularly scheduled borrowing base redetermination is expected in the fourth quarter 2019. Based upon current commodity prices and other factors, we believe that the borrowing base under the SN UnSub Credit Agreement will likely be decreased at the next redetermination and may be decreased at future redeterminations, and any or all such decreases may be material. Were the lenders under the SN UnSub Credit Agreement to reduce the borrowing base to an amount below the current outstanding borrowings of SN UnSub, and provided no waiver is granted by those lenders, SN UnSub would be required at its election to repay the deficiency within 30 days (in a single installment) to 180 days (in six equal monthly installments), pledge additional oil and natural gas assets as security for the amount of debt outstanding, or seek such other remedies available under the SN UnSub Credit Agreement. Inability to do so would have a material adverse effect on SN UnSub's liquidity, financial condition and results of operations.

As of September 30, 2019, SN UnSub was in compliance with the covenants of the SN UnSub Credit Agreement.

*SR Credit Agreement*

In 2017, we acquired SR Acquisition I, LLC ("SRAI"). On November 16, 2018, SRAI's credit facility was amended and restated to convert the outstanding revolving loan to a term loan and extend the maturity date to October 31, 2022 (the "SR Credit Agreement"). As of September 30, 2019, there was approximately $22.9 million outstanding under the SR Credit Agreement, and SRAI was in compliance with the financial covenants of the SR Credit Agreement.

***Senior Notes***

*7.75% Senior Notes Due 2021*

On June 13, 2013, the Company completed a private offering of $400 million in aggregate principal amount of the 7.75% senior notes that would mature on June 15, 2021 (the "Original 7.75% Notes"). On September 18, 2013, we issued an additional $200 million in aggregate principal amount of our 7.75% senior notes due 2021 (the "Additional 7.75% Notes," and together with the Original 7.75% Notes, the "7.75% Notes") in a private offering at an issue price of 96.5% of the principal amount of the Additional 7.75% Notes.

The filing of the Bankruptcy Petitions constituted an event of default that accelerated the Company's obligations under the 7.75% Notes. However, under the Bankruptcy Code, holders of the 7.75% Notes are stayed from taking any action against the Company as a result of the default.

*6.125% Senior Notes Due 2023*

On June 27, 2014, the Company completed a private offering of $850 million in aggregate principal amount of the 6.125% senior notes that would mature on January 15, 2023 (the "Original 6.125% Notes"). On September 12, 2014, we issued an additional $300 million in aggregate principal amount of our 6.125% senior notes due 2023 (the "Additional 6.125% Notes," and together with the Original 6.125% Notes, the "6.125% Notes," and together with the 7.75% Notes and the 7.25% Senior Secured Notes, the "Senior Notes") in a private offering at an issue price of 100.75% of the principal amount of the Additional 6.125% Notes.

The filing of the Bankruptcy Petitions constituted an event of default that accelerated the Company's obligations under the 6.125% Notes. However, under the Bankruptcy Code, holders of the 6.125% Notes are stayed from taking any action against the Company as a result of the default.

*7.25% Senior Secured First Lien Notes due 2023*

On February 14, 2018, the Company completed a private offering to eligible purchasers of $500 million in aggregate principal amount of 7.25% senior secured first lien notes due 2023 (the "7.25% Senior Secured Notes") at an issue price of 99.0% of the principal amount.

The filing of the Bankruptcy Petitions constituted an event of default that accelerated the Company's obligations under the 7.25% Senior Secured Notes. However, under the Bankruptcy Code, holders of the 7.25% Senior Secured Notes are stayed from taking any action against the Company as a result of the default.

**Note 8. Derivative Instruments**

Hedging activities, which, as of September 30, 2019 are regulated by, as applicable, the terms of the DIP Facility, the Credit Agreement, the SN UnSub Credit Agreement and SN UnSub's organizational documents, are intended to manage exposure to oil and natural gas price fluctuations. It is our policy to enter into derivative contracts only with counterparties that are creditworthy and competitive market participants. As of September 30, 2019, any derivatives that are, as applicable, with (a) lenders, or affiliates of lenders, to the SN UnSub Credit Agreement or (b) counterparties designated as secured under the DIP Facility or Credit Agreement are, in each case, collateralized by the assets securing the applicable facility, and, therefore, did not as of September 30, 2019 require the posting of cash collateral. As of September 30, 2019, any derivatives that are, as applicable, with (x) non-lenders (or non-lender affiliates) under the SN UnSub Credit Agreement or (y) counterparties that are not designated as secured under the DIP Facility and Credit Agreement are, in each case, unsecured and do not require the posting of cash or other collateral. As of September 30, 2019, all of our derivative contracts were with lenders, affiliates of lenders or other secured counterparties. It is never the Company's intention to enter into derivative contracts for speculative trading purposes. Following the filing of the Bankruptcy Petitions, our ability to enter into derivatives is limited.

The following table presents open derivative positions for the periods indicated as of September 30, 2019:

| | October 1 - December 31, 2019 | 2020 | 2021 |
|---|---|---|---|
| **Oil positions:** | | | |
| Fixed price swaps (NYMEX WTI): | | | |
| Hedged volume (Bbls) | 580,000 | 1,105,860 | 650,400 |
| Average price ($/Bbl) | $ 52.41 | $ 55.29 | $ 54.23 |
| **Natural gas positions:** | | | |
| Fixed price swaps (NYMEX Henry Hub): | | | |
| Hedged volume (MMBtu) | 3,362,000 | 6,934,150 | 4,212,000 |
| Average price ($/MMBtu) | $ 2.87 | $ 2.67 | $ 2.56 |

The following table sets forth a reconciliation of the changes in fair value of the Company's commodity derivatives for the nine months ended September 30, 2019 and the year ended December 31, 2018 (in thousands):

| | Nine Months Ended September 30, 2019 | Year Ended December 31, 2018 |
|---|---|---|
| Fair value of commodity derivatives, beginning of period | $ 21,194 | $ (54,255) |
| Net losses on oil derivatives | (28,167) | (9,878) |
| Net gains (losses) on natural gas derivatives | 6,266 | (17,897) |
| Net settlements paid (received) on commodity derivative contracts: | | |
| Oil | 13,479 | 100,120 |
| Natural gas | (3,689) | 3,104 |
| Fair value of commodity derivatives, end of period | $ 9,083 | $ 21,194 |

*Embedded Derivatives:* In 2017, the Company entered into certain contracts for the purchase of sand and fractionation services that contain provisions that must be bifurcated from the contract and valued as derivatives. In the fourth quarter 2018, the Company amended certain of these contracts, removing the respective embedded derivative components, and as of September 30, 2019, all remaining embedded derivative contracts expired or had been terminated. The embedded derivatives were historically valued using a Monte Carlo simulation model which utilizes observable inputs, including the NYMEX WTI oil price and NYMEX Henry Hub natural gas price at various points in time. The Company marked these derivatives to market and, as a result, recorded a loss of approximately $1.1 million for the three months ended September 30, 2018. The Company did not record any gains or losses for the three months ended September 30, 2019 as the contracts had expired or terminated. For the nine months ended September 30, 2019 and 2018, the Company recorded a gain of approximately $0.3 million and a loss of $7.1 million, respectively. Any gains or losses related to embedded derivatives are recorded as a component of other income (expense) in the consolidated statement of operations.

*Earnout Derivative:* We are entitled to receive earnout payments from SNMP based on natural gas delivered above a threshold volume and a tariff at certain pipeline delivery points. These payments were deemed to be a derivative. The resulting earnout derivative was valued through the use of a Monte Carlo simulation model which utilized observable inputs, such as the earnout price and volume commitment, as well as unobservable inputs related to the weighted probabilities of various throughput scenarios. For the nine months ended September 30, 2019, the Company recorded an immaterial net gain due to settlement gains, which were partially offset by mark-to-market losses. The Company did not record any gains or losses for the three months ended September 30, 2019. For the three and nine months ended September 30, 2018, the Company recorded approximate net gains of $0.4 million and $1.9 million, respectively, primarily related to mark-to-market gains. Any gains or losses related to the earnout derivative are recorded as a component of other income (expense) in the condensed consolidated statement of operations.

The following table sets forth a reconciliation of the changes in fair value of the Company's embedded and earnout derivatives for the nine months ended September 30, 2019 and the year ended December 31, 2018, respectively (in thousands):

| | Nine Months Ended September 30, 2019 | Year Ended December 31, 2018 |
|---|---|---|
| Fair value of other derivatives, beginning of period | $ 5,550 | $ (1,551) |
| Gain on embedded derivatives | 308 | 1,243 |
| Initial fair value of earnout derivative | — | 6,401 |
| Loss on earnout derivatives | (32) | (543) |
| Fair value of other derivatives, end of period | $ 5,826 | $ 5,550 |

***Balance Sheet Presentation***

The Company nets derivative assets and liabilities by commodity for counterparties where a legal right to such netting exists. Therefore, the Company's derivatives are presented on a net basis as "Fair value of derivative instruments" on the condensed consolidated balance sheets. The following information summarizes the gross fair values

of derivative instruments, presenting the impact of offsetting derivative assets and liabilities on the Company's consolidated balance sheets (in thousands):

| | September 30, 2019 | | |
|---|---|---|---|
| | Gross Amount of Recognized Assets and Liabilities | Gross Amounts Offset in the Consolidated Balance Sheets | Net Amounts Presented in the Consolidated Balance Sheets |
| **Offsetting Derivative Assets:** | | | |
| Current asset | $ 6,389 | $ (126) | $ 6,263 |
| Long term asset | 9,361 | (15) | 9,346 |
| Total asset | $ 15,750 | $ (141) | $ 15,609 |
| **Offsetting Derivative Liabilities:** | | | |
| Current liability | $ 826 | $ (126) | $ 700 |
| Long term liability | 15 | (15) | — |
| Total liability | $ 841 | $ (141) | $ 700 |

| | December 31, 2018 | | |
|---|---|---|---|
| | Gross Amount of Recognized Assets and Liabilities | Gross Amounts Offset in the Consolidated Balance Sheets | Net Amounts Presented in the Consolidated Balance Sheets |
| **Offsetting Derivative Assets:** | | | |
| Current asset | $ 16,302 | $ (588) | $ 15,714 |
| Long term asset | 12,178 | (76) | 12,102 |
| Total asset | $ 28,480 | $ (664) | $ 27,816 |
| **Offsetting Derivative Liabilities:** | | | |
| Current liability | $ 1,294 | $ (588) | $ 706 |
| Long term liability | 442 | (76) | 366 |
| Total liability | $ 1,736 | $ (664) | $ 1,072 |

The filing of Bankruptcy Petitions described above constituted an event of default that generally allows counterparties to certain of the Company's derivative contracts (excluding the counterparties to SN UnSub's derivative contracts) to unilaterally terminate contracts to their scheduled settlement date(s) and pursue remedies, which are not subject to the automatic stay. In August 2019, as a result of the Chapter 11 Cases, one of our counterparties terminated its derivative contracts with the Company (excluding SN UnSub's derivative contracts), resulting in a net payable of approximately $1.1 million due to the counterparty.

**Note 9. Investments**

A subsidiary of the Company owns 1,500,000 shares of Class A Common Stock of Lonestar Resources US Inc. ("Lonestar"). As of September 30, 2019, we believe this ownership represents approximately 6% of Lonestar's outstanding shares of common stock. The Company accounts for the investment in Lonestar as an investment in equity securities measured at fair value in the condensed consolidated balance sheets at the end of each reporting period. The Company recorded a gain of $0.6 million and a loss of $1.4 million related to the investment in Lonestar for the three and nine months ended September 30, 2019, respectively, and the Company recorded a loss of $1.0 million and a gain of $5.7 million related to the investment in Lonestar for the three and nine months ended September 30, 2018, respectively. Any gains or losses related to the investment in Lonestar are recorded as a component of other income (expense) in the condensed consolidated statement of operations.

A subsidiary of the Company owns 100 Class A Units of Gavilan Resources Holdco, LLC ("GRHL"). Tranches representing 20% of the Class A Units vest on each of the first five anniversaries from March 1, 2017. The Class A Units are entitled to distributions from Available Cash, as defined in and subject to the provisions of the GRHL amended and restated limited liability company agreement. The Company accounts for the investment in GRHL as a cost method

investment. As of September 30, 2019, the carrying value of the investment in GRHL was $7.3 million. The Company did not record any earnings or distributions from its ownership of the Class A Units for the period from January 1, 2018 through September 30, 2019.

A subsidiary of the Company owns 2,272,727 common units of SNMP. As of September 30, 2019, we believe this ownership represents approximately 11.3% of SNMP's outstanding common units. The Company elected the fair value option to account for its interest in SNMP and records the equity investment at fair value at the end of each reporting period. For the three and nine months ended September 30, 2019, the Company recorded losses of $4.3 million and $3.1 million, respectively, related to the investment in SNMP. In addition, for the nine months ended September 30, 2019, the Company recorded dividend income of approximately $0.7 million from quarterly distributions on the SNMP common units. The Company did not record any dividend income from quarterly distributions on the SNMP common units for the three months ended September 30, 2019. For the three and nine months ended September 30, 2018, the Company recorded losses related to the investment in SNMP of approximately $10.7 million and $9.1 million, respectively. Further, for the three and nine months ended September 30, 2018, we recorded dividend income of approximately $1.0 million and $3.2 million, respectively. Any gains or losses and dividend income related to the investment in SNMP are recorded as a component of other income (expense) in the condensed consolidated statement of operations.

**Note 10. Fair Value of Financial Instruments**

Measurements of fair value of derivative instruments are classified according to the fair value hierarchy, which prioritizes the inputs to the valuation techniques used to measure fair value. Fair value is the price that would be received upon the sale of an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date.

Financial assets and liabilities are classified based on the lowest level of input that is significant to the fair value measurement. Management's assessment of the significance of a particular input to the fair value measurement requires judgment, and may affect the valuation of the fair value of assets and liabilities and their placement within the fair value hierarchy levels.

***Fair Value on a Recurring Basis***

The following tables set forth, by level within the fair value hierarchy, the Company's financial assets and liabilities that were accounted for at fair value on a recurring basis as of September 30, 2019 and December 31, 2018 (in thousands):

| | As of September 30, 2019 | | | |
|---|---|---|---|---|
| | Active Market for Identical Assets (Level 1) | Observable Inputs (Level 2) | Unobservable Inputs (Level 3) | Total Carrying Value |
| *Cash equivalents:* | | | | |
| Cash equivalents | $ 273 | $ — | $ — | $ 273 |
| *Equity investments:* | | | | |
| Investment in SNMP | 841 | — | — | 841 |
| Investment in Lonestar | 4,080 | — | — | 4,080 |
| *Oil derivative instruments:* | | | | |
| Swaps | — | 5,919 | — | 5,919 |
| *Natural gas derivative instruments:* | | | | |
| Swaps | — | 3,164 | — | 3,164 |
| *Other:* | | | | |
| Earnout derivative asset | — | — | 5,826 | 5,826 |
| Total | $ 5,194 | $ 9,083 | $ 5,826 | $ 20,103 |

| | As of December 31, 2018 | | | |
|---|---|---|---|---|
| | Active Market for Identical Assets (Level 1) | Observable Inputs (Level 2) | Unobservable Inputs (Level 3) | Total Carrying Value |
| *Cash equivalents:* | | | | |
| Cash equivalents | $ 131,187 | $ — | $ — | $ 131,187 |
| *Equity investments:* | | | | |
| Investment in SNMP | 3,909 | — | — | 3,909 |
| Investment in Lonestar | 5,475 | — | — | 5,475 |
| *Oil derivative instruments:* | | | | |
| Swaps | — | 20,608 | — | 20,608 |
| *Natural gas derivative instruments:* | | | | |
| Swaps | — | 586 | — | 586 |
| *Other:* | | | | |
| Embedded derivative instruments | — | (308) | — | (308) |
| Earnout derivative asset | — | — | 5,858 | 5,858 |
| Total | $ 140,571 | $ 20,886 | $ 5,858 | $ 167,315 |

(1) Level 1 measurements are fair value measurements which use quoted market prices (unadjusted) in active markets for identical assets or liabilities. We use Level 1 inputs when available, as Level 1 inputs generally provide the most reliable evidence of fair value.

(2) Level 2 measurements are fair value measurements which use inputs, other than quoted prices included within Level 1, which are observable for the asset or liability, either directly or indirectly.

(3) Level 3 measurements are fair value measurements which use unobservable inputs and require management to make certain assumptions in the determination of value.

*Financial Instruments*: The Level 1 instruments presented in the tables above consist of money market funds and time deposits included in cash and cash equivalents on the Company's condensed consolidated balance sheets at September 30, 2019 and December 31, 2018. The Company's money market funds and time deposits represent cash equivalents held with banks and financial institutions. The Company identified the money market funds and time deposits as Level 1 instruments, as money market funds have daily liquidity, there are active markets for the underlying investments and quoted prices for the underlying investments can be obtained. In addition, the Level 1 instruments include the Company's equity investments in SNMP and Lonestar which are publicly traded companies.

The Company's commodity derivative instruments consist of swaps as of September 30, 2019 and December 31, 2018 as shown in the table above. The fair values of the Company's derivatives are based on third-party pricing models which utilize inputs that are either readily available in the public market, such as forward curves, or can be corroborated from active markets of broker quotes, and therefore are classified as Level 2. Derivative instruments are also subject to the risk that counterparties will be unable to meet their obligations. Such non-performance risk is considered in the valuation of the Company's derivative instruments, but to date has not had a material impact on estimates of fair values. Significant changes in the quoted forward prices for commodities and changes in market volatility generally lead to corresponding changes in the fair value measurement of the Company's derivative instruments.

There were no commodity derivative instruments classified as Level 3 as of September 30, 2019 or December 31, 2018.

*Embedded Derivatives:* The Company believes that substantially all of the inputs required to calculate the embedded derivatives are observable in the marketplace throughout the term of these derivative instruments or supported by observable levels at which transactions are executed in the marketplace, and are, therefore, classified as Level 2 inputs.

*Earnout Derivative:* These payments were deemed to be a derivative which utilize observable inputs such as the earnout price and volume commitment, as well as unobservable inputs related to the weighted probabilities of various throughput scenarios.

The following table sets forth a reconciliation of changes in the fair value of the Company's earnout derivative instruments classified as Level 3 in the fair value hierarchy (in thousands):

| | Nine Months Ended September 30, 2019 | Year Ended December 31, 2018 |
|---|---|---|
| Beginning balance | $ 5,858 | $ — |
| Initial fair value of earnout derivative | — | 6,401 |
| Loss on earnout derivatives | (32) | (543) |
| Ending balance | $ 5,826 | $ 5,858 |

***Fair Value on a Non-Recurring Basis***

In connection with the voluntary conversions by certain holders of shares of the Company's 4.875% Convertible Perpetual Preferred Stock, Series A (the "Series A Preferred Stock") and 6.500% Convertible Perpetual Preferred Stock, Series B (the "Series B Preferred Stock") into shares of the Company's common stock in February, March, June, July and September 2019, the Company issued common stock according to the conversion rate established by the Certificates of Designations for the Series A Preferred Stock and Series B Preferred Stock, as applicable. The fair value of the common stock issued is based on the price of the Company's common stock on the date of issuance. There were no conversions of Series A Preferred Stock or Series B Preferred Stock into shares of the Company's common stock during the nine months ended September 30, 2018. As there is an active market for the Company's common stock, the Company has designated this fair value measurement as Level 1. For further information, see "—Note 14. Stockholders' and Mezzanine Equity."

The Company recorded proved property impairments of $4.3 million and $6.6 million during the nine months ended September 30, 2019 and the year ended December 31, 2018, respectively, related to oil and natural gas properties in the TMS. The carrying value of the impaired proved properties was reduced to a fair value of $11.0 million and $10.5 million for the nine months ended September 30, 2019 and year ended December 31, 2018, respectively, estimated using inputs characteristic of a Level 3 fair value measurement.

***Fair Value of Other Financial Instruments***

The carrying amounts of our oil and natural gas receivables, accounts payable not subject to compromise and accrued liabilities approximate fair value due to their highly liquid nature. The registered 7.75% Notes and 6.125% Notes are traded in an active market, and as such, are classified as Level 1 financial instruments. As of September 30, 2019, the estimated fair values of the 7.75% Notes and 6.125% Notes were $37.8 million and $74.1 million, respectively, and were calculated using quoted market prices based on trades of such debt as of that date. The 7.25% Senior Secured Notes are traded in an active market under Rule 144A by institutional investors, and as such, are classified as Level 1 financial instruments. As of September 30, 2019, the estimated fair value of the 7.25% Senior Secured Notes was $369.3 million and was calculated using quoted market prices based on observed trades of such debt as of that date.

We believe that the carrying values of long term debt for the Credit Agreement, SN UnSub Credit Agreement and SR Credit Agreement approximate their fair values because the interest rates on the debt approximate market interest rates for debt with similar terms. These debts are classified as Level 2 inputs in the fair value hierarchy and represent the amounts at which the instruments could be valued in an exchange during a current transaction between willing parties.

**Note 11. Asset Retirement Obligations**

The changes in the asset retirement obligation for the nine months ended September 30, 2019 and the year ended December 31, 2018 were as follows (in thousands):

| | Nine Months Ended September 30, 2019 | Year Ended December 31, 2018 |
|---|---|---|
| Abandonment liability, beginning of period | $ 46,175 | $ 36,098 |
| Liabilities incurred during period | 275 | 1,965 |
| Divestitures | (147) | (158) |
| Revisions | — | 5,077 |
| Accretion expense | 2,879 | 3,193 |
| Abandonment liability, end of period | $ 49,183 | $ 46,175 |

**Note 12. Related Party Transactions**

*Sanchez Oil and Gas Corporation*

Expenses allocated to the Company from SOG for G&A expenses and oil and natural gas production expenses for the three months ended September 30, 2019 and 2018 were $17.3 million and $15.3 million, respectively, and expenses allocated to the Company for G&A expenses and oil and natural gas production expenses for the nine months ended September 30, 2019 and 2018 were $52.6 million and $48.8 million, respectively.

As of September 30, 2019 and December 31, 2018, the Company had a net receivable from SOG and its affiliates of $10.2 million and $6.1 million, respectively, which is reflected as "Accounts receivable—related entities" in the condensed consolidated balance sheets. The net receivable as of September 30, 2019 and December 31, 2018 consists primarily of advances related to G&A expenses and other costs paid to SOG in the ordinary course.

*Sanchez Midstream Partners*

As of September 30, 2019 and December 31, 2018, the Company had a net payable to SNMP of approximately $3.8 million and $6.1 million, respectively, that consists primarily of fees associated with oil and natural gas gathering and transportation services.

**Note 13. Accrued Liabilities and Other Current Liabilities**

The following information summarizes accrued liabilities as of September 30, 2019 and December 31, 2018 (in thousands):

| | September 30, 2019 | December 31, 2018 |
|---|---|---|
| Capital expenditures | $ 7,232 | $ 61,970 |
| Other: | | |
| General and administrative expenses | 20,635 | 19,460 |
| Production taxes | 2,483 | 5,157 |
| Ad valorem taxes | 6,655 | 445 |
| Lease operating expenses | 34,782 | 24,138 |
| Interest payable | 376 | 47,866 |
| Other accrued liabilities | 1,367 | 5,662 |
| Total accrued liabilities | $ 73,530 | $ 164,698 |

The following information summarizes other payables as of September 30, 2019 and December 31, 2018 (in thousands):

| | September 30, 2019 | December 31, 2018 |
|---|---|---|
| Revenue payable | $ 14,963 | $ 71,296 |
| Production tax payable | 448 | 3,443 |
| Other | 1,328 | (111) |
| Total other payables | $ 16,739 | $ 74,628 |

The following information summarizes other current liabilities as of September 30, 2019 and December 31, 2018 (in thousands):

| | September 30, 2019 | December 31, 2018 |
|---|---|---|
| Operated prepayment liability | $ 31,921 | $ 51,844 |
| Deferred gain on Western Catarina Midstream Divestiture - short term | — | 23,720 |
| Phantom compensation payable - short term | 40 | 17 |
| Total other current liabilities | $ 31,961 | $ 75,581 |

**Note 14. Stockholders' and Mezzanine Equity**

*Series A Preferred Stock*

Each share of Series A Preferred Stock is convertible at any time at the option of the holder thereof at an initial conversion rate of 2.325 shares of common stock per share of Series A Preferred Stock (which is equal to an initial conversion price of $21.51 per share of common stock) and is subject to specified adjustments. As of September 30, 2019, based on the initial conversion price, approximately 1,440,343 shares of common stock would be issuable upon conversion of all of the outstanding shares of the Series A Preferred Stock.

The annual dividend on each share of Series A Preferred Stock is 4.875% on the liquidation preference of $50.00 per share and is payable quarterly, in arrears, on each January 1, April 1, July 1 and October 1, when, as and if declared by the Board. Subject to certain conditions, the Company may, at its option, pay dividends in cash and, subject to certain additional conditions, common stock or any combination thereof. Dividends are cumulative and, beginning with the three month period ended March 31, 2019, the Board determined to suspend the dividend on our Series A Preferred Stock. Dividends accumulated through September 30, 2019 have been accrued. Pursuant to the terms of the DIP Facility, the Company may not pay any dividends on, make any distribution or payment on account of, redeem or acquire any shares of Series A Preferred Stock.

*Series B Preferred Stock*

Each share of Series B Preferred Stock is convertible at any time at the option of the holder thereof at an initial conversion rate of 2.337 shares of common stock per share of Series B Preferred Stock (which is equal to an initial conversion price of $21.40 per share of common stock) and is subject to specified adjustments. As of September 30, 2019, based on the initial conversion price, approximately 5,763,071 shares of common stock would be issuable upon conversion of all of the outstanding shares of the Series B Preferred Stock.

The annual dividend on each share of Series B Preferred Stock is 6.500% on the liquidation preference of $50.00 per share and is payable quarterly, in arrears, on each January 1, April 1, July 1 and October 1, when, as and if declared by the Board. Subject to certain conditions, the Company may, at its option, pay dividends in cash and, subject to certain additional conditions, common stock or any combination thereof. Dividends are cumulative and, beginning with the three month period ended March 31, 2019, the Board determined to suspend the dividend on our Series B Preferred Stock. Dividends accumulated through September 30, 2019 have been accrued. Pursuant to the terms of the DIP Facility, the Company may not pay any dividends on, make any distribution or payment on account of, redeem or acquire any shares of Series B Preferred Stock.

*Preferred Stock Conversions*

On February 12, 2019, 72,500 shares of Series A Preferred Stock converted into 168,563 shares of our common stock and 245,832 shares of Series B Preferred Stock converted into 574,510 shares of our common stock at the election of the holders thereof. From March 6 to March 8, 2019, 563,832 shares of Series A Preferred Stock converted into 1,310,914 shares of our common stock and 770,986 shares of Series B Preferred Stock converted into 1,801,798 shares of our common stock, at the election of the holders thereof. On March 26, 2019, 422,222 shares of Series A Preferred Stock converted into 981,667 shares of our common stock, at the election of the holders thereof. As of June 14, 2019, 155,929 shares of Series A Preferred Stock converted into 362,535 shares of our common stock, at the election of the holders thereof. On July 29, 2019, 5,000 shares of Series A Preferred Stock converted into 11,625 shares of our common stock, at the election of the holder thereof. On September 30, 2019, 45,000 shares of Series B Preferred Stock converted into 105,165 shares of our common stock, at the election of the holder thereof.

Through the conversions, each of the holders effectively waived their rights to any accrued and unpaid dividends thereon under the conversion terms set forth in Certificates of Designations for the Series A Preferred Stock and Series B Preferred Stock, as applicable. As a result, the Company has reduced its quarterly dividend accruals on its Series A Preferred Stock and Series B Preferred Stock by approximately $1.6 million as compared to the amount that would have been payable based on the number of shares outstanding prior to these conversions.

*SN UnSub Preferred Unit Issuance*

On March 1, 2017, the Company, through two of its subsidiaries, SN UnSub and SN Maverick, along with Gavilan Resources, LLC (“Gavilan”), an entity controlled by The Blackstone Group Inc., completed the acquisition of approximately 318,000 gross (155,000 net) acres comprised of 252,000 gross (122,000 net) Eagle Ford Shale acres and 66,000 gross (33,000 net) acres of deep rights only, which includes the Pearsall Shale, representing an approximate 49% average working interest therein (the “Comanche Assets,” with such acquisition, the “Comanche Acquisition”).

At the closing of the Comanche Acquisition, certain funds managed or advised by GSO Capital Partners L.P. (“GSO”) purchased 485,000 preferred units of SN UnSub and Intrepid Private Equity V-A LLC purchased 15,000 preferred units of SN UnSub (in aggregate, the “SN UnSub Preferred Units”). The SN UnSub Preferred Units are accounted for as mezzanine equity in the condensed consolidated balance sheet consisting of the following as of September 30, 2019 and December 31, 2018, respectively, (in thousands):

| | Nine Months Ended September 30, 2019 | Year Ended December 31, 2018 |
|---|---|---|
| Mezzanine equity, beginning balance | $ 452,828 | $ 427,512 |
| Accretion of discount | 22,029 | 25,316 |
| Dividends accrued | 37,500 | 50,000 |
| Dividends prepaid [1] | — | (2,592) |
| Dividends/distributions paid [1] | (37,500) | (47,408) |
| Mezzanine equity, ending balance | $ 474,857 | $ 452,828 |

(1) In 2017, tax distributions of approximately $2.6 million were paid in excess of the accrued dividend. The excess distribution was offset against a portion of the dividend accrued during the three months ended March 31, 2018.